**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
503-326-2123 Telephone
503-326-5524 Facsimile

**Attorneys for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | No. CR 10-475-KI |
| Plaintiff, | **MOTION FOR ORDER DIRECTING THE GOVERNMENT TO CEASE AND DESIST FROM INAPPROPRIATE PRETRIAL COMMENT** |
| v. | |
| **MOHAMED OSMAN MOHAMUD,** | |
| Defendant. | |

The defendant, through his attorneys, Stephen R. Sady and Steven T. Wax, respectfully moves this Court for an order prohibiting the Attorney General from engaging in inappropriate pretrial comment. This motion is in response to public statements by

**PAGE 1    MOTION FOR ORDER DIRECTING THE GOVERNMENT TO CEASE AND DESIST FROM INAPPROPRIATE PRETRIAL COMMENT**

Attorney General Eric Holder, on November 29 and December 10, 2010, regarding the merits of this case that have been extensively quoted in the media.

**Background Facts**

From the outset of this case, pretrial publicity has been an issue. On the evening of November 26, 2010, the government issued a press release that included a link to the 36-page complaint in support of the arrest warrant. Exhibit A. The press release was followed by prosecutorial statements on television. The complaint was filed the day of the first appearance, November 29, 2010. Then, foreclosing cross-examination of the affiant, the government sought and obtained an indictment on the morning before Mr. Mohamud's first appearance on November 29, 2010.

That same day, Attorney General Eric Holder appeared before the media and commented on the merits of the entrapment defense. In his statement, he indicated both an opinion about the merits and intimated that he had personal knowledge about the case: "This is an investigation I have been familiar with throughout its course and I am confident there is no entrapment here and no entrapment claim will prove to be successful" (Exhibits B & C).

At the first appearance, counsel asserted that the use of the complaint as a press release was unfair under the Due Process Clause and should be balanced by the opportunity to cross-examine the agent. The motion was denied. Following the hearing, the defense stated to the media that the entrapment issues were complex and urged that there be no pre-

judgments (Exhibit D). Several days later, the defense issued a brief second statement in response to repeated media requests, again urging people not to prejudge the case (Exhibit E).

On December 10, 2010, Attorney General Holder once again commented on the merits of the pending case. During a speech in San Francisco, he departed from an uncontroversial discussion of civil liberties to discuss Mr. Mohamud's specific case, including:

> Those who characterize the FBI's activities in this case as "entrapment" simply do not have their facts straight – or do not have a full understanding of the law . . . . I make no apologies for how the FBI agents handled their work in executing the operation that led to Mr. Mohamud's arrest. Their efforts helped to identify a person who repeatedly expressed a desire and intention to kill innocent Americans.

Exhibit E at 3. The OREGONIAN ran an on-line article under a headline stating that the Attorney General claimed the FBI did not entrap Mr. Mohamud. The Attorney General's comments regarding the case have been repeated on the internet and have now been echoed on the Sunday OREGONIAN editorial page.

Because the Attorney General has twice engaged in inappropriate pretrial comment on what is likely to be a core issue in this case, and his comments have spurred an editorial published in the state's largest newspaper, this Court should take the affirmative step of prohibiting any further comments that violate the constraints on prosecutors under the Code of Federal Regulations and the Due Process Clause of the United States Constitution.

### A. The Attorney General's Pretrial Comments Are Inappropriate Under Governing Law.

Pretrial comment by government officials regarding the merits of a pending criminal case is generally inappropriate, especially in high profile cases with great risks of prejudicing the jury pool. *See generally* Laurie Levenson, *Prosecutorial Sound Bites: When Do They Cross The Line?* 44 Ga. L.R. 1021, 1028-36 (2010). The Fifth and Sixth Amendments encompass the basic protections of the presumption of innocence, trial by unbiased jurors, and freedom from prejudicial government action regarding the right to a fair trial. These protections are at risk when governmental officials use the power of their position to pollute the public with their prejudgments. *See Sheppard v. Maxwell*, 384 U.S. 333, 361-62 (1966).

In recognition of these dangers, Department of Justice regulations expressly limit what prosecutors may say about a pending case. Government personnel are prohibited from engaging in the type of pretrial comment described above. "At no time shall personnel of the Department of Justice . . . furnish any statement or information, which could reasonably be expected to be disseminated by means of public communication, if such a statement or information may reasonably be expected to influence the outcome of a pending or future trial." 28 C.F.R. § 50.2(b) (Release of information by personnel of the Department of Justice relating to criminal and civil proceedings) (Exhibit G). *Accord* Oregon Rules of Professional Conduct 3.6(a). Given the media coverage, the comments have had an obvious and prejudicial effect on the jury pool.

Opinions regarding guilt are not allowed to be broadcast pending trial: "[P]ersonnel of the Department should refrain from making available the following: . . . Any opinion as to the accused's guilt, . . . ." 28 C.F.R. § 50.2(b)(6)(vi). More generally, prosecutors should "refrain from making extrajudicial comments that have a substantial likelihood of heightening public condemnation of the accused." ABA Model Rules of Professional Conduct 3.8(f). Federal prosecutors bear a special responsibility not to abuse their considerable power. *Berger v. United States*, 295 U.S. 78, 88-89 (1935). The government's pretrial comments exceed both the spirit and the letter of the government's rules regarding pretrial publicity.

### B.  Especially Under The Facts Of This Case, This Court Should Order The Government To Cease And Desist From Inappropriate Pretrial Comments.

The Court should prohibit pretrial comments by the Attorney General for three basic reasons. First, this case already involves high risks regarding pretrial prejudice. The Attorney General's remarks go far beyond the fact of the indictment and any legitimate policy issues, instead discussing the merits of Mr. Mohamud's case. By opining on the merits of the case, the government pollutes the jury pool with inappropriate opinions and pre-judgments. It does so directly and, as reflected in the OREGONIAN editorial, such comment invites further repetition of the inappropriate prosecutorial comment.

Both the Attorney General and the OREGONIAN editorial commenting on his statement address two distinct issues: general law enforcement policies in dealing with terrorism and the specific merits of Mr. Mohamud's case. This motion is not addressed to the former

policy comments. Those policy issues are distinct from the comments on the merits of Mr. Mohamud's case made by the Attorney General and echoed in the OREGONIAN. The Attorney General's statements crossed the line in offering personal opinions about the supposed facts of the case and Mr. Mohamud's guilt.

Second, the Attorney General's opinions are not only inappropriate, they are counter-factual. The government suggests, both directly and implicitly, that the government attorneys have special knowledge regarding the actions of government agents. On the contrary, unless the prosecutor is a witness, the government attorneys can have no such knowledge, especially where, at the critical first encounter between the agent and Mr. Mohamud, the government claims that its recording equipment failed. Further, even preliminary discovery and investigation reveals that there are exculpatory and mitigating facts beyond the information asserted in the Complaint. A great deal of work remains to be done before the full facts are revealed in the appropriate judicial forum regarding Mr. Mohamud's thoughts and actions before he was approached by the government agents, the manner in which the agents worked on him, and such matters as the type of training provided by to the government agents in how to direct this vulnerable teenager. Just as prosecutorial vouching before a jury is inappropriate, making the same types of claims regarding the government's case before the jury pool is not only factually incorrect but extremely prejudicial and improper.

Third, the Attorney General's conclusory claims regarding the law of entrapment are especially inappropriate. This Court will have ample opportunity to review the law of

entrapment and its application to the facts of this case. The government's public statements do not account for the legal methodology adopted by the Supreme Court and the Ninth Circuit. Because these issues are subject to discovery, investigation, motions, and trial rights that have only just begun, reducing the important and complex entrapment issues in this case to media sound-bites is unfair and prejudicial.

The Attorney General's public statements regarding the merits of this case fall far outside normally acceptable official conduct. The media echo-chamber – exemplified by the OREGONIAN editorial – is the natural consequence of such statements, creating bias and prejudgment in the jury pool. Because prosecutorial statements prejudging the case are inappropriate and harmful to the right to a fair trial, the Court should take immediate action to proscribe any future violations.

Dated this 20th day of December, 2010.

*/s/ Stephen R. Sady*
Stephen R. Sady

*/s/ Steven T. Wax*
Steven T. Wax

Attorneys for Defendant