**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
**Ruben L. Iñiguez**
**Assistant Federal Public Defender**
ruben_iniguez@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
503-326-2123 Telephone
503-326-5524 Facsimile

**Attorneys for Defendant**

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 10-475-KI |
| Plaintiff, | MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY |
| v. | |
| MOHAMED OSMAN MOHAMUD, | |
| Defendant. | |

**Introduction**

     This case involves extraordinary factors favoring very broad and inclusive discovery. The parties have met and conferred regarding discovery, and the government has provided extensive material pursuant to the order to complete discovery by February 15, 2011. The discovery is so

voluminous that much remains to be fully analyzed by the defense: 4,254 pages of documents, 44 video files, and 855 audio files. While the parties have attempted to narrow the areas of dispute, it is clear that there are substantial differences in the parties' view of the government's obligation to provide the defense with material in its possession, especially regarding what constitutes exculpatory material in the context of this case.

This memorandum is divided into three parts. First, the defense outlines factors unique to this case that call for the broadest interpretation of discovery obligations. Second, the defense addresses the scope of the requested discovery order in terms of the duty to make inquiry, the continuing duty to provide discovery, and the types of material that should be covered. Third, the defense identifies and comments on individual areas of discovery that, from conferring with the government, appear to require an order for the government to provide the requested information. As reflected by the motion's designation as the first motion to compel, the defense anticipates that further discovery issues may arise as the discovery provided is analyzed and the defense investigation proceeds.

    **A.**    **The Court Should Broadly Construe Discovery Obligations And Directly Order Production.**

The government's efforts over more than a year to be involved in unlawful activity with an 18-year-old student appear to be unique. The initial discovery demonstrates that, regardless of opinions or activities that raised governmental interest, extensive evidence remains in the government's possession that may be helpful in establishing the lack of predisposition to commit the charged crime, the sophisticated efforts used to induce Mr. Mohamud to cooperate with undercover agents, and Mr. Mohamud's vulnerabilities of which the government had actual knowledge. The breadth of potentially exculpatory material is increased by the type of potential

defense: only the defense is in a position to assess accurately the exculpatory value of information that the government may deem inculpatory or irrelevant. The need for a discovery order is accentuated by the involvement of agencies with strong interests in minimizing the disclosure of information helpful to the defense.

        1.    *The Entrapment Issues, Under The Facts Of This Case, Call For The Broadest Discovery Of Information In The Government's Possession.*

The law of entrapment implicates broad potential areas of exculpatory evidence, including predisposition, inducement, and vulnerability. "[T]he prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents." *Jacobson v. United States*, 503 U.S. 540, 549 (1992). The discovery provided to date indicates that, in addition to the government's areas of concern, Mr. Mohamud had diverse friendship groups, normal work and study schedules, and social activities supporting lack of predisposition. Further, the discovery reviewed to date reveals sophisticated efforts to direct the teenager's actions, the full extent of which the government has yet to disclose to the defense. Indeed, preliminary defense investigation has established that government agents first contacted Mr. Mohamud over six months earlier than disclosed in the criminal complaint filed in this case.

Under constitutional precedent and other obligations articulated in the general discovery request, the Court should order production of complete and inclusive discovery. The Ninth Circuit precedent following *Jacobson* strongly supports a broad view of discovery obligations. To establish a *prima facie* case of entrapment, a "defendant need only point to evidence from which a rational jury could find that he was induced to commit the crime but was not otherwise predisposed to do

so." *United States v. Poehlman*, 217 F.3d 692, 698 (9th Cir. 2000).[1] A defendant needs only "slight evidence" of entrapment to "create the factual issue necessary to get the defense to the jury," even where the evidence may be "weak, insufficient, inconsistent or of doubtful credibility." *United States v. Gurolla*, 333 F.3d 944, 951 (9th Cir. 2003) (quoting *United States v. Becerra*, 992 F.2d 960, 963 (9th Cir. 1993)). The burden then "shifts to the government to prove beyond a reasonable doubt that defendant was *not* entrapped." *Poehlman*, 217 F.3d at 698 (emphasis in original). In other words, the government must prove beyond a reasonable doubt that the defendant was predisposed to commit the charged crime or that he was not induced to do so by government agents.

The first element regarding entrapment – predisposition – requires an understanding and evaluation of a broad range of facts. To properly assess a defendant's predisposition to commit the charged crime, five factors are of primary relevance: "(1) the character or reputation of the defendant; (2) whether the government made the initial suggestion of criminal activity; (3) whether the defendant engaged in the activity for profit; (4) whether the defendant showed any reluctance; and (5) the nature of the government's inducement." *Gurolla*, 333 F.3d at 955.

The second element – inducement – "can be any government conduct creating a substantial risk that an otherwise law-abiding citizen would commit an offense, including persuasion, fraudulent representations, threats, coercive tactics, harassment, promises of reward, or pleas based on need, sympathy or friendship." *Poehlman*, 217 F.3d at 698 (quoting *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994)). The Ninth Circuit has noted that "even very subtle governmental pressure,

---

[1] Consistent with discussions with the government, the defense is prepared to provide details regarding the *prima facie* case to the Court under seal. Similarly, to the extent needed to elucidate issues raised by this motion, the defense will provide such support as needed under similar protections by means of the reply brief.

**PAGE 4    MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

if skillfully applied, can amount to inducement." *Id.* at 701. Such subtle pressure can take many forms, such as repeated requests in an atmosphere of comradery, establishing a friendly relationship and then playing on a defendant's sympathies, or simply providing justifications for the illicit activities. *Id.* at 701-02. Therefore, a proper analysis of inducement requires understanding and contextualizing the entire scope of the government agents' relationship with a defendant.

Due to its use of FISA monitoring for an extensive period, the government possesses an extraordinary trove of information regarding Mr. Mohamud that appears to pre-date his reaching the age of majority. The scope of production should be broad because the potentially relevant material is virtually limitless under applicable law and because the defense is operating under a protective order and has security clearance, thereby addressing any security concerns. The Court should exercise its discretion to order the most expansive view of discovery to protect the right to a fair trial in this case. Rule 16 is "intended to prescribe the minimum amount of discovery to which the parties are entitled. It is not intended to limit the judge's discretion to order broader discovery in appropriate cases." *United States v. Armstrong*, 517 U.S. 456, 475 (1996) (Breyer J., concurring) (quoting Advisory Committee's Notes on Fed. R. Crim. P. 16, 18 U.S.C. App. at 761); *see also United States v. Burns*, 15 F.3d 211, 215 n.2 (1st Cir. 1994). The extensive government involvement with a teenager for more than one year is virtually unprecedented and should result in court orders compelling the government to provide the full measure of discovery sought by the defense.

        2.     *The Potential Applications Of The Requested Discovery Warrant Extensive Access To Government Information.*

Under the facts of this case, the determination of what is exculpatory requires review by the defense. The Supreme Court has noted the unique perspective of the defense in evaluating the usefulness of materials in the government's possession:

**PAGE 5**    **MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

> An apparently innocent phrase, a chance remark, a reference to what appears to be a neutral person or event, the identity of a caller or the individual on the other end of a telephone, or even the manner of speaking or using words may have special significance to one who knows the more intimate facts of an accused's life. And yet that information may be wholly colorless and devoid of meaning to one less well acquainted with all relevant circumstances. Unavoidably, this is a matter of judgment, but in our view the task is too complex, and the margin for error too great, to rely wholly on the in camera judgment of the trial court to identify those records which might have contributed to the Government's case.

*Alderman v. United States*, 394 U.S. 165, 182 (1969). Given the complex intersection of social, political, religious, and personal information, the government is not in a position to know with a high enough degree of certainty what information might be useful to the defense. The huge volume of material and the intricate inter-relationships of different threads of information virtually guarantee that exculpatory material will not be disclosed in the absence of extremely broad production orders. Both efficiency and fairness are well served by allowing the defense to have full access to material in order to accurately assess its potential exculpatory value.

Further, in determining what is exculpatory, the Court should consider *Brady*'s application beyond trial. For example, *Brady* arose in the sentencing context. Therefore, the Court should order the production of mitigating information in the possession of the government, regardless of whether it supports a complete defense. Even under the pre-*Booker* guidelines system, imperfect entrapment provided grounds for a downward departure. *United States v. McClelland*, 72 F.3d 717, 725-26 (9th Cir. 1995); *United States v. Garza-Juarez*, 992 F.2d 896, 912 (9th Cir. 1993) (departure available "when government agents used persuasion alone," even though the agents' conduct "'did not constitute entrapment in the legal sense.'") (quoting *United States v. Takai*, 941 F.2d 738, 744 (9th Cir. 1991)). Evidence of entrapment, whether or not a complete defense, provides even stronger grounds for a mitigated sentence under the Supreme Court's post-*Booker* variance regime. *See*

*Pepper v. United States*, No. 09-6822, 2011 WL 709543, at *4 (U.S. Mar. 2, 2011) (sentencing judge should consider evidence of post-offense rehabilitation regardless of guideline purporting to bar departure on that ground); *Kimbrough v. United States*, 552 U.S. 85, 91 (2007) (sentencing judge not bound to accept crack cocaine guideline). Evidence that supports mitigation based on imperfect entrapment should be produced under *Brady*.

In addition to potential defenses and mitigation, the *Brady* obligation also applies to pretrial motions. *See United States v. Barton*, 995 F.2d 931, 934-35 (9th Cir. 1993) (rationale of *Brady* applied to litigation of suppression motion). The present case involves complex facts regarding shadow participation of federal agents in state officers' warrantless searches and seizures, as well as complex questions of causation, such as the use of FISA-derived information in inducing direct contacts between government agents and Mr. Mohamud. The complete documentation of every facet of governmental activities leading to and derived from the searches and seizures is potentially exculpatory.

> 3. The Government's Unduly Restrictive View Of The Scope Of Required Discovery Favors Broad Discovery.

This Court's discovery decisions should be informed by the need to counter-balance what appears to be a reluctance by the relevant agencies to provide full discovery to the defense. To be clear, the defense recognizes and appreciates the extensive material provided to date and the open dialogue with the prosecutor regarding discovery. But the Court should understand that the parties are far apart on the scope of what must be provided under Rule 16 and the Constitution.

For example, two weeks after the discovery deadline, defense investigation led to the conclusion that a series of email exchanges were initiated by a government actor. The acts of this government agent advanced the date of first direct government contact with Mr. Mohamud by over

**PAGE 7   MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

six months from the first contact previously referenced in the complaint. Although under *Jacobson* predisposition is determined based on the first contact, the relevant agency or agencies did not provide the exculpatory documentation, which would establish that this earlier direct involvement with Mr. Mohamud was generated by the government. The defense still has not been provided the necessary documentation to establish that the person was a government actor, nor have the materials surrounding this involvement with Mr. Mohamud been provided. Similarly, the government agencies refuse to release redacted information in many of the documents produced in discovery. They also assert that Mr. Mohamud is not entitled to all of his own statements. The areas of appropriate discovery are in sharp dispute.

> **B.     The Court Should Include An Obligation To Make Inquiry, A Continuing Duty To Provide Discovery, And An Inclusive Definition Of The Material Sought.**

In formulating its discovery orders, the defense respectfully requests that the Court include language making clear the breadth of the discovery obligation, especially given the number of potential agencies involved in the investigation. Under the principles of *Brady v. Maryland*, 373 U.S. 83 (1963), "the individual prosecutor has a *duty to learn* of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995) (emphasis added); *accord United States v. Bryan*, 868 F.2d 1032, 1036-37 (9th Cir. 1989) (prosecutor deemed to have materials maintained by agency outside the district); *United States v. Hanna*, 55 F.3d 1456, 1461 (9th Cir. 1995); *United States v. Alvarez*, 86 F.3d 901, 905 (9th Cir. 1996). Based on these principles, the Court's order should be phrased to ensure that no agency or officer insulates the prosecutor from any material possessed.

The defense also requests that the Court's order include the continuing obligation to disclose new material as soon as the government or any of its agents discovers its existence. *See Mooney v.*

*Holohan*, 294 U.S. 103, 112-13 (1935) (prosecutor must disclose that witness committed perjury even when he first learns this at trial); *United States v. Chestang*, 849 F.2d 528, 532 (11th Cir. 1988) (continuing duty to disclose breached when prosecutor did not disclose fact that witness would soon accept immunity offer). Any doubt about the need to disclose such evidence should be resolved "in favor of disclosure." *See Kyles*, 514 U.S. at 439; *United States v. Agurs*, 427 U.S. 97, 108 (1976); *United States v. Ramirez*, 608 F.2d 1261, 1266 n.6 (9th Cir. 1979). The duty to disclose should encompass even those documents and statements the defense might already have. *Gantt v. Roe*, 389 F.3d 908, 913 (9th Cir. 2004) ("Though defense counsel could have conducted his own investigation, he was surely entitled to rely on the prosecution's representation that it was sharing the fruits of the police investigation."); *United States v. Howell*, 231 F.3d 615, 625 (9th Cir. 2000) ("[t]he availability of particular statements through the defendant himself does not negate the government's duty to disclose").

Disclosure is required even if, in the government's view, the evidence is not admissible at trial. *Spence v. Johnson*, 80 F.3d 989, 1005 n.14 (5th Cir. 1996); *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1201 (C.D. Cal. 1999) (*Brady* requires "the disclosure of information that is likely to result in admissible evidence that would give the jury a court a more complete basis for judging guilt or punishment"). Should the prosecutor have a good faith doubt whether evidence should be disclosed, the matter should be referred to the Court for *in camera* review. *See United States v. Scafe*, 822 F.2d 928, 936 (10th Cir. 1987) (good faith belief that defendant's statements not discoverable does not excuse failure to disclose); *United States v. Lehman*, 756 F.2d 725, 729 (9th Cir. 1985) (prosecution must either disclose the material or submit it to the court); *United States v. Cadet*, 727 F.2d 1453, 1470 (9th Cir. 1984) ("[T]his unfortunate contretemps could have been

avoided had the United States Attorney's Office been willing to produce all *Brady* and Rule 16 material in a timely manner and to submit material as to which there was any doubt for in camera review.").

The defense also requests that the Court order the discovery that is compelled cover "materials" without limitation as to form. As used herein, the term "materials" should be construed as broadly as possible and without limitation. It includes all items in any form or medium, whether physical (*e.g.*, papers, notes, reports), or electronic (*e.g.*, e-mail, texts, or chats), analog or digital (*e.g.*, audio or video), and however created, produced, or reproduced.

### C. The Court Should Order Complete Discovery Regarding Specific Areas Identified By The Parties.

Having met and conferred regarding discovery issues, the parties have identified a number of areas where the Court will need to rule. Based on the applicable legal standards, the Court should order production of the following:

> *1. All Statements In The Government's Possession By, Or Reasonably Attributed To, Mr. Mohamud, Including, But Not Limited To, Recorded Face-To-Face Conversations, Telephone Calls, Text Messages, E-mail Correspondence, Notes, Or Other Accounts Of Recorded Verbal Or Written Interactions.*

Under Rule 16(a)(1)(A) and *United States v. Bailleaux*, 685 F.2d 1105, 1112-16 (9th Cir. 1982), Mr. Mohamud is entitled to all statements in the government's possession. Request for Discovery ¶1. There are numerous recorded telephone calls, e-mails, and text messages attributed to Mr. Mohamud that the government has indicated it will not produce without a direct order. Under Rule 16, the defense has a complete right to discovery of these materials, especially given the breadth of relevance created by the issues implicated by potential entrapment. Further, the materials are subject to production on the separate constitutional ground that they are potentially exculpatory.

**PAGE 10    MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

The Court should enter a simple and broad order that all writings memorializing or manifesting statements attributed to Mr. Mohamud be produced forthwith.

For the discovery produced that includes blacked out material, the Court should order that the documents with the statements be produced without redactions. The order also should direct that, for the voluminous telephone communications that are not transcribed, the government should produce any logs and summaries describing the content in order to alleviate the difficulty in efficiently organizing and understanding the material. Any materials related to any polygraph examination of Mr. Mohamud that was performed by law enforcement officers should be specifically included within the scope of the order, including but not limited to charts, protocols, and evaluations.

> 2. *All Materials Related To Government Monitoring Of Statements, Electronic Or Otherwise, By Mr. Mohamud As Well As His Computer Activity.*

Both the criminal complaint and discovery provided to date by the government reference on-line activities by Mr. Mohamud as a minor related to an on-line magazine as well as other computer activity. The redacted discovery regarding emails after Mr. Mohamud attained the age of majority appear to indicate that the emails were "derived from" earlier investigative activity dating at least to early 2008. The degree to which the government monitored Mr. Mohamud while he was a juvenile, as well as any decisions related to whether to advise his parents, take a different course, or otherwise intervene, are important to provide context for the government's subsequent activities. Further, any information related to monitoring would raise potential issues regarding the legal basis for such surveillance. Any translations from languages other than English should also be provided.

All materials related to the accessing, posting, or moderating of web sites, fora, or chat groups by Mr. Mohamud, as well as any information, analysis, or report concerning any such web

**PAGE 11   MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

site, forum, or chat group, should be produced. Further, all materials related to the installation of any keystroke logging device, or any other monitoring or surveillance software or tool, including any recorder, microphone, or other bug, on the computer of Mr. Mohamud should be produced. All materials related to any tracing of any Internet Protocol (IP) address by the government during the course of its investigation, including any material documenting the specific dates on which an IP trace was performed, should be produced. All materials related to any government monitoring of Mr. Mohamud's bank or credit accounts or other financial activities should also be produced.

> 3. *All Materials Related To Any Contact With Mr. Mohamud By UCE1, UCE2, And Any Other Person Acting On Behalf Of The Government.*

The government's initial contacts with Mr. Mohamud, and all subsequent contacts, are essential to evaluate potential entrapment. All materials related to government agents, contractors, or other persons providing information to the government in connection with Mr. Mohamud should be provided. The scope of production should include all materials relative to UCE1, UCE2, and the person self-identified as "Bill Smith," who began emailing Mr. Mohamud in 2009, including but not limited to his or her true and correct name, government agency affiliation, resume, curriculum vitae, any criminal record, and contact information. All materials concerning Mr. Mohamud that are in the possession, custody, or control of the agent should also be produced. Discovery should include all materials regarding the agent and involvement prior to or following any contact by that person with Mr. Mohamud, and the derivation of that information. Any reports or information generated or distributed to government actors regarding contact with Mr. Mohamud is also necessary to the evaluation of entrapment. Moreover, as set out in paragraph 13 of the Request for Discovery, the Court should order production of *Henthorn* material regarding any government actor who had direct contact with Mr. Mohamud.

**PAGE 12   MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

During the course of its extensive monitoring of Mr. Mohamud, government investigators apparently followed up on statements he made to undercover agents. To the extent that any such statement was revealed to be untrue, embellished, exaggerated, unsubstantiated, or uncorroborated after investigation, the material reflecting such information is exculpatory because it demonstrates the unreliability of other statements that the government may assert are true.

> 4.  *All Materials Relative To The Training Or Experience Of Any Government Agent Who Contacted Mr. Mohamud Including But Not Limited To UCE1 And UCE2.*

The nature and scope of all training or other instruction that the government's undercover agents have received concerning the conduct of undercover sting operations, especially those involving the use or attempted use of a weapons such as explosives, is critical to fully evaluate potential entrapment. In addition to the *Henthorn* material referenced in paragraph 13 of the request for discovery, the materials should include any experience or expertise related to foreign countries and cultures. The Court's order should encompass any materials related to coaching or scripting encounters with targets and any materials derived from any designated terrorist organization or recruiter connected or used to inform the training or strategy employed by the undercover agents in any manner. The past experience of any agent in conducting such operations is similarly necessary. For that reason, the Court should direct the government to produce all training manuals, procedures, policies, protocols, books, papers, records, and other materials used by the relevant government agencies to train agents, employees, or contractors to perform undercover operations, including, but not limited to, disclosure of materials related to any other case in which an agent involved herein operated as an undercover agent, whether or not the case resulted in prosecution.

> 5. *All Audio, Video, Or Other Recordings Of The Undercover Agents Before, During, And After Meetings With Mr. Mohamud.*

At the first appearance, Judge Acosta granted the defense motion to preserve the equipment that purportedly failed during a meeting and all recordation before and after meetings:

> preserve without any manner of alteration all recording devices, electronic storage mechanisms and media, or other materials, physical or electronic, regarding the recordation or attempted recordation of images, sounds, and written material in connection with this case generated during the meeting of July 30, 2010, described at paragraph 37, page 14, of the affidavit in support of the arrest warrant and complaint

> preserve without any manner of alteration all recorded material, including images and sounds, of meetings between the defendant and undercover employees, including recordings of the undercover employees captured prior to or following meetings with the defendant that do not specifically capture statements and images of the defendant

CR 9.

With respect to the first paragraph, this Court should order that the recording device, as well as any transmission device, be made available for inspection by a defense expert. The materials produced should also include any service and repair history for the devices and all notes purporting to relate to the July 30th meeting. As to the second paragraph, the government asserts the materials are not discoverable. The Court should order the production of these recordings for exculpatory value. Only the defense can fully assess: remarks regarding the task at hand that were either being contemplated or just completed, the agents' tone of voice, and other manifestations of influence or assertions of authority. The materials sought include redactions from the draft transcripts of meetings that appeared to involve times when one or the other agent left the room.

> 6. *All Materials Relating To Any Behavioral Or Social Science Expert Consulted For This Case, Including, But Not Limited To, Any Psychiatrist, Psychologist, Social Scientist, Cultural Or Religious Expert, And Any Military Or Civilian Psychological Operations Or Interrogation Expert.*

Throughout their interactions with Mr. Mohamud, the government agents not only pepper their communications with Arabic phrases, but they also make repeated cultural, religious, and ethnic references. As with the request for all training materials in the foregoing paragraph, any consultation, training, direction, or guidance that government agents received from any expert bears directly on the issue of potential entrapment. The Court should therefore order the production of all such materials. Similarly, in the particular context of this case where repeated meetings between an isolated adolescent and two sophisticated, adult undercover agents were involved, any use of psychological operations or interrogation techniques may provide potential exculpatory information. Further, throughout their interactions with Mr. Mohamud, undercover agents repeatedly referenced the "ijtimeaat," which translates roughly from Arabic to mean the "Council." All materials related to the agents' decision to use this particular term or to reference a "Council" generally should be produced.

> 7. *All Materials Relative To The Search Or Seizure Of Computers, Cell Phones, Or Other Electronic Media.*

The government appears to have searched and imaged Mr. Mohamud's personal computer on at least three occasions. The Court should order produced any image produced for each search and the protocols applied and the results of each search, as well as direct access by the defense to the computer itself. The materials – data and information – relating to every computer search should be produced. All native files extracted from the computer through search terms or filtering should be produced, as well as the search terms or filters used to extract native files from the computer.

**PAGE 15    MEMORANDUM IN SUPPORT OF FIRST MOTION TO COMPEL DISCOVERY**

Further, any reports generated regarding the analysis of the computer should be produced. Law enforcement officers also seized at least three cellular telephones from Mr. Mohamud. The defense should be granted access to all phones seized by the government for the purpose of inspection and forensic examination. Further, the Court should order production should be ordered of any summaries or transcripts of incoming or outgoing calls from the cell phones.

Government agents also seized a wireless modem during their search of Mr. Mohamud's apartment in Corvallis, Oregon. The defense should be granted access to any modem or router seized by the government for the purpose of inspection and examination. Also, any logs from any modem or router seized be agents should be produced. Further, all materials obtained by the government from any service provider, including Comcast, relative to Mr. Mohamud's use of the Internet should be produced. The names, training, and qualifications of the government experts who conducted all electronic media searches should be provided along with sufficient information to identify the experts with the searches conducted.

Mr. Mohamud further requests that the Court direct the production of all administrative subpoenas issued by the government in connection with this case, as well as true and complete copies of all search and seizure warrants or any other court orders to gather information. Although the government has produced some of the warrants issued in this case, the few that have been produced thus far do not include the attachments specifically referenced therein.

> 8. *All Materials Related To Any Warrantless Search And Seizure Activity Directed Toward Mr. Mohamud And His Family And Friends.*

The government has provided some reports regarding warrantless searches and seizures involving Mr. Mohamud. All materials regarding those activities – including what led up to the conduct and what flowed from the conduct – should be provided. These materials include those

prepared by state, county, municipal, and campus law enforcement regarding any events leading to and resulting from such activities. In addition, the government should produce all materials relating to any photo surveillance (including pole cameras), global positioning system monitoring, monitoring by third parties, including individuals and business entities, reported to the government, and any other surveillance and monitoring not pursuant to warrant. The materials should also include any measures taken to confirm that Mr. Mohamud was not armed at any time.

    9.  *All Materials Related To UA1 And UA2.*

The criminal complaint references individuals with whom Mr. Mohamud purportedly communicated prior to his encountering UCE1. The names of those individuals appears in heavily-redacted discovery. The exculpatory nature of the full disclosure is supported by the information provided by Mr. Mohamud regarding a school in Yemen and the absence of any charges or warnings to Mr. Mohamud regarding associations. The Court should order the production of un-redacted discovery, the complete materials containing information known – then and now – regarding these two individuals, and the results of any investigative efforts to follow up on information regarding UA1 and UA2 resulting from surveillance in this case, including but not limited to the Yemeni school referenced in discovery. Any translations to English regarding these materials should also be provided.

    10.  *All Materials Related To Government Activities Conducted Pursuant To Warrants, Court Orders, Subpoenas, Or Other Such Authorization In Connection With This Case.*

The government should produce all materials connected to authorizations for monitoring, surveillance, or other investigative activity in this case. The order should encompass the application for the order, any denials of authorization, the action taken pursuant to the authorization, the

products of the activity, and the uses made of the products. The order should apply to any and all uses of the FISA in addition to non-FISA activity. The FISA permits electronic surveillance (50 U.S.C. §§ 1801-11); physical searches (50 U.S.C. §§ 1821-29); pen registers and trap and trace devices (50 U.S.C. §§ 1841-46); and access to certain business records (50 U.S.C. §§ 1861-62). To the extent material is classified, the Court should order production under appropriate protective orders but with no limit on the access of the defense to materials that are necessary to evaluate potential suppression issues and exculpatory uses.

        11.    *The Materials Covered By The Request For Discovery Should Be Ordered Produced.*

The Court set the deadline for discovery at February 15, 2011, in its order of January 5, 2011. The government provided a large amount of material by the deadline and has kept the defense advised of its continuing production of documents and other information. To assure the obligation to fully comply with Rule 16 and the constitutional obligations regarding discovery, the Court should enter a general order that such discovery in the prosecution's possession should be produced and that the government is obliged to seek out and continue to produce all materials covered by the Request For Discovery filed contemporaneously with this motion and memorandum.

Dated this 7th day of March, 2011.

          */s/ Stephen R. Sady*
          Stephen R. Sady
          Chief Deputy Federal Public Defender

          */s/ Steven T. Wax*
          Steven T. Wax
          Federal Public Defender

          */s/ Ruben Iñiquez*
          Ruben Iñiquez
          Assistant Federal Public Defender