DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
Assistant United States Attorney
1000 SW Third Ave., Ste. 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
ethan.knight@usdoj.gov
**JEFFREY S. SWEET**, OSB #99418
Assistant United States Attorney
405 East 8th Ave., Ste. 2400
Eugene, OR 97401-2708
Telephone:  (541) 465-6771
Facsimile:  (541) 465-6917
jeff.sweet@usdoj.gov
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 10-cr-475-KI |
| **v.** | |
| **MOHAMED OSMAN MOHAMUD,** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTION TO COMPEL DISCOVERY AND DEFENDANT'S REQUEST FOR DISCOVERY** |
| **Defendant.** | |

# TABLE OF CONTENTS

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

II.     APPLICABLE STANDARDS FOR DISCOVERY . . . . . . . . . . . . . . . . . . . . . . . .    3

        A.      Rule 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    4

        B.      The *Jencks Act* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

        C.      *Brady* Material . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

        D.      Entrapment and Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

        E.      "Broad" Discovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   16

III.    SPECIFIC REQUESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   17

IV.     GENERAL REQUESTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   29

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   35

# **TABLE OF AUTHORITIES**

## **FEDERAL CASES**

*Brady v. Maryland*,
    373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Giglio v. United States*,
    405 U.S. 150 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

*Sorrells v. United States*,
    287 U.S. 435 (1932) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Agurs*,
    427 U.S. 97 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*United States v. Armstrong*,
    517 U.S. 456 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Bagley*,
    473 U.S. 667 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10

*United States v. Belfield*,
    692 F.2d 141 (D.C. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Bobadilla-Lopez*,
    954 F.2d 519 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Bryan*,
    868 F.2d 1032 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Cadet*,
    727 F.2d 1453 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8

*United States v. Citro*,
    842 F.2d 1149 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Claiborne*,
    765 F.2d 784 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Davis*,
    36 F.3d 1424 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Gambino*,
 818 F. Supp. 541 (E.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Gentles*,
 619 F.3d 75 (1st Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Griffin*,
 659 F.2d 932 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Hedgcorth*,
 873 F.2d 1307 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

*United States v. Hoffman*,
 794 F.2d 1429 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Johnson*,
 952 F.2d 565 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Johnston*,
 127 F.3d 380 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Jones*,
 231 F.3d 508 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Klimavicius-Viloria*,
 144 F.3d 1249 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Laurins*,
 660 F. Supp. 1579 (N.D. Cal. 1987), *aff'd*, 857 F.2d 529 (9th Cir. 1988) . . . . . . . . . . . 10

*United States v. Little*,
 753 F.2d 1420 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. McClelland*,
 72 F.3d 717 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. McClintock*,
 748 F.2d 1278 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. McElroy*,
 697 F.2d 459 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Michaels*,
    796 F.2d 1112 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Mills*,
    641 F.2d 785 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Poehlman*,
    217 F.3d 692 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*United States v. Russell*,
    411 U.S. 423 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Santiago*,
    46 F.3d 885 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Sarkissian*,
    841 F.2d 959 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 27

*United States v. Scarpa*,
    897 F.2d 63 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

*United States v. Simas*,
    937 F.2d 459 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Smith*,
    924 F.2d 889 (9th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Taylor*,
    802 F.2d 1108 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 10

*United States v. Walk*,
    533 F.2d 417 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Williams*,
    547 F.3d 1187 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Yunis*,
    867 F.2d 617 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## FEDERAL STATUTES

18 U.S.C. § 3500 (Jencks Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6, 8-9

18 U.S.C. § 3500(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

18 U.S.C. § 3500(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C. § 1746 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 27

50 U.S.C. § 1825(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

## EXECUTIVE ORDER

Exec. Order No. 13292, Sec. 4.1(a)(3), 68 Fed. Reg. 15315 (Mar. 28, 2003) . . . . . . . . . . . . . . . 16

## LEGISLATIVE HISTORY

S. Rep. No. 96-823,  at 6 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4299-4300  . . . . . . . . . . . 7

## FEDERAL RULES

Fed. R. Crim. P. 6(c)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Fed. R. Crim. P. 16(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Fed. R. Crim. P. 16(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Fed. R. Crim. P. 16(a)(1)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 17

Fed. R. Crim. P. 16(a)(1)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Fed. R. Crim. P. 16(a)(1)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Fed. R. Crim. P. 16(a)(1)(G) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

Fed. R. Crim. P. 16(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 10, 18, 21, 33

Fed. R..Crim. P. 16(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Fed. R. Evid. 404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

## OTHER AUTHORITIES

Ninth Circuit Model Jury Instructions, 6.2 (2010)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

The United States of America, by and through Dwight C. Holton, United States Attorney for the District of Oregon, and Ethan D. Knight and Jeffrey S. Sweet, Assistant United States Attorneys, hereby responds to defendant Mohamed Osman Mohamud's Request for Discovery (#25), First Motion to Compel Discovery (#26) and Memorandum in Support of First Motion to Compel Discovery (#27).

## I.  INTRODUCTION

In his First Motion to Compel Discovery and Request for Discovery, defendant has asked this Court for an order compelling discovery of a substantial amount of material, much of it nondiscoverable.  As discussed below, defendant's motion to compel should be denied, and his request for additional discovery should be denied as moot or at best premature.  As defendant has explained to the Court, the parties have met repeatedly to discuss both process of providing discovery and ongoing issues related to discovery.  While the parties have different views regarding how this Court should interpret the rules relating to pretrial discovery, counsel for defendant has been especially helpful in identifying areas and issues of concern related to discovery.  To date, the government has provided defendant with a voluminous amount of discovery that includes e-mails, audio and video recordings, computer evidence, recorded telephone calls, and FBI reports.  Indeed, the government has gone far beyond its statutory and constitutional discovery obligations and provided the defense with a broad range of information that is not, in fact, discoverable.  For this reason and others set forth below, the Court should reject defendant's request.

Contrary to defendant's assertion, this case does not involve "extraordinary factors favoring very broad and inclusive discovery."  (Def.'s Mem. 1.)  Defendant is an adult male

**Government's Response to Defendant's First Motion to
Compel Discovery and Defendant's Request for Discovery**                    **Page 1**

charged with attempting to detonate what he believed was a truck bomb that would kill thousands of people.  The rules of criminal discovery apply in the same manner to this defendant as they would apply to any other defendant who comes before this Court.  As in any criminal case, the government is obligated to adhere to the statutory and constitutional rules of discovery. The government has, and will, adhere to these rules and asks the Court to reject defendant's request for uniquely broad, "open file" discovery in his case.

This Court should reject defendant's request that the Court construe the government's discovery obligations in an exceptionally broad manner.  Defendant's potential claim of entrapment does not mean that defendant is entitled to "open file" discovery.  There are hundreds of cases that come before this and other courts that involve claims of entrapment, yet there is no legal authority to support the proposition that these defendants should be treated differently under the rules of discovery.

Similarly, defendant's argument that only the defense is in the position to accurately assess the potential value of the information the government may deem inculpatory or irrelevant is contrary to the law governing discovery and illogical.  In any criminal case, there are issues of defense strategy of which only defendant and his counsel may be aware.  The law does not require, however, that the entirety of the government's files be given to the defense so that it can examine them to determine the presence of what it claims is exculpatory material.  Nonetheless, the government has taken a broad view of the rules of discovery and provided defendant with a considerable amount of material that is not truly "discoverable" under the rules.

At the same time, there are important national security concerns that militate for limited discovery in certain areas and which should guard against an unwarranted fishing expedition.  As

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                                   **Page 2**

the government will address in detail in its motion filed pursuant to the Classified Information

Procedures Act (CIPA), these national security concerns impact the government's response to a

number of defendant's requests.  To the extent that defendant's discovery requests involve

information requiring a discussion of classified information, such matters will be addressed by

the government in this separate pleading.  <u>Thus, this response should be taken only to refer to</u>

<u>nonclassified materials in the possession of the government.</u>

## II.  APPLICABLE STANDARDS FOR DISCOVERY

The rules for discovery are the same in defendant's case as they are in any criminal case

heard by this Court.  Discovery in criminal cases generally is controlled by Rule 16 of the

Federal Rules of Criminal Procedure.[1]  Pretrial discovery is also governed by the *Jencks Act* (18

U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided

thereunder.  The government has provided, and will continue to provide, defendant with pretrial

discovery in accordance with these discovery standards.  As defendant has noted, the

government has already provided him with a voluminous amount of discovery that includes e-

mails, audio recordings, video recordings, computer evidence, recorded telephone calls,

photographs, and FBI reports.  While it is the government's position that much of this material is

not technically discoverable under a common interpretation of Rule 16 and *Brady*, the

government has taken a broad view of its discovery obligations.

Notwithstanding the efforts the government has made to comply with its discovery

obligations to date, the government must also adhere to the strict requirements of the criminal

---

[1]  Unless otherwise noted, any reference to a "Rule" herein refers to the Federal Rules of
Criminal Procedure.

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                              **Page 3**

discovery rules when necessary to protect matters of national security.  Some of defendant's

requests ask for material which, if it exists at all, would be classified for reasons of national

security.  As noted above, to the extent that defendant's discovery requests involve information

requiring a discussion of classified information, such matters will be addressed by the

government in a separate pleading filed pursuant to CIPA.  Again, the responses to defendant's

specific and general requests set forth below should be taken only to refer to nonclassified

materials in the possession of the government.

**A.    Rule 16**

Rule 16 requires the government to disclose five types of information:  (1) the

defendant's own statements; (2) the defendant's prior criminal record; (3) documents and

tangible things which are within the government's possession, custody, or control, and which are

material to the preparation of the defense, are intended for use as evidence in the government's

case-in-chief, or were obtained from or belong to the defendant; (4) results or reports of physical

or mental examinations or scientific tests or experiments; and (5) a summary of the qualifications

and opinions of expert witnesses who will testify at trial.

The power to compel discovery under Rule 16 is not unlimited.  Rule 16(a)(2) also

provides as follows:

> Except as Rule 16(a)(1) provides otherwise, this rule does not
> authorize the discovery or inspection of reports, memoranda, or other
> internal government documents made by an attorney for the
> government or other government agent in connection with
> investigating or prosecuting the case.  Nor does this rule authorize the
> discovery or inspection of statements made by prospective
> government witnesses except as provided in 18 U.S.C. § 3500.

/ / /

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                    **Page 4**

Furthermore, Rule 16 applies only to statements, documents, and materials to which federal prosecutors have knowledge and access, that is, generally the files of the Department of Justice and of the investigative agency and any other law enforcement agencies that are part of the prosecution team.  *United States v. Santiago*, 46 F.3d 885, 893-94 (9th Cir. 1995); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989).  To the extent that there is a good faith reason to believe that any other government agency other than those identified in the discovery could have potentially discoverable or exculpatory information relevant to this case, the government has and will make appropriate inquiries to identify such information.

Further, and most importantly, "[t]o obtain discovery under Rule [16(a)(1)(E)],[2] a defendant must make a prima facie showing of materiality."  *United States v. Cadet*, 727 F.2d 1453, 1468 (9th Cir. 1984) (citations omitted).  A "general description of the materials sought or a conclusory argument as to their materiality is insufficient to satisfy the requirements of Rule 16(a)(1)(c)."  *Cadet*, 727 F.2d at 1468.  Similarly, a request for "all 'relevant' evidence" will be "inadequate to meet the requirements" of the rule.  *Id.*  Absent a showing of materiality, the denial of a request for "all documents" of the investigative agency was appropriate.  *United States v. Gordon*, 974 F.2d 1110, 1116-17 (9th Cir. 1992) (overruled on other grounds by *Planned Parenthood of Columbia/Willamette, Inc. v. American Coalition of Life Activists*, 209 F.3d 1058, (9th Cir. 2002).

Defendant, is, in effect, requesting "all of the files" of the FBI associated with this case based solely on the conclusory argument that entrapment necessitates the disclosure of virtually

---

[2]  Then-Rule 16(a)(1)(C).

**Government's Response to Defendant's First Motion to Compel Discovery and Defendant's Request for Discovery**                    **Page 5**

everything the FBI possesses.  As a result, defendant would have this Court dilute the materiality requirement relative to what the government is obligated to produce under Rule 16(a)(1)(E).

Rule 16(a)(1)(A) governs pretrial discovery of the defendant's own statements.  It requires disclosure of "the substance of any *relevant* oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement at trial."  (Emphasis added.)  A defendant's oral statements "need only be disclosed if made in response to interrogation by persons known to be government agents."  *United States v. Hoffman*, 794 F.2d 1429, 1432 (9th Cir. 1986).  Defendant is not entitled to a pretrial discovery *order* requiring the production of any oral statements he may have made to persons other than known government agents, since "'the Jencks Act prohibits the pre-trial disclosure of the [government] witness' statements, even when such statements contain quotations allegedly attributed to the defendant . . . .'"  *Hoffman*, 794 F.2d at 1433, quoting *United States v. Walk*, 533 F.2d 417, 420 (9th Cir. 1975).

Besides a defendant's statements in response to interrogation, Rule 16(a)(1)(B) further requires the government to:

> disclose to the defendant, and make available for inspection, copying, or photographing, all of the following:
>
> (i)    any *relevant written or recorded statement* by the defendant if:
>
> • the statement is within the government's possession, custody, or control; and
>
> • the attorney for the government knows—or through due diligence could know—that the statement exists . . . .

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                    **Page 6**

(Emphasis added.)  Thus, any recorded or written statements of a defendant are discoverable only if they are relevant.  Both CIPA and the Federal Rules of Criminal Procedure authorize a district court to restrict discovery to the defense of classified materials.  "Congress intended section 4 [of CIPA] to clarify the court's powers under Fed.R.Crim.P. 16(d)(1) to deny or restrict discovery in order to protect national security."  *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988) (citing S. Rep. No. 96-823, at 6 (1980), *as reprinted in* 1980 U.S.C.C.A.N. 4299-4300); *see United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998).  "In order to determine whether the government must disclose classified information, the court must determine whether the information is 'relevant and helpful to the defense of an accused.'"  *Klimavicius-Viloria*, 144 F.3d at 1261 (quoting *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989)) (other citations omitted). "Under this test, information meets the standard for disclosure 'only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'"  *Klimavicius-Viloria*, 144 F.3d at 1261 (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)).

Here, again, the defendant has taken a stunningly broad view of Rule 16.  He has asked for *all* written or recorded statements of defendant.  (Def.'s Disc. Req. 3.)  Notwithstanding the restrictions on the scope of discovery under Rules 16(a)(1)(A) and 16(a)(1)(B), the government has provided defendant with recorded phone calls, e-mails, text messages and interviews with the FBI, much of which would not be "relevant" under Rule 16(a)(1)(B).  Neither the rules nor the Due Process Clause require further production.

/ / /

/ / /

**Government's Response to Defendant's First Motion to
Compel Discovery and Defendant's Request for Discovery**                                        **Page 7**

**B.**    **The *Jencks Act***

The *Jencks Act* provides that no statement or report of any "Government witness or prospective Government witness (other than the defendant) shall be the subject of subpoena, discovery, or inspection until such witness has testified on direct examination in the trial of the case." 18 U.S.C. § 3500(a).  Unless exculpatory, statements of witnesses and potential witnesses are generally "unavailable until such witnesses have testified at trial."  *United States v. Taylor*, 802 F.2d 1108, 1118 (9th Cir. 1986).  Statements of prospective government witnesses who do not testify at trial are not discoverable at all under the *Jencks Act*.  *United States v. Cadet*, 727 F.2d 1453, 1469 (9th Cir. 1988); *United States v. Mills*, 641 F.2d 785, 789-90 (9th Cir. 1981).

The *Jencks Act* narrowly defines "statement" as

> (1)  a written statement made by said witness and signed or otherwise adopted or approved by him;

> (2) a stenographic, mechanical, electrical, or other recording, or a transcription thereof, which is a substantially verbatim recital of an oral statement made by said witness and recorded contemporaneously with the making of such oral statement; or

> (3) a statement, however taken or recorded, or a transcription thereof, if any, made by said witness to a grand jury.

18 U.S.C. § 3500(e).  Accordingly, investigative reports of law enforcement agencies often will not constitute *Jencks Act* material, even if the reports contain summaries of prospective witnesses' statements.  Unless the summaries were shown to and were adopted or approved by the witnesses, or unless the reports are substantially verbatim transcriptions of the witnesses' statements, they are not *Jencks Act* material and are not discoverable.

/ / /

**Government's Response to Defendant's First Motion to
Compel Discovery and Defendant's Request for Discovery**                    **Page 8**

Despite these limitations, the government has provided the defendant with reports of interviews of its prospective witnesses including, but not limited to, family members and acquaintances of defendant.  The government will also provide additional reports of interviews of its prospective witnesses when and if they become available.  This is beyond that which the government is technically required to produce, even after a witness has testified at trial, under a strict interpretation of the *Jencks Act.  United States v. Claiborne*, 765 F.2d 784, 801-02 (9th Cir. 1985) (abrogated on other grounds by *Ross v. Oklahoma*, 487 U.S. 81 (1988)) (FBI summaries of witness interviews are not normally *Jencks Act* material); *see also United States v. Bobadilla-Lopez*, 954 F.2d 519, 522 (9th Cir. 1992) (to be discoverable under the *Jencks Act*, statements should "reflect the witness' own words" and should "also be in the nature of a complete recital that eliminates the possibility of portions being selected out of context").

**C.    *Brady* Material**

Under *Brady v. Maryland*, the government must disclose to the defendant exculpatory evidence which is "material either to guilt or to punishment . . . ."  *Brady*, 373 U.S. 83, 87 (1963).  *Brady* does not, however, create "a constitutional duty to disclose every bit of information that might affect the jury's decision; [the government] need only disclose information favorable to the defense that meets the appropriate standard of materiality."  *United States v. Little*, 753 F.2d 1420, 1440-41 (9th Cir. 1984).  *See also United States v. Agurs*, 427 U.S. 97, 106 (1976) ("there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").

The mere possibility that an item of information might help the defense or might affect the outcome of the trial "does not establish 'materiality' in the constitutional sense."  *Agurs*, 427

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                                    **Page 9**

U.S. at 109-10.  Rather, evidence is material only if  "its suppression undermines confidence in the outcome of the trial," *United States v. Bagley*, 473 U.S. 667, 678 (1985), or if the information "is of sufficient significance to result in the denial of the defendant's right to a fair trial."  *Agurs*, 427 U.S. at 108; *Bagley*, 473 U.S. at 675.  Defendant has not clearly explained how the evidence he seeks is "material" under *Bagley*.  Rather, defendant has argued that the Court should order the government to produce a virtually limitless amount of material (much of which is not discoverable under Rule 16(a)(2)) based on speculative and ambiguous theories that do not meet the threshold of materiality.

Brady also encompasses evidence affecting the credibility of key government witnesses. *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).  While such evidence includes "criminal records of government witnesses, favors and deals given to government witnesses, and grants of immunity given to government witnesses," the government "need not disclose this material prior to the direct examination of the relevant witness."  *United States v. Laurins*, 660 F. Supp. 1579, 1584 (N.D. Cal. 1987), *aff'd*, 857 F.2d 529 (9th Cir. 1988).  The government is aware of its obligations under *Giglio* and will provide that material where and when it is appropriate to do so.

Exculpatory information in formal investigative reports is discoverable *Brady* material. Rough notes are discoverable under *Brady* if the prosecutor perceives, or the defendant can raise, a "colorable claim that the rough notes contain evidence favorable to the defendant and material to his claim of innocence or to the applicable punishment" that had not been included in any formal report provided to the defendant.  *United States v. Taylor*, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986, citing *United States v. Griffin*, 659 F.2d 932, 939 (9th Cir. 1981).  "'[M]ere speculation about materials in the government's files [does not require] the district

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                                      **Page 10**

court . . . under *Brady* to make the materials available for [defendant's] inspection.'" *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (citation omitted).

Defendant has argued that "the determination of what is exculpatory requires review by the defense." (Def.'s Mem. 5.) He explains that "[t]he huge volume of material and the intricate inter-relationships of different threads of information virtually guarantee that exculpatory material will not be disclosed in the absence of extremely broad production orders." (Def.'s Mem. 6.) Defendant clearly assumes that the government is unable to perform its constitutional obligations under *Brady* unless ordered by this Court to produce virtually everything in its possession, regardless of whether or not such a request is supported by law. This request is not supported by law. Prosecutors are presumed to properly discharge their duties. *United States v. Armstrong*, 517 U.S. 456, 464 (1996). As a result, the Court should reject this flawed analysis.

## D.    **Entrapment and Discovery**

Defendant has raised entrapment as a potential defense. Whether defendant is entitled to an entrapment instruction is an issue that the Court will ultimately have to determine. Nonetheless, defendant claims that the law of entrapment implicates broad potential areas of exculpatory evidence, including "predisposition, inducement and vulnerability." (Def.'s Mem. 3.) Defendant cites no controlling authority to support this claim. While the defense of entrapment may alter the Court's assessment regarding what constitutes relevant evidence under the Federal Rules of Evidence, simply raising this potential defense does not trigger virtually limitless, "open file" discovery.

As defendant notes, if this Court gives an entrapment instruction then the government must prove either that defendant was predisposed to commit the crime before being contacted by

the government agent or that the defendant was not induced by the government agents to commit the crime.  Ninth Circuit Model Jury Instructions, 6.2 (2010).  It is critical to note that mere deceit on law enforcement's part will not defeat a prosecution, because entrapment does not occur unless the government "actually implants the criminal design in the mind of the defendant."  *United States v. Russell*, 411 U.S. 423, 434-35 (1973).  Further, simply affording the opportunity or facilities to commit the offense is not entrapment. *United States v. Poehlman*, 217 F.3d 692, 697 (9th Cir. 2000) (quoting *Sorrells v. United States*, 287 U.S. 435, 441 (1932)).

The government is not required to prove both lack of inducement and predisposition.  For example, the entrapment defense is unavailable if a defendant is predisposed to commit a crime, regardless of whether the defendant was induced.  *United States v. McClelland*, 72 F.3d 717, 722 (9th Cir. 1995) (citing *United States v. Smith*, 924 F.2d 889, 898 (9th Cir. 1991)).  Similarly, if the defendant fails to establish inducement, any evidence showing lack of predisposition is irrelevant.  *United States v. Simas*, 937 F.2d 459, 462 (9th Cir. 1991).

In the Ninth Circuit, there is a five-factor test to determine the predisposition of the defendant.  *United States v. Citro,* 842 F.2d 1149, 1152 (9th Cir. 1988).  The factors are as follows:

(1)  The character and reputation of the defendant;
(2)  Whether the government made the initial suggestion of criminal activity;
(3)  Whether the defendant engaged in the activity for profit;
(4)  Whether the defendant showed any reluctance; and
(5)  The nature of the government's inducement.

*Id.*  Although none of these factors is ultimately controlling, the defendant's reluctance is most important.  *Id.*  Regarding inducement, inducement is any government conduct "creating a

substantial risk that an otherwise law-abiding citizen would commit an offense." *United States v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008) (quoting *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994). Forms of inducement include repeated and persistent solicitation, fraudulent misrepresentation, threats, coercive tactics, harassment, promises of reward, or pleas based upon need, sympathy or friendship, which overcome any reluctance by the defendant. *Id.*; *United States v. Jones*, 231 F.3d 508, 517 (9th Cir. 2000). "Mere suggestions or the offering of an opportunity to commit a crime" do not constitute inducement. *Id.* In contrast, special incentives that "materially alter[] the balance of risks and rewards bearing upon the defendant's decision are inducement." *Poehlman*, 217 F.3d at 698. In other words, the question is whether there is any government conduct in this case that could persuade an otherwise law-abiding citizen, to attempt to kill thousands of people.

In analyzing entrapment in the context of discovery, defendant is suggesting that because he had "diverse friendship groups, normal work and study schedules, and social activities supporting a lack of predisposition" he is entitled to all evidence in the government's possession of his noncriminal activities because that information would support a lack of predisposition. (Def.'s Mem. 3.) Because that assertion rests on an unwarranted view of human nature—that criminals must do evil every waking moment of the day—it is not the law. The government is not alleging that defendant never engaged in "normal" activities. Indeed, the government is aware of defendant's deliberate attempts to appear normal while hiding his support of violent jihad, as demonstrated by defendant's writings, statements, and actions.

Rather, the government acknowledges that defendant behaved "normally" in many facets of his life while intentionally pursuing violent jihad in another, closely-held, facet of his life. To

this end, the government has provided a substantial amount of discovery in the form of e-mails, text messages, and phone calls relating to defendant's social activities, personal behavior, and other behaviors that are not within Rule 16 or *Brady*.  Additionally, defendant offers no reason why he needs nondiscoverable evidence in the government's possession relating to his "normal" activities when he undoubtedly has access to a considerable amount of similar material himself.  Indeed, nothing is preventing defendant and his investigators from unearthing similar information from friends, family, professors, and other sources regarding behavior defendant believes is somehow relevant to his case.

Defendant cites no controlling authority that would require the Court to order production of all noncriminal activity evidence of defendant in the government's possession.  Indeed, the limited case law in this area—and common sense—support the government's position.  In *United States v. Scarpa*, 897 F.2d 63 (2d Cir. 1990), the defendant was convicted of various RICO, extortion, and narcotics offenses.  The defendant and his "crew" were known to spend a lot of time at the "Wimpy Boys Club," but the evidence indicated that the topic of drugs was never mentioned there.  Local law enforcement had conducted electronic surveillance at the club for months.  The defendant requested access to the surveillance tapes:

> arguing that the absence of incriminating statements during the period in which he allegedly led the Crew was relevant to establish the absence of the activity alleged.  The district court refused to order disclosure of the tapes, agreeing with the government that they contained conversations which were "either wholly innocuous or involve[d] criminality that has nothing to do with the crimes charged in this case."

897 F.2d at 67.  The Second Circuit affirmed the refusal to turn the evidence over to the defendant, holding:

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                                      **Page 14**

> [a] defendant may not seek to establish his innocence, however, through proof of the absence of criminal acts on specific occasions. . . . The absence of drug conversations is consistent with testimony by the cooperating witnesses that drugs were never discussed inside the Club. Thus, the district court appropriately refused to order disclosure of the tapes. *See United States v. McElroy,* 697 F.2d 459, 464 (2d Cir. 1982) ("Rule 16 thus does not cover oral statements unrelated to the crime charged or completely separate from the Government's trial evidence.").

897 F.2d at 70 (citations omitted); *see also United States v. McClintock,* 748 F.2d 1278, 1287 (9th Cir. 1984) (tape recording of witness showing business not always engaged in a fraudulent practice not exculpatory); *United States v. Gambino,* 818 F. Supp. 541, 552 (E.D.N.Y. 1993) (the very irrelevance of statements does not make them relevant; evidence of surveillance showing noncriminal activities not discoverable unless defendant charged with ceaseless criminal conduct). In this case defendant is not alleged to have engaged in "ceaseless criminal conduct," and thus evidence of his noncriminal activities is not discoverable and not relevant.

In *United States v. Hedgcorth,* 873 F.2d 1307 (9th Cir. 1989), the defendant was charged with involvement in the firebombing of two cars and the attempted firebombing of a house. He attempted to introduce evidence to show that he was a "'thoughtful,' 'peaceable mercenary' who was betrayed by the random acts of reckless colleagues." *Id.* at 1313. The district court excluded evidence that the defendant was an operator of a respectable mercenary school and a participant in high level intelligence work for the government. The Ninth Circuit held that such evidence was inadmissible character evidence:

> [t]he trial court properly held such evidence inadmissible to the extent it was offered to show that [the defendant] was a "patriotic," "pro-government" individual unlikely to engage in acts of terrorism.

/ / /

**Government's Response to Defendant's First Motion to Compel Discovery and Defendant's Request for Discovery**                     **Page 15**

*Id.* The court also held that the district court properly excluded evidence of the defendant's writings offered to show his "peaceful mercenary philosophy," noting that it had "no bearing on his state of mind during offenses committed years later." *Id.* The consistent message from these cases as they relate to defendant's case is simple: the defendant is not entitled to every single piece of evidence gathered by the government, particularly when it leads nowhere.

Defendant also claims that "the discovery reviewed to date reveals sophisticated efforts to direct the teenager's actions, the full extent of which the government has yet to disclose to the defense." (Def.'s Mem. 3.) The evidence does not support this sweeping assertion. Defendant does not identify what "sophisticated" efforts the government allegedly used nor does he explain what he believes the government has failed to disclose, other than briefly alluding to the government's contact with defendant. This issue is discussed in more detail in Section III(3) below. Nonetheless, the government has produced extensive discovery revealing defendant's contacts with individuals working for the government.

## E.    **"Broad" Discovery**

Defendant repeatedly takes the position that he is uniquely entitled to exceptionally broad discovery: "[t]he scope of production should be broad because the potentially relevant material is virtually limitless under applicable law and because the defense . . . has security clearance, thereby addressing any security concerns." (Def.'s Mem. 5.) In cases involving issues related to national security the government has unique obligations to protect information. A person may have access to classified information only if "the person has a need-to-know the information." Exec. Order No. 13292, Sec. 4.1(a)(3), 68 Fed. Reg. 15315 (Mar. 28, 2003). This restriction applies to all persons, including those who have all of the appropriate clearances. Nonetheless,

the government has provided broad discovery in this case, by erring on the side of disclosure when in doubt about an item's materiality and by repeatedly going beyond what is required by Rule 16 or *Brady*.  As discussed above and below, however, there is no provision of the law relating to discovery in the Ninth Circuit that entitles defendant to more discovery than the rules would normally provide for in a criminal case, nor is there any authority for the proposition that only defendant can assess what is truly exculpatory evidence.

The government will address defendant's specific requests for discovery from defendant's Memorandum in Section III below, and the general requests from his Request for Discovery in Section IV.

### III.  SPECIFIC REQUESTS

1.    **Statements of Defendant Including:  Recorded Face-to-Face Conversations, Telephone Calls, Text Messages, E-mail Correspondence, Notes, or "Other Accounts Of Recorded Verbal Or Written Interactions"**

Defendant seeks all written or recorded statements of defendant in possession of the government.  Defendant is entitled to all "*relevant*, recorded statements of the defendant in the possession of the government."  Fed. R. Crim. P. 16(a)(1)(B) (emphasis added).  The government has provided defendant with statements of the defendant—much of which is irrelevant to the instant case—in the form of e-mails, phone calls, text messages, and computer evidence.

Defendant has asked for any materials related to any polygraph examination of defendant that was performed by any law enforcement officers.  As a courtesy, the government is providing defendant with a forensic laboratory report and with the results of a polygraph examination of defendant from an unrelated matter in November 2009 that are not discoverable.  Defendant is

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                    **Page 17**

not entitled under any controlling authority to the "charts, protocols, and evaluations" from this examination.  There are no other items that satisfy this request.

Defendant has also requested "any logs and summaries" of defendant's phone calls in order to "alleviate the difficulty in organizing and understanding the material."  Any logs or summaries of the calls would be work product under Rule16(a)(2) and therefore are not discoverable.  Nonetheless, as a courtesy, the government has made and produced a chart of all the phone calls that have been provided to the defense that describes the call identification number and the date and start time for each of the calls.

Defendant argues that the government must provide statements reasonably attributed to defendant.  While it is not clear what this request is intended to capture, the government will carefully investigate any statements where the identity of the declarant is unclear.

Finally, defendant argues that for the discovery provided that includes blacked out or redacted material:  "the Court should order the documents with statements be produced without redactions."  The government has complied with and will continue to comply with its obligation to produce all relevant, recorded statements of defendant.  At the same time, defendant is not entitled to all redacted material in the reports provided.  The material has been redacted because there is no basis to provide it in discovery; moreover, as will be addressed in the government's CIPA motion, there is a national security interest in protecting much of the material from disclosure.  Nonetheless, the parties have discussed this issue and the government will release to defendant a limited amount of the (unclassified) redacted material that, while not technically discoverable, may be related to the investigation.

/ / /

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                    **Page 18**

**2.    All Materials Related to Government Monitoring of Statements, Electronic or Otherwise, by Mr. Mohamud as Well as His Computer Activity**

The government has complied with its discovery obligations in this area and has provided, or is in the process of providing, defendant's statements collected pursuant to monitoring, including defendant's statements (*see* III(1) above) as well as imaged copies of the hard drive from defendant's computer.  The government has provided and is in the process of providing, records responsive to this request.  The request that the government provide "all materials related to government monitoring" is broad, vague and unclear as to what it is defendant actually seeks.  To this end, the government will adhere to its obligations and provide defendant with materials under Rule 16 and *Brady*, regardless of how it was obtained.

**3.    All Materials Related to Any Contact with Mr. Mohamud by UCE1, UCE2, and Any Other Person Acting on Behalf of the Government**

The government has provided voluminous and extensive material relating to the contact between defendant and UCE1 and UCE2 including:  recorded phone calls, audio and video recordings of face-to-face meetings, e-mails and reports that document this contact.  Additionally, video recordings, e-mails, and text messages will be provided.  Nonetheless, there is no authority that would compel the government to provide "all materials related" to any contact with any person working on behalf of the government if that material does not fall under Rule 16 or is not exculpatory under *Brady*, particularly if that material has nothing to do with the facts of this case.  Nor is the material discoverable because it is necessary to "evaluate entrapment" to the extent such contact has nothing to do with the case or defendant's predisposition.

/ / /

**Government's Response to Defendant's First Motion to
Compel Discovery and Defendant's Request for Discovery                Page 19**

As a courtesy, however, the government has also provided defendant with material relating to defendant's contact with two persons working on behalf of the government through e-mail.  In both of these instances, there is no evidence to suggest that defendant knew the person contacting him was a government agent, nor is the contact related to the case or defendant's predisposition.

In the first instance, the government has acknowledged that the person identified as "Bill Smith" was in fact working on behalf of the government and has disclosed all contacts between him and defendant.  Bill Smith had e-mail contact with defendant beginning in late 2009 and continuing through May 2010.  The contact with Smith did not relate to the facts of this case, and was discontinued by the government.  Defendant, however, on his own continued to contact Smith through August 2010, after the government had ceased contact with him, by forwarding Smith e-mails, including one that supported violent jihad.

In the second instance, the government has provided documentation that a person working on behalf of the government contacted defendant through e-mail in November 2009 and asked defendant to join the Muhaajir Yahoo group, moderated by defendant.  According to the Muhaajir group's description, it exists to assist Muslims who seek to travel on a religious pilgrimage, or to share information of such travels or religious studies.  Defendant never granted the individual access to the group, and the communication ended.

Defendant's claims that these contacts were part of "extensive government involvement" with the defendant that occurred for more than a year.  (Def.'s Mem. 5.)  Again, the facts do not support this interpretation of the case.  Both of the instances described above were brief especially considering the substantial amount of communications and activity defendant engaged

in during the course of the investigation that related to violent jihad and which have been provided to defendant in discovery.

Defendant has asked for detailed information related to persons who have had contact with defendant, including:  true or correct name, government agency affiliation, resume, curriculum vitae, any criminal record, and contact information.  Additionally, defendant seeks "all materials regarding the agent and involvement prior to or following any contact by that person with Mr. Mohamud, and the derivation of that information."  The government  is not obligated under the rules of discovery to produce any of this information.  Defendant asserts that this information is necessary to his evaluation of the entrapment defense, but he does not specify how that is the case, particularly given that all the communications have been, or are being, disclosed.  Nonetheless, if either of these persons is called as a witness at trial, the government will provide any *Giglio* material.

### 4.     All Materials Relative to the Training or Experiences of Any Government Agent Who Contacted Mr. Mohamud Including but Not Limited to UCE1 and UCE2

As in virtually any criminal case involving law enforcement agents, this information is not discoverable under Rule 16(a)(2) and defendant has made no specific showing why he should see this material.

If UCE1, UCE2, or any other person working on behalf of the government testifies at trial, the government will adhere to its discovery obligations regarding witnesses.  Specifically, the government would provide any *Giglio* information, and if these witnesses were called upon to offer an expert opinion, the government would provide any materials relevant to such a request.

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                    **Page 21**

5.      **All Audio, Video, or Other Recordings of the Undercover Agents Before, During, and After Meetings with Mr. Mohamud**

In this request, defendant has asked for two categories of items related to recordings of defendant and the UCEs.  First, defendant seeks the audio and video recordings that capture the UCEs without defendant present (before and after meetings with the UCEs).  Second, defendant seeks an order from the Court that the recording device used during the July 30, 2010, meeting between defendant and UCE1 be made available for inspection by a defense expert and that the service and repair history for the devices.  In addition, defendant asks that any "transmission device" be made available for inspection by a defense expert.

Regarding defendant's first request, the audio and video recordings of the portions of meetings between the undercover agents and defendant when defendant was not present are not discoverable because they do not contain statements of defendant or any other discoverable or exculpatory evidence.  Defendant argues that they should be produced because only the defense can properly determine whether the material is exculpatory.  (Def.'s Mem. 14.)  This position was addressed in the argument section above, and is plainly contrary to the rules of discovery.  Speculation is not materiality, and moreover, absent any indication that pre-meeting recordings contain anything exculpatory, defendant's request must be rejected.  The government has reviewed these recordings to determine the presence of any *Brady* material and has determined that they do not contain any such material.

Regarding defendant's second request for access to the recording device, the government has complied with Judge Acosta's earlier order and has preserved and isolated the recording device that was not properly activated for the July 30 meeting between defendant and the UCE.

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery**                                      **Page 22**

During that meeting, the conversation between UCE1 and defendant was transmitted through an FBI channel to a number of devices including walkie talkies and earpieces, and the meeting was partially overheard by different agents.  While Judge Acosta's order relates only to recording devices, the government also located and preserved the transmission device used by the primary agent listening to the meeting as a courtesy to defendant.

To date, the government has provided defendant with extensive documentation explaining why the July 30 meeting was not recorded.  Put simply, it was human error:  the device was accidently turned on hours before the meeting time and therefore ran out of battery power as the meeting began.  At the same time, the meeting was partially overheard by a number of agents and heard in its entirety by UCE1.

Based on this information, at this time there is no legitimate basis to permit a defense expert to examine the recording equipment or to review repair records for the device.  The government has conceded that there was nothing wrong with the recording device and the failure to record this one meeting was the result of human error.  Giving the defense access to the device would serve no proper purpose.

Defendant has also asked for notes "purporting to relate to the July 30th meeting."  The contents of the July meeting were summarized by an FBI agent in a typewritten report that was provided to defendant on December 10, 2010.  Consistent with his practice in all cases where witness statements were not taken, the agent memorialized his notes in their entirety in typewritten reports for all the meetings between UCEs and defendant and, after doing so, he destroyed his handwritten notes.  All of the reports written based on those notes have been provided to the defense.  The government is also providing defendant with a report documenting

that another agent who heard portions of the meeting through the FBI's live transmission, has a recollection of the meeting that is consistent with the typewritten report.

   **6.    All Materials Relating to Any Behavioral or Social Science Expert Consulted for This Case, Including, but Not Limited to, Any Psychiatrist, Psychologist, Cultural or Religious Expert, and Any Military or Civilian Psychological Operations or Interrogations Expert**

   Although this request seeks material that is likely not discoverable, other than assistance from linguists, the government does not have any information responsive to this request.

   In this request defendant also seeks materials related to the UCEs' use of the term "*ijtimeaat*," or "council," during their meetings with defendant. While it is not exactly clear what defendant seeks, defendant has been provided with recordings of his meetings with the UCEs, but there is no authority that requires the government to explain why particular words or terms were used by its agents.

   **7.    All Materials Relative to the Search or Seizure of Computers, Cell Phones, or Other Electronic Media**

   The government has provided or made available to defendant images of his laptop computer from three different searches.

   The government will provide any forensic reports relating to these and other searches of electronic media as soon as they are available. Due to the voluminous amount of material on defendant's computer, the government does not have final forensic reports summarizing the searches of defendant's computer at this time.

/ / /

/ / /

/ / /

**Government's Response to Defendant's First Motion to**
**Compel Discovery and Defendant's Request for Discovery                    Page 24**

8.      **All Materials Related to Any Warrantless Search and Seizure Activity Directed Toward Mr. Mohamud and His Family and Friends**

The government has provided material relating to defendant's consensual search of his computer from November 2009.  Additionally, throughout this investigation defendant provided various items to the UCEs such as cellular telephones, a thumb drive, and access to a storage unit that he rented.

In this request, defendant has also requested materials relating to any photo surveillance (including pole cameras), global positioning system monitoring, and monitoring by third parties. The government does not have any material responsive to this request.  The government has provided, and will continue to provide, evidence of photographic surveillance of defendant, including photographs of defendant meeting with UCE1 and UCE2.

The government does not have any additional evidence of "warrantless search or seizure activity."

9.      **All Materials Related to UA1 and UA2**

The government has provided defendant with information about the identity of UA1 and his contacts with defendant.  The government does not have any discoverable, responsive information regarding UA2.

In this request defendant also seeks information about "any measures taken to confirm that Mr. Mohamud was not armed at any time."  (Def.'s Mem. 17.)  While it is unclear what information defendant seeks or how it would be discoverable, the only information the government has that is arguably responsive to this request has been provided and relates to

/ / /

**Government's Response to Defendant's First Motion to
Compel Discovery and Defendant's Request for Discovery**                    **Page 25**

requests made by the UCEs to defendant that he not, for safety reasons, bring his knife to the meetings.

10. **All Materials Related to Government Activities Conducted Pursuant to Warrants, Court Orders, Subpoenas, or Other Such Authorization in Connection with This Case**

The government has provided defendant with the results of the search warrant executed at his apartment on November 26, 2011, as well as copies of the search warrants and accompanying affidavits.  The government has also provided, or is in the process of providing, defendant with the records it has received pursuant to subpoenas.

Regarding defendant's request relating to materials obtained pursuant to FISA, the government has provided defendant with a substantial amount of material obtained through court-authorized surveillance and searches conducted pursuant to FISA.  Nevertheless, defendant has requested "all materials related to . . . FISA."  As the parties have previously informed the Court, litigation regarding the materials associated with any FISA searches or surveillance will need to be handled separately by the Court.

Defendant's motion has triggered the procedures under Section 1806(f) of FISA.  That section requires an *in camera* and *ex parte* review by the district court "whenever any motion or request is made by an aggrieved person pursuant to any other statute or rule of the United States . . . to discover or obtain applications or orders or other materials relating to electronic surveillance or to discover, obtain, or suppress evidence or information obtained or derived from electronic surveillance under this chapter."  50 U.S.C. § 1806(f).  Specifically, "the United States district court . . . shall . . . if the Attorney General files an affidavit under oath that disclosure or an adversary hearing would harm the national security of the United States, review *in camera*

**Government's Response to Defendant's First Motion to
Compel Discovery and Defendant's Request for Discovery** **Page 26**

and *ex parte* the application, order and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." *Id.* On the proper filing of such an affidavit or declaration[3] by the Attorney General, the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance (or physical search) only where such disclosure is necessary to make an accurate determination of the legality of the surveillance (or physical search)." 50 U.S.C. §§ 1806(f), 1825(g). "The language of section 1806(f) clearly anticipates that an *ex parte, in camera* determination is to be the rule. Disclosure and an adversary hearing are the exception, occurring *only* when necessary." *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982) (cited with approval in *United States v. Sarkissian*, 841 F.2d 959, 964 (9th Cir. 1988)). If the district court is able to make an accurate determination in regard to the legality of the surveillance based on an *in camera, ex parte* review of the materials submitted by the United States, then the court may not order disclosure of any of the FISA materials. *United States v. Johnson*, 952 F.2d 565, 571-72 (1st Cir. 1991).

Defendant previously has indicated that he also intends to file a separate motion to suppress "illegally" obtained FISA evidence. A motion to disclose FISA materials and a motion to suppress FISA evidence typically are resolved by the district court at the same time since the process of *in camera* review of classified FISA applications and supporting documents is a time-consuming one. As the government explained at the January 5, 2011, hearing before this Court,

---

[3] Whenever an "affidavit" is required, a declaration may also be filed with "like force and effect." 28 U.S.C. § 1746.

for the Foreign Intelligence Surveillance Court (FISC), which handles all FISA applications and issues all orders pursuant to FISA, to assemble the documents is itself a time-consuming process that requires several weeks and coordination with offices in the National Security Division.

Accordingly, in the interest of judicial economy and in light of the fact that discovery is ongoing in this case, the government recommends that the Court table this request until the other discovery issues are resolved and defendant has filed his anticipated motion to suppress. The government further requests that the Court direct defendant to file his motion to suppress by May 16, 2011, with the government's response due on July 28, 2011, and defendant's reply due on August 22, 2011, as provided in the joint letter to the Court filed on December 30, 2010, the date previously agreed upon by the parties, or at another mutually agreeable time.

The proposed schedule will provide additional time for the defense to draft and file its suppression motion, taking into account the Court's rulings on other pending discovery issues, and permit the government to respond to defendant's arguments contained in the suppression motion, as well as to his request for disclosure of the FISA materials, in one filing, and will result in a better briefing of the issues before the Court. It would be inefficient, and inconsistent with the review contemplated by FISA, to require the government to respond to the instant motion, and then respond again once defendant has filed his motion to suppress. In brief, and with due regard to the unclassified nature of this filing,[4] the process required for responding to a motion for the disclosure of FISA materials and/or a motion to suppress evidence obtained

---

[4] Should the Court require more specific information regarding the necessary steps to properly respond to a motion to suppress under FISA, the government can provide this information in a classified filing.

pursuant to FISA, necessitates that the government be allotted additional time beyond the

standard motion response due dates.  Based on prior experience of the National Security

Division's Office of Intelligence, the proposed schedule should allow the government the time

necessary to assemble the appropriate information pursuant to the statute, which also requires

coordination with various entities, including the Office of the Attorney General and the Federal

Bureau of Investigation.

## IV.  GENERAL REQUESTS

### 1.    Oral Statements of Defendant

As explained in Section III(1) above, the government has provided, or is in the process of

providing, defendant with all relevant, discoverable recorded oral statements made by defendant.

### 2.    Written or Recorded Statements of Defendant

As explained in Section III(1) above, the government has provided, or is in the process of

providing, defendant with all relevant, discoverable recorded written statements made by

defendant.

### 3.    Books, Papers, Documents, Tangible Objects, Photographs, Buildings or Places Which Are Material to Preparing the Defense

The government has provided defendant with an extensive amount of material responsive

to this request including:  writings of defendant seized from his person and apartment;

photographs and access to the truck bomb; photographs and access to the storage unit obtained

by defendant; photographs and access to the bomb parts purchased by defendant; computer and

electronic equipment; and, photographs of defendant taken during the investigation.

/ / /

4.    **All Reports, Local, State, or Federal Reports Relating to Any Search of Mr. Mohamud or His Property or Any Other Search Related to This Case**

The government has provided defendant with information regarding the consent search of his computer in November 2009 and the analysis of a liquid seized from defendant's residence, as well as the search warrant executed at his residence on November 26, 2011.

5.    **Any Agents' Rough Notes on the Statements Requested in Items 1 and 2 Identified Above**

The government has notes of its interview with defendant on June 14, 2010.  Those notes are accurately summarized in the report of that interview that has been provided to defendant. The government has compared the agent's handwritten notes to the final, written report, and there are no variances or discrepancies.  The only information that appears in the notes, but not in the report, is a statement made by defendant or one of his parents that he was born in Mogadishu, and the date defendant said he planned to return from Alaska.  Thus, the notes should not be produced.  The government does not have notes from its second, and only other, interview with defendant that occurred on November 26, 2011.

6.    **A Copy of Mr. Mohamud's Criminal Record**

This information has been provided to defendant.

7.    **All Items in Request 6 That Belonged to Mr. Mohamud**

The government has provided defendant with copies of and access to the items seized from his person at the time of his arrest and seized from his apartment pursuant to the search warrant executed on November 26, 2010.

8.    **All Items in Request 6 Which Were Obtained from Mr. Mohamud**

See number (7) above.

**Government's Response to Defendant's First Motion to Compel Discovery and Defendant's Request for Discovery**                    **Page 30**

9.    **Any Evidence, Including, but Not Limited to, the Items in Request 6, Above, Which Are Intended for Use by the Government as Evidence in its Case-in-Chief**

Again, the government has provided or is providing the defense with a copy of defendant's recorded statements as well as all tangible objects seized from his person, which are intended for use by the government at trial.

10.    **Any and All Results or Reports of Physical or Mental Examinations and of Scientific Tests or Experiments, Including, but Not Limited to Chemical Analysis, Fingerprints, Polygraph Exams, Voice Prints, and Handwriting**

The government has provided defendant with information related to the polygraph examination and a forensic laboratory report from an unrelated matter.  The government has no additional information that is responsive to this request, however the government will provide the results of any new, discoverable forensic testing as soon as it becomes available.

11.    **A Written Summary of All Expert Witness Testimony the Government Intends to Offer in its Case-in-Chief, Whether or Not the Expert Has Prepared a Written Report**

The government will provide a summary of expert witness testimony in a timely manner prior to trial as it is required to do under Fed. R. Crim. P. 16(a)(1)(G).

12.    **A Description of Any Prior Conviction or Prior or "Similar Act" the Government Will Seek to Introduce at Trial (404(b))**

The government will provide defendant with notification of any evidence it intends to offer under Fed. R. Evid. 404(b) in a timely manner prior to trial.

13.    **The Personnel Files of Each and Every Law Enforcement Agent Who Will Testify in the Case**

The government will comply with all its obligations regarding the provision of witness statements, *Giglio* material, and other relevant information in a timely manner prior to trial.

**14.    Reports and Records Relating to Any Eavesdropping, Wiretapping, or Electronic Recording of Any Kind Relating to This Case**

The government has provided defendant with extensive material captured by court-authorized surveillance, much of it outside the scope of Rule 16 or *Brady*.  The government has also provided extensive material in the form of recordings of meetings between defendant and the UCEs.  More specifically, this request is addressed in Section III(10) above.

**15.    All Notes or Other Writings or Documents Used by a Prospective Government Witness Before the Grand Jury**

The government does not have any material responsive to this request.

**16.    The Names and Addresses of All Percipient Witnesses Interviewed by the Government Whom it Does Not Intend to Call at Trial**

The government will provide all appropriate witness information in a timely manner prior to trial.

**17-20, 22-37.  Requests Relating to the Background, Reliability, Immunity, Potential Impeachment and Identity of Prospective Government Witnesses**

The requests identified above all relate to material defendant seeks regarding potential government witnesses.  In addressing these requests, the government will comply with all its obligations regarding the provision of witness statements, *Giglio* material, and other relevant information in a timely manner to be determined by the Court prior to trial.

**21.    Reports, Records or Memoranda of Federal or State Agencies That Describe, Refer To, or Otherwise Comment upon Their Relationship with Any Informant or Undercover Agent Involved in This Case**

The government will comply with all its discovery obligations relating to the production of material relating to any undercover informants and agents in this case.  However, based on the

/ / /

**Government's Response to Defendant's First Motion to Compel Discovery and Defendant's Request for Discovery**                                    **Page 32**

nature of this request it is not entirely clear what defendant is seeking and it is equally unclear as to how that material would potentially be discoverable under Rule 16 or *Brady*.

**38.    Any Evidence That the Government or Any of its Agents Has Ever Viewed a Prospective Government Witness as Not Truthful**

The government will comply with all its obligations regarding the provision of witness statements, *Giglio* material, and other relevant information in a timely manner prior to trial, however defendant cites no controlling legal authority that would require the government to identify or turn over this information as it would fall within the scope of Rule16(a)(2) as it is neither discoverable nor relevant. *See, e.g.*, *United States v. Gentles*, 619 F.3d 75, 83 (1st Cir. 2010) (agent opinion of witness veracity is inadmissible); *United States v. Johnston*, 127 F.3d 380, 389 (5th Cir. 1997) (affirming trial court's refusal to permit defendant to cross-examine agents regarding their views of another witness' credibility).

**39.    The Name of Any Person, Whether or Not He or She Will Be a Witness, Who Could Not Identify Mr. Mohamud or Who Was Unsure of His Identity or Participation in the Crime Charged, and the Content of Any Such Statement**

To the extent any of this material exists, the government has complied and will comply with its obligations under *Brady* to provide any material that matches this description.

**40.    Any Physical Evidence Tending to Exculpate Mr. Mohamud, in Whole or in Part, Tending to Mitigate Punishment, or Tending to Impeach a Government Witness**

The government will comply with its obligations under *Brady* and *Giglio*, and again, it will provide all appropriate impeachment material at an appropriate time prior to trial.

/ / /

/ / /

**41.**     **Any Evidence Mitigating the Punishment for Mr. Mohamud**

The government will comply with its obligations under *Brady* and *Giglio*, and again, it

will provide all appropriate impeachment material at an appropriate time prior to trial.

**42.**     **The Commencement and Termination Date of the Grand Jury That Indicted
Mr. Mohamud**

This information is not discoverable under any controlling authority, however, the grand

jury heard testimony regarding defendant's case on November 29, 2010.

**43.**     **The Number (Not Names) of Grand Jurors Attending Each Session of the
Grand Jury and the Number of Grand Jurors (Not Names) Voting to Indict
Mr. Mohamud**

The defense is not entitled to receive the number of grand jurors attending each session

of the grand jury in defendant's case.  Additionally, defendant is not entitled to know the number

of grand jurors voting to indict him under Fed. R. Crim. P. 6(c).

**44.**     **The Name of Every Prospective Government Witness to Be Called at Trial**

Again, the government will provide the names of all witnesses it intends to call at trial on

the date set by the Court.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Government's Response to Defendant's First Motion to
Compel Discovery and Defendant's Request for Discovery**                    **Page 34**

## V.  CONCLUSION

For the reasons stated above—particularly the government's already demonstrated

willingness to go beyond its statutory and constitutional discovery obligations—the defendant's

Motion to Compel should be denied, and his Request for Additional Discovery should be denied

as moot.

Dated this 7th day of April 2011.

Respectfully submitted,

DWIGHT C. HOLTON
United States Attorney


*/s/ Ethan D. Knight*
ETHAN D. KNIGHT
JEFFREY S. SWEET
Assistant United States Attorneys