DWIGHT C. HOLTON, OSB #09054
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
Assistant United States Attorney
1000 SW Third, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
ethan.knight@usdoj.gov
**JEFFREY S. SWEET**, OSB #99418
Assistant United States Attorney
405 East 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Facsimile: (541) 465-6531
jeff.sweet@usdoj.gov
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOHAMED OSMAN MOHAMUD,<br><br>Defendant. | Case No. 10-cr-475-KI<br><br>GOVERNMENT'S RESPONSE TO MOTION FOR PARTIAL SEQUESTRATION OF WITNESSES AND PRESERVATION OF EVIDENCE |

The United States of America, by and through Dwight C. Holton, United States Attorney for the District of Oregon, and Ethan D. Knight and Jeffrey S. Sweet, Assistant United States Attorneys, hereby responds to defendant's Motion for Partial Sequestration of Witnesses and Preservation of Evidence (#30).

Defendant seeks an order from this Court prohibiting government witnesses to the July 30, 2010 meeting between defendant and an undercover agent "from discussing any aspect of that incident with each other, directly or indirectly, or reviewing any documents generated in connection with that meeting, and directing that all notes and other documentation of the incident be preserved." (Def.'s Mot. 2.) The government asks the Court to deny defendant's motion for the following reasons. First, the government has already addressed the issues raised by defendant's motion. Second, the appropriate remedy for any alleged witness collaboration is thorough cross-examination at trial. Third, the order would severely limit the government's ability to further investigate defendant's case and to comply with its discovery obligations. And finally, there is no legal precedent that would permit the Court to issue such an order.

**I.      Factual Background**

On November 26, 2010, defendant was arrested and charged in a criminal complaint with one count of Attempted Use of a Weapon of Mass Destruction. Defendant was arrested after he attempted to detonate what he believed to be a vehicle bomb at Portland's annual Christmas tree lighting ceremony at Portland's Pioneer Courthouse Square. His arrest was the culmination of a long-term investigation that involved a series of meetings between defendant and undercover agents. Defendant's motion appears to be based on a concern that the July 30, 2010 meeting between defendant and an undercover agent, which lasted approximately one-half hour, was not recorded. The government disclosed that this meeting was not recorded in the affidavit supporting the criminal complaint filed on November 26, 2010. (*See* Compl. Aff. ¶ 27.) Moreover, the government has gone to great lengths to explain why the meeting was not recorded and to document this fact for defendant, even though defendant is not entitled to receive

this information under the rules of discovery. Every other meeting between defendant and the undercover agents was recorded, and defendant has been provided with a significant number of video and audio recordings that show defendant on tape plotting the attack on November 26, 2010, at Pioneer Square.

In addition to providing defendant with a detailed explanation regarding why the recording device used on July 30 failed, the government has provided the defendant with a five-page report that describes this meeting. Defendant's claim that there was no "contemporaneous" report made of the meeting (Def.'s Mot. at 2) is wrong. The report of the July 30 meeting that the government has produced was prepared on August 3, 2010 (once the agent who wrote it returned to his out-of-state office from Portland) and was based on notes taken *during* and after the meeting. The government also provided defendant with a report drafted by one of the other agents who overheard the July 30 meeting. This report documents that the agent overhead conversations during the meeting, that she reviewed the August 3 report, and that this report is consistent with her memory of the meeting and a subsequent debrief of that meeting. Her report was provided as a courtesy to defendant to alert him that other witnesses had overheard the July 30 meeting in real time.

## II.    Argument

A jury ultimately will decide how to evaluate the government's evidence from the July 30, 2010 meeting. As detailed below, however, the government already has addressed the issues raised in defendant's motion and the appropriate remedy for any alleged witness collaboration is through cross-examination. Moreover, if the Court were to grant defendant's request, the government's ability to further investigate the case and to comply with its discovery

obligations would be severely limited. And lastly, there is no legal precedent for the Court to grant the relief defendants seeks. Accordingly, the Court should deny defendant's motion.

### A.    Actions Taken by the Government Render Moot Defendant's Motion

The government has already taken steps that would obviate the need for the Court to grant's defendant's motion and issue the proposed order. Even before the filing of defendant's motion, the government had taken steps to ensure that any remaining notes or other documentation of the July 30, 2010 meeting were preserved and that the events surrounding the meeting were documented. In addition, as in any criminal case, government witnesses understand that they may not discuss the substance of their trial testimony prior to trial.

Defendant argues that "[t]he government's failure to preserve critical evidence has profound consequences on Mr. Mohamud's right to receive a fair trial." (Def.'s Mot. 3.) Nothing could be further from the truth. If the recording device used during the July 30 meeting had worked, defendant would have yet another recording of him discussing his desire to launch an attack. Because the recorder did not record, defendant now has the opportunity to cross-examine the witnesses who heard the July 30 meeting regarding their recollection of the meeting. In this respect, defendant is in a much better position to challenge the evidence from the meeting than he would have been had the device worked properly. If there is any party that has materially suffered from the failed recording, it is the government.[1]

/ / /

---

[1] Taken to its logical conclusion, the defense theory appears to be not only that multiple government witnesses are lying but also that all of the subsequent recorded meetings belie the "true" nature of the half-hour meeting on July 30. The defense will have ample opportunity to present this theory at trial.

### B. Cross-Examination at Trial Is the Appropriate Remedy for Defendant's Concerns

Defendant has offered no evidence that the witnesses have had or will have any improper discussions regarding their trial testimony. Nevertheless, the problem of "coached" or improperly influenced witnesses does not change the basic principles that juries are tasked with determining the credibility of witnesses and that cross-examination is designed to deal with this issue. In fact, the Supreme Court has recognized that "opposing counsel in the adversary system is not without weapons to cope with 'coached' witnesses." *Geders v. United States*, 425 U.S. 80, 89 (1976). Cross-examination is one key weapon. *Id.* at 89-90. Indeed, the Ninth Circuit has concluded that "[c]ross-examination and argument are the primary tools for addressing improper witness coaching." *United States v. Sayakhom*, 186 F.3d 928, 945 (9th Cir. 1999) (*citing Geders*, 425 U.S. at 89-90); *see also United States v. Rhynes*, 218 F.3d 310, 320 (4th Cir. 2000) (en banc) ("Indeed if an attorney had inappropriately 'coached' a witness, thorough cross-examination of that witness violates no privilege and is entirely appropriate and sufficient to address the issue."); *Hamdi & Ibrahim Mango, Co. v. Fire Assoc. of Philadelphia*, 20 F.R.D. 181, 183 (S.D.N.Y. 1957) ("Some protection is afforded to a party against [] abuses [of witness coaching] by permitting him to question the witness on cross-examination about prior conversations with counsel, and thus, if he can, to reflect on the credibility of the witness and the weight to be given his testimony.").

### C. Such an Order Would Severely Limit Further Investigation and Compliance with Discovery Obligations

The proposed order also would limit severely the government's ability to continue its investigation of defendant's case and to comply with its ongoing discovery obligations.

Virtually all of the agents involved in the investigation of defendant's case overheard at least some portion of the July 30 meeting. As a result, if the agents are prohibited from discussing "any aspect" of the meeting "directly or indirectly," they would not be able to complete any substantive follow-up investigation relating to the July 30 meeting or any related events. For example, the government is in the process of reviewing defendant's computer. To date, this review has yielded information that suggests defendant was conducting internet searches related to Pioneer Courthouse Square and the surrounding area. If they were required to comply with the proposed order, the agents would not be able to discuss or conduct any follow-up investigation regarding this material.

Additionally, the proposed order is problematic because it would prohibit agents from discussing any issue related to the August 3 report, which includes not only details of the meeting but other details of defendant's initial contact with the agent. The order would also limit the government's ability to comply with its discovery obligations. For example, the agents who are processing the discovery would be unable to finish any reports related to the July 30 meeting and
would be unable to complete the ongoing process of providing defendant with additional discovery related to that meeting.

### D.    No Legal Precedent Permits the Issuance of the Requested Relief

There is no legal precedent that supports defendant's request for an order sequestering witnesses during the pretrial phase of the case. Defendant's case is months (if not years) away from trial. Sequestration of witnesses is only appropriate during trial proceedings.

/ / /

Defendant has provided no legal authority that grants this Court the power to sequester witnesses from one another at this stage in defendant's case. Defendant's reliance on *Geders v. United States*, 425 U.S. 80, 87 (1976), to support this argument is misplaced. In *Geders*, the Supreme Court held that a trial court's order that a defendant not speak to his attorney during a 17-hour recess violated his sixth amendment rights. In discussing the broad power of a trial judge to sequester witnesses, the Court acknowledged the power of the trial court to sequester witnesses "before, during, and after their testimony." *Id.* The case contains no mention of any authority for employing such a remedy outside of trial proceedings.

More broadly, there is no legal precedent for this Court to entertain an order similar to the one proposed by defendant at this stage in defendant's case. In *United States v. Williams*, 504 U.S. 36, 46 (1992), the Supreme Court held that the trial court has supervisory power to dismiss an indictment for grand jury abuse only upon violation of "one of the 'few, clear rules which were carefully drafted and approved by Congress to ensure the integrity of the grand jury's functions.'" Speaking of the trial court's powers, the Court stated that the trial court does not have power to *prescribe* prosecutorial conduct; it may not direct what evidence is to be presented to the grand jury. *Id.* at 51-55. In *United States v. Ye*, 436 F.3d 1117 (2006), the Ninth Circuit held that mandamus is an appropriate remedy when the District Court exceeds its powers in issuing an order clearly outside of its power during the discovery phase of a case. In *Ye*, the defendant was charged with violating the Economic Espionage Act. Prior to trial, he successfully moved the District Court to authorize the deposition of a government witness under Federal Rule of Criminal Procedure 15 for the purpose of eliciting information he believed was discoverable. The government petitioned the Ninth Circuit for mandamus and, after applying a

five-factor test, the Ninth Circuit agreed, concluding that the "district court's order was 'wholly unauthorized' and 'constitutes a clear and very substantial departure from the fundamental principles governing criminal pretrial and trial procedure in federal court." *Id.* at 1124.

### III. Conclusion

For the reasons stated above, the government respectfully requests that: (1) defendant's motion for an order be denied; and (2) this Court's April 13, 2011 order that government witnesses to the July 30, 2010 meeting with defendant "refrain from discussing the meeting with each other, directly or indirectly, [and] refrain from reviewing any documents generated by another person concerning that meeting, and to preserve all notes and documentation of the meeting" be rescinded.

Dated this 5th day of May 2011.

                                            Respectfully submitted,

                                            DWIGHT C. HOLTON
                                            United States Attorney

                                            */s/ Ethan D. Knight*
                                            ETHAN D. KNIGHT
                                            JEFFREY S. SWEET
                                            Assistant United States Attorneys