Stephen R. Sady
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
**Ellen C. Pitcher**
**Assistant Federal Public Defender**
ellen_pitcher@fd.org
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon 97204**
**503-326-2123 Telephone**
**503-326-5524 Facsimile**

**Attorneys for Defendant**

### IN THE UNITED STATES DISTRICT COURT

### FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **No. CR 10-475-KI** |
| **Plaintiff,** | **SUPPLEMENTAL MEMORANDUM IN** |
| | **SUPPORT OF MOTION TO DISCLOSE** |
| **v.** | **FISA-RELATED MATERIAL NECESSARY** |
| | **TO LITIGATE MOTIONS FOR DISCOVERY** |
| **MOHAMED OSMAN MOHAMUD,** | **AND FOR SUPPRESSION OF THE FRUITS** |
| | **OF FISA ACTIVITY** |
| **Defendant.** | |

The defendant, through his attorneys, respectfully supplements his previously submitted

memorandum with reference to four recent developments that inform potential discovery and

suppression issues regarding the Foreign Intelligence Surveillance Act (FISA).  The first involves the Second Circuit's ruling in *Amnesty Int'l U.S.A. v. Clapper*, 638 F.3d 118 (2d Cir.), *rehearing en banc denied*, 2011 WL 4381737 (2d Cir. Sep. 21, 2011), in which the court allowed a facial challenge to the FISA Amendment Act of 2008 (FAA) to go forward in the district court.  The second involves public statements from Senator Ron Wyden flagging concerns regarding inconsistency between public versions and secret interpretations of the FISA.  Charlie Savage, *Public Said To Be Misled On Use Of The Patriot Act*, N.Y.Times, at A15 (Sep. 21, 2011).  Third, the Ninth Circuit's reversal in *Al Haramain Islamic Found. v. U.S. Dep't of Treasury*, 660 F.3d 1019 (9th Cir. 2011), provides support for the concerns previously expressed regarding First and Fourth Amendment violations.  Fourth, the government report that more than 4.2 million people have security clearances emphasizes the importance of citizen involvement to check potential abuses of domestic spying powers.

In *Clapper*, various "United States person" organizations and individuals filed a civil challenge to the FAA's new framework for surveillance that targeted non-United States persons but affected United States persons.  638 F.3d at 121.  The plaintiffs complained of virtually unregulated monitoring of international communications of United States citizens.  *Id.*  The plaintiffs placed primary reliance on two differences in the pre- and post-FAA authorization for surveillance.  *Id.* at 125.  First, the court noted the lack of specificity in the new procedures:

> [W]hereas under the preexisting FISA scheme the government had to submit an individualized application for surveillance identifying the particular target, facility, type of information sought, and procedures to be used, under the FAA, the government need not submit a similarly individualized application – it need not identify the particular target or facility to be monitored.  *Compare* 50 U.S.C. § 1805(c)(1), *with id*. § 1881a(d)(1), 1881a(g)(4).

**Page 2    SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO DISCLOSE FISA-RELATED MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY**

*Clapper*, 638 F.3d at 125-26.  Second, the court noted that, in this context, the FAA eliminated the probable cause determination, replacing it with verification of government certifications:

> [W]hereas under the preexisting FISA scheme the FISC [Foreign Intelligence Surveillance Court] had to find probable cause to believe both that the surveillance target is a "foreign power" or agent thereof and that the facilities to be monitored were being used or about to be used by a foreign power or its agent, under the FAA the FISC no longer needs to make any probable-cause determination at all.  Instead, the FISC simply verifies that the government has made the proper certifications.  *Compare* 50 U.S.C. § 1805(a)(2)(A), *with id*. § 1881a(i)(3)(A).

*Id*. at 126.  The unanimous panel found the plaintiffs had standing to make a facial challenge to the FAA.  *Id*. at 134.

In the present case, the Court should consider *Clapper* as expanding the potential for facial and as applied challenges to the FAA to the extent that surveillance of Mr. Mohamud – who is unquestionably a United States person – occurred during the course of FAA-authorized operations involving non-United States persons.  The discovery indicates a high likelihood that such surveillance occurred.  The government in the *Clapper* rehearing proceedings admitted that the FAA substantially changed the relevant procedures:  "[U]nlike traditional FISA surveillance, section 702 does not require the Government to establish individualized probable cause or to identify the specific facilities at which the acquisition will take place."  2011 WL 4381737, at *3 (quoting Pet. for Reh'g 4).  As the *Clapper* plaintiffs could litigate the civil matter, this Court should authorize the criminal defendant in the present case to receive full discovery and to be fully involved in litigating the constitutionality of the FAA as applied in this criminal case.

Senator Wyden's expressed concerns regarding the implementation of the Patriot Act also provide support for the requested discovery and defense participation in the FISA litigation.  The

controversy demonstrates the need for full disclosure.  Under Section 215 of the Patriot Act, the

FISC can issue an order allowing the FBI to obtain "any tangible things" in connection with a

national security investigation.  In addition to the plain meaning of the statute, legislators have

expressed concern that the government has interpreted the provision, based on rulings by the secret

national security court, as allowing the government to obtain private information about people

beyond the scope of authorized surveillance.  As Senator Wyden stated in a letter to the Director of

National Intelligence, "It is a matter of public record that there have been incidents in which

intelligence agencies have failed to comply with the FISA Amendments Act, and that certain types

of compliance violations have continued to recur."  *See* S. Rep. No. 112-43, at 29 (2011).  The

questions regarding conflicting statutory interpretation and concern regarding compliance violations

militate in favor of defense advocacy to assure a meaningful hearing of the legality of FISA

surveillance.

    The recent *Al Haramain* decision also supports the requests for discovery and meaningful

participation in the criminal litigation.  In finding the due process violation in the civil context, the

Ninth Circuit necessarily supported Mr. Mohamud's contention that due process strongly supports

disclosure and an opportunity to be heard in the criminal context.  Just as the *Al Haramain* court

determined that the financial effect on a domestic organization militated in favor of greater process,

the criminal context presents even stronger reasons for the requested discovery and participation in

litigation.  660 F.3d at 1032-36.  In the criminal context, the unilateral use of classified material

should be presumptively unconstitutional (*id*. at 1035) or, at least, subject to additional procedural

requirements such as review by security-cleared defense counsel and provision of unclassified

summaries. *Id*. at 1036-37. The prevention of any participation by the defense would violate due process even under the process due in the civil context. *Id*. at 1041-42.

The Ninth Circuit's opinion also may be relevant to First and Fourth Amendment considerations. Depending on the searches and seizures disclosed, the Court strongly reinforced the Fourth Amendment norms that apply regardless of invocation of security interests. *Id*. at 1043-48. The Court also reiterated the powerful First Amendment protections that apply even to hostile advocacy. *Id*. at 1048-52. In sum, reliance on classified material, with no mitigation through, for example, unclassified summaries, deprived the plaintiffs of due process rights during the civil proceedings; the seizure of assets without a warrant violated the Fourth Amendment; and the non-listed organization had a First Amendment right to engage in a joint press conference with the prohibited organization, so content-based prohibitions on speech violated the First Amendment.

Finally, a new report by the Office of the Director of National Intelligence regarding the number of security clearances supports Mr. Mohamud's request that his attorneys be able to participate fully in review of classified material they seek in discovery and need to prepare their motions to suppress. According to the report, there are more than 4.2 million people with security clearances for access to classified information. Greg Miller, *How Many Security Clearances Have Been Issued? Nearly Enough For Everyone In The Washington Area*, The Washington Post (Sept. 20, 2011). This vast number undermines the government's claim that allowing security cleared counsel access to classified material is inconsistent with national security and supports concerns regarding over-classification. For example, if overheard through FISA procedures, Mohamed's teenage chitchat and text messages with friends would be treated as state secrets. In this Court's

consideration of the balance between legitimate security interests and those of the individual citizen charged with a federal crime, we urge the Court to return to the principles expressed in the cases in which the Supreme Court made clear that government privileges cannot trump a criminal defendant's constitutional rights. *Roviaro v. United States*, 353 U.S. 53, 60-61 (1957). As the Court stated in the seminal case on state secrets, the calculus is completely different in criminal, as opposed to civil, cases:

> The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented.

*Reynolds v. United States*, 345 U.S. 1, 12 (1953). The granting of millions of security clearances to government employees while denying access to classified material to security cleared officers of the court in this criminal case is inconsistent with these principles. This Court should provide the greatest participation by counsel for the person who has been spied upon to assure that the constitutional and statutory rights of the citizen – and by extension all citizens – are protected.

With these additional considerations, the Court should grant the requested relief on the motion for discovery and suppression of FISA-related material.

Respectfully submitted on February 3, 2012.

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Ellen C. Pitcher
Ellen C. Pitcher
Assistant Federal Public Defender