**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
**Ellen C. Pitcher**
**Assistant Federal Public Defender**
ellen_pitcher@fd.org
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon 97204**
**503-326-2123 Telephone**
**503-326-5524 Facsimile**

**Attorneys for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:10-cr-00475-KI-1 |
| Plaintiff, | REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS THE PRODUCTS OF NON-FISA INTERROGATIONS, SEARCHES, AND SEIZURES |
| v. | |
| MOHAMED OSMAN MOHAMUD, | |
| Defendant. | |

**Introduction**

In its response, the government makes no effort to defend the constitutionality of its actions with respect to the November 2, 2009, seizures and subsequent searches of Mr. Mohamud's computer and cell phone. The government also does not argue that the statements Mr. Mohamud made during the November 2, 2009, interrogation were voluntary. Instead, with no citation to supporting authority, the government claims its mere assertion that no direct evidence will be used during its case-in-chief is sufficient to deny the motion. The defense respectfully disagrees. Under well-established Supreme Court authority, the Court should rule on the constitutionality of the government's conduct and require the government to carry its burden to prove that evidence it offers at trial, as well as tactical decisions, were free from the taint of the primary illegality. In order to apply the exclusionary rule in the context of unlawful acts occurring during a national security investigation, the Court should conduct an evidentiary hearing and order additional discovery to develop the factual basis for its determinations whether the government's subsequently obtained evidence, tactics of inducement, and decisions regarding implementation of the sting operation were tainted by the earlier unlawful seizures, searches, and interrogation. The Court should reject the government's invitation to ignore its illegal actions and, instead, rule that the government's conduct was unconstitutional, then formulate the appropriate exclusionary remedy and such other relief as may be appropriate.

A.  **Because The Government Does Not Dispute The Constitutional Violations Asserted In The Motion To Suppress, The Court Should Rule In Favor Of The Defense.**

The government bears the burden of proving that warrantless searches and seizures fall into an exception to the warrant requirement. *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971);

*Hopkins v. Bonvicino*, 573 F.3d 752, 764 (9th Cir. 2009).  The government also bears the burden of proving that any statements made by a defendant are voluntary.  *Colorado v. Connelly*, 479 U.S. 157, 169 (1986); *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003).  In its response, the government makes no effort to argue that the seizure of Mr. Mohamud's computer and cell phone, subsequent searches of the computer and phone, and interrogation of Mr. Mohamud complied with the requirements of the Fourth and Fifth Amendments of the Constitution.

The government's failure to defend the legality of the seizures, searches, and interrogation also constitutes an admission of the constitutional violations.  *Cf. United States v. Hale*, 422 U.S. 171, 176 (1975) (failure to contest an assertion is considered evidence of acquiescence if it would have been natural under the circumstances to object to the assertion in question); *Paladin Associates, Inc. v. Montana Power Co.*, 328 F.3d 1145, 1164 (9th Cir. 2003) (failure to challenge in response brief deemed admission on summary judgment).  Further, the government has waived any claim that the searches, seizures, and interrogation that are the subject of this motion were lawful.  *See Paladin*, 328 F.3d at 1164 (citing *Kim v. Kang*, 154 F.3d 996, 1000 (9th Cir. 1998) (holding that the court ordinarily will not consider matters on appeal that are not specifically and distinctly argued in an appellant's opening brief)).

Because the government has failed to carry its burden of proof, the Court should rule:

- the seizures of the computer and cell phone violated the Fourth Amendment;
- the searches of the computer and cell phone violated the Fourth Amendment; and
- the November 2nd interrogation resulted in involuntary statements obtained in violation of the Fifth Amendment.

For the legal and factual reasons explained in the memorandum in support of the motion to suppress, and because the government does not contest the relevant facts or defend its actions, the Court should rule that the government acted in violation of the Constitution. The Court's rulings are necessary prerequisites to implementation of appropriate remedies.

**B.    The Exclusionary Rule Applies To All Direct And Indirect Evidence Procured As The Result Of The Government's Unconstitutional Conduct.**

Based on the unconstitutional seizures, searches, and interrogation, Supreme Court authority requires suppression of any direct and indirect fruits of those violations under the exclusionary rule. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963); *United States v. Crews*, 502 F.3d 1130, 1135 (9th Cir. 2007). The exclusionary rule has served as a critical firewall between the citizenry and overzealous law enforcement personnel for almost 100 years:

> The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the Federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights.

*Weeks v. United States*, 232 U.S. 383, 392 (1914). In applying the exclusionary rule to the States through the due process clause of the Fourteenth Amendment, the Court recognized that "the purpose of the exclusionary rule 'is to deter – to compel respect for the constitutional guaranty in the only effectively available way – by removing the incentive to disregard it.'" *Mapp v. Ohio*, 367 U.S. 643, 656 (1961) (quoting *Elkins v. United States*, 364 U.S. 206, 217 (1960)); *see also United States v. Washington*, 387 F.3d 1060, 1072-73 (9th Cir. 2004) (the exclusionary rule's twin aims are

deterrence and judicial integrity (citing *United States v. Crawford*, 372 F.3d 1048, 1054 (9th Cir. 2004) (en banc))).

In order to achieve adequate deterrence, both the direct and indirect products of the illegality must be suppressed. Indeed, the "essence of a provision forbidding the acquisition of evidence in a certain way is that not merely evidence so acquired shall not be used before the Court but that it shall not be used at all." *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920); *see Kastigar v. United States*, 406 U.S. 441, 453 (1972) (scope of Fifth Amendment privilege includes direct and derivative evidence). "[T]he prosecution is not to be put in a better position than it would have been if no illegality had transpired," *Nix v. Williams*, 467 U.S. 431, 443 (1984), and cannot treat derivative evidence as "manna from heaven," *United States v. Hubbell*, 530 U.S. 27, 42 (2000).

This case fits squarely into the rationale that supports application of the exclusionary rule – namely, that law enforcement agents must be deterred from violating the constitutional rights of United States citizens. *See United States v. Calandra*, 414 U.S. 338, 348 (1974) ("the need for deterrence and hence the rationale for excluding the evidence are strongest where the Government's unlawful conduct would result in imposition of a criminal sanction on the victim of the search."). Contrary to the government's suggestion (CR 75 at 3), the defense does not object to legitimate interagency coordination and does not seek to deter it. The defense does object, however, to the FBI violating the Fourth Amendment by searching and seizing a personal computer under false pretenses to further a federal investigation, then participating in wide-ranging interrogation to adduce involuntary statements, again to further a federal investigation. If the information gathered was not useful in formulating the government's interactions with Mr. Mohamud, the illegal investigative tactics would not have been undertaken.

C.  **Especially In The National Security Context, The Government Bears A Heavy Burden Of Proving Independent Source By Sworn Evidence, Subject To Cross-Examination And Judicial Fact-Finding.**

In the ordinary criminal case, the government bears the burden of proving that evidence it seeks to adduce at trial is independent of the constitutional violations committed by its agents. *Wong Sun*, 371 U.S. at 488 (the evidence the government seeks to adduce at trial must be free of the taint of "the primary illegality"); *accord United States v. Dudden*, 65 F.3d 1461, 1469 (9th Cir. 1995); *Tomlin v. Myers*, 30 F.3d 1235, 1242 n.16 (9th Cir. 1994). Here, the Court should also address whether the government's tactics and decisions made subsequent to the constitutional violations are entirely independent of that misconduct or whether the information learned unlawfully affected later decisions. *See Murray v. United States*, 487 U.S. 533, 542 (1988).

In national security investigations, the Court has a special duty to assure that subsequent evidence and actions are free from the taint of the primary illegality. The government frequently asserts the "mosaic theory" regarding national security: "What may seem trivial to the uninformed, may appear of great moment to one who has a broad view of the scene." *United States v. Maynard*, 615 F.3d 544, 562 (D.C. Cir. 2010) (quoting *C.I.A. v. Sims*, 471 U.S. 159, 178 (1985));[1] *see Berman v. C.I.A.*, 501 F.3d 1136, 1143 (9th Cir. 2007); *Kasza v. Browner*, 133 F.3d 1159, 1166 (9th Cir. 1998). The government agents who had been surveilling Mr. Mohamud derived many additional pieces of private information from watching an unlimited interrogation and having unlimited access to Mr. Mohamud's personal computer and cell phone. When the government invokes national security to justify encroachments on American liberty, the courts have a duty to assure that

---

[1] *Maynard* was recently affirmed by the Supreme Court on other grounds in *United States v. Jones,* 132 S.Ct. 945 (2012).

constitutional principles are vindicated. *See United States v. Ghailani*, 743 F.Supp.2d 261, 265 (S.D.N.Y. 2010) ("The temptation to allow our revulsion at [terrorist attacks], the human instinct for vengeance, and fear of terrorist attacks to overcome principles upon which our nation rests – principles that, although not always observed, are ideals to which we aspire – is powerful. If our nation is to continue as a bastion of liberty, however, we must remain true to our principles and overcome that temptation."). "Security subsists, too, in fidelity to freedom's first principles." *Boumediene v. Bush*, 553 U.S. 723, 797 (2008). The government cannot reasonably expect this Court to abdicate its duty to assure no products of unconstitutional activity were used based on a paper disclaimer.

For the Court to exercise its duty to assure that the products of illegal government activity did not taint either specific evidence or tactical decisions, three factual predicates are required:

- What information did government agents receive from the unconstitutional activity and when?

- What information did the government have prior to accessing the unconstitutionally obtained information?

- What is the provenance of trial evidence and inducement tactics independent of the unconstitutional investigative activity?

Although the defense bears no burden to demonstrate that evidence and decisions are derived from the unconstitutional governmental activity, the likelihood of the government's derivative use of information in its investigation is strong in this case. After a year of surveillance, the government made its first acknowledged direct undercover contacts with Mr. Mohamud within a very short time of the November 2nd primary illegality: the first wave of undercover agents – Bill Smith and an

unnamed agent – attempted to engage Mr. Mohamud on November 9th and November 13th respectively. Although a computer forensic report from the November 2nd seizure is not yet available, discovery shows that, after the initial computer search, FBI Intelligence Analyst (IA) William Tanton on December 29, 2009, asked the computer forensic examiner to "copy some specific information from the computer" and provide it to IA Tanton. IA Tanton and several members of the "International Terrorism Working Group" then met seven days later to "plan the upcoming operation."[2] However, the government makes no more than a conclusory statement within a pleading to assert its unconstitutional actions do not matter. On the contrary, the FBI would not have taken the extraordinary and illegal steps it did without believing that the information obtained from the computer and the interrogation would advance the investigation in a meaningful way.

The government's claims that the existence of a previous investigation establishes an independent source finds no support in, and in fact is contradicted by, the case law. In relevant exclusionary rule cases, the existence of a previous investigation is arguably irrelevant, and certainly not dispositive. For example, in *Murray*, the police had been engaged in a lengthy previous investigation but were still required to prove on remand, by objective and verifiable facts, that the officers would have sought a warrant regardless of information learned in their earlier illegal search. 487 U.S. at 542-44. The Supreme Court issued its remand order despite the government's assertion in its brief that the unwarranted entry occurred after a nine month-long investigation of criminal activity. Brief for the United States, *Murray v. United States*, 487 U.S. 533 (1988) (Nos. 86-995, 86-1016), 1987 WL 880335, at *2-3. In the present case, the government has produced no sworn

---

[2] The report discussing the meeting and "upcoming operation" is heavily redacted, so the defense cannot definitively state what operation related to Mr. Mohamud was being planned.

**PAGE 7    REPLY MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS THE PRODUCTS OF NON-FISA INTERROGATIONS, SEARCHES, AND SEIZURES**

evidence that the investigation prior to the unconstitutional actions disclosed criminal activity, so the burden should be even higher.

The Court should hold the government to a demanding standard in the context of governmental inducement that appears to have been motivated by and enabled by mosaic pieces derived from access to the subject's innermost thoughts. The government seized and searched Mr. Mohamud's personal laptop computer. For computer literate citizens like him, the computer is the modern diary and repository of traces disclosing intellectual and political activity, social associates and interactions, and insights into intimate life that come from access to a person's daily routine. The government also obtained involuntary statements from his own mouth – while observing his demeanor – regarding his family, his current life, his plans for the future, and his use of drugs and alcohol (including his concern that "his parents will freak out if they find out about the investigation or his use of drugs and alcohol"), even extending to being "questioned about Somalia." The amount of intimate knowledge gathered in preparation for inducement appears to be inextricably intermingled with the less revealing, and non-criminal, activity observed prior to the unconstitutional intrusions. It is the government's heavy burden to seek to extricate the subsequent inducements and evidence from the government's primary illegality.

The Court can only make the predicate findings for a determination of independent source based on sworn testimony responding to the three questions set forth earlier in this section. In order for the evidentiary hearing to be meaningful, the Court should order broad discovery to enable effective cross-examination, including the material sought in the discovery motion regarding the meetings and assessments behind the government's formulation of tactics at each stage of its operation. In the absence of proof by a preponderance of an independent source, the Court should

reject all subsequently developed physical evidence and tactical decisions as derivative of the primary illegality.

**Conclusion**

> This case involves the fundamental purposes of the exclusionary rule:
>
> Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charter of its own existence. As Mr. Justice Brandeis, dissenting, said in *Olmstead v. United States*: "Our government is the potent, the omnipresent teacher. For good or for ill, it teaches the whole people by its example. . . . If the government becomes a lawbreaker, it breeds contempt for law; it invites every man to become a law unto himself; it invites anarchy."

*Mapp*, 367 U.S. at 659 (internal citations omitted). Here, the government, in the absence of meeting a demanding standard that subsequent physical evidence and inducement tactics were independent, benefits and receives rewards for violating the most basic constitutional protections. The government's invitation to ignore its unconstitutional conduct would sanction a practice in which the government, after deciding to target an individual, would be free to coerce involuntary statements and unconstitutionally search everything associated with that person – computer, home, car, books, and phone – then use that information to create a tailor-made sting that would be most effective in inducing a criminal act. Once the sting was successful, the government would – as it has here – simply disclaim use of the direct products of the unconstitutional actions, even though the information obtained was used to formulate the successful sting operation. By doing so, the Court would provide government agents with a law-free zone in which they can violate the Constitution with impunity, with the judicial system sullied by its complicity in institutionalized disrespect for citizens' Fourth and Fifth Amendment rights.

For the reasons stated in the opening memorandum and this reply, the Court should grant the motion to suppress and order suppression of all derivative evidence absent a finding, after an evidentiary hearing, that physical evidence and investigatory tactics and decisions were derived independent of the government's primary illegality. If the government cannot extricate its proffered evidence and investigatory decision-making from the taint of its unconstitutional actions, this case should be dismissed.

Dated this 6th day of March, 2012.

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Ellen C. Pitcher
Ellen C. Pitcher
Assistant Federal Public Defender