S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
Assistant United States Attorney
ethan.knight@usdoj.gov
1000 SW Third Ave., Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
**JOLIE F. ZIMMERMAN**, DCB #465110
Trial Attorney
Counterterrorism Section
National Security Division
United States Department of Justice
Attorneys for the United States of America

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

UNITED STATES OF AMERICA                    Case No. 3:10-CR-00475-KI

      v.

MOHAMED OSMAN MOHAMUD,

      **Defendant.**

---

**GOVERNMENT'S AMENDED UNCLASSIFIED MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISCLOSE FISA-RELATED
MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY
AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY**

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................ 1

II.    SUMMARY OF THE FACTS ............................................ 2
       A.    PROCEDURAL HISTORY ....................................... 2
       B.    OVERVIEW OF THE FISA COLLECTIONS AT ISSUE ............... 3
             1.    Classified Material Redacted ........................ 3
             2.    Classified Material Redacted ........................ 3

III.   SUMMARY OF THE ARGUMENT ....................................... 3

IV.    THE FISA PROCESS .................................................. 4
       A.    OVERVIEW OF FISA .......................................... 4
       B.    THE FISA APPLICATION ...................................... 5
             1.    The Certification ................................... 7
             2.    Minimization Procedures ............................. 8
             3.    Attorney General Approval ........................... 9
       C.    THE FISC'S ORDERS ......................................... 9
       D.    USE OF FISA EVIDENCE IN CRIMINAL CASES AND
             DISTRICT COURT REVIEW OF FISC ORDERS .................... 12

V.     THIS COURT SHOULD DENY THE DEFENDANT'S REQUEST
       FOR DISCLOSURE AND CONDUCT THE REVIEW OF THE FISA
       MATERIALS *IN CAMERA* AND *EX PARTE* ........................... 13
       A.    APPLICABLE PROVISIONS IN FISA ............................ 13
       B.    *IN CAMERA, EX PARTE* REVIEW OF FISA MATERIALS
             IS THE RULE .............................................. 15
       C.    THERE IS NOTHING SPECIAL ABOUT THIS CASE THAT REQUIRES
             DEFENSE PARTICIPATION IN THIS COURT'S
             REVIEW OF THE FISA MATERIALS ............................. 16
             1.    Defense Input Is Not Necessary To Interpret FISA's
                   Statutory Terms .................................... 18
             2.    Defense Input Is Not Required To Address First
                   Amendment Issues ................................... 19
             3.    FISA's Certification Requirements Do Not Necessitate
                   Defense Involvement in This Court's Review ......... 20
             4.    FISA's Minimization Requirements Do Not Require
                   Defense Participation in the FISA Review Process ... 21
             5.    The Use of Traditional Criminal Tools Does Not Compel
                   the Need for Defense Participation in the FISA Review Process .... 22

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                    i

      6.     Nothing About the Length of Surveillance Suggests
Defense Participation Is Required .............................. 23

D.     DUE PROCESS DOES NOT REQUIRE DISCLOSURE
OF THE FISA MATERIALS ........................................ 23

E.     CIPA IS INAPPLICABLE TO DEFENDANT'S REQUEST
FOR DISCLOSURE OF THE FISA MATERIALS ..................... 27

F.     *IN CAMERA, EX PARTE* REVIEW IS CONSTITUTIONAL ........... 28

VI.    STANDARD OF REVIEW AND RELATED ISSUES ...................... 31

A.     CERTIFICATIONS ARE SUBJECT TO ONLY MINIMAL SCRUTINY . 32

B.     THERE IS NO BASIS FOR THIS COURT TO HOLD A
*FRANKS* HEARING ............................................... 33

C.     THE FISA COLLECTIONS ARE SUBJECT TO THE
"GOOD-FAITH" EXCEPTION ...................................... 37

VII.   FISA IS CONSTITUTIONAL ......................................... 38

A.     FISA'S "SIGNIFICANT PURPOSE" STANDARD IS
CONSTITUTIONAL ............................................... 39

B.     FISA SATISFIES THE FOURTH AMENDMENT ..................... 43

VIII.  THIS COURT SHOULD DENY DEFENDANT'S MOTION TO
SUPPRESS THE FISA EVIDENCE AND FIND THAT THE FISA
COLLECTIONS WERE LAWFULLY AUTHORIZED AND CONDUCTED ... 46

A.     THE FISA COLLECTIONS WERE LAWFULLY AUTHORIZED ...... 46

     1.     The Certifications ......................................... 46

          a.     Foreign Intelligence Information ...................... 47

          b.     "A Significant Purpose" .............................. 47

          c.     Information Not Reasonably Obtainable
Through Normal Investigative Techniques ............... 47

B.     EACH FISA COLLECTION MET FISA'S PROBABLE CAUSE
STANDARD ..................................................... 47

     1.     Classified Material Redacted ............................... 47

     2.     Classified Material Redacted ............................... 47

          a.     Classified Material Redacted ......................... 47

              (1)     Classified Material Redacted .................... 47

              (2)     Classified Material Redacted .................... 47

                    (a)     Classified Material Redacted ............. 48

                    (b)     Classified Material Redacted ............. 48

                    (c)     Classified Material Redacted ............. 48

                    (d)     Classified Material Redacted ............. 48

                    (e)     Classified Material Redacted ............. 48

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                   ii

        **b.**    **Classified Material Redacted** .......................... 48
                **(1)**    **Classified Material Redacted** .................... 48
                **(2)**    **Classified Material Redacted** .................... 48
                **(3)**    **Classified Material Redacted** .................... 48
                **(4)**    **Classified Material Redacted** .................... 48
                **(5)**    **Classified Material Redacted** .................... 49
    **3.**    **Classified Material Redacted** ...................... 49
        **a.**    **Classified Material Redacted** .......................... 49
        **b.**    **Classified Material Redacted** .......................... 49
        **c.**    **Classified Material Redacted** .......................... 49
        **d.**    **Classified Material Redacted** .......................... 49
        **e.**    **Classified Material Redacted** .......................... 49
        **f.**    **Classified Material Redacted** .......................... 49
    **4.**    **Classified Material Redacted** ...................... 49
        **a.**    **Classified Material Redacted** .......................... 49
                **(1)**    **Classified Material Redacted** .................... 50
                **(2)**    **Classified Material Redacted** .................... 50
        **b.**    **Classified Material Redacted** .......................... 50
                **(1)**    **Classified Material Redacted** .................... 50
                **(2)**    **Classified Material Redacted** .................... 50
                **(3)**    **Classified Material Redacted** .................... 50
    **5.**    **Classified Material Redacted** ...................... 50
        **a.**    **Classified Material Redacted** .......................... 50
        **b.**    **Classified Material Redacted** .......................... 50
        **c.**    **Classified Material Redacted** .......................... 50
        **d.**    **Classified Material Redacted** .......................... 51
**C.**    **THE COURT SHOULD UPHOLD THE FISC'S FINDINGS**
       **OF PROBABLE CAUSE** ................................. 51
**D.**    **THE FISA COLLECTIONS WERE LAWFULLY CONDUCTED** ...... 51
    **1.**    **Minimization** ......................................... 51
    **2.**    **The FISA Collections Were Properly Minimized** ............... 57

**IX.**    **CONCLUSION** ................................................. 57

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**     iii

## TABLE OF AUTHORITIES

### FEDERAL CASES

*ACLU Found. of So. Cal. v. Barr*, 952 F.2d 457 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . 27, 29

*Al Haramain Islamic Found. v. U.S. Dep't of Treasury*, 660 F.3d 1019 (9th Cir. 2011) . . . . . . . 1

*Amnesty Int'l U.S.A. v. Clapper*, 638 F.3d 118 (2d Cir.),
    *reh'g en banc denied*, 2011 WL 4381737 (2d Cir. Sep. 21, 2011) . . . . . . . . . . . . . . . . . 1

*Badrawi v. Dep't of Homeland Security*, 596 F. Supp. 2d 389 (D. Conn. 2009) . . . . . . . . . . . 25

*Brady v. Maryland*, 373 U.S. 83 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*CIA v. Sims*, 471 U.S. 159 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Franks v. Delaware*, 438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . 20, 32, 33-38

*Halperin v. CIA*, 629 F.2d 144 (D.C. Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Illinois v. Gates,* 662 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*In re All Matters Submitted to FISC,* 218 F. Supp. 2d 611 (FISA Ct. 2002) . . . . . . . . . . . . . 52

*In re Grand Jury Proceedings of the Special April 2002 Grand Jury,*
    347 F.3d 197 (7th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 32

*In re Kevork,* 634 F. Supp. 1002 (C.D. Cal. 1985),
    *aff'd,* 788 F.2d 566 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . 17, 43, 51-52, 53-54

*In re Sealed Case*, 310 F.3d 717 (FISA Ct. Rev. 2002) . . . . . . . . . . . . . . . . . 40, 45, 52, 53

*Los Angeles County v. Davis*, 440 U.S. 625 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Mayfield v. United States*, 504 F. Supp. 2d 1023 (D. Or. 2007) . . . . . . . . . . . . . . . . . 39, 41

*Mayfield v. United States*, 588 F.3d 1252 (9th Cir. 2009) . . . . . . . . . . . . . . . . . . . . . 39

*Phillippi v. CIA*, 655 F.2d 1325 (D.C. Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . 26

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**         iv

*Scott v. United States,* 436 U.S. 128 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*United States v. Abu-Jihaad,* 630 F.3d 102 (2d Cir. 2010) . . . . . . . . . . . . 5, 14, 15, 18, 28, 31, 41

*United States v. Abu-Jihaad,* 531 F. Supp. 2d 299 (D. Conn. 2008),
     *aff'd,* 630 F.3d 102 (2d Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 37

*United States v. Ahmed,* No. 06-CR-00147, 2009 U.S. Dist. LEXIS 120007
     (N.D. Ga. Mar. 19, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 29, 31, 32, 38, 58

*United States v. Amawi,* No. 3:06CR719, 2009 WL 961143 (N.D. Ohio Apr. 7, 2009) . . . . . . . 25

*United States v. Badia,* 827 F.2d 1458 (11th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . . . 32, 41, 46

*United States v. Baptista-Rodriguez,* 17 F.3d 1354 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . 28

*United States v. Belfield,* 692 F.2d 141 (D.C. Cir. 1982) . . . . . . . . . . . . . 14, 15, 17, 27, 29, 30, 36

*United States v. Benkahla,* 437 F. Supp. 2d 541 (E.D. Va. 2006) . . . . . . . . . . . . . . . . . . . . . . . 29

*United States v. Bin Laden,* 126 F. Supp. 2d 264 (S.D.N.Y. 2000) . . . . . . . . . . . . . . . . 25, 53-54

*United States v. Butenko,* 494 F.2d 593 (3d Cir.),
     *cert. denied sub nom. Ivanov v. United States,* 419 U.S. 881 (1974) . . . . . . . . . . . . . . . 58

*United States v. Campa,* 529 F.3d 980 (11th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32-33

*United States v. Cavanagh,* 807 F.2d 787 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . 18, 30, 43, 45

*United States v. Colkley,* 899 F.2d 297 (4th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34, 35

*United States v. Comprehensive Drug Testing, Inc.,* __ F.3d __, (9th Cir. 2011) . . . . . . . . . . . . 35

*United States v. Damrah,* 412 F.3d 618 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . 28, 45, 58

*United States v. Duggan,*
     743 F.2d 59 (2d Cir. 1984) . . . . . . . . . . . . . . . . . 14-15, 20, 32, 33, 34, 38, 41, 43, 45, 46

*United States v. Duka,* __ F.3d __,
     No. 07-CR-00459, 2011 WL 6794022 (3d Cir. 2011) . . . . . . . . . . . 13, 18, 38, 39, 42, 45

*United States v. El-Mezain,* 664 F.3d 467 (5th Cir. 2011) . . . . . . . . . . . . . . . . . 13, 14-15, 16, 28

**Government's Amended Unclassified Memorandum in Opposition to Defendant's**
**Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery**
**and for Suppression of the Fruits of FISA Activity**                                        v

*United States v. Falcone*, 364 F. Supp. 877 (D.N.J. 1973),
    *aff'd*, 500 F.2d 1401 (3d Cir. 1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

*United States v. Falvey,* 540 F. Supp. 1306 (E.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . . 29-30, 45

*United States v. Garcia,* 413 F.3d 201 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Gonzalez, Inc.*, 412 F.3d 1102 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Gowadia*, No. 05-00486,
    2009 WL 1649714 (D. Haw. June 8, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 29, 46

*United States v. Hammoud,* 381 F.3d 316 (4th Cir. 2004),
    *rev'd on other grounds*, 543 U.S. 1097 (2005),
    *op. reinstated in pertinent part*, 405 F.3d 1034 (4th Cir. 2005) . . . . . . . 31, 53-54, 55-56

*United States v. Hassoun*, No. 04-CR-60001, 2007 WL 1068127 (S. D. Fla. Apr. 4, 2007) . . . 37

*United States v. Isa,* 923 F.2d 1300 (8th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . 16, 43, 52, 54, 58

*United States v. Islamic Am. Relief Agency*, No. 07-00087-CR-W-NKL,
    2009 WL 5169536 (W.D. Mo. Dec. 21, 2009) . . . . . . . . . . . 14, 22, 32, 33, 51, 54, 56-57

*United States v. Jayyousi*, No. 04-60001,
    2007 WL 851278 (S.D. Fla. Mar. 15, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30

*United States v. Jeffus*, 22 F.3d 554 (4th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Johnson*, 952 F.2d 565 (1st Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 41

*United States v. Kashmiri*, No. 09-CR-830-4,
    2010 WL 4705159 (N.D. Ill., Nov. 10, 2010) . . . 14, 16, 31, 32-33, 34, 36, 37, 39, 43-44

*United States v. United States District Court (Keith)*, 407 U.S. 297 (1972) . . . . 18, 42, 43, 44-45

*United States v. Ketzeback*, 358 F.3d 987 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Leon,* 468 U.S. 897 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 58

*United States v. Martin*, 615 F.2d 318 (5th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Megahey*, 553 F. Supp. 1180 (E.D.N.Y. 1982) . . . . . . . . . . . . . . . . . . . . 29-30

**Government's Amended Unclassified Memorandum in Opposition to Defendant's**
**Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery**
**and for Suppression of the Fruits of FISA Activity**                                            vi

*United States v. Mubayyid*, 521 F. Supp. 2d 125 (D. Mass. 2007) . . . . . . . . 16, 34, 37, 40, 45, 58

*United States v. Nicholson*, No. 09-CR-40-BR,
       2010 WL 1641167 (D. Or. Apr. 21, 2010) . . . . . . . . . . . . . 14, 15, 20, 25, 29, 31, 32, 58

*United States v. Nicholson*, 955 F. Supp. 588 (E.D.Va. 1997) . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Ning Wen*, 477 F.3d 896 (7th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . 33, 38, 45, 58

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . 24-26, 28

*United States v. Ott*, 637 F. Supp. 62 (E.D. Cal. 1986),
       *aff'd*, 827 F.2d 473 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . 13, 41, 43, 45

*United States v. Photogrammetric Data Services*, 259 F.3d 229 (4th Cir. 2001)
       *overruled on other grounds, United States v. Comprehensive Drug Testing, Inc.,*
       473 F.3d 915 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v. Rahman*, 861 F. Supp. 247 (S.D.N.Y. 1994),
       *aff'd*, 189 F.3d 88 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20, 32, 52, 53

*United States v. Reynolds*, 345 U.S. 1 (1953) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Rivera*, 527 F.3d 891 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*United States v. Rosen*, 447 F. Supp. 2d 538 (E.D. Va. 2006) . . . . . . . . . 11, 15-16, 20, 22, 31, 54

*United States v. Salameh*, 152 F.3d 88 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

*United States v. Sarkissian*, 841 F.2d 959 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 42

*United States v. Sattar*, 2001 WL 22137012 (S.D.N.Y. 2003),
       *aff'd*, 590 F.3d 93 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Spanjol*, 720 F. Supp. 55 (E.D. Pa .1989),
       *aff'd*, 958 F.2d 365 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 29, 58

*United States v. Thomson*, 752 F. Supp. 75 (W.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . 16, 17, 54, 55

*United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980) . . . . . . . . . . . . . . . . . . . 40, 41

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**

*United States v. U.S. Gypsum Co.*, 333 U.S. 364 (1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Varca*, 896 F.2d 900 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*United States v. Warsame*, 547 F. Supp. 2d 982 (D. Minn. 2008) . . . . . . . . . 17, 31, 32, 40, 45, 58

*United States v. Yunis*, 867 F.2d 617 (D.C. Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## FEDERAL STATUTES

18 U.S.C. App. 3 (Classified Information Procedures Act) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

18 U.S.C. § 2332a(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

18 U.S.C. §§ 2510-2522 (Omnibus Crime Control and Safe Streets Act) . . . . . . . . . . . . . . . . 20

18 U.S.C. § 2518(1)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

18 U.S.C. § 2518(3)(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

50 U.S.C. §§ 1801-1812 (Foreign Intelligence Surveillance Act (electronic surveillance)) . . . . . 1

50 U.S.C. § 1801(a)(1), (2), or (3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

50 U.S.C. § 1801(a)(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. § 1801(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

50 U.S.C. § 1801(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

50 U.S.C. § 1801(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

50 U.S.C. § 1801(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

50 U.S.C. § 1801(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. § 1801(h)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8

50 U.S.C. § 1801(h)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 52, 54

50 U.S.C. § 1801(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

50 U.S.C. § 1801(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

50 U.S.C. § 1803(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

50 U.S.C. § 1803(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

50 U.S.C. § 1804 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. § 1804(a)(1)-(9) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

50 U.S.C. § 1804(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 20, 39, 46

50 U.S.C. § 1805(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

50 U.S.C. § 1805(a)(1)-(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

50 U.S.C. § 1805(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

50 U.S.C. § 1805(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20

50 U.S.C. § 1805(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 1805(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 1805(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 1805(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

50 U.S.C. § 1805(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**                                        viii

50 U.S.C. § 1805(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1806(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1806(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1806(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1806(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
50 U.S.C. § 1806(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 14, 27, 29, 57
50 U.S.C. § 1806(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24, 28
50 U.S.C. § 1806(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 60
50 U.S.C. §§ 1821-1829 (Foreign Intelligence Surveillance Act (physical searches)) . . . . . . . . . 1
50 U.S.C. § 1821(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 10-11
50 U.S.C. § 1821(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
50 U.S.C. § 1821(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
50 U.S.C. § 1821(4)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
50 U.S.C. § 1821(4)(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 54
50 U.S.C. § 1823 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
50 U.S.C. § 1823(a)(1)-(8) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
50 U.S.C. § 1823(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
50 U.S.C. § 1823(a)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 8, 20, 46
50 U.S.C. § 1824(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
50 U.S.C. § 1824(a)(1)-(4) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
50 U.S.C. § 1824(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19
50 U.S.C. § 1824(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 20
50 U.S.C. § 1824(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1824(c)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1824(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1824(d)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1824(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1824(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6
50 U.S.C. § 1825(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1825(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1825(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
50 U.S.C. § 1825(f) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
50 U.S.C. § 1825(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4, 14, 57
50 U.S.C. § 1825(h) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## EXECUTIVE ORDER

Exec. Order No. 13526 § 4.1(a)(3) (Dec. 29, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**

## LEGISLATIVE HISTORY

H.R. Rep. No. 95-1283 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 53, 55, 56-57

S. Rep. No. 95-701 (1978),
> *reprinted in* 1978 U.S.C.C.A.N. 3973, 3980 . . . . . . . . . . . . . . . . . . . . . . . 44, 45, 52, 55, 56

## OTHER AUTHORITIES

USA PATRIOT Act, Pub. L. No. 107-56, 115 Stat. 271 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**                                          x

## I.    **INTRODUCTION**

On June 22, 2011, defendant Mohamed Osman Mohamud's ("Mohamud," "the defendant") filed a Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity ("Defendant's Motion," ECF No. 54), along with a supporting memorandum of law ("Defendant's Memorandum," ECF No. 55).[1] In his motion, defendant seeks: (1) disclosure of all applications, orders, and related materials submitted to the Foreign Intelligence Surveillance Court ("FISC"), (collectively, the "FISA materials");[2] and (2) suppression of information obtained or derived pursuant to the Foreign Intelligence Surveillance Act, as amended ("FISA").[3] The Government is not aware of any case

---

[1] The defendant filed a Supplemental Memorandum in Support of Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity on February 3, 2012 (Defendant's Supplemental Memorandum). In his supplemental memorandum, the defendant claims to refer to "four recent developments that inform potential discovery and suppression issues regarding" the Foreign Intelligence Surveillance Act of 1978 (FISA). (Def.'s Supplemental Mem. 1-2.) In fact, none of the items the defendant discusses in his supplemental memorandum has any bearing on the issues in his motion. The first development is the Second Circuit's decision in *Amnesty Int'l U.S.A. v. Clapper*, 638 F.3d 118 (2d Cir.), *reh'g en banc denied*, 2011 WL 4381737 (2d Cir. Sep. 21, 2011), which was decided before the defendant filed his original motion. *Clapper* is a civil case that concerns challenges to the FISA Amendments Act (FAA). As defendant concedes, the Second Circuit has yet to even rule on the merits of this case; the only issue that has been decided thus far is the plaintiffs' standing to challenge the FAA. The second development, public statements from a United States Senator, made long after the passage of the FAA, about possible non-compliance with certain FAA provisions, has no binding or precedential value whatsoever. The third development concerns the Ninth Circuit's decision in *Al Haramain Islamic Found. v. U.S. Dep't of Treasury*, 660 F.3d 1019 (9th Cir. 2011). That civil case concerned Al Haramain's challenge to its designation as a terrorist organization and the freezing of its assets by the Treasury Department's Office of Foreign Assets Control; it did not concern any criminal issues of discovery or any issue arising under FISA. Finally, the fourth development concerns a Washington Post article about the number of people in the United States who have a security clearance. Nothing about this article questions or changes in any way the legal process mandated by FISA or the assertion of privilege by the Attorney General in this case. Moreover, as explained below, whether counsel has a clearance is immaterial to this Court's determination of the legal issues raised by defendant's motion.

CLASSIFIED MATERIAL REDACTED

[2] **CLASSIFIED MATERIAL REDACTED**

[3] The provisions of FISA that deal with electronic surveillance are located at 50 U.S.C. §§ 1801-1812; those that deal with physical searches are located at 50 U.S.C. §§ 1821-1829. The two sets of provisions are in many respects

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                              **1**

in which a court has ordered disclosure of FISA materials; nor is the Government aware of any case in which a court has granted suppression of evidence obtained or derived pursuant to FISA. For the reasons set forth below, the Court should deny defendant's motion.[4]

Defendant's motion has triggered this Court's review of the FISA applications and orders pursuant to 50 U.S.C. § 1806(f) and § 1825(g) to determine whether the FISC-authorized surveillance and physical searches at issue were lawfully authorized and conducted. As explained below, this Court should conduct an *in camera, ex parte* review of the documents relevant to the defendant's motion, in accordance with the provisions of 50 U.S.C. § 1806(f) and § 1825(g). The Government submits that the Court will conclude from its *in camera, ex parte* review of the relevant FISA materials that the FISA electronic surveillance and physical searches at issue in this case were lawfully authorized and conducted, that the FISA materials should not be disclosed, and that the fruits of the surveillance and physical searches should not be suppressed.

## II.   SUMMARY OF THE FACTS

### A.   PROCEDURAL HISTORY

On November 26, 2010, the defendant was arrested on a criminal complaint filed in the District of Oregon charging him with attempted use of a weapon of mass destruction, in violation of Title 18, United States Code, Section 2332a(a)(2)(A). He was subsequently indicted on November 29, 2010, by a Portland federal grand jury on the same charge, which is based on the

---

parallel and almost identical. Citations herein are generally to the two sets of provisions in parallel, with the first citation being to the relevant electronic surveillance provision, and the second citation being to the relevant physical search provision.

[4] **CLASSIFIED MATERIAL REDACTED**

defendant's attempt to bomb the Christmas tree lighting event at Portland's Pioneer Courthouse Square on November 26, 2010. On November 29, 2010, the Government notified this Court and the defendant that the Government intends to introduce at trial against the defendant information obtained or derived from electronic surveillance and physical searches conducted pursuant to FISA.

      **B.    <u>OVERVIEW OF THE FISA COLLECTIONS AT ISSUE</u>**

**CLASSIFIED MATERIAL REDACTED**

          **1.    CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

          **2.    CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

**III.    <u>SUMMARY OF THE ARGUMENT</u>**

The defendant's motion is wholly without merit. Every federal court that has been asked to determine the legality of a particular FISA collection has been able to do so without the assistance of defense counsel. Contrary to the defendant's assertions, there is nothing unique about this case that would require defense participation in this process. The defendant's arguments regarding FISA's constitutionality have been thoroughly considered and rejected by numerous federal courts since FISA was enacted. In fact, every federal court to have considered these issues has found FISA and its procedures for the use of FISA evidence in criminal proceedings to be constitutional.

**CLASSIFIED MATERIAL REDACTED**

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**            **3**

The Government's pleadings and the supporting FISA materials are submitted not only to oppose the defendant's motion, but also to support the United States' request, pursuant to FISA, that this Court: (1) conduct an *in camera, ex parte* review of the FISA materials; (2) find that the FISA collection at issue was both lawfully authorized and lawfully conducted; and (3) order that none of the classified documents, nor any of the classified information contained therein, be disclosed to the defense, and instead, that they be maintained by the United States under seal.

## IV.    THE FISA PROCESS

### A.    OVERVIEW OF FISA

Enacted in 1978, and subsequently amended, FISA authorizes the Chief Justice of the United States to designate eleven United States District Judges to sit as judges of the FISC. 50 U.S.C. § 1803(a)(1). The FISC judges are empowered to consider *ex parte* applications submitted by the Executive Branch for electronic surveillance and physical searches when a significant purpose of the application is to obtain foreign intelligence information, as defined in FISA. Rulings of the FISC are subject to review by the Foreign Intelligence Surveillance Court of Review ("FISC of Review"), which is composed of three United States District or Circuit Judges who are designated by the Chief Justice. *See* 50 U.S.C. § 1803(b). As discussed below, a District Court also has jurisdiction to determine the legality of electronic surveillance and physical searches authorized by the FISC when the fruits of that intelligence collection are used against an "aggrieved person."[5] *See* 50 U.S.C. §§ 1806(f), 1825(g).

---

[5] An "aggrieved person" is defined as the target of electronic surveillance or "any other person whose communications or activities were subject to electronic surveillance," 50 U.S.C. § 1801(k), as well as "a person whose premises, property, information, or material is the target of physical search" or "whose premises, property,

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                            **4**

As originally enacted, FISA required that a high-ranking member of the Executive Branch of government certify that "the purpose" of the FISA application was to obtain foreign intelligence information. In 2001, FISA was amended as part of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act (USA PATRIOT Act).[6] One change to FISA accomplished by the USA PATRIOT Act was the abrogation of the requirement that the primary purpose of the requested FISA surveillance be the gathering of foreign intelligence information; instead, a high-ranking official is now to certify that the acquisition of foreign intelligence information is "a significant purpose" of the requested surveillance. 50 U.S.C. § 1804(a)(6)(B). As discussed in detail below, the "significant purpose" standard is constitutional.

## B.    THE FISA APPLICATION

FISA provides a statutory procedure whereby the Executive Branch may obtain a judicial order or warrant authorizing the use of electronic surveillance and/or physical searches within the United States where a significant purpose is the collection of foreign intelligence information. *United States v. Abu-Jihaad,* 630 F.3d 102, 117-118 (2d Cir. 2010); *United States v. Johnson,* 952 F.2d 565, 571 (1st Cir. 1991); 50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B). Under FISA, "[f]oreign intelligence information" includes information that "relates to, and if concerning a

/ / /

---

information, or material was subject to physical search." 50 U.S.C. § 1821(2). The defendant is an "aggrieved person" under FISA, and as noted above, he was provided with notice of his status as such and of the Government's intent to use FISA-obtained or -derived information against him at trial.

[6] Pub. L. No. 107-56, 115 Stat. 271 (2001).

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**                                        5

United States person[7] is necessary to, the ability of the United States to protect against . . . actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power [and/or] sabotage or international terrorism, or the international proliferation of weapons of mass destruction by a foreign power or an agent of a foreign power." 50 U.S.C. §§ 1801(e), 1821(1). "Foreign intelligence information" also includes information with respect to a "foreign power or foreign territory that relates to, and if concerning a United States person is necessary to – (A) the national defense or the security of the United States; or (B) the conduct of the foreign affairs of the United States." 50 U.S.C. §§ 1801(e)(2), 1821(1). With the exception of emergency authorizations, FISA requires that a court order be obtained before any electronic surveillance or physical search may be conducted.[8]

An application to conduct electronic surveillance pursuant to FISA must contain, among other things: (1) the identity of the federal officer making the application; (2) the identity, if known, or a description of the specific target of the electronic surveillance; (3) a statement of the facts and circumstances supporting probable cause to believe that the target is a foreign power or an agent of a foreign power, and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

---

[7] Under FISA, a "United States person" means a citizen of the United States, an alien lawfully admitted for permanent residence as defined in Section 101(a)(20) of the Immigration and Nationality Act, an unincorporated association a substantial number of members of which are citizens of the United States or aliens lawfully admitted for permanent residence, or a corporation which is incorporated in the United States, but does not include a corporation or association that is a foreign power, as defined in 50 U.S.C. § 1801(a)(1), (2), or (3). *See* 50 U.S.C. §§ 1801(i), 1821(1). Mohamud is a United States person.

[8] As noted above, FISA provides that in emergency situations the Attorney General, as defined in FISA, may authorize electronic surveillances or physical searches without an order from the FISC. *See* 50 U.S.C. §§ 1805(e), 1824(e).

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                                    6

(4) a statement of the proposed minimization procedures; (5) a detailed description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance; (6) a certification, discussed below, of a high-ranking government official; (7) a summary of the means by which the electronic surveillance will be effected and a statement whether physical entry is required to effect the electronic surveillance; (8) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, or places specified in the application; and (9) the proposed duration of the electronic surveillance. *See* 50 U.S.C. § 1804(a)(1)-(9).

An application to conduct a physical search pursuant to FISA must contain similar information as an application to conduct electronic surveillance. *See* 50 U.S.C. § 1823(a)(1)-(8). The primary difference is that an application to conduct a physical search must also contain a statement of the facts and circumstances supporting probable cause to believe that "the premises or property to be searched contains foreign intelligence information" and that "each premises or property to be searched is owned, used, possessed by, or is in transit to or from" the target. *See* 50 U.S.C. § 1823(a)(3)(B), (C).

### 1.    The Certification

An application to the FISC for a FISA order or warrant must include a certification from a high-ranking Executive Branch official with national security responsibilities that:

> (A) the certifying official deems the information sought to be foreign intelligence information;
>
> (B) a significant purpose of the surveillance is to obtain foreign intelligence information;

(C) such information cannot reasonably be obtained by normal investigative techniques;

(D) designates the type of foreign intelligence information being sought according to the categories described in 50 U.S.C. § 1801(e); and

(E) includes a statement of the basis for the certification that –

> (i) the information sought is the type of foreign intelligence information designated; and

> (ii) such information cannot reasonably be obtained by normal investigative techniques.

50 U.S.C. § 1804(a)(6). *See also* 50 U.S.C. § 1823(a)(6) (physical search).

### 2.    Minimization Procedures

The Attorney General has adopted, and the FISC has approved, minimization procedures that regulate the acquisition, retention, and dissemination of information obtained through FISA collection about United States persons, including persons who are not the targets of the FISA collection.  FISA requires that such minimization procedures be:

> reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information.

50 U.S.C. § 1801(h)(1); *see also* 50 U.S.C. § 1821(4)(A) (physical search).

In addition, minimization procedures also include "procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about

to be committed and that is to be retained or disseminated for law enforcement purposes." 50 U.S.C. § 1801(h)(3); *see also* 50 U.S.C. § 1821(4)(C) (physical search).

In order to fulfill the statutory requirements discussed above, the Attorney General has adopted standard minimization procedures for FISC-authorized electronic surveillance and physical search that are on file with the FISC and that are incorporated by reference into every relevant FISA application that is submitted to the FISC.  As a result, **[CLASSIFIED MATERIAL REDACTED]** the orders authorizing the FISA collection at issue in this case found that the applicable standard minimization procedures, as well as any supplemental minimization procedures that may have been proposed, met FISA's statutory requirements.  The FISC orders in the dockets at issue here directed the Government to follow the approved minimization procedures in conducting the FISA collection.

### 3.     Attorney General Approval

FISA further requires that the Attorney General (as defined by 50 U.S.C. § 1801(g)) approve applications for electronic surveillance and/or physical search before they are presented to the FISC.  Contrary to Mohamud's contention (Def.'s Mem. 13, 23), the Attorney General does not certify any of the required prerequisites, enumerated above, for presenting an application to the FISC.

### C.     THE FISC'S ORDERS

Once approved by the Attorney General, the application is submitted to the FISC and assigned to one of its judges.  The FISC may approve the requested electronic surveillance or physical search only upon finding, among other things, that: (1) "the application has been made by

a Federal officer and approved by the Attorney General;" (2) there is probable cause to believe that (a) the target of the electronic surveillance and/or physical search is a foreign power or an agent of a foreign power, and that (b) the facilities or places at which the electronic surveillance is directed are being used, or are about to be used, by a foreign power or an agent of a foreign power [or that the premises or property to be searched is owned, used, or possessed by, or is in transit to or from a foreign power or an agent of a foreign power]; (3) the proposed minimization procedures meet the statutory requirements set forth in 50 U.S.C. § 1801(h) (electronic surveillance) and/or 50 U.S.C. § 1821(4) (physical search); (4) the application contains all of the statements and certifications required by Section 1804 or Section 1823; and (5) if the target is a United States person, that the certifications are not clearly erroneous.  50 U.S.C. §§ 1805(a)(1)-(4), 1824(a)(1)-(4).

FISA defines "foreign power" to include "a group engaged in international terrorism or activities in preparation therefore," 50 U.S.C. §§ 1801(a)(4), 1821(1).  As it relates to United States persons, "agent of a foreign power" includes any person who:

> (C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;
>
> . . . .
>
> or
>
> (E)  knowingly aids or abets any person in the conduct of activities described in [the subparagraph above] . . . or knowingly conspires with any person to engage in activities described in [the subparagraph above.]

50 U.S.C. §§ 1801(b)(2) (electronic surveillance), 1821(1) (physical search).

FISA specifies that no United States person may be considered a foreign power or an agent of a foreign power solely on the basis of activities protected by the First Amendment to the Constitution of the United States. 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A). Although protected First Amendment activities cannot form the sole basis for FISC-authorized electronic surveillance or physical search, they may be considered by the FISC if there is other activity indicative that the target is an agent of a foreign power. *United States v. Rosen*, 447 F. Supp. 2d 538, 549-50 (E.D. Va. 2006); *United States v. Rahman*, 861 F. Supp. 247, 252 (S.D.N.Y. 1994), *aff'd,* 189 F.3d 88 (2d Cir. 1999). Additionally, FISA provides that "[i]n determining whether or not probable cause exists . . . a judge may consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target." 50 U.S.C. §§ 1805(b), 1824(b).

If the FISC is satisfied that the FISA application meets the statutory provisions and has made all of the necessary findings, the FISC issues an *ex parte* order[9] authorizing the electronic surveillance and/or physical search requested in the application. 50 U.S.C. §§ 1805(a), 1824(a). The order must specify: (1) the identity, if known, or a description of the specific target of the collection; (2) the nature and location of each facility or place at which the electronic surveillance will be directed or of each of the premises or properties that will be searched; (3) the type of information sought to be acquired and the type of communications or activities that are to be subjected to the electronic surveillance, or the type of information, material, or property that is to

---

[9] **CLASSIFIED MATERIAL REDACTED**

be seized, altered, or reproduced through the physical search; (4) the means by which electronic surveillance will be effected and whether physical entry will be necessary to effect that surveillance, or a statement of the manner in which the physical search will be conducted; and (5) the period of time during which electronic surveillance is approved and/or the authorized scope of each physical search. 50 U.S.C. §§ 1805(c)(1), 1824(c)(1). The order also must direct that the applicable minimization procedures be followed. 50 U.S.C. §§ 1805(c)(2)(A), 1824(c)(2)(A). The FISC also retains the authority to review, before the end of the authorized period of electronic surveillance or physical search, the United States' compliance with the requisite minimization procedures. 50 U.S.C. §§ 1805(d)(3), 1824(d)(3).

Under FISA, electronic surveillance and/or physical searches targeting a United States person may be approved for up to ninety days.[10] 50 U.S.C. §§ 1805(d)(1), 1824(d)(1). Extensions may be granted, but only if the United States submits another application that complies with FISA's requirements. 50 U.S.C. §§ 1805(e)(2), 1824(d)(2).

### D.    USE OF FISA EVIDENCE IN CRIMINAL CASES AND DISTRICT COURT REVIEW OF FISC ORDERS

FISA authorizes the use in a criminal prosecution of information obtained or derived from any FISC-authorized electronic surveillance and/or physical search, provided that advance authorization is obtained from the Attorney General, *see* 50 U.S.C. §§ 1806(b), 1825(c), and that proper notice is given to the court and to each aggrieved person against whom the information is to be used, *see* 50 U.S.C. §§ 1806(c), (d), and 1825(d), (e). Upon receiving notice, an aggrieved

---

[10] **CLASSIFIED MATERIAL REDACTED**

person may then move to suppress the use of the FISA information on two grounds: (1) that the information was unlawfully acquired under FISA; or (2) that the electronic surveillance or physical search was not conducted in conformity with the FISC's order(s). 50 U.S.C. §§ 1806(e), 1825(f). Accordingly, as discussed in detail in later sections, suppression motions are evaluated using FISA's probable cause standard, not the probable cause standard for criminal warrants. *See, e.g., United States v. El-Mezain*, 664 F.3d 467, 564 (5th Cir. 2011) ("This probable cause standard is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power."); *United States v. Duka*, __ F.3d __, No. 07-CR-00459, 2011 WL 6794022, at *4 (3d Cir. 2011) (rejecting appellant's challenge to FISA's probable cause standard because it does not require indications that a crime has been committed); *United States v. Pelton*, 835 F.2d 1067, 1075 (4th Cir. 1987).

## V.   THIS COURT SHOULD DENY THE DEFENDANT'S REQUEST FOR DISCLOSURE AND CONDUCT THE REVIEW OF THE FISA MATERIALS *IN CAMERA* AND *EX PARTE*

### A.   APPLICABLE PROVISIONS IN FISA

FISA provides that, in assessing the legality of challenged FISA electronic surveillance or physical searches, the district court, "shall, notwithstanding any other law, if the Attorney General files [as he has filed in this proceeding] an affidavit or declaration under oath that disclosure or an adversary hearing would harm the national security of the United States, review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                    13

and conducted." 50 U.S.C. §§ 1806(f), 1825(g). On the filing of the Attorney General's affidavit or declaration, the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order or other materials relating to the surveillance [or physical search] *only where such disclosure is necessary* to make an accurate determination of the legality of the surveillance [or search]. 50 U.S.C. §§ 1806(f), 1825(g) (emphasis added). Thus, the propriety of the disclosure of any FISA applications or orders to the defendant cannot even be considered unless and until the district court has first concluded that it is unable to make an accurate determination of the legality of the collection after reviewing the Government's submissions (and any supplemental pleadings that the district court may request) *in camera* and *ex parte*. *See El-Mezain*, 664 F.3d at 566; *Abu-Jihaad*, 630 F.3d at 129; *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982); *United States v. Nicholson*, No. 09-CR-40-BR, 2010 WL 1641167, at *4 (D. Or. Apr. 21, 2010) ("After an *in-camera* review, the court 'has the discretion to disclose portions of the documents, under appropriate protective orders, *only if [the court] decides that such disclosure is necessary to make an accurate determination of the legality of the surveillance.")* (quoting *United States v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984) (emphasis in *Nicholson*); *United States v. Kashmiri*, No. 09-CR-830-4, 2010 WL 4705159, at *2 (N.D. Ill., Nov. 10, 2010); *United States v. Islamic Am. Relief Agency ("IARA")*, No. 07-00087-CR-W-NKL, 2009 WL 5169536, at *3-4 (W.D. Mo. Dec. 21, 2009).

If the district court is able to make an accurate determination of the legality of the surveillance based on its *in camera, ex parte* review of the materials submitted by the United States, then the court *may not* order disclosure of any of the FISA materials to the defense, unless

otherwise required by due process. *El-Mezain*, 664 F.3d at 566; *United States v. Duggan*, 743 F.2d 59, 78 (2d Cir. 1984); *Kashmiri*, 2010 WL 4705159, *2. Likewise, if this Court is able to determine the legality of the FISA collection based on its *ex parte, in camera* review of the FISA materials, then there will be no need for a hearing on the defendant's motion: "The demand for an adversary hearing must fall with the demand for disclosure of the *in camera* Exhibit. They are inextricably linked. [When] disclosure is not necessary, no purpose would be served by an evidentiary hearing." *Belfield*, 692 F.2d at 147.

**B.    *IN CAMERA, EX PARTE* REVIEW OF FISA MATERIALS IS THE RULE**

Federal courts have repeatedly and consistently held that FISA "anticipates that an *in camera, ex parte* determination is to be the rule," with disclosure and an adversarial hearing being the "exception, occurring *only* when necessary." *Belfield*, 692 F.2d at 147 (emphasis in original); *accord, El-Mezain*, 664 F.3d at 567 ("[D]isclosure of FISA materials is the exception and *ex parte, in camera* determination is the rule") (citing *Abu-Jihaad*, 630 F.3d at 129); *Duggan*, 743 F.2d at 78; *Nicholson*, 2010 WL 1641167, at *3-4; *Rosen*, 447 F. Supp. 2d at 546; *United States v. Spanjol*, 720 F. Supp. 55, 59 (E.D. Pa .1989), *aff'd*, 958 F.2d 365 (3d Cir. 1992). Indeed, no court has <u>ever</u> found it necessary to disclose FISA materials to a criminal defendant to assist the court's determination of the lawfulness of either electronic surveillance or physical searches under FISA. *See El-Mezain*, 664 F.3d at 566 (quoting the district court's statement that no court has ever ordered disclosure); *In re Grand Jury Proceedings of the Special April 2002 Grand Jury* ("*In re Grand Jury Proceedings*"), 347 F.3d 197, 203 (7th Cir. 2003) (noting that no court has ever ordered disclosure of FISA materials). As a consequence, to the Government's knowledge no

court has ever suppressed FISA-obtained or -derived information, nor has any court held an adversary hearing on motions to disclose or to suppress. *See Kashmiri*, 2010 WL 4705159, at \*2; *United States v. Gowadia*, No. 05-00486, 2009 WL 1649714, at \*2 (D. Haw. June 8, 2009); *United States v. Mubayyid*, 521 F. Supp. 2d 125, 130 (D. Mass. 2007) (collecting cases); *Rosen*, 447 F. Supp. 2d at 546 (same).

In fact, every court that has addressed a motion to disclose FISA dockets or to suppress FISA materials has been able to reach a conclusion as to the legality of the FISA collection at issue based on its *in camera, ex parte* review. *See, e.g., Spanjol*, 720 F. Supp. at 58-59; *United States v. Sattar*, 2001 WL 22137012, at \*6 (S.D.N.Y. 2003) (citing *United States v. Nicholson*, 955 F. Supp. 588, 592 n.11 (E.D. Va. 1997) ("this court knows of no instance in which a court has required an adversary hearing or disclosure in determining the legality of a FISA surveillance")), *aff'd,* 590 F.3d 93 (2d Cir. 2009); *see also El-Mezain*, 664 F.3d at 566 (quoting district court's statement that no court has ever held an adversarial hearing to assist the court); *United States v. Isa,* 923 F.2d 1300, 1307 (8th Cir. 1991); *United States v. Abu-Jihaad,* 531 F. Supp. 2d 299, 310 (D. Conn. 2008), *aff'd,* 630 F.3d 102, 129-30 (2d Cir. 2010); *Mubayyid,* 521 F. Supp. 2d at 130; *Rosen,* 447 F. Supp. 2d at 546; *United States v. Thomson,* 752 F. Supp. 75, 79 (W.D.N.Y. 1990).

C.    **THERE IS NOTHING SPECIAL ABOUT THIS CASE THAT REQUIRES DEFENSE PARTICIPATION IN THIS COURT'S REVIEW OF THE FISA MATERIALS**

There is nothing extraordinary about the FISA materials that would justify this case becoming the first "exception" to the rule of three decades of FISA litigation - that is, the first-ever case to require the production and disclosure of highly sensitive and classified FISA dockets.

In this case, the FISA materials are sufficient to allow the Court to make an accurate determination of the legality of the FISA collection. The FISA materials are well-organized and easily reviewable by the Court *in camera* and *ex parte*; indeed, they "are straightforward and readily understood." *In re Kevork*, 634 F. Supp. 1002, 1008 (C.D. Cal. 1985), *aff'd*, 788 F.2d 566 (9th Cir. 1986). Moreover, as in other cases, "[t]he determination of legality in this case is not complex." *Belfield*, 692 F.2d at 147; *see also United States v. Warsame*, 547 F. Supp. 2d 982, 987 (D. Minn. 2008) ("issues presented by the FISA applications are straightforward and uncontroversial"); *Abu-Jihaad*, 531 F. Supp. 2d at 310; *Thomson*, 752 F. Supp. at 79. The defendant makes a number of arguments as to why defense participation in the FISA review process is necessary. The Government respectfully disagrees. The Government submits that this Court, much like the aforementioned courts, will be able to review the FISA dockets *in camera* and *ex parte*.

The defendant contends that this Court needs defense help to interpret the FISA statute and how that statute was used in this case. In particular, the defendant argues that defense input is necessary to address questions related to: (1) statutory terms such as "foreign power" and "agent of a foreign power" and their relationship to criminal activity; (2) the statutory prohibition on issuing warrants based on activity that is protected by the First Amendment; (3) the necessity for use of FISA; (4) minimization of the Government's intrusion; (5) the interplay between the motion to suppress the FISA searches and the motion to suppress the non-FISA searches; and (6) the length of the surveillance and searches. (Def.'s Mem. 6-18.)[11] In fact, with the possible

---

[11] **CLASSIFIED MATERIAL REDACTED**

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**                                    17

exception of no. (5), these questions are present in a district court review of *any* FISA targeting a U.S. person and have been addressed by numerous federal courts without any assistance from the defense. There is nothing unique about FISA that makes it too complex for a district court to interpret or apply. FISC judges are in fact Article III district court judges who review and rule on FISA applications in addition to their regular caseload of civil and criminal cases. This Court is equally suited to reviewing the FISA materials in this case.

1.    **Defense Input Is Not Necessary To Interpret FISA's Statutory Terms**

The defendant argues that because FISA requires some nexus with criminal conduct for a finding of probable cause to believe that a target of surveillance is an agent of a foreign power, defense input is necessary to the Court's inquiry because the "defense has not received evidence that Mr. Mohamud was engaged in criminal activity prior to communications from government agents." (Def.'s Mem. 10.) As explained below, this argument misconstrues the legislative history that the defendant cites without quoting and is without merit.

FISA requires a finding of probable cause that the target is a foreign power or an agent of a foreign power and that each facility or property at which the electronic surveillance and/or physical search is directed is being used, owned, and/or possessed by, or is about to be used, owned, and/or possessed, by a foreign power or an agent of a foreign power. It is this standard, and not the standard applied to criminal search warrants, that this Court must apply. *See United States v. Cavanagh*, 807 F.2d 787, 790 (9th Cir. 1987) (citing *United States v. United States District Court (Keith)*, 407 U.S. 297, 322 (1972)); *Duka*, 2011 WL 6794022, at *5; *Abu-Jihaad*, 630 F.3d at 130-31. This "different, and arguably lower, probable cause standard . . . reflects the

purpose for which FISA search orders are issued." *United States v. Ahmed*, No. 06-CR-00147, 2009 U.S. Dist. LEXIS 120007, at *22 (N.D. Ga. Mar. 19, 2009).

The defendant cites to "H.R. Rep. 95-1283, Pt. 1 at 36, 95th Cong., 2d Sess." (Def.'s Mem. at 8.) The House Report in fact states that "whenever a United States person is to be the target of a surveillance there must be a showing that his activities at least may involve a violation of law. . . . [S]ome showing that he at least may violate the laws of our society." H.R. Rep. No. 95-1283 at 554. Showing that the target's conduct *may* involve some violation of law does not require a showing that a crime has been committed or is ongoing.

**CLASSIFIED MATERIAL REDACTED**

### 2.    Defense Input Is Not Required To Address First Amendment Issues

The defendant argues that the "prohibition in FISA against issuance of a warrant based solely on First Amendment activities may be relevant in this case." (Def.'s Mem. 12.) The Government submits that this Court will be able to address any First Amendment issues that may be relevant to its review of the FISA materials.

Moreover, the defendant misstates the law when he asserts that First Amendment activities "cannot serve as a basis for probable cause." To the contrary, FISA specifies that no United States person may be considered a foreign power or an agent of a foreign power *solely* on the basis of activities protected by the First Amendment to the Constitution of the United States. 50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A) (emphasis added). Although protected First Amendment activities cannot form the sole basis for FISC-authorized electronic surveillance or physical search, they may be considered by the FISC if there is other activity indicating that the target is an

agent of a foreign power. *United States v. Rosen*, 447 F. Supp. 2d 538, 548-50 (E.D. Va. 2006); *United States v. Rahman*, 861 F. Supp. 247, 252 (S.D.N.Y. 1994), *aff'd*, 189 F.3d 88 (2d Cir. 1999). Additionally, FISA provides that "[i]n determining whether or not probable cause exists . . . a judge may consider past activities of the target, as well as facts and circumstances relating to current or future activities of the target." 50 U.S.C. §§ 1805(b), 1824(b).

### 3. FISA's Certification Requirements Do Not Necessitate Defense Involvement in This Court's Review

The defendant contends that defense participation is necessary to address questions related to the necessity for the use of FISA in this case. (Def.'s Mem. 13-14.) The defendant appears to confuse the requirements of FISA with those of Title III (the Omnibus Crime Control and Safe Streets Act, 18 U.S.C. §§ 2510-2522).

FISA requires that an application to the FISC for a FISA order or warrant include a certification from a high-ranking Executive Branch official with national security responsibilities that the information sought cannot reasonably be obtained by normal investigative techniques and that the certification include a statement of the basis for the certification that the information sought cannot reasonably be obtained by normal investigative techniques. 50 U.S.C. §§ 1804(a)(6)(C) (electronic surveillance) & 1823(a)(6)(C) (physical search). As explained below, certifications submitted in support of a FISA application are "presumed valid." *Duggan*, 743 F.2d at 77 & n.6 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)); *Nicholson*, 2010 WL 1641167, at *5 (citing *Rosen*, 447 F.Supp.2d at 545), and, with respect to a FISA application targeting a United States person, must not be clearly erroneous.

Title III, by contrast, requires that an application include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or be too dangerous." 18 U.S.C. § 2518(1)(c). Title III also requires that a judge may approve a criminal wiretap if he or she "determines on the basis of the facts submitted by the applicant that . . . normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be too dangerous." 18 U.S.C. § 2518(3)(c). *See United States v. Rivera*, 527 F.3d 891, 897 (9th Cir. 2008) ("To obtain a wiretap, the government must overcome the statutory presumption against this intrusive investigative method by proving necessity.") (quoting *United States v. Gonzalez, Inc.*, 412 F.3d 1102, 1112 (9th Cir. 2005) (other citations omitted).

The defendant cites no reason why this Court cannot properly determine whether the certifications in this case were made in accordance with FISA's requirements. The Government submits that this Court, like those before it, will be able to do so *ex parte* and *in camera*.

### 4.    FISA's Minimization Requirements Do Not Require Defense Participation in the FISA Review Process

The defendant argues that defense participation in the FISA review process is necessary to address questions related to the Government's compliance with FISA's minimization requirements. (Def.'s Mem. 14-16.) The Government respectfully disagrees.

In essence, defendant is attempting to make the same arguments that were addressed and rejected by this Court with respect to discovery – that every facet of his life is somehow relevant to the instant charge and potentially discoverable under *Brady v. Maryland*, 373 U.S. 83 (1963).

Moreover, as explained below, "courts have construed 'foreign intelligence information' broadly and sensibly [have] allowed the government latitude in its determination of what is foreign intelligence information." *Rosen,* 447 F. Supp. 2d at 551; *United States v. Islamic Am. Relief Agency,* 2009 WL 5169536, *6 (W.D. Mo. Dec. 21, 2009). As also explained below, the minimization requirements were adhered to in this case. There is no need for defense participation in the review of FISA materials simply to confirm that the minimization requirements were met.

### 5.    The Use of Traditional Criminal Tools Does Not Compel the Need for Defense Participation in the FISA Review Process

The defendant argues that disclosure of the FISA material is required because of the "interplay" between his motion to suppress the FISA evidence and his motion to suppress non-FISA searches. As the Government made clear in its Response to Defendant's Motion to Suppress the Products of Non-FISA Interrogations, Searches, and Seizures, the state's November 2009 rape investigation of defendant was based on allegations that were independent of the FBI's national security investigation. More importantly, there is nothing improper in the sharing of information between federal and state and local authorities. Such sharing is commonplace in all types of investigations; it is especially critical in national security investigations, however. Although the defendant appears highly suspicious of this type of coordination, he has not identified any legal authority whatsoever that would suggest such coordination is improper. Nor has he identified anything about this alleged "interplay" that necessitates defense involvement in the FISA review process.

CLASSIFIED MATERIAL REDACTED

### 6.  Nothing About the Length of Surveillance Suggests Defense Participation Is Required

The defendant argues that it "likely" will be necessary to have defense involvement in the Court's review of the FISA materials because of the length of time during which surveillance and searches were conducted. (Def.'s Mem. 16-17.)  Again, the Government submits that this Court is perfectly capable of determining whether the Government complied with FISA's statutory terms as to any renewals of FISA authority.

### D.  DUE PROCESS DOES NOT REQUIRE DISCLOSURE OF THE FISA MATERIALS

The defendant argues that due process requires disclosure of the FISA materials to him. Although he contends that this basis is "in addition to, and independent of," this Court's consideration of his motion, he relies on the very language of FISA that governs this Court's consideration of his motion. (Def.'s Mem. 18.)  In fact, FISA provides that "[i]f the [district] court determines that the surveillance was lawfully authorized and conducted, it shall deny the motion of the aggrieved person except to the extent that due process requires discovery or disclosure." 50 U.S.C. § 1806(g).  That section, however, applies only *after* the Court has conducted its *in camera, ex parte* review, and only when the Court has concluded that the defendant's motion should be denied.  The due process reference allows the Court to deny in part and to grant in part a defense motion to disclose the FISA material: granting it as to any information the Court determines should have been, but was not, turned over to the defense, such as *Brady* material.  The due process exception in FISA is not "independent of" the Court's review,

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                     23

but is triggered only upon the conclusion of that review.  Accordingly, 50 U.S.C. § 1806(g) provides no basis for the defendant's claim that he is independently entitled to the FISA material that is provided to the Court *in camera*.

The defendant argues that disclosure is appropriate in his case because his attorneys hold security clearances.  (Def.'s Mem. 22-23.)  His precise argument is unclear, since it is predicated on a discussion of the Classified Information Procedures Act, 18 U.S.C. App. 3 ("CIPA"),[12] which has no application to the consideration of a motion to disclose FISA materials.  Moreover, whether or not a defense attorney possesses a security clearance is irrelevant to whether he or she has a legal right to review FISA dockets.  *United States v. Ott*, 827 F.2d 473, 476-77 (9th Cir. 1987).

In *Ott*, the Ninth Circuit reasoned:

> [Defendant] next asserts that the *ex parte, in camera* proceeding violated due process in this case because his various attorneys all had high security clearances and therefore disclosure to them of the FISA materials would not entail or risk dissemination of sensitive information to non-cleared personnel.  This argument is also unpersuasive.  Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question, whether or not she happens for unrelated reasons to enjoy a security clearance.  We reject the notion that a defendant's due process right to disclosure of FISA materials turns on the qualifications of his counsel.

---

[12] The defendant cites one case for the proposition that the Government *may* "be required to justify the necessity for an *ex parte* filing under CIPA" when defense counsel holds a clearance, and then simply asserts that broad disclosure is required under both FISA and CIPA. (Def.'s Mem. 22-23.)  However, as addressed below, CIPA is inapplicable to a motion to disclose FISA applications and orders.

*Id.*; *see also Nicholson*, 2010 WL 1641167, at *4-5 (citing *Ott* and ruling that "[b]ased on its *in-camera* review and after considering the argument of defense counsel, the Court concludes that . . . the disclosure of FISA materials to [cleared] defense counsel is neither required nor appropriate"); *United States v. Amawi*, No. 3:06CR719, 2009 WL 961143, at *2 (N.D. Ohio Apr. 7, 2009); *United States v. Bin Laden*, 126 F. Supp. 2d 264, 287 n.26 (S.D.N.Y. 2000); *see also Badrawi v. Dep't of Homeland Security*, 596 F. Supp. 2d 389, 400 (D. Conn. 2009) (upholding denial of classified information to counsel who held Top Secret security clearance but did not have a "need to know" information); Exec. Order No. 13526 § 4.1(a)(3) (Dec. 29, 2009) (requiring that a "need to know" determination be made prior to the disclosure of classified information to anyone, including those who possess a security clearance). If a court concludes that it is capable of accurately determining the legality of the FISA collection at issue, then even a defense attorney with a security clearance does not have a "need to know" the information in the FISA dockets and is not entitled to their production.

In addition to the specific harm that would result from the disclosure of the FISA materials in this case, which is detailed in the classified Declaration of a high-ranking FBI official in support of the Attorney General's Declaration and Claim of Privilege, the underlying rationale for non-disclosure is clear: "In the sensitive area of foreign intelligence gathering, the need for extreme caution and sometimes even secrecy may not be overemphasized." *United States v. Ott*, 637 F. Supp. 62, 65 (E.D. Cal. 1986), *aff'd*, 827 F.2d 473 (9th Cir. 1987). In *Ott*, the Ninth Circuit held that "Congress has a legitimate interest in authorizing the Attorney General to invoke

///

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                          25

procedures designed to ensure that sensitive security information is not unnecessarily disseminated to anyone not involved in the surveillance operation in question." 827 F.2d at 477.

Confidentiality is critical to national security. "If potentially valuable intelligence sources" believe that the United States will be "unable to maintain the confidentiality of its relationship to them," then many of those sources "could well refuse to supply information" to the government in the first place. *CIA v. Sims,* 471 U.S. 159, 174 (1985); *see also Phillippi v. CIA,* 655 F.2d 1325, 1332-33 (D.C. Cir. 1981) (in Freedom of Information Act (FOIA) case for disclosure of CIA documents, court held that "FOIA does not require the CIA to lighten the task of our adversaries around the world by providing them with documentary assistance from which to piece together the truth."). When a question is raised as to whether the disclosure of classified sources, methods, techniques, or information would harm the national security, Federal courts have expressed a great reluctance to replace the considered judgment of Executive Branch officials charged with the responsibility of weighing a variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the intelligence gathering process, and determining whether foreign agents, spies, and terrorists are capable of piecing together a mosaic of information that, when revealed, could reasonably be expected to harm the national security of the United States. *See Sims,* 471 U.S. at 180-81; *United States v. Yunis,* 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about this nation's intelligence-gathering capabilities from what these documents revealed about sources and methods."); *Halperin v. CIA,* 629 F.2d 144, 150

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                          26

(D.C. Cir. 1980) ("each individual piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together other bits of information even when the individual piece is not of obvious importance in itself").

An adversary hearing is not only entirely unnecessary to aid the Court in the straightforward task before it, but such a hearing would *create* potential dangers that courts have consistently sought to avoid. As the *Belfield* court explained:

> Congress recognized the need for the Executive to engage in and employ the fruits of clandestine surveillance without being constantly hamstrung by disclosure requirements. The statute is meant to "reconcile national intelligence and counterintelligence needs with constitutional principles in a way that is consistent with both national security and individual rights." In FISA the privacy rights of individuals are ensured not through mandatory disclosure, but through its provisions for in-depth oversight of FISA surveillance by all three branches of government and by a statutory scheme that to a large degree centers on an expanded conception of minimization that differs from that which governs law enforcement surveillance.

692 F.2d at 148 (footnotes and citations omitted); *see also ACLU Foundation of So. Cal. v. Barr* ("*ACLU Foundation*"), 952 F.2d 457, 465 (D.C. Cir. 1991) (citing *Belfield* for the proposition that Section 1806(f) "is an acceptable means of adjudicating the constitutional rights of persons who have been subjected to FISA surveillance").

**CLASSIFIED MATERIAL REDACTED**

E.    **CIPA IS INAPPLICABLE TO DEFENDANT'S REQUEST FOR DISCLOSURE OF THE FISA MATERIALS**

The defendant cites CIPA as a basis for this Court's ordering disclosure of the FISA materials. (Def.'s Mem. 18-23.) CIPA is inapplicable to defendant's motion.

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**

CIPA regulates the use of classified information in criminal proceedings. *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1363 (11th Cir. 1994). Because the FISA information to be used against the defendant at trial has been declassified, CIPA is not applicable to defendant's motion to suppress that information. CIPA is equally inapplicable to defendant's motion to disclose the FISA materials, as that motion is governed by the FISA statute itself. *See* 50 U.S.C. §§ 1806(g) & 1825(h). Moreover, "CIPA was not [] intended to expand the traditional rules of criminal discovery under which the government is not required to provide criminal defendants with information that is neither exculpatory nor, in some way, helpful to the defense." *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990). Accordingly, CIPA has no bearing on whether the defendant is entitled to receive the FISA materials.[13]

**F.    *IN CAMERA, EX PARTE* REVIEW IS CONSTITUTIONAL**

The defendant argues that the *ex parte, in camera* process of FISA violates due process, a defendant's right to be present at all critical stages of the criminal process, and his right to effective assistance of counsel. (Def.'s Mem. 44-47.) These arguments are wholly without merit.

The constitutionality of FISA's *in camera, ex parte* review provisions has been affirmed by every Federal court that has considered the matter. *See, e.g., United States v. Ott*, 827 F.2d 473, 476-77 (9th Cir. 1987) (FISA's review procedures do not deprive a defendant of due process); *El-Mezain*, 664 F.3d at 566-67; *Abu-Jihaad*, 630 F.3d at 117; *United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an ex parte,

---

[13] The defendant also cites *United States v. Reynolds*, 345 U.S. 1 (1953), a case involving the state secrets privilege that was decided long before FISA was enacted, in support of his motion. (Def.'s Mem. 20-21.) Since the Government has not asserted the state secrets privilege in this case, *Reynolds* is inapplicable.

in camera review of FISA materials does not deprive a defendant of due process."); *ACLU Found.*, 952 F.2d at 465; *Belfield*, 692 F.2d at 148-49; *Nicholson*, 2010 WL 1641167, at *3-4; *Gowadia*, 2009 WL 1649714, at *2; *United States v. Jayyousi*, No. 04-60001, 2007 WL 851278, at *7 (S.D. Fla. Mar. 15, 2007);[14] *United States v. Benkahla*, 437 F. Supp. 2d 541, 554 (E.D. Va. 2006); *United States v. Megahey*, 553 F. Supp. 1180, 1194 (E.D.N.Y. 1982) ("*ex parte, in camera* procedures provided in 50 U.S.C. § 1806(f) are constitutionally sufficient to determine the lawfulness of the electronic surveillance at issue while safeguarding defendants' fourth amendment rights"); *United States v. Falvey*, 540 F. Supp. 1306, 1315-16 (E.D.N.Y. 1982) (a "massive body of pre-FISA case law of the Supreme Court, [the Second] Circuit and others" supports the conclusion that the legality of electronic surveillance should be determined on an *in camera, ex parte* basis); *Spanjol*, 720 F. Supp. at 58.

FISA's *in camera, ex parte* review provisions are entirely compatible with the requirements and protections of the Constitution. As stated by the United States District Court for the Northern District of Georgia, "[t]he defendants do not cite to any authority for [the proposition that FISA is unconstitutional] because there is none. Every court that has considered FISA's constitutionality has upheld the statute from challenges under the Fourth, Fifth, and Sixth Amendments." *Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *30 (order denying defendants' motion to disclose and suppress FISA materials); *see also Belfield*, 692 F.2d at 148-49 (no Sixth Amendment violation); *Jayyousi*, 2007 WL 851278, at *8 (same); *United States v. Nicholson*, 955

---

[14] All citations to *Jayyousi* are to Westlaw because they are from a Magistrate Judge's Report and Recommendation that was adopted and incorporated. Westlaw, but not LEXIS, includes the Report and Recommendation with the court's opinion.

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                          29

F. Supp. 588, 592 (E.D. Va. 1997) (same); *Megahey*, 553 F. Supp. at 1193 (no violation of Sixth Amendment rights to public trial and assistance of counsel); *United States v. Falvey*, 540 F. Supp. 1306, 1315-16 (E.D.N.Y. 1982) (same).

The defendant also argues that FISA's procedures interfere with Article III judicial power. (Def.'s Mem. 47-48.) The Ninth Circuit has considered and rejected this argument – in case not cited by the defendant. *See Cavanagh*, 807 F.2d at 791 ("article III courts are not foreclosed from reviewing the decisions of the [FISC]"); *see also Jayyousi*, 2007 WL 851278, at *8; *Belfield*, 692 F.2d at 148 ("In FISA Congress has made a thoroughly reasonable attempt to balance the competing concerns of individual privacy and foreign intelligence. As noted, oversight of electronic surveillance is provided by all three branches of government.").

In summary, FISA mandates an appropriate and lawful process by which the district court must conduct an initial *in camera, ex parte* review of FISA applications, orders, and related materials in order to determine whether the FISA collection was lawfully authorized and lawfully conducted. As discussed above, such *in camera, ex parte* review is the rule in these cases. *See, e.g., Belfield*, 692 F.2d at 147. In this case, the Attorney General has filed the required declaration invoking that procedure and has declared that disclosure or an adversary hearing would harm national security.[15] Accordingly, an *in camera, ex parte* review by this Court is the appropriate means by which to determine whether the FISA collections at issue here were lawfully authorized and conducted.

/ / /

---

[15] **CLASSIFIED MATERIAL REDACTED**

## VI.    STANDARD OF REVIEW AND RELATED ISSUES

Although federal courts do not agree as to whether the probable cause determinations of the FISC should be reviewed *de novo* or accorded deference, the determinations in this case satisfy either standard. The Government believes that it is appropriate to accord due deference to the findings of the FISC, but notes that a number of courts, including Judge Brown of this district, have declined to do so, and have instead reviewed the FISC's probable cause determinations *de novo. Nicholson*, 2010 WL 1641167, at *5.[16] While decidedly in the minority, other courts, including the Second Circuit in *Abu-Jihaad*, 630 F.3d at 130, have held that the established standard of judicial review applicable to FISA warrants is deferential. *Accord Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *21-22 (FISC's determination of probable cause should be given deference by the reviewing court) (citing *Illinois v. Gates*, 662 U.S. 213, 236 (1983)).

The district court's review should determine: (1) whether the certifications submitted by the Executive Branch in support of the FISA application were properly made; (2) whether probable cause existed to authorize the electronic surveillance and/or physical search at issue; and (3) whether the collection was properly minimized. *See Abu-Jihaad*, 630 F.3d at 130-31.[17]

/ / /

/ / /

---

[16] *See, e.g., United States v. Hammoud*, 381 F.3d 316, 332 (4th Cir. 2004), *rev'd on other grounds*, 543 U.S. 1097 (2005), *op. reinstated in pertinent part*, 405 F.3d 1034 (4th Cir. 2005); *Kashmiri*, 2010 WL 4705159, at *1; *Warsame*, 547 F. Supp. 2d at 990; *Rosen*, 447 F. Supp. 2d at 545.

[17] The defendant contends that "[r]eview by the criminal court should be more exacting than review by the FISC." (Def.'s Mem. 24.) The defendant cites no legal authority for this contention, and the Government is not aware of any. To the extent that the defendant is arguing for a standard of review more stringent than that found in FISA, the Government believes that such a review would be outside the District Court's authority. Additionally, as explained

## A.    CERTIFICATIONS ARE SUBJECT TO ONLY MINIMAL SCRUTINY

Certifications submitted in support of a FISA application should be "subjected to only minimal scrutiny by the courts," *United States v. Badia*, 827 F.2d 1458, 1463 (11th Cir. 1987), and are "presumed valid." *Duggan*, 743 F.2d at 77 & n.6 (citing *Franks v. Delaware*, 438 U.S. 154, 171 (1978)); *Nicholson*, 2010 WL 1641167, at *5; *accord United States v. Campa*, 529 F.3d 980, 993 (11th Cir. 2008); *Warsame*, 547 F. Supp. 2d at 990 ("a presumption of validity [is] accorded to the certifications"). When a FISA application is presented to the FISC, "[t]he FISA Judge, in reviewing the application, is not to second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Duggan*, 743 F.2d at 77. Likewise, Congress intended that the reviewing district court should "have no greater authority to second-guess the executive branch's certifications than has the FISA judge." *Id.; see also In re Grand Jury Proceedings*, 347 F.3d at 204-05; *Badia*, 827 F.2d at 1463; *Kashmiri*, 2010 WL 4705159, at *1; *Rahman*, 861 F. Supp. at 250; *IARA*, 2009 WL 5169536, at *4.

The district court's review should determine whether the certifications were made in accordance with FISA's requirements. *See Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *20 ("the [c]ourt is not to second-guess whether the certifications were correct, but merely to ensure they were properly made"); *see also Campa*, 529 F.3d at 993 ("in the absence of a *prima facie* showing of a fraudulent statement by the certifying officer, procedural regularity is the only determination to be made if a non-United States person is the target"). If the target is a United States person,

---

above, the FISC findings at issue here satisfy both the deferential and *de novo* standard of review.

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                    32

then the district court should also ensure that each certification is not "clearly erroneous." *Id.* at 994; *Duggan*, 743 F.2d at 77; *Kashmiri*, 2010 WL 4705159, at *2. A certification is clearly erroneous only when "the reviewing court on the [basis of the] entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see United States v. Garcia*, 413 F.3d 201, 222 (2d Cir. 2005); *IARA*, 2009 WL 5169536, at *4.

B.     **THERE IS NO BASIS FOR THIS COURT TO HOLD A *FRANKS* HEARING**

The defendant appears to be requesting a *Franks* hearing. (Def.'s Mem. 17 ("Disclosure is, therefore, necessary so that, based on defense analysis, this Court can conduct a *Franks* hearing.").) As discussed in detail below, there is no basis for the Court to conduct a *Franks* hearing.

When a defendant makes the requisite showing, the Court may conduct a *Franks* hearing to determine if there are material misrepresentations of fact, or omissions of material fact, in the FISA applications sufficient to warrant suppression of the FISA-obtained and -derived evidence. *See Franks*, 438 U.S. at 171; *United States v. Ning Wen*, 477 F.3d 896, 897 (7th Cir. 2007). In this case, the defendant not only has completely failed to establish a basis for a hearing through a preliminary showing of any factual errors in the FISA applications, he also has admitted that he knows of none. In his memorandum, the defendant requests a *Franks* hearing so that "Mr. Mohamud will have the opportunity to inquire into whether the affiants before the FISA court intentionally or recklessly made materially false statements or omitted material information."

(Def.'s Mem. 17.) In other words, the defendant has no evidence to suggest that the affiants intentionally or recklessly made materially false statements or omissions.[18]

To merit an evidentiary hearing under *Franks,* the defendant must first make a "concrete and substantial preliminary showing" that: (1) the affiant deliberately or recklessly included false statements, or failed to include material information, in the affidavit; and (2) the misrepresentation was essential to the finding of probable cause. *Franks*, 438 U.S. at 155-56; *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990); *Duggan*, 743 F.2d at 77 n.6; *Kashmiri,* 2010 WL 4705159, at *5 (defendant "has not made any showing – let alone a substantial one – that an Executive Branch officer knowingly and intentionally, or recklessly, included a false statement in the FISA application [and w]ithout such a showing, he is foreclosed from obtaining a hearing"). Failure of the defendant "to satisfy either of these two prongs proves fatal to a *Franks* hearing." *Kashmiri*, 2010 WL 4705159, at *6; *Mubayyid*, 521 F. Supp. 2d at 130-31. The defendant's burden in establishing the need for a *Franks* hearing is a heavy one. *United States v. Jeffus*, 22 F.3d 554, 558 (4th Cir. 1994).

In addition, the defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171; *Kashmiri,* 2010 WL 4705159, at *6 ("Without producing the requisite offer of proof of impropriety in the FISA application, however, this argument is merely conclusory, and equates to an improper indirect attack on the FISA procedures"). Rather, the defendant must submit allegations of deliberate falsehood or of reckless disregard for the truth, accompanied by an offer of proof. *Franks*, 438

---

[18] **CLASSIFIED MATERIAL REDACTED**

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                                34

U.S. at 171. Allegations of negligence or innocent mistake are insufficient, *id.,* as are allegations of insignificant or immaterial misrepresentations or omissions. *Colkley,* 899 F. 2d at 301-02. The *Franks* threshold is not met even by an offer of proof of an impropriety that might have affected the outcome of the probable cause determination, but rather requires one that was "necessary to the finding of probable cause." *Id.* Indeed, even if a defendant offers sufficient proof to show that an affidavit involved false statements or omissions, a hearing should not be held if the affidavit still would provide probable cause with the allegedly false material eliminated, or with the allegedly omitted information included. *Franks,* 438 U.S. at 171; *United States v. Ketzeback,* 358 F.3d 987, 990 (8th Cir. 2004); *Colkley,* 899 F.2d at 300; *United States v. Martin,* 615 F.2d 318, 328 (5th Cir. 1980). "Thus a *Franks* hearing 'serves to prevent the admission of evidence obtained pursuant to warrants that were issued only because the issuing magistrate was misled into believing that there existed probable cause.'" *United States v. Photogrammetric Data Services,* 259 F.3d 229, 238 (4th Cir. 2001) (internal citation omitted), *overruled on other grounds, United States v. Comprehensive Drug Testing, Inc.,* __ F.3d __, (9th Cir. 2011).

In this case, the defendant has offered nothing more than the conclusory statement that the "FISA applications *may* contain intentional or reckless material falsehoods or omissions." (Def.'s Mem. 17 (emphasis added).) In other words, the defendant asks that the Court hold a *Franks* hearing not to determine if a false statement is sufficiently egregious to warrant a judicial remedy, but rather to determine if there is any false statement, material or otherwise, that would justify the Court's holding the hearing in the first place. In doing so, the defendant runs afoul of the plain

/ / /

language of *Franks* itself: defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Franks*, 438 U.S. at 171.

If a defendant could force disclosure of FISA materials and obtain an adversarial hearing merely by speculating that there *might* be a *Franks* violation somewhere in an application, the disclosure of FISA materials and adversary hearings would be the rule and not the exception. Such a result would violate Congress's clear intention that FISA material should be reviewed *in camera* and *ex parte,* and in a manner consistent with the realities of modern intelligence needs and investigative techniques.

The defendant's lack of access to the FISA applications and orders cannot form a substitute basis for the required showing. Although this situation presents a quandary for defense counsel when FISA-derived evidence comes into play, Congress and the courts have recognized that such difficulty does not justify the disclosure of FISA materials:

> We appreciate the difficulties of appellants' counsel in this case. They must argue that the determination of legality is so complex that an adversary hearing with full access to relevant materials is necessary. But without access to relevant materials their claim of complexity can be given no concreteness. It is pure assertion.
>
> Congress was also aware of these difficulties. But it chose to resolve them through means other than mandatory disclosure. In FISA Congress has made a thoroughly reasonable attempt to balance the competing concerns of individual privacy and foreign intelligence . . . . Appellants are understandably reluctant to be excluded from the process whereby the legality of a surveillance by which they were incidentally affected is judged. But it cannot be said that this exclusion rises to the level of a constitutional violation.

*Belfield*, 692 F.2d at 148; *see also Kashmiri*, 2010 WL 4705159, at *6:

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**

36

> Nevertheless, to challenge the veracity of the FISA application, Defendant must offer substantial proof that the FISC relied on an intentional or reckless misrepresentation by the government to grant the FISA order. The quest to satisfy the *Franks* requirement might feel like a wild-goose chase, as Defendant lacks access to the materials that would provide this proof. This perceived practical impossibility to obtain a hearing, however, does not constitute a legal impossibility.

Other courts have rejected similar attempts by defendants to force a *Franks* hearing challenging the validity of FISA orders based on speculation. *See Kashmiri*, 2010 WL 4705159, at *6 (noting that the court "has already undertaken a process akin to a *Franks* hearing through its *ex parte, in camera* review"); *Abu-Jihaad*, 531 F.Supp.2d 299, __ (D. Conn. 2008), *aff'd* 630 F.3d 102 (2d Cir. 2010), *cert. denied*, __ U.S. __, 131 S. Ct. 3062 (2011); *United States v. Hassoun*, No. 04-CR-60001, 2007 WL 1068127, at *4 (S.D. Fla. Apr. 4, 2007); *Mubayyid*, 521 F. Supp. 2d at 130-31. This Court likewise should reject defendant's attempt to hold a *Franks* hearing in this case without making the proper showing.

## C.    THE FISA COLLECTIONS ARE SUBJECT TO THE "GOOD-FAITH" EXCEPTION

The basis for the FISC's probable cause findings is set forth in detail below. Even assuming *arguendo* that this Court determines that a particular FISC order was not supported by probable cause, or that one or more of the FISA certification requirements were not in fact met, the Government respectfully submits that the FISA materials – and the evidence obtained or derived from the FISA collection – are, nonetheless, admissible under the "good faith" exception

/ / /

to the exclusionary rule articulated in *United States v. Leon,* 468 U.S. 897 (1984).[19]  The Seventh

Circuit, relying on *Leon,* held that federal officers were entitled to rely in good faith on a FISA

warrant. *Ning Wen,* 477 F.3d at 897.  As the court noted:

> [T]he exclusionary rule must not be applied to evidence seized on the authority of a warrant, even if the warrant turns out to be defective, unless the affidavit supporting the warrant was false or misleading, or probable cause was so transparently missing that "no reasonably well trained officer [would] rely on the warrant."

*Id.* (quoting *Leon)* (alteration in original); *see also Duggan,* 743 F.2d at 77 n.6 (opining that

*Franks* principles apply to review of FISA orders); *Ahmed,* 2009 U.S. Dist. LEXIS 120007, at *25

n.8 ("[t]he FISA evidence obtained . . . would be admissible under *Leon's* 'good faith' exception

to the exclusionary rule were it not otherwise admissible under a valid warrant").

### CLASSIFIED MATERIAL REDACTED

## VII.    <u>FISA IS CONSTITUTIONAL</u>

The defendant makes a number of arguments as to why FISA is unconstitutional.  FISA

has been consistently upheld as constitutional, and there is no basis for this Court to find

otherwise.

/ / /

/ / /

/ / /

---

[19] "[E]ven if we were to conclude that amended FISA is unconstitutional, evidence derived from it would nevertheless be admissible in the government's case. . . .  The exclusionary rule precludes the admission of evidence tainted by a Fourth Amendment violation" only in those cases where its application will deter police misconduct. *Duka,* 2011 WL 6794022, at *12, citing *Leon,* 468 U.S. at 918.

**Government's Amended Unclassified Memorandum in Opposition to Defendant's**
**Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery**
**and for Suppression of the Fruits of FISA Activity**                                    **38**

## A.    FISA'S "SIGNIFICANT PURPOSE" STANDARD IS CONSTITUTIONAL

The defendant argues that certain amendments to FISA pursuant to the USA PATRIOT Act rendered FISA unconstitutional under the Fourth Amendment. (Def.'s Mem. 36-42.) The Government respectfully disagrees.

As noted above, FISA originally required that a high-ranking member of the Executive Branch certify that "the purpose" of the FISA application was to obtain foreign intelligence information. In 2001, FISA was amended by the USA PATRIOT Act, which *inter alia* deleted "the purpose" language, and instead substituted the requirement that the official certify that "a significant purpose" of the requested surveillance is to obtain foreign intelligence information. 50 U.S.C. § 1804(a)(6)(B). Contrary to the defendant's contention, the former primary-purpose test was not required by the Constitution, and the current significant-purpose test does not violate the Constitution.

In fact, with the exception of the now-vacated and legally null *Mayfield v. United States*, 504 F. Supp. 2d 1023 (D. Or. 2007),[20] courts that have considered the USA PATRIOT Act amendment promulgating the significant-purpose test have held that test to be constitutional. *See Duka*, 2011 WL 6794022, at *4; *Abu Jihaad*, 630 F.3d at 128 ("We conclude simply that FISA's 'significant purpose' requirement . . . is sufficient to ensure that the executive may only use FISA to obtain a warrant when it is in good faith pursuing foreign intelligence gathering [and the] fact

---

[20] FISA's "significant purpose" standard was held unconstitutional in *Mayfield*, a civil case that no other court followed and which the Ninth Circuit subsequently vacated based on lack of standing. *See Mayfield v. United States*, 588 F.3d 1252 (9th Cir. 2009). "Because the Ninth Circuit Court of Appeals vacated the judgment in [*Mayfield*], it is no longer good law and we do not address it." *Duka*, 2011 WL 6794022, at *5, n.7. When a judgment is vacated by a higher court it "deprives [the lower] court's opinion of precedential effect." *Los Angeles County v. Davis*, 440 U.S. 625, 634 n.6 (1979). Moreover, *Mayfield's* rationale was rejected in *Kashmiri*, 2010 WL 4705159, at *3.

**Government's Amended Unclassified Memorandum in Opposition to Defendant's**
**Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery**
**and for Suppression of the Fruits of FISA Activity**                                         **39**

that the government may also be pursuing other purposes, including gathering evidence for criminal prosecution, compels no different conclusion"); *United States v. Ning Wen*, 477 F.3d 896, 897 (7th Cir. 2007); *In re Sealed Case*, 310 F.3d 717, 746 (FISA Ct. Rev. 2002)[21]; *Warsame*, 547 F. Supp. 2d at 992-97; *Mubayyid*, 521 F. Supp. 2d at 139-40. In fact, in *In re Sealed Case*, the Court noted that the Fourth Circuit's reliance on the "primary purpose" test in *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980), was misconceived because it was based on the false "assertion that once the government moves to criminal prosecution its 'foreign policy concerns recede'. . . . [But] the government's primary purpose is to halt the espionage or terrorism efforts." *In Sealed Case*, 310 F.3d at 743. Accordingly, "arresting and prosecuting terrorist agents of, or spies for, a foreign power may well be the best technique to prevent them from successfully continuing their terrorist or espionage activity." *Id.* at 724. In short, a decision to criminally prosecute someone does not mean that the Government's foreign policy and national security concerns have fallen out of the equation; it simply means that the Government has chosen prosecution as one means of pursuing those concerns.[22]

Courts developed the primary-purpose test to address warrantless searches conducted pursuant to the Executive's Article II foreign-affairs powers prior to the enactment of FISA. *See, e.g., Abu Jihaad*, 630 F.3d at 121. In that context, warrantless surveillance was conducted as an exception to the Fourth Amendment, and therefore was limited to the scope of the Constitution's

---

[21] "FISA Ct. Rev." refers to the Foreign Intelligence Surveillance Court of Review, which is the specialized federal appellate court that Congress established to hear appeals from the FISC.

[22] The defendant argues that the change to a "significant purpose" under FISA resulted in the Government's ability to "evade the Fourth Amendment merely by asserting a desire to gather foreign intelligence information from the person it in fact intends to prosecute." (Def.'s Mem. 29.) As addressed above, courts have uniformly rejected this argument,

grant of authority to the Executive to conduct foreign affairs. Prior to the USA PATRIOT Act's amendment of FISA, several courts imported the primary-purpose test from warrantless surveillance under the President's Article II power into their interpretation of FISA's statutory certification requirement. *See Johnson*, 952 F.2d at 572; *Pelton*, 835 F.2d at 1076; *Badia*, 827 F.2d at 1464; *Duggan*, 743 F.2d at 77.[23] However, none of those cases held that the primary-purpose test was constitutionally mandated. The Second Circuit explicitly has stated that "when, in *Duggan*, we construed FISA's original reference to electronic surveillance for 'the purpose' of obtaining foreign intelligence information, as a 'requirement that foreign intelligence information be the *primary* objective of [any court-ordered] surveillance, . . . we were identifying Congress's intent in enacting FISA, not a constitutional mandate. [citation omitted] . . . In short, nothing in *Duggan* erected a constitutional bar to Congress reconsidering and reframing the purpose requirement of FISA" in accordance with reasonableness standards for foreign intelligence collection. *Abu-Jihaad,* 630 F.3d at 123. Courts formulated the primary-purpose test in order to interpret Congressional intent from the statutory language, and not from any consideration that the test was required by the Constitution.

The pre-USA PATRIOT Act FISA language required that the Government certify that "the purpose" of the surveillance was the acquisition of foreign intelligence information. By interpreting "the purpose" to mean "the primary purpose" – and not to mean the sole purpose –

---

with the exception of the since vacated *Mayfield* case. *See supra* at 39.

[23] In *Johnson*, the First Circuit construed the purpose requirement in the negative, holding that "the investigation of criminal activity cannot be the primary purpose" of FISA surveillance. 952 F.2d at 572 (citing *Duggan*, 743 F.2d at 77; *Truong*, 629 F.2d at 915).

**Government's Amended Unclassified Memorandum in Opposition to Defendant's**
**Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery**
**and for Suppression of the Fruits of FISA Activity**                                                    **41**

the various courts provided that an additional purpose could be something other than the acquisition of foreign intelligence information, such as criminal investigation and prosecution. The Ninth Circuit specifically has refused to define FISA's original "purpose" requirement. In *United States v. Sarkissian*, 841 F.2d 959, 965 (9th Cir. 1988), the Ninth Circuit upheld a District Court's refusal to suppress evidence derived from FISA surveillance and refused "to draw too fine a distinction between criminal and intelligence investigations," because by definition international terrorism "requires the investigation of activities that constitute crimes." Since the primary purpose test was the result of statutory construction and was not a reflection of Constitutional necessity, the abrogation of that language by the USA PATRIOT Act cannot, and does not, create a Constitutional issue.

As the Third Circuit noted in *Duka*, the "'significant purpose'" standard reflects a balance struck by Congress between 'the legitimate need of Government for intelligence information' and 'the protected rights of our citizens." 2011 WL 6794022, at *10 (quoting *Keith*, 407 U.S. 323). In adopting this standard, "Congress signaled its determination that the new standard was needed to promote coordination between intelligence and law enforcement officials in combating terrorism, acknowledging that, as a practical matter, these functions inevitably overlap." *Id.* The Court noted that *Keith*, 407 U.S. 297, at 322-23, required that Congress's judgment on this issue should be accorded "some additional measure of deference" by the courts and added that "even leaving Congress's judgment aside, we conclude that FISA's "significant purpose" standard is reasonable in light of the government's legitimate national security goals." *Id.*

/ / /

## B.    FISA SATISFIES THE FOURTH AMENDMENT

The defendant makes a number of arguments as to why FISA violates the Fourth Amendment on its face. In particular, he argues that: (1) FISA authorizes warrants in the absence of the judicial review required under the Fourth Amendment; (2) FISA orders do not qualify as warrants under the Fourth Amendment; (3) FISA warrants do not satisfy the traditional probable cause standards; (4) FISA warrants do not satisfy the Fourth Amendment's Particularity Requirement; and (5) the Fourth Amendment's "Special Needs" exception does not apply to FISA. (Def.'s Mem. 36-43.) None of these arguments has any merit.

Courts including the Ninth Circuit have universally agreed that FISA's probable cause standard comports with the Fourth Amendment. *See United States v. Cavanagh*, 807 F.2d 787, 790-91 (9th Cir. 1987) ("We find that the probable cause showing required by FISA is reasonable."); *Isa*, 923 F.2d at 1304; *Pelton*, 835 F.2d at 1075; *Duggan*, 743 F.2d at 73-74; *see also In re Kevork*, 634 F. Supp. 1002, 1010-11 (C.D. Cal. 1985) ("any evaluation of FISA in a Fourth Amendment context must consider that the reasonableness requirement of the fourth Amendment is flexible and that different standards may be applied to electronic surveillance conducted to meet other governmental interests [citing and quoting *Keith*]. . . . Thus, when electronic surveillance is to be used not for detecting crimes, but for intelligence purposes, a different set of protections may be applied consistent with the Fourth Amendment."), *aff'd.*, 788 F.2d 566 (9th Cir. 1986). Indeed, FISA's probable cause requirement was crafted by Congress with an eye towards the Fourth Amendment and in recognition of the unique nature and important purpose served by FISA's intelligence function. *See, e.g., Kashmiri*, 2010 WL 4705159, at *3

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**                                              **43**

(under FISA, "[n]o requirement exists to show probable cause of presently occurring or past criminal activity").

The Supreme Court has stated that "[d]ifferent standards may be compatible with the Fourth Amendment if they are reasonable both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens." *Keith,* 407 U.S. at 322-23 (recognizing that domestic security surveillance "may involve different policy and practical considerations than the surveillance of 'ordinary crime'"). In *Keith,* the Supreme Court acknowledged that: (1) the "focus of . . . surveillance [in domestic security investigations] may be less precise than that directed against more conventional types of crime"; (2) unlike ordinary criminal investigations, "the gathering of security intelligence is often long range and involves the interrelation of various sources and types of information"; and (3) the "exact targets of such surveillance may be more difficult to identify" than in surveillance operations of ordinary crimes under Title III. *Id.* at 322. Although *Keith* was decided before FISA's enactment and addressed purely domestic security surveillance, the rationale underlying *Keith* applies *a fortiori* to foreign intelligence surveillance, where the Government's interest, at least from a national security perspective, would typically be more pronounced.

FISA was enacted partly in response to *Keith.* In constructing FISA's framework, Congress addressed *Keith*'s question whether departures from traditional Fourth Amendment procedures "are reasonable, both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens," and "concluded that such departures are reasonable." *See* S. Rep. No. 95-701, at 11 (1978) (quoting *Keith* at 323), *reprinted in* 1978

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                            **44**

U.S.C.C.A.N. 3973, 3980 ("Senate Report"). Similarly, many courts – including the Foreign Intelligence Surveillance Court of Review – have relied on *Keith* in holding that FISA collection conducted pursuant to a FISC order is reasonable under the Fourth Amendment. *See In re Sealed Case*, 310 F.3d 717, 738, 741-42 (FISA Ct. Rev. 2002) (while many of FISA's requirements differ from those in Title III, few of those differences have constitutional relevance); *Duggan*, 743 F.2d at 73-74 (FISA does not violate the Fourth Amendment); *see also Cavanagh*, 807 F.2d at 790-91 (FISA satisfies the Fourth Amendment requirements of probable cause and particularity); *Ning Wen*, 477 F.3d at 898 (FISA is constitutional despite using "a definition of 'probable cause' that does not depend on whether a domestic crime has been committed"); *Damrah*, 412 F.3d at 624 (denying as meritless the defendant's claim that FISA's procedures violate the Fourth Amendment); *Pelton*, 835 F.2d at 1075 ("FISA's numerous safeguards provide sufficient protection for the rights guaranteed by the Fourth Amendment within the context of foreign intelligence activities."); *Warsame*, 547 F. Supp. 2d at 993-94 (FISA's probable cause and particularity requirements satisfy the reasonableness requirement of the Fourth Amendment); *Mubayyid*, 521 F. Supp. 2d at 135-41 (FISA does not violate the Fourth Amendment's judicial review, probable cause, notice, and particularity requirements); *Falvey*, 540 F. Supp. at 1311-14 (FISA's procedures satisfy the Fourth Amendment's warrant requirement); *Duka*, 2011 WL 6794022, at *4 (FISC judge satisfies Fourth Amendment's "neutral and detached magistrate" requirement).

/ / /

/ / /

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                                    45

**VIII.  THIS COURT SHOULD DENY DEFENDANT'S MOTION TO SUPPRESS THE FISA EVIDENCE AND FIND THAT THE FISA COLLECTIONS WERE LAWFULLY AUTHORIZED AND CONDUCTED**

**CLASSIFIED MATERIAL REDACTED**

**A.    THE FISA COLLECTIONS WERE LAWFULLY AUTHORIZED**

**CLASSIFIED MATERIAL REDACTED**

### 1.    The Certifications

Each FISA application was supported by a certification signed by a duly-authorized, high-ranking official of the United States Government.  The FISC properly determined that each of those certifications complied with FISA's requirements: i.e., that: (1) the certifying official deemed the information sought to be foreign intelligence information; (2) a significant purpose of the surveillance or search was to obtain foreign intelligence information; and (3) the information sought could not reasonably have been obtained by normal investigative techniques.  *See* 50 U.S.C. §§ 1804(a)(6)(A)-(C), 1823(a)(6)(A)-(C).  As noted above, certifications submitted in support of a FISA application should be "presumed valid," and neither the FISC nor a reviewing district court should "second-guess the executive branch official's certification that the objective of the surveillance is foreign intelligence information." *Duggan*, 743 F.2d at 77 n.6; *Gowadia*, 2009 WL 1649714, at *3.  In reviewing the certifications, a district court should apply the same standard as the FISC, which is the "clearly erroneous" standard.  *Badia*, 827 F.2d at 1463.  As discussed below, there is ample information both in the certifications themselves and in the declarations, to demonstrate that the certifications were not clearly erroneous.

/ / /

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                                   **46**

      a.      **<u>Foreign Intelligence Information</u>**

**CLASSIFIED MATERIAL REDACTED**

      b.      **<u>"A Significant Purpose"</u>**

**CLASSIFIED MATERIAL REDACTED**

      c.      **<u>Information Not Reasonably Obtainable Through Normal Investigative Techniques</u>**

**CLASSIFIED MATERIAL REDACTED**

For the above reasons, the FISC properly found that the certifications were not clearly erroneous.

**B.      <u>EACH FISA COLLECTION MET FISA'S PROBABLE CAUSE STANDARD</u>**

**CLASSIFIED MATERIAL REDACTED**

      1.      **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

      2.      **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

      a.      **CLASSIFIED MATERIAL REDACTED**

      (1)      **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

      (2)      **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

*/ / /*

        (a)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

        (b)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

        (c)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

        (d)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

        (e)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

   **b.**    **CLASSIFIED MATERIAL REDACTED**

        (1)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

        (2)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

        (3)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

        (4)    **CLASSIFIED MATERIAL REDACTED**

**CLASSIFIED MATERIAL REDACTED**

/ / /

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**       **48**

(5)    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

3.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

a.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

b.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

c.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

d.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

e.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

f.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

4.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

a.    CLASSIFIED MATERIAL REDACTED

/ / /

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                           49

(1)    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

(2)    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

b.    CLASSIFIED MATERIAL REDACTED

(1)    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

(2)    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

(3)    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

5.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

a.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

b.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

c.    CLASSIFIED MATERIAL REDACTED

CLASSIFIED MATERIAL REDACTED

/ / /

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                    50

### d.     CLASSIFIED MATERIAL REDACTED

**CLASSIFIED MATERIAL REDACTED**

### C.     <u>THE COURT SHOULD UPHOLD THE FISC'S FINDINGS OF PROBABLE CAUSE</u>

**CLASSIFIED MATERIAL REDACTED**

### D.     <u>THE FISA COLLECTIONS WERE LAWFULLY CONDUCTED</u>

This Court's *in camera, ex parte* review of the FISA materials will demonstrate not only that the FISA collection was lawfully authorized, but also that it was lawfully conducted.  That is, the FISA-obtained and -derived information that will be offered into evidence in this case was acquired and retained by the FBI in accordance with FISA's minimization requirements, and the implementing standard minimization procedures ("SMPs") promulgated by the Attorney General and approved by the FISC.

### 1.     <u>Minimization</u>

If a reviewing court is satisfied that the electronic surveillance and/or physical searches were properly certified and lawfully authorized by the FISC, it must then determine whether the electronic surveillance and/or physical searches were lawfully conducted.  To make this determination, the court must examine whether the Government followed the relevant SMPs to appropriately minimize the information obtained pursuant to the FISA.

**CLASSIFIED MATERIAL REDACTED**

Under FISA and the SMPs, minimization "may occur at any of several stages, including recording, logging, indexing, or dissemination." *In re Kevork,* 634 F. Supp. at 1017; *IARA,* 2009

WL 5169536, *6; S. Rep. No. 95-701 at 40; current SMPs, Section I.A., at 1-2. At the acquisition stage, FISA does not "prohibit the use of automatic tape recording equipment." *Rahman*, 861 F. Supp. at 252; *In re Kevork*, 634 F. Supp. at 1017. Indeed, the FISC has noted that FISA surveillance devices are normally left on continuously and that consequently minimization occurs (under the old SMPs) during the logging and indexing of the pertinent communications.[24] *See In re Sealed Case*, 310 F.3d at 740.

Generally, after a communication is collected and reduced to an intelligible form (e.g., by transcription or translation), it is reviewed to determine whether it contains, or might contain, foreign intelligence information. *See In re All Matters Submitted to FISC*, 218 F. Supp. 2d 611, 618 (FISA Ct. 2002); *rev'd on other grounds by In re Sealed Case*, 310 F.3d at 717. If it does contain such foreign intelligence information, or is necessary to understand or assess foreign intelligence information, the communication is not subject to minimization; i.e., it "meets the standard" for retention.[25] Moreover, FISA expressly states that the Government is not required to minimize information that is "evidence of a crime," whether or not it is also foreign intelligence information. 50 U.S.C. § 1801(h)(3); *see also Isa*, 923 F.2d at 1305.

**CLASSIFIED MATERIAL REDACTED**

The degree to which information is required to be minimized varies somewhat given the specifics of a particular investigation, such that less minimization at acquisition and retention is

---

[24] **CLASSIFIED MATERIAL REDACTED**

[25] The standard for retention of a particular communication is distinct from the standard used to determine whether a particular communication is discoverable in a criminal case. Accordingly, communications that are "minimized" while a FISA collection is ongoing may later be declassified and produced in discovery. Conversely, communications that meet the standard for retention may later be determined not to be discoverable.

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                    52

justified when "the investigation is focusing on what is thought to be a widespread conspiracy" and more extensive surveillance is necessary "to determine the precise scope of the enterprise." *In re Sealed Case*, 310 F.3d at 741; *United States v. Bin Laden*, 126 F. Supp. 2d at 286 ("[m]ore extensive monitoring and 'greater leeway' in minimization efforts are permitted in a case [involving] . . . [a] 'world-wide, covert and diffuse . . . international terrorist group.'"). Furthermore, the activities of foreign powers and their agents are often not obvious from an initial or cursory overhear of conversations. To the contrary, agents of foreign powers frequently engage in coded communications, compartmentalized operations, the use of false identities and other practices designed to conceal the breadth and aim of their operations, their organization, activities and plans. *See, e.g.*, *United States v. Salameh*, 152 F.3d 88, 154 (2d Cir. 1998) (noting that two conspirators involved in the 1993 bombing of the World Trade Center in New York referred to the bomb plot as the "study" and to terrorist materials as "university papers"). As one court explained, "[i]nnocuous-sounding conversations may in fact be signals of important activity [and] information on its face innocent when analyzed or considered with other information may become critical." *In re Kevork*, 634 F. Supp. at 1017 (quoting H.R. Rep. No. 95-1283 at 55); *see also In re Sealed Case*, 310 F.3d at 740-41; *Bin Laden*, 126 F. Supp. 2d at 286. Likewise, "individual items of information, not apparently significant when taken in isolation, may become highly significant when considered together over time." *In re Kevork*, 634 F. Supp. at 1017; *Rahman*, 861 F. Supp. at 252-53 (rejecting the notion that the "wheat" could be separated from the "chaff" while the "stalks were still growing"). This is especially true where the individuals involved use codes or cryptic language. *See, e.g.*, *Hammoud*, 381 F.3d at 334 ("[a] conversation that seems

innocuous on one day may later turn out to be of great significance, particularly if the individuals involved are talking in code"); *Bin Laden,* 126 F. Supp. 25 at 286; *In re Kevork,* 634 F. Supp. at 1017; *Thomson,* 752 F. Supp. at 81 (permissible to retain and disseminate "bits and pieces" of information until their "full significance becomes apparent"). As a result, "courts have construed 'foreign intelligence information' broadly and sensibly allowed the government latitude in its determination of what is foreign intelligence information." *Rosen,* 447 F. Supp. 2d at 551; *IARA,* 2009 WL 5169536, at *2.

Moreover, as noted above, FISA expressly states that the Government is not required to minimize information that is "evidence of a crime." 50 U.S.C. §§ 1801(h)(3), 1821(4)(C). As a result, to the extent that certain communications of a United States person may be evidence of a crime or may otherwise establish an element of a substantive or conspiratorial offense, such communication need not be minimized. *Isa,* 923 F.2d at 1305.

The nature of the foreign intelligence information sought also impacts the amount of information regarding a United States person that can properly be retained and disseminated. As Congress explained, there is a legitimate need to conduct a thorough post-acquisition review of FISA information that involves a United States person who is acting as an agent of a foreign power:

> It is "necessary" to identify anyone working with him in this network, feeding him information, or to whom he reports. Therefore, it is necessary to acquire, retain and disseminate information concerning all his contacts and acquaintances and his movements. Among his contacts and acquaintances, however, there are likely to be a large number of innocent persons. Yet, information concerning these persons must be retained at least until it is

> determined that they are not involved in the clandestine intelligence activities and may have to be disseminated in order to determine their innocence.

H.R. Rep. No. 95-1283 at 58. Indeed, courts have cautioned that, when a United States person communicates with an agent of a foreign power, the Government would be "remiss in meeting its foreign counterintelligence responsibilities" if it did not thoroughly "investigate such contacts and gather information to determine the nature of those activities." *Thomson,* 752 F. Supp. at 82.

Congress also recognized that agents of a foreign power are often very sophisticated and skilled at hiding their activities. *See Thomson,* 752 F. Supp. at 81 (quoting H.R. Rep. No. 95-1283 at 58). Accordingly, to pursue leads, Congress intended that the Government be given "a significant degree of latitude" with respect to the "retention of information and the dissemination of information between and among counterintelligence components of the Government." *Id.*

In light of these realities, Congress recognized that minimization efforts by the Government can never be free of mistake because "no electronic surveillance can be so conducted that innocent conversations can be totally eliminated." S. Rep. No. 95-701 at 39. The Fourth Circuit reached the same conclusion in *Hammoud,* 381 F.3d at 334, stating that the "mere fact that innocent conversations were recorded, without more, does not establish that the government failed to appropriately minimize surveillance."[26] Accordingly, in reviewing the adequacy of minimization efforts, the test to be applied is neither whether innocent conversations were intercepted, nor whether mistakes were made with respect to particular communications. Rather,

---

[26] The reason is that although "the minimization requirement obligates the Government to make a good faith effort to minimize . . . it is not always immediately clear into which category a particular conversation falls. A conversation that seems innocuous on one day may later turn out to be of great significance, particularly, if the individuals involved

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**                                                    **55**

as the United States Supreme Court stated in the context of Title III surveillance, there should be an "objective assessment of the [agents'] actions in light of the facts and circumstances confronting [them] at the time." *Scott v. United States,* 436 U.S. 128, 136 (1978). The test of compliance is whether a good faith effort to minimize was made. *Hammoud,* 381 F.3d at 334 ("[t]he minimization requirement obligates the Government to make a good faith effort to minimize the acquisition and retention of irrelevant information"); *see also* S. Rep. No. 95-701 at 39-40 (stating that the court's role is to determine whether "on the whole, the agents have shown a high regard for the right of privacy and have done all they reasonably could do to avoid unnecessary intrusion"); *IARA,* 2009 WL 5169536, at *6 (quoting S. Rep. No. 95-701 at 39-40).

Moreover, absent evidence that there has been a complete disregard for the minimization procedures, suppression is not the appropriate remedy with respect to those communications that were properly obtained and retained. Indeed, Congress intended that any suppression remedy should apply only to the "evidence which was obtained unlawfully." H.R. Rep. No. 95-1283 at 93. FISA's legislative history reflects that Congress intended only this limited sanction for errors of minimization:

> As the language of the bill makes clear, only that evidence which was obtained unlawfully or derived from information obtained unlawfully would be suppressed. If, for example, some information should have been minimized but was not, only that information should be suppressed; the other information obtained lawfully should not be suppressed.

/ / /

---

are talking in code." *Hammoud,* 381 F.3d at 334, citing S. Rep. 95-701 at 39-40.

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                56

*Id*; *accord IARA*, 2009 WL 5169536, at *7 ("this Court declines to suppress evidence obtained through FISA warrants properly issued and conducted"); *see also United States v. Falcone*, 364 F. Supp. 877, 886-87 (D.N.J. 1973), *aff'd*, 500 F.2d 1401 (3d Cir. 1974) (Title III).

## 2. The FISA Collections Were Properly Minimized

### CLASSIFIED MATERIAL REDACTED

## IX. CONCLUSION

Defendant's motion for discovery of the FISA materials and for suppression of the FISA-obtained and derived evidence should be denied. The Attorney General has filed a declaration in this case stating that disclosure or an adversary hearing would harm the national security of the United States. FISA thus mandates that this Court conduct an *in camera, ex parte* review of the challenged FISA materials to determine whether the collection was both lawfully authorized and conducted. In conducting that review, the Court may disclose the FISA materials "only where such disclosure is necessary to make an accurate determination of the legality of the surveillance [or search]." *See* 50 U.S.C. §§ 1806(f), 1825(g). Congress, in enacting FISA's procedures for *in camera, ex parte* judicial review, has balanced and accommodated the competing interests of the Government and criminal defendants and has articulated the proper standard for disclosure: that is, only where the Court finds that disclosure is necessary to the Court's accurate determination of the legality of the FISA collection. *See id.* The Court will be able to render a determination based on its *in camera, ex parte* review, and the defendant has failed to present any colorable basis for supplanting Congress's reasoned judgment with a different proposed standard of review.

/ / /

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                    57

The Government respectfully submits that the Court can make this determination without disclosing the classified and highly-sensitive FISA materials to the defendant. Every federal court that has been asked to determine the legality of a FISC-authorized collection has been able to do so *in camera, ex parte* and without the assistance of defense counsel. The FISA materials at issue here are organized and readily understood, and an overview of them is presented hereinafter as a frame of reference.

Even if this Court were to determine that the FISA collection had not been lawfully authorized or lawfully conducted, the FISA evidence would nevertheless be admissible under the "good faith" exception to the exclusionary rule articulated in *Leon*, 468 U.S. 897 (1984). *See Ning Wen*, 477 F.3d at 897 (holding that the *Leon* good-faith exception applies to FISA orders); *Mubayyid*, 521 F. Supp. 2d at 140 n.12 (noting that the Government could proceed in good-faith reliance on FISA orders even if FISA were deemed unconstitutional); *Ahmed*, 2009 U.S. Dist. LEXIS 120007, at *25 n.8; *Nicholson*, 2010 WL 1641167, at *3.

Lastly, courts have uniformly held that the probable cause requirement of FISA comports with the requirements of the Fourth Amendment to the United States Constitution, *see, e.g., Isa*, 923 F.2d at 1304, and that FISA's provisions for *in camera, ex parte* review comport with the due process requirements of the United States Constitution. *See, e.g., Spanjol*, 720 F. Supp. at 58-59; *United States v. Butenko*, 494 F.2d 593, 607 (3d Cir.), *cert. denied sub nom. Ivanov v. United States*, 419 U.S. 881 (1974); *Damrah*, 412 F.3d at 624; *Warsame*, 547 F. Supp. 2d at 988-89. The defendant advances no argument to justify any deviation from this well-established precedent.

/ / /

Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity                                   58

Based on the foregoing discussion and analysis, the Government respectfully submits that the Court should: (1) conduct an *in camera, ex parte* review of the FISA dockets and the Government's classified submission; (2) find that the FISA surveillance was lawfully authorized and lawfully conducted in compliance with the Fourth Amendment; (3) hold that disclosure of the FISA dockets and the Government's classified submissions to the defense is not required because the Court is able to make an accurate determination of the legality of the surveillance without disclosing the FISA dockets or any portions thereof; (4) order that the FISA dockets and the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Government's Amended Unclassified Memorandum in Opposition to Defendant's Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery and for Suppression of the Fruits of FISA Activity**                                                                 **59**

Government's classified submissions be maintained under seal by the Classified Information

Security Officer or his/her designee; and (5) deny the defendant's Motion. [27]

Respectfully submitted this 8th day of March 2012.

S. AMANDA MARSHALL
United States Attorney


*s/ Ethan D. Knight*
ETHAN D. KNIGHT, OSB #99298
Assistant United States Attorney
(503) 727-1000


JOLIE F. ZIMMERMAN
Trial Attorney
Counterterrorism Section
National Security Division
United States Department of Justice
950 Pennsylvania Ave., N.W.
Washington D.C. 20530
Tel: (202) 514-1453
Fax: (202) 514-8714

---

[27] A district court order requiring the disclosure of FISA materials is a final order for purposes of appeal. *See* 50 U.S.C. § 1806(h). In the unlikely event that the Court concludes that disclosure of any item within any of the FISA materials may be required, given the significant national security consequences that would result from such disclosure, the Government would expect to pursue an appeal. Accordingly, the Government respectfully requests that the Court indicate its intent to do so before issuing any order, or that any such order be issued in such a manner that the United States has sufficient notice to file an appeal prior to any actual disclosure.

**Government's Amended Unclassified Memorandum in Opposition to Defendant's
Motion To Disclose FISA-Related Material Necessary To Litigate Motions for Discovery
and for Suppression of the Fruits of FISA Activity**                    60