S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
**PAMALA R. HOLSINGER**, OSB #89263
Assistant United States Attorneys
ethan.knight@usdoj.gov
pamala.holsinger@usdoj.gov
1000 SW Third, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
Attorneys for United States of America

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MOHAMED OSMAN MOHAMUD,<br><br>Defendant. | Case No. 3:10-CR-00475-KI<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION TO COMPEL DISCOVERY |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through Ethan D. Knight and Pamala R. Holsinger, Assistant United States Attorneys, hereby responds to defendant Mohamed Osman Mohamud's Second Motion to Compel Discovery (ECF No. 77) and the Memorandum in Support thereof (ECF No. 78).

I.      **Introduction**

The following response addresses defendant's second Motion to Compel Discovery.  On March 7, 2011, defendant filed his First Motion to Compel Discovery (ECF No. 26).  The government responded on April 7, 2011.  The Court heard argument on defendant's motion on June 1, 2011, at which time it issued oral orders on a number of issues and deferred its ruling on a number of others.  In his new motion defendant addresses a number of the issues raised in his original motion and raises a number of new issues.  The government has set forth its responses to all of defendant's requests in the order they appear in his Motion below.

The government addressed the applicable legal standards for discovery in its Response to Defendant's First Motion to Compel (ECF No. 28), including the law related to entrapment and its role determining the appropriate scope of discovery.  As a preliminary matter, it is worth noting, again, that the rules for discovery are the same in defendant's case as they are in any criminal case heard by this Court.  Discovery in criminal cases generally is controlled by Rule 16 of the Federal Rules of Criminal Procedure.[1]  Pretrial discovery is also governed by the *Jencks Act* (18 U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided thereunder.

The government has provided, and will continue to provide, defendant with pretrial discovery in accordance with and beyond what is required by these discovery standards.  Indeed, the government continues to go beyond its statutory and constitutional discovery obligations and provided the defense with a broad range of information that is not, in fact, discoverable.  While

---

[1] Unless otherwise noted, any reference to a "Rule" herein refers to the Federal Rules of Criminal Procedure.

**Government's Response to Defendant's Second Motion to Compel Discovery        Page 2**

the government is limited by the laws related to the provision of classified material, the government has provided defendant with a considerable amount of discovery to date, including: emails, audio and video recordings, computer evidence, recorded telephone calls, and FBI reports.

Defendant now argues that the government has maintained a narrow view of relevant time frame in this case: "the defense remains concerned about the narrow view the government has asserted regarding the temporal range of this case. According to previous pleadings, the government apparently views "this case" to encompass only the interactions between Mr. Mohamud and the undercover agents." (Def.'s Mem. Supp. Second Mot. 3, Feb. 21, 2012, ECF No. 78). This statement is inaccurate and not supported by "previous pleadings" or the facts. The government has consistently taken a broad view of the "temporal range" relevant to defendant's case.

The government has provided to defendant a significant amount of evidence regarding defendant's behavior that encompassed the period before his initial meeting with the undercover agents. This evidence is highly relevant to a central issue in the case: defendant's predisposition to commit the charged offense. This evidence includes: defendant's emails, including contacts with UA1; activities surrounding defendant's publication in *Jihad Recollections*; investigative reports; recorded phone calls; and, text messages. The government has also provided defendant with calls and text messages regarding defendant's social activities from the time period prior to his contact with the UCEs, even though this material is arguably not discoverable.

To the extent that defendant's discovery requests involve information requiring a discussion of classified information, such matters will be addressed by the government in a

**Government's Response to Defendant's Second Motion to Compel Discovery         Page 3**

separate pleading.  Thus, this response should be taken only to refer to unclassified materials in the possession of the government.

## II.     Fed. R. Crim. P. 16(a)(2) - Work Product

Defendant asks this Court to broaden the criminal discovery rules to include material that would constitute non-discoverable work product.  Defendant's motion seeks disclosure of "material related to the pre-meeting plans, post-meeting debriefings, and tactical decisions regarding interaction with [the defendant]" and "material related to government determinations or concerns that investigative activity by Mr. Mohamud was protected by the First Amendment or did not constitute a completed crime." (Def.'s Mem. Supp. Second Mot. 16.)  Each of these requests is addressed individually below.

Federal Rule of Criminal Procedure 16(a)(2) states that, "[e]xcept as Rule 16(a)(1) provides otherwise, [Rule 16] does not authorize the discovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigation or prosecuting the case."  Courts have frequently recognized that this exception to the discovery obligations of Rule 16(a)(1) is analogous to the work product privilege set forth in Federal Rule of Civil Procedure Rule 26(b)(3).  The work product privilege in the context of civil litigation was recognized by the United States Supreme Court in *Hickman v. Taylor*, 329 U.S. 495 (1947).  *Hickman* provides the foundation for the protection of an attorney's documents and other tangible items under Federal Rule of Civil Procedure Rule 26(b)(3), which states: "[T]he court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."

**Government's Response to Defendant's Second Motion to Compel Discovery          Page 4**

The Ninth Circuit has found that Congress clearly intended that the Fed. R. Crim. P. 16(a)(2) protection of investigative materials extends beyond the work product privilege as defined in the civil context.  In *United States v. Fort*, 472 F.3d 1106, 1115 (9th Cir. 2007), the Court noted that "[a]lthough the Advisory Committee used the term 'work product' to describe the materials discoverable under Rule 16(a)(2), it purposefully defined the Rule's scope differently than that of Rule 26."  *See* Fed. R. Crim. P. 16.  Criminal Rule 16(a)(2) is more expansive and not only protects the mental impressions, conclusions, opinions, or legal theories of the attorney for the government or other government agents, but includes all "reports, memoranda, or other internal government documents."  *Id.*; *Fort*, 472 F.3d at 115.

In *United States v. Mann*, 61 F.3d 326, 331 (5th Cir. 1995), the Fifth Circuit stated "[t]he 1974 Amendment Notes state that the phrase "reports, memoranda, or other government documents made by the attorney for the government" was meant to incorporate the "work product" language of *Hickman v. Taylor*, into the rule to ensure the government attorney's litigation preparations are protected from discovery."  The court in *Mann* found that an IRS agent's reports analyzing the strengths of the case are work product under 16(a)(2) and not discoverable.

Similarly, the Ninth Circuit and other courts have held that Rule 16(a)(2) protects from discovery a variety of internal government documents prepared for purposes of litigation.  *See, e.g.*, *United States v. Amlani*, 111 F.3d 705, 713 (9th Cir. 1997) (internal FBI logs of items seized from defendant's business); *United States v. LiCausi*, 167 F.3d 36, 50-51 (1st Cir. 1999) (agent's anticipated testimony about his investigation of phone records to which defense also had access); *United States v. Koskerides*, 877 F.2d 1129, 1133-34 (2d Cir. 1989) (IRS agent's report

**Government's Response to Defendant's Second Motion to Compel Discovery**          **Page 5**

containing computations of defendant's tax liability); *United States v. Robinson*, 439 F.3d 777, 779-80 (8th Cir. 2006) (IRS agent's report containing computations of defendant's gross income and receipts).

The government will continue to review any material in its possession—including work product—to ensure that it is complying with its obligations under *Brady* and *Giglio*. Defendant has argued that only the defendant can make the proper determination what work product material constitutes *Brady*. (Def.'s Mem. Supp. First Mot. 5-6, March 7, 2011, ECF No. 27.) The law does not support this broad interpretation of *Brady*. The mere possibility that an item of information might help the defense or might affect the outcome of the trial "does not establish 'materiality' in the constitutional sense." *United States v. Agurs*, 427 U.S. 97, 109-110 (1976). Rather, evidence is material only if "its suppression undermines confidence in the outcome of the trial," *United States v. Bagley*, 473 U.S. 667, 678 (1985), or if the information "is of sufficient significance to result in the denial of the defendant's right to a fair trial." *Agurs*, 427 U.S. at 108; *Bagley*, 473 U.S. at 675.

Defendant has not clearly explained how much of the new information he seeks is "material" under *Bagley*. Rather, defendant continues to argue that the Court should order the government to produce a virtually limitless amount of material (much of which is not discoverable under Rule 16(a)(2)) based on speculative and ambiguous theories that do not meet the threshold of materiality. *See also Agurs*, 427 U.S. at 106 ("there is, of course, no duty to provide defense counsel with unlimited discovery of everything known by the prosecutor").

/ / /

/ / /

### III. Discovery Matters from the June 1, 2011 Hearing

**1. Statements of Defendant Including: Recorded Face-to-Face Conversations, Telephone Calls, Text Messages, E-mail Correspondence, Notes, or "Other Accounts Of Recorded Verbal Or Written Interactions"**

The government does not have any additional information responsive to this request.

**2. Removal of All Non-Classified Redactions Within the Provided Discovery**

Defendant has sought any non-classified information from reports that has been redacted. The government has produced this material in an unredacted format. At this time, the government has no additional unclassified, redacted material to provide. If there are any additional materials that the government can produce in an unredacted format, it will do so.

**3. Existing Logs or Summaries of Phone Calls**

Defendant has sought any logs or summaries related to the roughly 1000 phone calls the government has produced in this case. As a preliminary matter, it is worth noting that the government is providing this work product material as a courtesy. The law is clear that internal government documents prepared for purposes of litigation are protected from disclosure under Fed. R. Crim. P. 16(a)(2). *See, e.g.*, *United States v. Amlani*, 111 F.3d 705 (9th Cir. 1997). However, the government has already produced a log with call information for a majority of these calls. To the extent there are mistakes in this work product the government has provided defendant, it will correct them and produce the material as soon as it is in the government's possession.

**4. All Materials Related to Government Monitoring of Statements, Electronic or Otherwise, by Mr. Mohamud as well as His Computer Activity.**

The government does not have any additional information responsive to this request.

/ / /

**Government's Response to Defendant's Second Motion to Compel Discovery         Page 7**

### 5.     All Materials Related to Any Contact with Mr. Mohamud by UCE1, UCE2, and Any Other Person Acting on Behalf of the Government.

The Court granted defendant's request with respect to a person identified as Bill Smith: "[M]y feeling is that they should produce everything that refers to Mr. Smith and what he did and what he reported; and if he was debriefed at any time and that's in a report, you should have that." (Mot. Hr'g Tr. 23:10-14, June 1, 2011, ECF No. 58.)  The government understands that it is obligated to produce all reports that related to defendant and Bill Smith, not simply the email contacts between the two.  The government is complying with this request.

Throughout this case, defendant has placed a disproportionate amount of importance on the Smith emails and their role in the investigation and the Court's future discovery rulings, largely because of what defendant characterizes as Smith's inducement of defendant. (Def.'s Mem. Supp. Suppression of Non-FISA Products, ECF No. 57.)  There were 44 emails sent between Smith and defendant.  The first email was sent by Smith on November 9, 2009 and the last email was sent by defendant on August 1, 2010.

The defendant has referred to the Smith emails as contacts that were intended to persuade defendant to "do violence in the United States." (Def.'s Mem. Supp. Suppression of Non-FISA Products 5.)  This is an incomplete and inaccurate description of their communications.  On November 9, 2009, Smith reached out to defendant telling him that he saw an online post he wrote and that he [Smith] wanted to "help rid the occupiers from Palestine."  In only his second response to Smith on November 13, 2009, defendant wrote: "i would advise you move to a more populated Muslim area.  For security be more careful, its a good thing you talked to me because you can tricked into saying something that will get you into trouble for nothing...But don't put

yourself out there. There are lot of spies."[2] Smith responds to this email by telling defendant: "I envision joining others who have the same desire. If we can get the west preoccupied with problems,and struggleshere, them they will be less involved in Palestine."

Defendant continued to communicate with Smith. On December 1, 2010, Smith emailed defendant: "It looks like there has been some action against the west in the last few weeks. ...i cant tell you how easy it should be to bring any community here in the west to its knees." The defendant continued to provide Smith advice–instead of ignoring him or questioning his apparent support of violence. In response to the December 1 email, defendant wrote "brother, i don't think you should talk about such issues, especially online. How in you eeman though, how is your situation." Defendant wrote a similar email on January 5, 2010: "im not saying don't talk about it, I am just saying not online, just find some brothers who share your views and talk with them but remember that you have to be cautious, you don't want to get arrested for just talking."

The two exchanged roughly twenty emails after the January 5, 2010 exchange; these later emails cover a range of topics, including defendant's desire to travel overseas. The last direct exchange between the two occurred on May 13, 2010, when Smith thanked defendant for sending him information about the "propaganda of the crusaders" about Afghani use of the poppy crop to support jihad. The final contact between them occurred on August, 1, 2010, when defendant forwarded Smith and a number of other individuals (including UA1) an email about boycotting Danish products because of a Danish film that criticizes the Prophet Mohammed.

Smith never suggested that defendant should travel overseas for violent jihad or commit any violent act in the United States nor did he ever ask defendant to provide any kind of material

---

[2] Emails are quoted in their original form and any mistakes are in the original.

**Government's Response to Defendant's Second Motion to Compel Discovery       Page 9**

support to any individual or organization.  On the contrary, Smith clearly was seeking advice from defendant about what Smith can do for "Ummah," and he provided defendant numerous opportunities to steer him away from violence.

Measured against the standard of inducement, the emails have little significance in the case.  Inducement is any government conduct "creating a substantial risk that an otherwise law-abiding citizen would commit an offense." *United States v. Williams*, 547 F.3d 1187, 1197 (9th Cir. 2008) (quoting *United States v. Davis*, 36 F.3d 1424, 1430 (9th Cir. 1994).  The Smith emails did not create a substantial risk that defendant would attempt to detonate a bomb on November 26, 2010.  If anything, defendant's willingness to engage with Smith and defendant's warnings to Smith about possible government surveillance underscore his predisposition to commit the offense.

Defendant has also offered additional support for this request in an *ex parte* filing for the Court.  The government is unable to respond to the specific arguments made in defendant's *ex parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

### 6. Background Information Regarding Any Agent in Contact with Mr. Mohamud, Including Name, Governmental Affiliation, and Curriculum Vitae.

The government will provide defendant witness information consistent with its legal obligations prior to trial.

Defendant has also offered additional support for this request in an *ex parte* filing for the Court.  The government is unable to respond to the specific arguments made in defendant's *ex*

/ / /

*parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

> **7.    Reports or Information Generated or Distributed to Government Actors Regarding Mr. Mohamud.**

The government is unable to respond to this request due to its lack of specificity. Defendant has also offered additional support for this request in an *ex parte* filing for the Court. The government is unable to respond to the specific arguments made in defendant's *ex parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

> **8.    All Materials Relative to the Training or Experience of Any Government Agent Who Contacted Mr. Mohamud, Including the Past Experience of Agents in Conducting Similar Undercover Operations.**

The Court addressed this argument at the June 1, 2011 hearing when it stated that it was not going to order the disclosure of any "training or experience of any government agent who contacted the defendant, including the agents who have been identified as UCE1 and UCE2." (Mot. Hr'g Tr. 53:6-8.)  The Court allowed defendant to reopen the issue when defendant had all the material about the contacts between government agents and defendant.  The government has not been advised of any new basis under which the Court should reverse its earlier ruling.

The government will disclose training and experience of its witness, including UCE1 and UCE2, if they are called as witnesses at trial.  As is always the case, the government may also elicit this information during direct examination at trial to lay the foundation for the agents' actions during the investigation.  Defendant will also be able to cross-examine the agents regarding their training, experience, and contact with defendant at trial.

/ / /

**Government's Response to Defendant's Second Motion to Compel Discovery        Page 11**

Defendant has also offered additional support for this request in an *ex parte* filing for the Court. The government is unable to respond to the specific arguments made in defendant's *ex parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

### 9. All Audio, Video, or Other Recordings of the Undercover Agents Before, During, and After Meetings with Mr. Mohamud.

The government has provided the Court with this material to review on an *ex parte* basis, consistent with its order from the June 1, 2001 hearing. (Mot. Hr'g Tr. 57:23-58:1.) The government reiterates its position that these statements are not discoverable.

Defendant has also offered additional support for this request in an *ex parte* filing for the Court. The government is unable to respond to the specific arguments made in defendant's *ex parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

### 10. Allow Defense to Inspect Recorder and Transmission Device.

The parties are in the process of arranging for defendant's expert to inspect the device pursuant to an appropriate protective order. As the government noted in the June hearing, if there are any issues related to the sensitivities of the equipment and how this impacts defendant's request, the government will bring them to the Court. (Mot. Hr'g Tr. 60:22-61:1.)

### 11. Service and Repair History for the Devices Used on July 30, 2010.

The government does not have any material responsive to this request.

/ / /

/ / /

/ / /

12. **Any Materials Relating to Any Behavioral or Social Science Expert Consulted for This Case, Including, but Not Limited to, Any Psychiatrist, Psychologist, Social Scientist, Cultural or Religious Expert, and Any Military or Civilian Psychological Operations or Interrogation Expert.**

As the government explained in its prior response (ECF No. 28), no experts of this nature were consulted or used in this case. Defendant now apparently seeks the "production of any such experts used historically, including experts who consulted with or trained persons who were in contact with Mr. Mohamud." (Def.'s Mem. Supp. Second Mot. 8.) This request is overly broad and not supported by any controlling legal authority. In addition, the government believes that this issue was addressed at the June 1, 2011 hearing when the Court tentatively ruled that it would not order production of the training of the government agents who contacted defendant. (Mot. Hr'g Tr. 53:4-16.)

Defendant has also offered additional support for this request in an *ex parte* filing for the Court. The government is unable to respond to the specific arguments made in defendant's *ex parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

13. **All Materials Relative to the Search and Seizure of Computers, Cell Phones, or Other Electronic Media.**

The government has provided all such materials in its possession to defendant. If and when the government conducts any further analysis or searches of seized electronic material, it will be provided to defendant in accordance with the rules of discovery.

14. **All Materials from Any Agency Regarding Interagency Cooperation During the 2009 Oregon State Police Investigation.**

The government does not have any additional information responsive to this request.

/ / /

    15.    **All Materials Related to UA1 and UA2.**

Defendant has specifically requested immigration records associated with UA1. (Def.'s Mem. Supp. Second Mot. 10.) The immigration records of UA1 are not discoverable under Fed. R. Crim. P. 16 or *Brady*. The government has no additional information responsive to this request.

    16.    **All Materials Related to Any Investigation into the Yemeni School Referenced in Emails from UA1.**

As the government stated in its Response to Defendant's First Motion to Compel, it does not have any material related to this university, the Al-Iman University in Sanaa, Yemen, and defendant's case. There is, however, a considerable amount of open source material available regarding the institution and its founder and director, Shaykh Abd-al-Majid al-Zindani. For example, al-Zindani has been listed by the United States Department of the Treasury, Office of Foreign Assets Control, as a Specially Designated Global Terrorist since February 2004.

## IV.   New Requests for Discovery

    1.    **The Court Should Order Production of Material Regarding the Existence of Federal Bureau of Investigation and Other Investigative Agencies' Policies and Practices Regarding Recording the Initial Face-to-Face Contact with Undercover Agents and All Internal Communications Material Regarding Their Application in Mr. Mohamud's Case.**

Defendant relies on witness testimony in an unrelated case in a different district to argue that this Court should order production of FBI and other investigative agency policies and practices regarding the recording of the initial meeting between defendant and the FBI undercover employee (UCE) on July 30, 2010. No purpose would be served by such an order: There is no FBI policy regarding the recording of the initial face-to-face contacts with the undercover agents. As a result, the government has no material responsive to defendant's

**Government's Response to Defendant's Second Motion to Compel Discovery    Page 14**

request. Regarding what the agents' "practice" is, defendant can cross-examine them about their decisions in this case at trial.

It is worth noting, however, that defendant has misconstrued the testimony in *United States v. Ferdaus*, No. 11-10331 (D. Mass. filed Sept. 29, 2011), the case to which he cites. In that case, the initial meeting that was not recorded was between the subject (Rezwan Ferdaus) and an FBI cooperating witness (or confidential source), not an FBI "UCE." The FBI agent who testified at Ferdaus's detention hearing on November 4, 2011, specified that the practice of not recording an initial meeting applied to "an introduction between a cooperating witness and a subject." As the agent explained, an introduction "isn't guaranteed" in these circumstances, so often a first meeting is not recorded. Also, the testimony in *Ferdaus* related to the standard "practice" in the Boston FBI Division, not a written FBI policy.

> 2. **The Court Should Order Production of Material Regarding Surveillance of Mr. Mohamud and His Family Generated from Undercover and Informant Activities at Their Mosque.**

The government does not have any information responsive to this request. Defendant has also offered additional support for this request in an *ex parte* filing for the Court. The government is unable to respond to the specific arguments made in defendant's *ex parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

> 3. **The Court Should Order the Production of All Government Material Related to the Investigation of Mr. Mohamud and Portland's Participation in the Joint Terrorism Task Force and Any Other Collateral Purpose for the Tactics Applied by the Government.**

There is no controlling legal authority that supports the disclosure of this type of material and defendant has offered no evidence that it even exists. Defendant relies on *Brady* to support

**Government's Response to Defendant's Second Motion to Compel Discovery          Page 15**

this request, claiming that such materials would be evidence of bias by the government in conducting the underlying investigation. (Def.'s Mem. Supp. Second Mot. 15.) Defendant's argument is speculative and not based on fact. This is not the standard for disclosure under *Brady*, or any other controlling legal authority: "[M]ere speculation about materials in the government's files [does not require] the district court . . . under *Brady* to make the material's available for [defendant's] inspection." *United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) (citation omitted). The investigation and timing of this case were driven by one factor: Defendant's selection of the tree lighting ceremony on November 26, 2010 as his intended target. Even if defendant were able to show that this was not the case, there is no indication that this type of information would "undermine[s] confidence in the outcome of the trial." *United States v. Bagley*, 473 U.S. 667, 678 (1985).

Defendant's argument also belies common sense. Defendant is suggesting that despite the fact that he selected the date and time for the planned attack, the prosecution team in this case somehow manipulated a major criminal investigation in an effort to potentially secure the reassignment of two Portland police officers to a task force that already contains dozens of federal agents. This argument is untethered from reality.

> **4.    The Court Should Order Production of Material Related to the Pre-Meeting Plans, Post-Meeting Debriefings, and Tactical Decisions Regarding interaction with Mr. Mohamud.**

There is no controlling legal authority that supports the disclosure of this type of information. Much of this material would fall within the definition of work product, protected by Federal Rule of Criminal Procedure 16(a)(2) and discussed in Section II above. Defendant's

/ / /

request is also unworkable: he appears to be asking the government to retrospectively document every thought, conversation, or meeting that occurred in the lengthy investigation of his case.

Finally, requiring the production of this type of material would have a chilling effect on the ability of law enforcement to do its job. Such disclosure would undermine the government's ability to candidly discuss and evaluate the legal and strategic options available in an investigation without the belief that the material would ultimately be disclosed. *See, e.g.*, *United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) (government's predecisional death penalty evaluation form and memorandum were protected by the deliberative process privilege because the court reasoned that "[d]iscovery of the deliberative materials would have a chilling effect on the thorough evaluation of these issues and hinder the just, frank, and fair review of the decision for every individual defendant who faces the prospect of receiving Notice of Intent to Seek the Death Penalty") (quoting *United States v. Frank*, 8 F. Supp. 2d 253, 284 (S.D.N.Y. 1998)).

### 5. The Court Should Order Production of Material to the Placement of Mr. Mohamud on the No-Fly List.

The government does not have any information responsive to this request. The government has provided defendant with a copy of an interview conducted with defendant at Portland International Airport on June 14, 2010.

### 6. The Court Should Order Production of Materials Related to the Amount of Money Spent by the Government Leading to Mr. Mohamud's Arrest, Including but Not Limited to Surveillance, Consultations, and Personnel.

There is no authority, legal or otherwise, that supports this request and defendant does not offer one.

/ / /

/ / /

**Government's Response to Defendant's Second Motion to Compel Discovery    Page 17**

### 7. The Court Should Order Production of Material Related to Governmental Determination or Concerns That Investigated Activity by Mr. Mohamud Was Protected by the First Amendment or Did Not Constitute a Completed Crime.

It is not clear what defendant is seeking with this request. The First Amendment of the United States Constitution does not affect the rules of evidence in criminal cases (specifically Fed. R. Evid. 401 and Fed. R. Evid. 403). In this case (as in many criminal cases), there is relevant evidence that is also protected First Amendment activity; specifically, defendant's published work in *Jihad Recollections*. This work became relevant evidence of defendant's predisposition when defendant attempted to detonate a bomb for ideological reasons many of which are set forth in his early writings.

If the defendant is seeking "governmental determinations or concerns" in the form of internal communications or memoranda, there is no controlling legal authority that would support the disclosure of this type of information. To the contrary, as discussed in Section II above, controlling legal authority precludes such disclosure.

### 8. The Court Should Order Production of Material Related to Investigations of Any of Mr. Mohamud's Associates.

The government is unable to respond to this request due to its lack of specificity, specifically the absence of information regarding why this information, if it exists, would be relevant and helpful to the defense. Defendant has also offered additional support for this request in an *ex parte* filing for the Court. The government is unable to respond to the specific arguments made in defendant's *ex parte* filing or even determine the applicable legal standards or factual information the Court should consider in evaluating defendant's request.

/ / /

### 9. The Court Should Order Disclosure of All Experts the Government May Use at Trial and Intended Trial Exhibits.

The Court has set a deadline of August 7, 2012 for the filing of trial documents, including expert summaries pursuant to Fed. R. Crim. P. 16(a)(1)(G) and Fed. R. Crim. P. 16(b)(1)(C). The government expects that both parties will file their respective summaries and exhibit lists at this time. If there are scheduling issues, the government will contact the Court.

### 10. The Court Should Order the Disclosure of All Grand Jury Proceedings Underlying the Indictment.

Defendant seeks "transcripts of all proceedings, including but not limited to witness testimony (including any witness notes relied upon by witnesses), questions raised by grand jurors and responses provided by the government, and information provided by the grand jurors regarding applicable legal standards." (Def.'s Mem. Supp. Second Mot. 22.) To the extent defendant is seeking release of all information surrounding the grand jury proceedings, he has failed to demonstrate any particularized need which would overcome the policy of grand jury secrecy. *United States v. Procter & Gamble, Co.*, 356 U.S. 677, 683 (1958).

Defendant has also failed to make an adequate showing that would justify the disclosure of grand jury transcripts. Federal Rule of Criminal Procedure 6(e)(3)(C)(ii) provides that grand jury transcripts may be disclosed "upon a showing that grounds may exist for a motion to dismiss the indictment because of matters occurring before the grand jury." A party seeking disclosure of the grand jury transcripts must demonstrate a "particularized need" for the disclosure. *Dennis v. United States*, 384 U.S. 855, 870 (1966); *United States v. Walczak,* 783 F.2d 852, 857 (9th Cir.1986). The standards the trial court should apply in granting disclosure of the grand jury transcripts are "(1) that the desired material will avoid a possible injustice, (2) that

the need for disclosure is greater than the need for continued secrecy, and (3) that only the relevant parts of the transcripts should be disclosed." *United States v. Plummer*, 941 F.2d 799, 806 (9th Cir. 1991) (citing *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979)).

In *Walczak,* the defendant sought discovery of the grand jury proceedings to aid him in a motion to dismiss the indictment. One of the reasons the defendant sought discovery was that the law enforcement officers' testimony before the grand jury improperly summarized the testimony of other agents. However, defendant provided no facts to support this claim. The court held that the defendant's claim failed to meet the particularized need standard because it was speculative. *Walczak*, 783 F.2d at 857.

Similarly, here, defendant does not provide any evidence to support any claim that anything improper occurred before the grand jury in this case. Defendant's assertion that the production is necessary both for trial preparation as well as to assess potential pretrial motions is speculative. Notwithstanding this, the government has already disclosed that the grand jury heard testimony regarding defendant's case on November 29, 2010.

## IV.   Conclusion

For the reasons stated above—particularly the government's continued willingness to go beyond its statutory and constitutional discovery obligations—defendant's Second Motion to Compel should be denied.

Respectfully submitted this 15th day of March 2012.

                S. AMANDA MARSHALL
                United States Attorney

                *s/ Ethan D. Knight*
                ETHAN D. KNIGHT, OSB #99298
                PAMALA R. HOLSINGER, OSB #89263
                Assistant United States Attorneys