**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
**Ellen C. Pitcher**
**Assistant Federal Public Defender**
ellen_pitcher@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
503-326-2123 Telephone
503-326-5524 Facsimile

**Attorneys for Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:10-cr-00475-KI-1 |
| Plaintiff, | REPLY TO GOVERNMENT'S AMENDED UNCLASSIFIED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISCLOSE FISA-RELATED MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY |
| v. | |
| MOHAMED OSMAN MOHAMUD, | |
| Defendant. | |

Our Constitution provides strict limits on government eavesdropping on our conversations, surveillance of our telephones and computers, and searches that intrude on private areas. Mr.

Mohamud was apparently the target of intense government surveillance, searches, and seizures under the Foreign Intelligence Surveillance Act (FISA) for a prolonged period while he was a teenager. Until he had been induced by government agents, he did not engage in criminal activity. The government has effectively admitted it violated the Fourth and Fifth Amendments during its non-FISA investigation of Mr. Mohamud.

In this context, the government intends to use the fruits of FISA surveillance and searches against Mr. Mohamud at trial with no opportunity for the defense to participate in the determination of the legality of government actions. In the normal criminal case, the government would be required to provide the bases for its searches and the fruits of its activities so the defense could determine whether the government violated the law during its investigation and should be prohibited by the courts from using the material gathered against him. Because it asserts a statutory privilege based on national security, the government opposes disclosure to Mr. Mohamud of even the most basic material necessary for fair presentation of his claims regarding the lawfulness of search and seizure. For the reasons set forth in his motion and this reply, this Court should order the government to disclose the bases for and the fruits of the government's actions or to dismiss the indictment.

**A.     The Government's Argument That This Court Should Not Order Disclosure Because No Court Has Ever Done So Ignores That No Court Has Ever Addressed The Question In The Context Of Unlawful Non-FISA Searches And Seizures.**

In his earlier pleadings, Mr. Mohamud articulated the unique relationship in this case between the FISA and non-FISA searches. In its Response to Defendant's Motion to Suppress the Products of Non-FISA Interrogations, Searches, and Seizures, the government did not challenge Mr.

**PAGE 2     REPLY TO GOVERNMENT AMENDED UNCLASSIFIED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISCLOSE FISA-RELATED MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY**

Mohamud's argument about their illegality. The government's failure to carry its burden of establishing compliance with the Fourth and Fifth Amendments, and its implicit concession of illegality, makes even more clear the unique nature of the motions to suppress in this case. No court has addressed FISA's limits on disclosure, and the district court's authority to order disclosure, where the government essentially concedes the violation of the defendant's constitutional rights during the national security investigation. In this context, the defense has established the need to know the government's actions – including the bases for and the fruits of FISA activity – before and after the primary illegality in order to litigate suppression issues. Further, the legitimacy of the FISA activity itself is compromised where the same agents involved in the national security investigation are responsible for violations of the Fourth and Fifth Amendment rights of the target of the investigation.

This is precisely the type of situation in which FISA's limitation on disclosure gives way to the imperative of due process. 50 U.S.C. § 1806(g). First, the concededly unlawful action undermines any presumption of regularity that might otherwise attach to the government's actions against Mr. Mohamud. *See Hartman v. Moore*, 547 U.S. 250, 265 (2006) (absence of probable cause and evidence of retaliatory motive "are reasonable grounds to suspend the presumption of regularity behind the charging decision . . ."); *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 301 (1991) (presumption of regularity accorded grand jury proceeding may be dispensed with upon proof of particularized irregularities). Second, the complexity generated by the inter-relationship of the FISA and non-FISA searches takes this case out of the norm contemplated by Congress when it limited

disclosure in the normal case. The full involvement of defense counsel becomes required in the face of the complex issues and the need for the unique perspective of the defense.

The primary illegality also provides bases for disclosure of the FISA applications under *Franks v. Delaware*, 438 U.S. 154 (1978). The government refuses to produce the affidavits in support of FISA activity, then complains at length at the defense's failure to make a "concrete" preliminary showing. CR 88 at 44-48. On the contrary, in the context of FISA secrecy, the defense has made an extraordinary and particularized showing: the investigating agents violated fundamental constitutional protections in the course of this investigation. Further, Mr. Mohamud's age, lack of prior criminal activity, and First Amendment-protected activity reinforce the need for defense review for *Franks* compliance. Without defense participation, there is no check on reckless or intentional false statements or material omissions that nullify effective judicial oversight, which under the circumstances of this case may well have been circumvented.

**B.     The Facts In The Record Demonstrate The Unique Nature And Complexity Of The FISA Issues Before This Court, Which Supports The Disclosure Mr. Mohamud Seeks.**

At least three distinct aspects of FISA are relevant to Mr. Mohamud's motion and present particularly complex issues. First, both Mr. Mohamud's motion and the government's opposition make clear that, in order for searches and surveillance under FISA to be lawful when the subject is a United States citizen, there must be adequate proof that he is an "agent of a foreign power." 50 U.S.C. §§ 1801(a)(4), 1821(1). Second, while the parties disagree about the extent of criminal activity that must be shown in order to support a FISA warrant, the government concedes that there must be "some showing that he at least may violate the laws of our society." CR 88 at 30. Third,

while the parties disagree about the degree to which use of activity protected by the First Amendment in the FISA process can taint a FISA warrant, the government concedes that it may not obtain a FISA warrant solely on the basis of protected activity. CR 88 at 22.

The government incorrectly minimizes the difficulty faced by the Court in applying the statute to the facts of this case. Its argument that no defense participation is needed to interpret the statutory terms (CR 88 at 29) ignores the fact that those terms must be interpreted and applied on the unique facts of this case. The record reveals that, unlike virtually all other FISA cases, this case:

- involved a juvenile for at least part of the FISA surveillance, which should result in far more protection than for an adult;

- involved a target who was not a member of a designated terrorist group;

- involved a target whose activity is protected by the First Amendment.

None of the cases cited by the government for which facts can be found involve a situation remotely like that before this Court. On the contrary, review of the cases reveals that all the investigation involved adults engaged in activity within the core concerns that underlie FISA. *See*, *e.g.*, *United States v. Abu-Jihaad*, 630 F.3d 102 (2nd Cir. 2010) (charge of communicating anticipated movement of Navy Battlegroup in Persian Gulf to unauthorized persons); *United States v. Duggan*, 743 F.2d 59 (2nd Cir. 1984) (charges involved conspirators shipping weapons to known Irish terrorist group); *United States v. Rosen*, 447 F. Supp. 2d 538 (E.D. Va. 2006) (conspirators working for Department of Defense charged with passing classified information to members of American-Israeli Public Affairs Committee); *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) (defendants incidentally overheard during surveillance that was unquestionably directed to a foreign

power); *United States v. El-Mazain*, 664 F.3d 467 (5th Cir. 2011) (material support case involving Holy Land Foundation support to designated terrorist organization Hamas); *United States v. Kashmiri*, 2010 WL 4705159 (N.D. Ill. November 10, 2010) (material support case for designated terrorist organization Lashkar e Tayyiba participant in Mumbai attack); *United States v. Nicholson*, 2010 WL 1641167 (D. Or. April 21, 2010) (son of convicted spy charged based on meetings with Russian officials); *United States v. Mubayyid*, 521 F. Supp. 2d 125 (D. Mass. 2007) (prosecution for conspiracy to defraud government where members of Care International distributed funds to overseas organization for jihad); *United States v. Nicholson*, 955 F. Supp. 588 (E.D. Va. 1997) (espionage prosecution of government agent); *United States v. Duka*, No. 09-2292, 2011 WL 6794022 (3d Cir. December 28, 2011) (government had video of five defendants at firing range shooting and yelling "jihad in the streets," evidence of meetings where plans to attack United States were discussed, attempts to purchase weapons); *United States v. Pelton*, 835 F.2d 1067 (4th Cir. 1987) (charges involved effort to provide intelligence information to Soviet Union).

Mr. Mohamud engaged in no criminal activity prior to the government's sting. Mr. Mohamud's reading, writing, and other internet activity was protected by the First Amendment. But for the redaction of virtually all facts in the government's opposition, the defense would be able to address why government assertions do not support issuance of a FISA warrant, why they are unreliable and unworthy of belief, or why reckless or intentional factual errors or material omissions undermine the judicial role in obtaining the FISA warrants. The defense has access to sources of information that are not available to the government or court, including but not limited to Mr. Mohamud, that are essential to making a fair and balanced determination of the relevant issues.

Because this is not the typical case in which the record includes evidence of criminal activity, or membership in designated terrorist groups, the Court should order the disclosure sought.

C. **The Government's Arguments That No Court Has Ever Ordered Disclosure Or Suppression In A FISA Case Ignores The Importance Of Our Adversary System, The Doctrine Of Constitutional Avoidance, And The Principle Articulated In** *Reynolds v. United States***.**

The government repeatedly states in its opposition that this Court should deny disclosure and suppression because no court has ever granted such relief. This argument ignores the need for this Court to balance the interests at stake on the facts of this case and in the context of the principles that animate our system of justice. Governments are not infallible: it should raise more questions than it answers that, without opening the door to defense participation in FISA proceedings, no court has ever uncovered a violation of FISA.

Our system is based on notions of openness in an adversarial setting. Last week, the Supreme Court provided a directly relevant reminder that our system is adversarial, not inquisitorial:

> Indeed, the right to counsel is the foundation for our adversary system. Defense counsel tests the prosecution's case to ensure that the proceedings serve the function of adjudicating guilt or innocence, while protecting the rights of the person charged. *See*, *e.g.*, *Powell v. Alabama*, 287 U.S. 45, 68–69, 53 S. Ct. 55, 77 L. Ed. 158 (1932) ("[The defendant] requires the guiding hand of counsel at every step in the proceedings against him. Without it, though he be not guilty, he faces the danger of conviction because he does not know how to establish his innocence").

*Martinez v. Ryan*, 2012 WL 912950, at *8 (U.S., Mar. 21, 2012); *see Nixon v. Administrator of General Services*, 433 U.S. 425, 477 (1977) ("[T]he functioning of our adversary legal system [] depends upon the availability of relevant evidence in carrying out its commitments both to fair play and to the discovery of truth within the bounds set by law.").

PAGE 7    REPLY TO GOVERNMENT AMENDED UNCLASSIFIED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISCLOSE FISA-RELATED MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY

Both FISA and the Classified Information Protection Act have express statutory provisions assuring that their procedures comply with minimal constitutional requirements. FISA specifically recognizes that due process may require disclosure. 50 U.S.C. § 1806(g). Especially in the context of an established primary illegality, the statute must be construed to require defense counsel's participation in proceedings addressing harm and remedy in order for the statute to be constitutional. *See Clark v. Martinez*, 543 U.S. 371, 380-81 (2005) (the doctrine of constitutional avoidance requires statutes to be construed in a manner that does not implicate serious constitutional issues). "[Constitutional avoidance] is a tool for choosing between competing plausible interpretations of a statutory text, resting on the reasonable presumption that Congress did not intend the alternative which raises serious constitutional doubts." *Id*. at 380. In analyzing the FISA statute, this Court should include the assumption that the surveillance involved a juvenile who was later subjected to unconstitutional searches, seizures, and interrogations because "[t]he lowest common denominator, as it were, must govern." *Id*. To avoid serious constitutional issues, § 1806(g) and the rest of FISA should be construed to require disclosure and counsel's full participation under the circumstances of this case.

Aside from statutory interpretation, the constitutional balancing test for determining what process is due a litigant requires full disclosure. *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As a general proposition, the balance has been struck in the Fifth and Sixth Amendments for disclosure and adversary proceedings when a person's liberty is at stake in a criminal case. *See Lafler v. Cooper*, No. 10-209, 2012 WL 932019, at *6 (U.S., Mar. 21, 2012) (the Sixth Amendment requires counsel's presence at all "critical stages" of the prosecution, including pretrial stages of a

**PAGE 8**　　REPLY TO GOVERNMENT AMENDED UNCLASSIFIED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISCLOSE FISA-RELATED MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY

criminal proceeding); *United States v. Wade*, 388 U.S. 218, 226 (1967). Even where the stakes are lower, and where the charged individual is not protected by the presumption of innocence, an adversary hearing with a right to question adverse witnesses is the hallmark of due process. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973) (probation and parole due process includes the opportunity to be heard, to present evidence, and to cross-examine adverse witnesses) (quoting *Morrisey v. Brewer*, 408 U.S. 471, 488-89 (1972)). Even in the non-criminal context of detention at Guantanamo, the Court applied *Mathews* to require an adversarial hearing. *Hamdi v. Rumsfeld*, 542 U.S. 507, 528-530 (2004).

FISA's incorporation of consideration of the due process concerns in each case requires this Court to engage in a *Mathews* analysis, not in the abstract, but on the facts of this case. Those facts must include the unique relationship that exists here between the FISA and non-FISA searches and the uncontested illegal searches and interrogation to which Mr. Mohamud was subjected. The balancing must also give great weight to the fact that this case involves conduct that is divorced from the world of espionage or work for foreign governments that are the intended focus of FISA activity.

The constitutional interpretation of FISA and the balancing under *Mathews* must be conducted in the context of the teaching in *United States v. Reynolds*, 345 U.S. 1 (1953). In *Reynolds*, the Court held in a civil case that the government could refuse to disclose evidence on the ground that disclosure would reveal military secrets that could harm the national interest. But *Reynolds* clearly stated that the government has far more leeway to maintain secrets in a civil than in a criminal case. Contrary to a civil case, in a criminal case the state secrets privilege gives way to a defendant's right to present a defense:

**PAGE 9**  REPLY TO GOVERNMENT AMENDED UNCLASSIFIED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISCLOSE FISA-RELATED MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY

> The rational of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the government is not the moving party, but is a defendant only on terms to which it has consented.

*Reynolds*, 345 U.S. at 12.

Consistent with *Reynolds*, the Supreme Court has held in a number of contexts that, when the government asserts an evidentiary privilege, it may have to make a choice – disclose the information or forego its prosecution. Ultimately, "[t]he burden is the Government's, not to be shifted to the trial judge, to decide whether the public prejudice of allowing the crime to go unpunished is greater than that attendant upon the possible disclosure of state secrets and other confidential information in the Government's possession." *Jencks v. United States*, 353 U.S. 657, 672 (1957). As stated in *United States v. Nixon*, 418 U.S. 683, 711-712 (1974), in the context of an assertion of executive privilege:

> The right to the production of all evidence at a criminal trial similarly has constitutional dimensions. The Sixth Amendment explicitly confers upon every defendant in a criminal trial the right "to be confronted with the witnesses against him" and "to have compulsory process for obtaining witnesses in his favor." Moreover, the Fifth Amendment also guarantees that no person shall be deprived of liberty without due process of law. It is the manifest duty of the courts to vindicate those guarantees, and to accomplish that it is essential that all relevant and admissible evidence be produced. . . . [T]he allowance of the privilege to withhold evidence that is demonstrably relevant in a criminal trial would cut deeply into the guarantee of due process of law and gravely impair the basic function of the courts.

FISA was enacted following the decisions in *Reynolds, Jencks*, and *Nixon*, which make clear that the existence of classified evidence cannot trump a defendant's constitutional rights. The statute presumably incorporates the precedents that preceded its enactment. *See Holland v. Florida*, 130

PAGE 10    REPLY TO GOVERNMENT AMENDED UNCLASSIFIED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISCLOSE FISA-RELATED MATERIAL NECESSARY TO LITIGATE MOTIONS FOR DISCOVERY AND FOR SUPPRESSION OF THE FRUITS OF FISA ACTIVITY

S. Ct. 2549, 2560-61 (2010); *Merck & Co. v. Reynolds*, 130 S. Ct. 1784, 1795 (2010) ("We normally assume that, when Congress enacts statutes, it is aware of the relevant judicial precedent."). This Court should construe FISA, in the context of this case, to give weight to the principles articulated in those Supreme Court cases. In so doing, the Court will reaffirm the principle that the Constitution guarantees a defendant in a criminal case a "meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quotation omitted). The unique facts of this case require a real adversary proceeding.

The proper construction of FISA requires that Mr. Mohamud's security-cleared counsel be able to fully participate in the FISA process. In order to gain access to classified information, two criteria must be met: a person must pass a security screen and have a "need to know." Executive Order 1352b, 75 Fed. 707 (Dec. 29, 2009). The government's interest in maintaining its secrets under *Mathews*'s balancing test is small in comparison to the harm exclusion of counsel does to a defendant's liberty interests. Procedures exist for providing security clearances to counsel, and for such counsel to have access to classified information under appropriate protective orders.

**Conclusion**

For all of the reasons set forth herein, in his Motion for Disclosure and for Suppression, and in his pleadings regarding the non-FISA searches and seizures, Mr. Mohamud urges the Court to order the government to disclose the affidavits and warrants filed in support of the FISA searches,

as well as the returns and all fruits of those searches, and to permit his counsel to fully participate in the FISA process and hearings regarding suppression. Alternatively, the indictment should be dismissed.

Dated this 27th day of March, 2012.

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Ellen C. Pitcher
Ellen C. Pitcher
Assistant Federal Public Defender