Stephen R. Sady
Chief Deputy Federal Public Defender
steve_sady@fd.org
Steven T. Wax
Federal Public Defender
steve_wax@fd.org
Ellen C. Pitcher
Assistant Federal Public Defender
ellen_pitcher@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
503-326-2123 Telephone
503-326-5524 Facsimile

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:10-cr-00475-KI-1 |
| Plaintiff, | SECOND MOTION TO SUPPLEMENT THE RECORD ON THE MOTION TO SUPPRESS THE PRODUCTS OF NON-FISA INTERROGATIONS, SEARCHES, AND SEIZURES |
| v. | |
| MOHAMED OSMAN MOHAMUD, | |
| Defendant. | |

The defendant, through his attorneys, respectfully moves to supplement the previous non-FISA motion to suppress with two additions: suppression based on the second computer search revealed at the hearing on the non-FISA motion to suppress; and suppression of the statements on

PAGE 1    SECOND MOTION TO SUPPLEMENT THE RECORD ON THE MOTION TO SUPPRESS THE
         PRODUCTS OF NON-FISA INTERROGATIONS, SEARCHES, AND SEIZURES

June 14, 2010, regarding internet activity and prior contacts with law enforcement, obtained during interrogation at the Portland airport.

During the evidentiary hearing on May 2, 2012, Sergeant Ashenfelter of the Oregon State Police (OSP) testified that he provided Mr. Mohamud's laptop to the FBI on two different occasions. In addition to the search and seizure on November 2, 2009, which was the focus of the hearing and the defense's initial suppression motion, Sgt. Ashenfelter stated that the FBI asked him to procure Mr. Mohamud's computer again sometime after the initial imaging. Tr. at 202-03. Sgt. Ashenfelter testified that he did in fact seize Mr. Mohamud's laptop a second time and that the FBI took possession of it.[1] This additional law enforcement activity related to Mr. Mohamud's computer was not documented in any report provided in discovery and was not disclosed to the defense by the government.

This second computer seizure and search is beyond the scope of consent and involuntary for the same reasons as the initial seizure and search of the computer on November 2, 2009. CR 57 at 6-13; *see Florida v. Jimeno*, 500 U.S. 248, 251 (government has burden of proving that consensual search and seizure is within the scope of the consent given by a defendant); *United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990) ("[A]ccess gained by a government agent, known to be such by the person with whom the agent is dealing, violates the fourth amendment's bar against unreasonable

---

[1] During the May 2nd hearing, the government invoked Classified Information Procedures Act (CIPA) when Intelligence Analyst (IA) Tanton was questioned whether he asked "the Oregon State Police to retrieve Mr. Mohamud's computer for any further review at any time after the 2nd of November, 2009." Tr. at 189-90. By letter dated May 9, 2012, the government specifically asserted that the answer to the question posed to IA Tanton "would call for classified information." As the defense noted at the hearing, Sgt. Ashenfelter did not have security clearance so it is unclear how a specific oral request from IA Tanton to Sgt. Ashenfelter could be deemed "classified." Tr. at 190.

**PAGE 2   SECOND MOTION TO SUPPLEMENT THE RECORD ON THE MOTION TO SUPPRESS THE PRODUCTS OF NON-FISA INTERROGATIONS, SEARCHES, AND SEIZURES**

searches and seizures if such entry was acquired by affirmative or deliberate misrepresentation of the nature of the government's investigation.") (quoting *United States v. Little*, 753 F.2d 1420, 1438 (9th Cir. 1984)). Therefore, just as with the first unconstitutional seizure and search, the direct and indirect products of the second seizure and search should be suppressed. CR 57 at 13-16; *see Wong Sun v. United States*, 371 U.S. 471, 487-88 (1963). Further, the existence of the additional search supports the contention that the government has not borne its burden of proving that there was not any use of information obtained during the November 2nd seizure and searches. Indeed, the government cannot carry its burden of proving that material obtained from the computer did not lead to the second seizure and search and that the second search did not also generate information that became part of the web of information leading to further government investigative and interrogation activities.

Because the government has yet to acknowledge this second search and seizure, the defense does not know the full extent of the intrusion. Given that the FBI had already imaged Mr. Mohamud's computer shortly before asking Sgt. Ashenfelter to re-seize it and, presumably, had no need to do so again, the defense remains concerned that the government engaged in undisclosed surveillance activities. In both the first and second motions to compel discovery, Mr. Mohamud specifically requested information pertaining to various methods the FBI might have employed to surveil him through computer activity, including the use of any surveillance or monitoring software, hardware, or other techniques. CR 27 at 12; CR 78 at 11. The government has not directly responded to these requests. *See* CR 26 at 42 (merely stating that the defense request is "broad, vague and unclear"). Mr. Mohamud also raised the issue at the June 1, 2011, discovery hearing. CR 58 at 39. Again, the government did not address the substance of the request. CR 58 at 39-41. The

government should be required to disclose its actions related to the second computer search and seizure, as well as any subsequent monitoring of the computer, in order to permit the Court to adequately address the constitutional issues.

The government has also asserted that it seeks to use statements obtained from Mr. Mohamud during questioning at the Portland airport on June 14, 2010. With respect to the statements Mr. Mohamud made regarding his past involvement with law enforcement and his internet browsing history, those statements are logically the product of, or at least affected by, the earlier unlawful interrogation on November 2, 2009: (1) the federal agents had learned that Mr. Mohamud was "very concerned that his parents will freak out if they find out about the [rape] investigation or his use of drugs and alcohol;" (2) the computer searches provided information about Mr. Mohamud's internet usage, meaning the interrogator at the airport already knew the answer to the question and was setting a trap; and (3) the interrogators already knew that Mr. Mohamud had had contact with law enforcement that he would be loathe to admit in front of his parents. As fruits of the prior unlawful search and interrogation activity, the Court should order suppression.

In the alternative, the Court should also suppress the statements as involuntary and irrelevant under Rule 403. First, for the same reasons that the ruse interrogation on November 2nd resulted in an involuntary statement, the misdirection regarding the purpose of the interrogation renders the later statements involuntary. CR 57 at 13-16. Second, the abuse of the no-fly list to create a situation where an individual must answer questions or face the inability to travel to a well-paying job renders the statements involuntary under the totality of the surrounding circumstances, including "any direct or implied promises, however slight, [or] by any improper influences." *Fulminante v. Arizona*, 499 U.S. 279, 286 (1991) (quoting *Bram v. United States*, 168 U.S. 532, 542-43 (1897)).

Third, the Court should rule the statements inadmissible under Rule 403 because the explanation for the statements would involve a substantial risk of unfair prejudice, confusing the issues, and misleading the jury because of the necessity of explaining the context of the false charge of rape. Especially in the context of the massive risk of unfair prejudice throughout the case, there should be no necessity of injecting further unfair prejudice and time-wasting collateral issues into the trial of the case.

For the foregoing reasons, the Court should order the suppression of the seizure and products of the search of the second computer incident following November 2nd, as well as the June 14, 2010, statements regarding internet activity and prior negative contact with law enforcement.

Dated this 18th day of June, 2012.

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Ellen C. Pitcher
Ellen C. Pitcher
Assistant Federal Public Defender