**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
**Ellen C. Pitcher**
**Assistant Federal Public Defender**
ellen_pitcher@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon 97204
503-326-2123 Telephone
503-326-5524 Facsimile

**Attorneys for Defendant**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:10-cr-00475-KI-1 |
| Plaintiff, | **REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR RECONSIDERATION OF DISCOVERY ORDER REGARDING DISCLOSURE OF GOVERNMENT AGENT BILL SMITH'S TRUE IDENTITY** |
| v. | |
| **MOHAMED OSMAN MOHAMUD,** | |
| Defendant. | |

While noting that the significance of the Bill Smith contacts constitutes a jury question (CR 146 at 6), the government seeks, by keeping Bill Smith's identity secret, to dictate the presentation

of the defense case by foreclosing defense investigation, preventing service of process, and denying access to relevant evidence, such as the contract with the government, the actual payment documents, and any written instructions. In the context of an entrapment defense, the government's position is inconsistent with the Fifth and Sixth Amendment right to present a defense. *Holmes v. South Carolina*, 547 U.S. 319, 324-25 (2006); *Crane v. Kentucky*, 476 U.S. 683, 690-91 (1986). The Court should grant access to Bill Smith's true identity and all documentation regarding his government affiliation because: 1) contrary to government mischaracterizations, Bill Smith's activities constitute essential evidence under the law of entrapment; 2) proper application of the *Roviaro v. United States*, 353 U.S. 53 (1957), test to the facts of this case requires production; and 3) the government's proposal of a proxy witness is inadequate and inconsistent with Mr. Mohamud's constitutional rights. For these reasons, as well as those stated in the initial defense pleading, the defense motion should be granted, regarding the disclosure of Bill Smith's true identity.[1] In the event an *in camera* hearing is required, the Court should allow full defense participation and reject the government's position that yet another issue in this case need be decided during a non-adversarial, *ex parte* proceeding.

---

[1] The defense continues to believe that the *Roviaro* privilege should not apply to Bill Smith because he is not an "informant" as the Supreme Court used that term. CR 137 at 2-3. While the government states in conclusory fashion that Bill Smith "is an FBI informant" because he is paid and works "in an anonymous capacity," it does not further challenge the defense's analysis. CR 146 at 7. Under the circumstances of this case, Bill Smith should be considered a government employee, not an informant within the meaning of *Roviaro*.

I.     **Bill Smith's Testimony Is Highly Relevant Because His Contacts With Mr. Mohamud Are Inextricably Part Of Mr. Mohamud's Entrapment Defense.**

In trying to minimize the importance and relevance of Bill Smith, the government continues to argue that he is not connected to, or part of, the case against Mr. Mohamud.  CR 146 at 2-3; *see also* CR 28 at 27.  The government seeks to artificially divide its targeting of Mr. Mohamud into separate spheres based on nomenclature and geography – whether the FBI called its activities a "national security" or "criminal" investigation and whether the investigation was based out of Portland or Eugene.  Notably, the government fails to cite any authority for its position and does not even mention the seminal Supreme Court case *Jacobson v. United States*, 503 U.S. 540 (1992).

As noted in the initial defense motion, *Jacobson* involved a government sting operation that spanned the course of 26 months.  503 U.S. at 550.  Numerous government agents from multiple agencies contacted Jacobson through the mail during that time.  *Id*.  In analyzing entrapment, the Court did not artificially segment various government contacts into discrete phases; instead, it analyzed the entire course of the government's conduct in targeting Jacobson, emphasizing that the government must prove beyond a reasonable doubt that a defendant is disposed to commit the charged crime "prior to first being approached by Government agents." *Id*. at 549.  This is consistent with the Supreme Court's general approach to government activity.  *See*, *e.g.*, *Kyles v. Whitley*, 514 U.S. 419, 437-38 (1995) (discovery in possession of officer attributed to prosecutor); *Santobello v. New York*, 404 U.S. 257, 262 (1971) (attributing knowledge to prosecutors where the right hand did not know what the left hand was doing); *see also United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007) (aggregating officers knowledge of probable cause).

Likewise, in Mr. Mohamud's case, the entrapment analysis must focus on the entirety of the government's efforts to target Mr. Mohamud through contacts with undercover agents. It is irrelevant to an entrapment defense whether the base location of the investigative activities shifted from one city to another or changed in terms of the investigative designation the government chose to apply. To hold otherwise would allow the government to induce a targeted defendant into becoming disposed to commit a crime, then shift the name and location of the investigation to insulate itself from claims of entrapment. No authority supports such an end-run around the entrapment defense. Further, the government does not claim that the agents involved in the investigation were unaware of each other's activities. Indeed, SA Dwyer has testified that the FBI file related to Mr. Mohamud was kept in a centralized location and available to agents involved in the investigation. CR 131 (Trans. of May 1, 2012 Hearing at 61-62).

Further, this Court's past discovery rulings should dispel any notion that Bill Smith is irrelevant to Mr. Mohamud's case. The Court has already ordered production of FBI reports and payments made to Bill Smith. Unfortunately, neither order has produced any significant documentation by the government. The initial "reports" produced are merely reproductions of some of the initial emails with little other substantive information. No official reports or documentation were produced with regard to payments made to Bill Smith; rather, the government merely sent a letter to the defense stating that Bill Smith had been paid a certain sum of money for his work in targeting Mr. Mohamud. Regardless of the minimal information produced to date, the fact that the Court ordered production establishes that Bill Smith is relevant and important to Mr. Mohamud's defense. The name of Bill Smith is necessary to exercise the subpoena power to compel production

of the witness as well as the vouchers, checks, receipts, and other exhibits proving the nature and scope of the government agency, and should be disclosed.[2]

## II. The Government Mischaracterizes The *Rovario* Test And Misapplies It To The Facts Of This Case.

The government mischaracterizes the test stated in *Rovario* by suggesting that once the defense has met its burden that the requested information is relevant and helpful, it must also show that it outweighs the government's interest in protecting the safety of the informant. CR 146 at 5. While the burden is on the defendant to demonstrate the need for the disclosure, the informer's privilege must "give way when the disclosure of the informant's identity 'is relevant and helpful to the defense of the accused, or is essential to a fair determination of a cause[.]'" *United States v. Sanchez*, 908 F.2d 1443, 1451 (9th Cir. 1990) (citing *Roviaro*, 353 U.S. at 60-61). If a district court believes that disclosure would be highly relevant and "might" be helpful to the defense, it is "error of constitutional dimension to deny disclosure solely because of the potential danger to the informant." *United States v. Ordonez*, 737 F.2d 793, 809 (9th Cir. 1984).

---

[2] The government's artificial division of its targeting of Mr. Mohamud should also be barred by judicial estoppel. Judicial estoppel "precludes a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position." *Whaley v. Belleque*, 520 F.3d 997, 1002 (9th Cir. 2008) (quoting *Rissetto v. Plumbers & Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir. 1996)). During the May 1 and 2, 2012, hearings related to the defense motion to suppress the products of non-FISA activity, the government relied heavily on Mr. Mohamud's contacts with *both* Khan and Al-Ali in attempting to establish that the ultimate sting operation involving the UCEs was not tainted by the surreptitious search and seizure of Mr. Mohamud's computer in November 2009. CR 132 (Trans. of May 2, 2012 Hearing at 216-17). The government cannot have it both ways and should be precluded under the doctrine of judicial estoppel from now arguing that Bill Smith is not related to the present case.

In a case relied on by the government, the Ninth Circuit has recognized that the "Supreme Court has held that if the trial judge determines that the informant's testimony may be relevant and helpful, the identity of the informant *must* be revealed." *United States v. Hernandez-Berceda*, 572 F.2d 680, 682 (9th Cir. 1978) (emphasis added). The cases do not support an application of the test that weighs the amount of public safety concern against a corresponding scale of how relevant and helpful the information is to the defense. *See, e.g.*, *United States v. Sai Keung Wong*, 886 F.2d 252, 256 (9th Cir. 1989) (defendant did not meet burden because the informant was not the only percipient witness and testimony would have been cumulative or insignificant); *Hernandez-Berceda*, 572 F.2d at 682 ("rather than being helpful, [the informer's] testimony would be damaging to [ ] case."); *Sanchez*, 908 F.2d at 1452 (court found simply "the disclosure of the informant's identity would not have been helpful to the defense or essential to the fair determination of this cause."); *United States v. Hernandez*, 608 F.2d 741, 745 (9th Cir. 1979) (while the informer's name was provided to the defense pre-trial, the court found that it was not reversible error to not reveal the informant's address to the defense pretrial when it was revealed in cross-examination ). Rather, if the information is relevant and helpful to the defense, the privilege gives way. *Roviaro*, 353 U.S. at 60-61. The government then chooses whether to proceed with the case and provide the information, or, protect what public interest it perceives exists and the case will be dismissed. *Roviaro*, 353 U.S. at 60-61 (this "limitation on the applicability of the privilege arises from the fundamental requirements of fairness.").

In Mr. Mohamud's case, the defense has established the relevance and helpfulness of Bill Smith's testimony, CR 137 at 5-10, and is therefore entitled to disclosure. As noted above, the

government fails to address *Jacobson* or the extent to which Bill Smith is relevant and helpful to an entrapment defense. Further, the government offers no particularized evidence suggesting why Bill Smith's identity should be withheld: "Disclosure could not only compromise his personal safety if it is learned publicly that he is paid by the FBI, but could disclose matters related to his undercover work." CR 146 at 7. These generalized concerns apply to any informant, and the government cites no authority for the proposition that such conclusory statements can ever prevent disclosure.

### III. The Government Overstates The Value Of SA Dodd's Substitute Testimony While Understating The Importance Of Mr. Mohamud's Constitutional Rights.

The government's proposal that Special Agent Jason Dodd testify as a proxy for Bill Smith is problematic for a number of reasons, as noted in the defense's initial motion. CR 137 at 8-9. First, the government has no right to dictate the manner in which the defense exercises the right to present its theory of the case. Second, SA Dodd is in no position to serve as a substitute for Smith. He has acknowledged that his testimony would be incomplete because he lacks good recall regarding his tasking of Bill Smith and because there are no detailed, contemporaneous reports. CR 137 at 8-9. Moreover, the defense has also noted an apparent contradiction between SA Dodd's recollection and the content of the Bill Smith emails. CR 137 at 9. None of these points are addressed in the government's response.

In addition to overstating SA Dodd's suitability as a proxy for Bill Smith, the government gives short shrift to Mr. Mohamud's constitutional rights. While making a passing reference to the Confrontation Clause (CR 146 at 5), the government does not seriously discuss why its non-specific

concerns regarding informant safety can outweigh a defendant's right to present a defense, as guaranteed by the Due Process and Compulsory Process Clauses of the Constitution. CR 137 at 8-10.

### IV. An *In Camera* Hearing Should Not Be Conducted In A Non-Adversarial, *Ex Parte* Manner.

In the event the defense motion is not granted outright, circuit precedent requires an *in camera* hearing. CR137 at 13-14. The government seeks to exclude defense participation in such a hearing, other than to allow a list of questions to be submitted. This proposal ignores the important function of defense counsel and will result in an inadequate process. Preliminary to any effective hearing, the defense must be able to conduct reasonable investigation. *See Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Wiggins v. Smith*, 539 U.S. 510, 522-23 (2003). Depending on Bill Smith's answers to certain questions, follow-up will be required and the defense cannot predict ahead of time how such questioning will evolve. Further, the defense may decide during the hearing not to ask certain questions based on previous answers so as to protect against the government learning its trial strategy.

**Conclusion**

Because Bill Smith's testimony is relevant and helpful to the defense, his true identity should be disclosed. In the event the Court does not find in Mr. Mohamud's favor, full defense participation should be allowed during an *in camera* hearing.

Dated this 26th day of June, 2012.

        /s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

        /s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

        /s/ Ellen C. Pitcher
Ellen C. Pitcher
Assistant Federal Public Defender