S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
**PAMALA R. HOLSINGER**, OSB #89263
Assistant United States Attorneys
ethan.knight@usdoj.gov
pamala.holsinger@usdoj.gov
1000 SW Third, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:10-CR-00475-KI |
| v. | **GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION TO SUPPLEMENT THE RECORD ON THE MOTION TO SUPPRESS THE PRODUCTS OF NON-FISA INTERROGATIONS, SEARCHES, AND SEIZURES** |
| **MOHAMED OSMAN MOHAMUD,** | |
| Defendant. | |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through Ethan D. Knight and Pamala R. Holsinger, Assistant United States Attorneys, hereby responds to defendant Mohamed Osman Mohamud's Second Motion to Supplement the Record on the Motion to Suppress the Products of Non-FISA Interrogations, Searches, and Seizures (Def.'s 2nd Mot., ECF No. 142).  This response is intended only to address unclassified information.

Defendant seeks to supplement again his previously filed Motion to Suppress, this time seeking suppression of the fruits of a "second computer search" and suppression of defendant's statements regarding internet activity and prior contacts with law enforcement, obtained during an interview of defendant and his parents at the airport on June 14, 2010. (Def.'s 2nd Mot. 1-2.)

## PROCEDURAL BACKGROUND

Defendant first filed his Motion to Suppress the Products of Non-FISA Interrogations, Searches, and Seizures (ECF No. 56) on June 22, 2011, seeking suppression of evidence allegedly seized illegally from the defendant during his November 2009 rape investigation and the fruits obtained from that evidence. At the joint request of the parties the motion and filing deadlines were continued to allow the parties to work through various issues without Court involvement. Once a new briefing schedule was set by the Court the government filed its Response to the Motion to Suppress on February 21, 2012 (ECF No. 75), and defendant filed his Reply on March 6, 2012 (ECF No. 87). On March 26, 2012, defendant filed a Supplemental Motion to Suppress the Products of Non-FISA Interrogations, Searches, and Seizures (ECF No. 93), requesting the Court change its procedure for handling the classified portion of the hearing on the Motion to Suppress.

A Motion to Bifurcate the Motion to Suppress hearing followed by defendant on April 20, 2012 (ECF No. 110), to which the government responded on April 23, 2012 (ECF No. 111). The Court issued an Order on April 24, 2012, denying defendant's Motion to Bifurcate (112). Defendant objected to the Court's Order on April 25, 2012 (ECF No. 114). April 30, 2012, the government filed a Notice of Procedures for Handling Classified Information at Pretrial

**Government's Response to Defendant's Second Motion to Supplement the**     **Page 2**
**Record on the Motion to Suppress the Products of Non-FISA Interrogations,**
**Searches, and Seizures**

Proceedings Pursuant to CIPA Section 8(c) (ECF No. 116). On April 30, 2012, defendant filed a Response to Notice for Handling Classified Information (ECF No. 120).

The hearing on the Motion to Suppress was held on May 1 and 2, 2012. Defendant then filed on May 15, 2012, a Motion to Supplement the Record on the Motion to Suppress (ECF No. 129) to include information or testimony from a defense computer expert who was not called to testify at the hearing. The government filed its Opposition to Defendant's Motion to Supplement the Record on May 18, 2012 (ECF No. 133), and the defendant's Reply was filed May 29, 2012 (ECF No. 138). On June 26, 2012, the government withdrew its opposition to defendant's Motion to Supplement the Record and testimony was taken.

On June 18, 2012, the defendant filed a Second Motion to Supplement the Record (ECF No. 142) to include suppression of evidence and fruits obtained from a second search of defendant's computer occurring after November 2, 2009, as well as statements made by the defendant during questioning at the Portland airport on June 14, 2010. The government responds herein to defendant's Second Motion to Supplement.

### STATEMENT OF FACTS REGARDING AIRPORT INTERVIEW OF DEFENDANT AND HIS PARENTS

On June 14, 2010, the defendant and his parents arrived at Portland International Airport for the defendant to fly to Kodiak, Alaska for a fishing job for the summer. When the defendant attempted to check in for his flight he was advised by Alaska Airlines personnel that he would be unable to fly. Defendant and his parents left the ticket counter and were standing in the concourse talking amongst themselves when they were approached by Federal Bureau of Investigation Special Agents Bradford Petrie and Chris Henderson. The agents were dressed in

Government's Response to Defendant's Second Motion to Supplement the   Page 3
Record on the Motion to Suppress the Products of Non-FISA Interrogations,
Searches, and Seizures

business attire and their firearms were not visible. They each identified themselves with their FBI credentials and asked if defendant and his parents minded speaking to the agents.

After a short conversation on the concourse, defendant and his parents were asked to come to the Portland Police Bureau Office at the Portland International Airport where there was a quiet conference room. Defendant and his parents voluntarily accompanied the agents to the interview room. The interview of defendant and his parents lasted approximately 30 to 40 minutes and consisted primarily of the defendant's parents talking to the FBI agents. Defendant's father spoke first explaining that the defendant had just finished his first year at Oregon State University and he and defendant's mother had brought the defendant to the airport to catch a flight to Alaska for a fishing job for the summer. Defendant's father explained that last year his son had expressed the desire to travel to Yemen for "religious study." Defendant's father stated he recognized the danger involved in such a trip and consequently had taken defendant's passport. Defendant's father also stated he thought is was necessary to notify the FBI and felt that this was the reason his son was on the "no-fly" list.

When defendant was asked about his intended travel to Yemen, he stated that while he did express a desire to go to Yemen, he never had an airline ticket or visa. The defendant was asked if he knew someone in Yemen and he responded that he had been in touch with someone he knew as "Amer." Defendant stated that "Amer" was a Saudi national who at one point was

/ / /

/ / /

/ / /

**Government's Response to Defendant's Second Motion to Supplement the        Page 4
Record on the Motion to Suppress the Products of Non-FISA Interrogations,
Searches, and Seizures**

living in the United States. The defendant did not give any further details about "Amer."[1] The defendant also stated that he had never had any negative contact with police in his life. He also stated he only looks at NBA.com and his OSU online portal on his computer. Defendant stated he never views anything "radical."

The defendant's father provided the FBI further information about the defendant's travel and reiterated his belief that his call to the FBI prompted his son being on the "no fly" list.

## ARGUMENT

### A.     Alleged Second Computer Search

Defendant moves to suppress apparent results of what they speculate to be a second computer search of defendant's laptop computer that allegedly occurred during the course of the rape investigation. In support of their motion defendant directs the Court to a question of FBI Intelligence Analyst William Tanton at the May 1-2, 2012 evidentiary hearing. At the hearing defense asked IA Tanton if he asked the Oregon State Police to retrieve Mr. Mohamud's computer for any further review at any time after the 2nd of November. At the hearing the government invoked Section 8(c) of the Classified Information Procedures Act (CIPA) indicating the answer called for classified information. (Tanton Test. Tr. 189, May 1-2, 2012; Def.'s 2nd Mot. 2.) The Court sustained the government's objection and the parties agreed to confer about defense questions to which the answer would disclose classified information. The defendant then provided the government with a letter seeking answers to twenty questions they

---

[1] The interviewing agents believed that "Amer" referred to by defendant was Amro Sulaiman Alali, the person identified as UA1 in public filings.

**Government's Response to Defendant's Second Motion to Supplement the      Page 5
Record on the Motion to Suppress the Products of Non-FISA Interrogations,
Searches, and Seizures**

either did not ask at the hearing, or were objected to by the government at the hearing because the answer may call for classified information. One of those questions in the letter was a further development of the question to IA Tanton regarding the FBI asking Oregon law enforcement officers to get defendant to bring his computer back. The question was:

> When did the FBI request that Oregon Law Enforcement Officers get Mr. Mohamud's computer back and provide it to them after November 2, 2009? Why did they make the request? What did they do with the computer while it was in their possession? If the FBI obtained any information from the computer based on obtaining it in this manner, what was obtained? Who reviewed it? How was it used? To whom was it provided?

In a classified pleading submitted *ex parte* and under seal, the government invoked CIPA and provided the Court with the classified answer to the question on May 11, 2012. (ECF No. 128.) The Court issued an Order May 8, 2012, finding that the classified answers provided to the Court, including the answer to the question listed above, were either irrelevant or cumulative of the unclassified evidence received at the hearing. (Sealed Order, ECF No. 135.)

The Court's ruling that the answer is irrelevant is supported by the fact that there is no evidence in the record that a second search occurred. There is no evidence in the record that the government intends to use anything from any alleged second search and, as a result, there is no evidence of any taint from any alleged evidence. Because of the lack of any evidence in the record that a search ever occurred or that there is any evidence to suppress, the Court should deny the Second Motion to Supplement the Record on the Motion to Suppress.

**B.     Defendant's Statements Were Voluntary**

As shown by the factual background outlined above, defendant's statements to the FBI in the presence of his parents on September 14, 2010, were made voluntarily. In his motion

**Government's Response to Defendant's Second Motion to Supplement the**     **Page 6**
**Record on the Motion to Suppress the Products of Non-FISA Interrogations,**
**Searches, and Seizures**

defendant creatively argues that somehow the statements were a fruit of the limited information that came from the rape investigation. Defendant also argues that the statements were involuntary and are irrelevant because the agents did not advise the defendant of the purpose of the interview. (Def.'s 2nd Mot. 2.) The testimony of the agents at the evidentiary hearing will show that all of defendant's statements were voluntary. At no time did the agents do anything to overbear the will of the defendant. At the conclusion of the evidentiary hearing, the government will therefore ask the Court to find that defendant's statements were made voluntarily and that the statements are therefore admissible at trial.

       1.     **Statements Were Not Fruit of Any Illegal Search**

The defendant has identified specific portions of his statements that he claims were illegally obtained. (Def.'s 2nd Mot. 4.) The question and answer regarding defendant's internet activity was not the fruit of any illegal search. The FBI was well aware of defendant's internet activity and connections to radical Islamic extremists via e-mail and websites before they saw anything from defendant's computer on December 29, 2009. (*See* Special Agent Ryan Dwyer Test. Tr. 26, 27, May 1, 2012 Hr'g.) The question about the defendant's internet activity was clearly derived from the national security investigation of defendant which was described at the May 1, 2012 hearing. Law enforcement knew about defendant's internet activity based upon defendant's communications with Samir Kahn, a known international terrorist who incited violence online through his internet publications. (Test. Tr. 31–32, May 1, 2012.)

The notion that the question of the defendant about whether he ever had negative contact with law enforcement is somehow derived from an earlier unlawful interrogation is even more

**Government's Response to Defendant's Second Motion to Supplement the**       **Page 7**
**Record on the Motion to Suppress the Products of Non-FISA Interrogations,**
**Searches, and Seizures**

baseless. The contact with law enforcement the defendant did have was entirely based on defendant's own conduct. It was alleged that he raped a women at Oregon State University. Law enforcement investigated that offense and he was not charged with any crime. The question to defendant regarding any negative contact with law enforcement is not the fruit of anything other than the defendant's contact with law enforcement, not the statements he gave. It is worth noting that the answer to the question about whether he had any negative contact with law enforcement was "no." That is likely because his contact was with a police agency investigating a rape allegation against him and determined that he was not to be charged. Possibly he thought the system worked as it should and it was not a negative contact. Either way, the question and answer were not derived from any illegal interrogation.

### 2.    Statements Were Voluntarily Made

Defendant argues that the statements made by defendant about his internet activity and his contact with law enforcement were not voluntary because the defendant was not allowed to fly to Alaska that evening. A statement of a defendant is considered involuntary if the will of the defendant was overborne in such a way as to render his confession a product of coercion. *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003). "A confession is involuntary if coerced either by physical intimidation or psychological pressure." *Id*. The government must prove by a preponderance of evidence that a defendant's statements were voluntary. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). Involuntary statements of a defendant are not admissible for any purpose at trial. *Pollard v. Galaza*, 290 F.3d 1030, 1033 (9th Cir. 2002).

/ / /

**Government's Response to Defendant's Second Motion to Supplement the     Page 8
Record on the Motion to Suppress the Products of Non-FISA Interrogations,
Searches, and Seizures**

The voluntariness of a defendant's statement is a fact-based inquiry determined by the totality of the circumstances. *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004). The fact that defendant was not told the purpose of the interview or that he was under investigation does not, by itself, make defendant's statements involuntary. That is simply a factor to be weighed in the totality of the circumstances. *Frazier v. Cupp*, 394 U.S. 731 (1969); *United States v. Carona*, 630 F.3d 917 (9th Cir. 2011). In the present case, all of the circumstances support a finding that defendant's June 14, 2010 statements were voluntary:

(1) The interview took place in the presence of defendant's parents;

(2) The interview was primarily of the defendant's parents with only a few questions directed to defendant;

(3) The agents were dressed in plain clothes, and their firearms were concealed throughout the interview;

(4) The atmosphere of the interview was cordial and conversational, and at no time did defendant or his parents indicate that he did not wish to answer questions; and

(5) Defendant and his parents were free to leave the airport and did leave after the approximately 30- to 40-minute long interview.

Defendant was not coerced in any way. The statements he made with his parents by his side were clearly voluntarily and the product of his own free will. Defendant asserts that this was some sort of "abuse of the no-fly list"[2] to create a situation where defendant felt he must

---

[2] The government is prohibited from formally confirming or denying whether any individual is on the "No-Fly List."

**Government's Response to Defendant's Second Motion to Supplement the**     **Page 9**
**Record on the Motion to Suppress the Products of Non-FISA Interrogations, Searches, and Seizures**

answer questions. (Def.'s 2nd Mot 4.) Contrary to defendant's argument, the fact that the defendant was not allowed to fly does not automatically render the statements involuntary under the totality of the surrounding circumstances. Defendant's statements should therefore be admitted at trial.

### 3.     Statements Are Relevant

Finally, defendant's statements regarding his contact with law enforcement and internet activity, are relevant to the charged offenses. The fact the defendant lied about his viewing radical websites prior to meeting the undercover agents in this case, shows defendant's intent to conceal his true activity and his knowledge that the teachings of violence in the name of Islam would be of concern to law enforcement. All of this is relevant to defendant's state of mind prior to any contact with the undercover agents.

## CONCLUSION

For the reasons stated above, at the conclusion of the evidentiary hearing on this motion, the government will respectfully request that the Court deny defendant's Second Motion to Supplement the Record on the Motion to Suppress the Products of Non-FISA Interrogations, Searches, and Seizures and find there is no basis to suppress any alleged second search of defendant's computer and defendant's statements regarding internet activity and prior contacts

/ / /

/ / /

/ / /

/ / /

**Government's Response to Defendant's Second Motion to Supplement the**     **Page 10**
**Record on the Motion to Suppress the Products of Non-FISA Interrogations,**
**Searches, and Seizures**

with law enforcement, obtained during an interview of defendant and his parents at the airport on June 14, 2010, were voluntarily made. Defendant's Motion should be denied.

Dated this 6th day of July 2012.

          Respectfully submitted,

          S. AMANDA MARSHALL
          United States Attorney

          *s/ Ethan D. Knight*
          ETHAN D. KNIGHT, OSB #99298
          PAMALA R. HOLSINGER, OSB #89263
          Assistant United States Attorneys
          (503) 727-1000