UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**UNITED STATES OF AMERICA**,                    Criminal Case No. 3:10-CR-00475-KI

              Plaintiff,

                             OPINION AND ORDER

              v.

**MOHAMED OSMAN MOHAMUD**,

              Defendant.


      S. Amanda Marshall
      United States Attorney
      District of Oregon
      Ethan D. Knight
      Pamala R. Holsinger
      Assistant United States Attorney
      1000 SW Third Avenue, Suite 600
      Portland, Oregon  97204-2902

           Attorneys for Plaintiff

Stephen R. Sady
Chief Deputy Federal Public Defender
Steven T. Wax
Federal Public Defender
Ellen C. Pitcher
Assistant Federal Public Defender
101 SW Main Street, Suite 1700
Portland, Oregon  97204

      Attorneys for Defendant


KING, Judge:

Defendant Mohamed Osman Mohamud is charged with attempting to use a weapon of mass destruction, specifically a destructive device or explosive bomb, against a person or property within the United States, in violation of 18 U.S.C. § 2332a(a)(2)(A).

As part of a national security investigation, FBI Special Agent ("SA") Jason Dodd tasked a government informant known as "Bill Smith" to establish email contact with the person using the email address truthbespoken@gmail.com.  This person turned out to be Mohamud.  The email correspondence took place between November 2009 and April 2010.  The government states the emails it produced to the defense constitute all of the communications between Bill Smith and Mohamud.  The government also:  (1) provided internal FBI reports documenting the email contacts between the two individuals; (2) informed the defense that it was SA Dodd who tasked Bill Smith concerning Mohamud; and (3) complied with a court order to produce payments the government made to Bill Smith for this case.  Mohamud also sought the true identity of Bill Smith.

The court filed a discovery Order on May 8, 2012, which stated in part:

A5–contact with defendant by "Bill Smith."  The court orders the
government to produce payments made to "Bill Smith" which are related to this
case.

After further thought, the court changes its ruling concerning the identity of the agent. The government has a limited privilege to withhold the identity of a confidential informant. <u>United States v. Henderson</u>, 241 F.3d 638, 645 (9th Cir. 2000). The court must balance the defendant's right to prepare a defense against the public interest in protecting the flow of information to preserve law enforcement objectives. To obtain the informant's identity, the defendant must demonstrate that the identity is relevant and helpful to the defense or is essential to a fair trial. A "mere suspicion" that the information will prove helpful is insufficient to require disclosure of an informant's identity. <u>Id.</u> Three factors are examined to balance the interests of society with the interests of the individual under the Confrontation Clause: (1) the degree of the informant's involvement in the criminal activity; (2) how helpful the informant's testimony would be to the defendant; and (3) the government's interest in nondisclosure. <u>United States v. Gil</u>, 58 F.3d 1414, 1421 (9th Cir. 1995). The court concludes the balance supports withholding the agent's identity. If the government intends to call "Bill Smith" as a witness, it must disclose his identity before trial.

Order 2, May 8, 2012, ECF No. 127.

Mohamud asks the court to reconsider and order the government to disclose Bill Smith's true identity.

## DISCUSSION

I.    <u>Whether the Confidential Informant Privilege Applies</u>

Mohamud argues the informant's privilege does not apply to Bill Smith because he is not a traditional informant who provides information about the commission of crimes of which the informant is personally aware. Mohamud notes Bill Smith did not report a crime and did not use a personal connection to connect undercover agents with a targeted person. Instead, the FBI directed Bill Smith to contact Mohamud by email. Mohamud claims there is nothing about Bill Smith's actions that need to be protected.

The government maintains the FBI's relationship with Bill Smith is arguably more significant to protect than a relationship with a mere tipster. According to the government, Bill

Smith's personal safety would be compromised if the court publically reveals that he is paid by the FBI. Moreover, the government is concerned that disclosure of the true identity could jeopardize matters related to Bill Smith's undercover work.

The seminal case about the informant's privilege is <u>Roviaro v. United States</u>, 353 U.S. 53, 77 S. Ct. 623 (1957). It explains the reason for the privilege:

> What is usually referred to as the informer's privilege is in reality the Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law. The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

<u>Id.</u> at 59 (internal citations omitted). The informant in <u>Roviaro</u> was neither a tipster nor an innocent bystander who learned of a crime. Instead, the informant was described as a "special employee" who had been known to the federal agents for several years. On the night of the drug transaction, a police officer hid in the trunk of the informant's car, with the informant's knowledge, while the informant picked up the suspect and drove to a drug transaction. <u>Id.</u> at 56-57. The informant did not testify at trial.

The Court explained the analysis:

> Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way. In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

<u>Id.</u> at 60-61.

The Court reversed the conviction:

Page 4 - OPINION AND ORDER

The circumstances of this case demonstrate that John Doe's possible testimony was highly relevant and might have been helpful to the defense. So far as petitioner knew, he and John Doe were alone and unobserved during the crucial occurrence for which he was indicted. Unless petitioner waived his constitutional right not to take the stand in his own defense, John Doe was his one material witness. Petitioner's opportunity to cross-examine Police Officer Bryson and Federal Narcotics Agent Durham was hardly a substitute for an opportunity to examine the man who had been nearest to him and took part in the transaction. Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment. He might have thrown doubt upon petitioner's identity or on the identity of the package. He was the only witness who might have testified to petitioner's possible lack of knowledge of the contents of the package that he 'transported' from the tree to John Doe's car. The desirability of calling John Doe as a witness, or at least interviewing him in preparation for trial, was a matter for the accused rather than the Government to decide.

Finally, the Government's use against petitioner of his conversation with John Doe while riding in Doe's car particularly emphasizes the unfairness of the nondisclosure in this case. The only person, other than petitioner himself, who could controvert, explain or amplify Bryson's report of this important conversation was John Doe. Contradiction or amplification might have borne upon petitioner's knowledge of the contents of the package or might have tended to show an entrapment.

Id. at 63-64.

Roviaro does not support Mohamud's argument that the privilege is inapplicable to Bill Smith. Bill Smith was paid to send Mohamud emails. The Roviaro informant, described as a special employee, was presumably paid to drive the suspect to the drug deal with a police officer hidden in the trunk. The government did not want to disclose the identity of the Roviaro informant because he was working on other cases. The government raises the same interest here. I find the privilege could apply to protect Bill Smith's true identity.

Page 5 - OPINION AND ORDER

II.    Analysis of the Privilege

The government interprets Roviaro to require balancing the public interest in protecting the flow of information with the defendant's right to prepare his defense.  Mohamud disputes the government's interpretation.  Mohamud argues the cases do not weigh public safety concerns against the relevancy and helpfulness of the information to the defense.  In support, Mohamud cites United States v. Ordonez, 737 F.2d 793, 809 (9th Cir. 1984):

> If the district court believed that disclosure would have been "highly relevant and might have been helpful to the defense" ([Roviaro], 353 U.S. at 63–64, 77 S. Ct. at 629–630) of the appellants, it was error of constitutional dimension to deny disclosure solely because of the potential danger to the informer.  If disclosure is essential to a fair determination of the case "the trial court may require disclosure, and, if the government withholds the information, dismiss the action." [Roviaro], 353 U.S. at 61, 77 S. Ct. at 628.

The defense fails to acknowledge that the issue is not black and white.  Roviaro stated the following:

> We believe that no fixed rule with respect to disclosure is justifiable.  The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense.  Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Roviaro, 353 U.S. at 62.  Thus, I must balance the factors here.  Moreover, the defendant bears the burden of showing the need for disclosure.  United States v. Decoud, 456 F.3d 996, 1009 (9th Cir. 2006).

The government argues Bill Smith had no involvement with Mohamud's plan to detonate a bomb at the tree lighting ceremony, and that the email contact ceased well before any undercover

contact began which led to the charged conduct.  As a result, the government contends his identity

is not necessary to Mohamud's defense.

Mohamud argues the balance of interests favors disclosure of Bill Smith's identity.

According to Mohamud, Bill Smith's identity is highly relevant to Mohamud's entrapment defense

because Bill Smith is a witness to the first six months of the government's contact with Mohamud.

Mohamud characterizes the Bill Smith emails as the first government contact that invoked

political, social, and religious themes, thus beginning the process of normalizing the idea in

Mohamud's mind of violent action within the United States.  Mohamud claims the court should

not artificially segment the various government contacts into discrete phases because the entire

course of the government's conduct is at issue in the entrapment defense.  I agree that contacts by

all government actors are relevant to the defense.

Mohamud contends the following testimony from Bill Smith would be relevant to proving

both government inducement and lack of predisposition:  (1) communications he sent; (2) his

status as a government agent; (3) use of insider information about Mohamud; (4) how the varied

inducement tactics shifted over time as the government refined its approach; (5) whether he

interacted with Mohamud outside his role as Bill Smith; and (6) any contacts with Mohamud that

Bill Smith did not report to his FBI handlers.  Mohamud also seeks the true identity to subpoena

payment vouchers, checks, and receipts to prove the nature and scope of the government agency.

The government's main response is that the emails speak for themselves.  According to the

government, Bill Smith's intent when choosing the language he used in the emails is not relevant,

and the defense can argue an interpretation of the emails to the jury which supports the entrapment

defense.  If Mohamud wants to claim the emails demonstrate an institutional determination to entrap him, the government argues Mohamud can question SA Dodd about the issue at trial.

Mohamud is unaware of any evidence that would suggest Bill Smith would be imperilled if his identity is disclosed.  Mohamud acknowledges he does not know if the government seeks to shield Bill Smith to preserve other ongoing investigations or sting operations.  If Bill Smith is engaging in other work similar to the emails in this case, however, Mohamud notes that Bill Smith is merely a stranger on the internet and could still communicate with unseen strangers after his true identity is revealed.  Further, Mohamud argues the FBI chose to risk Bill Smith's identity when it decided to use him rather than an FBI agent.  Mohamud contends that SA Dodd cannot provide competent testimony as a proxy for Bill Smith because SA Dodd has admitted that he lacks good recall about the tasking of Bill Smith and there are no detailed, contemporaneous reports.  Finally, Mohamud claims that concerns about public disclosure of Bill Smith's identity could be alleviated with a protective order.

The current record is inadequate for me to decide whether to require disclosure of Bill Smith's true identity.  Accordingly, I will hold a hearing to supplement the record in the format I describe next.

III.    Type of Hearing

If the court does not find the current record sufficient to grant the motion to disclose Bill Smith's identity, Mohamud argues the court must grant an in camera adversarial hearing to assess the relevance and helpfulness of Bill Smith's potential testimony.  Mohamud contends he has made more than a minimal threshold showing of relevance and is entitled to an in camera hearing.

Page 8 - OPINION AND ORDER

The government does not believe the court must provide an in camera hearing, but if the court disagrees, the government will make Bill Smith available for questioning in camera and ex parte, with the government and the court asking questions submitted by defense counsel.

> Balancing the defendant's and the government's interests, a district court must hold an in camera hearing whenever the defendant makes a minimal threshold showing that disclosure would be relevant to at least one defense. Such an in camera hearing is advantageous because it poses little risk of disclosing the identity of the informant and may provide many of the same benefits as disclosure itself, especially when defense counsel may participate under an order not to reveal any information disclosed during the hearing.

Henderson, 241 F.3d at 645 (internal quotation omitted).

I conclude Mohamud has made the minimal showing entitling him to an in camera hearing because the current record is insufficient for me to make a decision. The final issue is whether the defense team also participates.

Mohamud objects to the proposed ex parte hearing. He notes the defense team cannot predict required follow-up questions or whether questions which expose the defense trial strategy would become unnecessary as the hearing unfolds. In support of an ex parte hearing, the government cites United States v. Anderson, 509 F.2d 724 (9th Cir. 1974), which analyzed whether there was probable cause for a search, based on information from an informant.

> Thus, rather than establishing a fixed rule that either requires or precludes disclosure of the informant's identity when probable cause is in issue, we hold that the responsibility for striking the proper balance in each case rests with the trial judge. In striking that balance the trial judge, in the exercise of his discretion, can conduct an in camera hearing to which the defense counsel, but not the defendant, is admitted. The defense counsel could then be permitted to participate in the in camera proceedings and to cross-examine the in camera witness or witnesses. When defense counsel has been admitted to the in camera hearing for this limited purpose, the district court can and should, when appropriate, place defense counsel under enforceable orders against unwarranted disclosure of the evidence that he has heard. Cf. Alderman v. United States, 394 U.S. 165, 185, 89 S. Ct. 961, 22 L.

Ed.2d 176 (1969).  If the trial judge is satisfied that an in camera hearing in which neither the defendant nor his attorney participates is adequate to explore the foundations of the informant's information, then no disclosure is necessary.  The trial court's determination will be reversed only if it constitutes an abuse of discretion or constitutional error.

      . . . The court accommodated the competing interest of the defendant in a fair trial through the use of an in camera hearing closed to the defendant and his attorney.  We cannot say that the accommodation reached was an abuse of discretion.  Nor can we say that the procedure infringed the defendant's rights under the Fifth and Sixth Amendments.  See McCray v. Illinois, 386 U.S. at 313-314, 87 S. Ct. 1056.  Moreover, having reviewed the transcript of the in camera proceedings, we affirm as not clearly erroneous the trial court's finding that the informant's conclusions were based upon sufficiently reliable information.

Id. at 729-30.  Although Anderson addresses a different issue–the existence of probable cause–it is sufficiently analogous to support my decision to hold an in camera, ex parte hearing over Mohamud's objection.  The hearing will be reported under seal to preserve the record for any appeal.

I would like to hold the hearing as the first issue on August 8, 2012, a day set aside for several other matters in this case.  I am willing to hold the hearing either in my chambers or, if the government prefers for security reasons, in the United States Attorney's Office.  Bill Smith should appear in person and not by telephone.  Counsel should confer and let the court know if they want this hearing to be the first or the last matter addressed on that day.  Defense counsel should submit questions they wish me to ask by August 6.  Defense counsel should also be available by telephone during the hearing in case I wish to discuss the need for follow-up questions.  The government may also ask questions of Bill Smith to make a record about the adverse effect of revealing his identity.  I also ask the government to send me by August 6 an in camera copy of all the Bill Smith emails to allow me to prepare for the hearing.

**CONCLUSION**

Defendant's Motion for Reconsideration of Discovery Order Regarding Disclosure of

Government Agent Bill Smith's True Identity [137] is granted to the extent the court will hold an

in camera, ex parte ruling before making a final ruling.

IT IS SO ORDERED.

Dated this _____23rd_____ day of July, 2012.


     ___/s/ Garr M. King_____
     Garr M. King
     United States District Judge