S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
**PAMALA R. HOLSINGER**, OSB #89263
Assistant United States Attorneys
ethan.knight@usdoj.gov
pamala.holsinger@usdoj.gov
1000 SW Third, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
Attorneys for United States of America

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

**UNITED STATES OF AMERICA**

**v.**

**MOHAMED OSMAN MOHAMUD,**

**Defendant.**

**Case No. 3:10-CR-00475-KI**

**GOVERNMENT'S RESPONSE TO DEFENDANT'S FIRST MOTIONS IN LIMINE**

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through Ethan D. Knight and Pamala R. Holsinger, Assistant United States Attorneys, hereby responds to defendant's first motions in limine (ECF No. 237).

**1. The Court Should Not Limit the Use of the Terms "Terrorist," Violent Jihad," and "Martyrdom."**

Defendant has moved this Court for an order directing the government to refrain from using the terms "terrorist, "violent jihad," and "martyrdom" at trial. Defendant's motion is unreasonable, not supported by the law, and would unnecessarily confuse the jury. The court has wide discretion in determining the admissibility of evidence and related evidentiary matters. *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379 (2008); *Acosta v. City of Costa Mesa*, 10-56854, 2012 WL 3834658 (9th Cir. Sept. 5, 2012); *Harper v. City of Los Angeles*, 533 F.3d 1010, 1030 (9th Cir. 2008). In light of this discretion, defendant's motion should be denied.

Defendant is alleged to have committed an act of terrorism. It is the government's theory that defendant was motivated to commit this act because of his longstanding adherence to an ideology that supports and encourages violent jihad. Defendant claims, however, that the use of the terms "terrorism," "violent jihad," and "martyr" would be prejudicial. These terms, however, accurately characterize defendant's conduct and the nature of his case. Courts have recognized that, while the terms are serious, they are accurate, and therefore permissible. *See, e.g., United States v. Felton*, 417 F.3d 97, 103 (1st Cir. 2005) (finding that the government's use of the term "terrorist" to describe defendants and their actions was appropriate because, while the term is "highly pejorative," it was "a function of the acts defendants engaged in, not the government's inaccurate description of those acts"). *See also United States v. Jordan*, 223 F.3d 676, 691 (7th Cir. 2000) (finding that the government's use of the terms "terrorist" or "terrorism" accurately described defendant's conduct in a case where defendant conspired to blow up a government building; in discussing the proffered use of the term "terrorism," the court stated "that is what this is").

Defendant himself used the terms “terrorist,” “jihad,” and “martyrdom” throughout the investigation, often while describing his own beliefs, motives, or planning. During his meetings with the undercover agents, defendant used the terms terrorism and jihad more than a dozen times. He also discussed martyrdom. These terms also turn with equal frequency in defendant’s writing, e-mails, and chat room postings. As a result, granting defendant’s motion would make it all but impossible for the government to present the evidence to the jury: these terms are inextricably intertwined with the evidence.

While defendant is correct that the Court can, and should, limit the government from using terms that would unnecessarily inflame the passions of the jury, there should be no prohibition on the government’s ability to use terms that are necessary to meet its burden. Indeed, the use of terms that accurately describe the event for which a defendant is charged are appropriate. *See, e.g.*, *United States v. Dimora*, 843 F. Supp. 799, 845 (N.D. Ohio 2012), cited by defendant, (upholding the court’s ruling prohibiting the government from using the term “godfather” but permitting the use of the terms “corruption,” “corruption investigation,” “bribe,” and “kickback” even though these terms did not appear in the statutes of the charged offenses). The terms “terrorist, “violent jihad,” and “martyrdom” are highly relevant to and probative of defendant’s motive, intent, and the potential defense of entrapment. The government has the burden of proving defendant committed the charged offense. The government should be permitted to explain the evidence to the jury.

**2. The Court Should Permit the Government to Introduce Evidence Regarding Defendant’s Associate, Amro Al-Ali.**

Defendant has moved to exclude evidence of “subsequent acts or status of defendant’s associates.” Defendant is moving to exclude, presumably, all information relating to the status

of Amro Al-Ali that was gathered after defendant's arrest on November 26, 2010. As a preliminary matter, the government disagrees with defendant's characterization of the Court's prior ruling on this issue—the Court sustained an objection relating to testimony about Al-Ali's background in a hearing on defendant's Motion to Suppress non-FISA activity. (ECF No. 131 at 43-44.) The Court has not ruled that this evidence would be inadmissible or irrelevant at trial. Al-Ali's status and his relationship to defendant are evidence of defendant's motive, intent, and predisposition to commit the offense.

Nonetheless, the government is not offering "subsequent" evidence of Al-Ali's status. The government intends to offer evidence of Al-Ali's status as a wanted Al Qaeda terrorist while defendant was in contact with him. This fact was documented before and after November 26, 2010. As the government has noted before, on October 18, 2009, Interpol, the International Criminal Police Association, issued a "Red Notice" for Al-Ali on behalf of the Saudi Arabian government stating that Al-Ali "helped the Al Qaeda division in Yemen and other countries by providing them with foreign fighters to carry out terrorist attacks against western and tourists interests." This occurred before defendant had any contact with government agents and more than a year before his arrest. On January 4, 2011, Interpol again issued the same notice for Al-Ali. In January 2011 the Saudi Arabian government also announced that Al-Ali was one of its "47 most wanted terrorists linked to Al-Qaida." These notices were published, and readily accessible.

Amro Al-Ali's status as an Al Qaeda terrorist operative is inextricably intertwined with the government's theory of the case and the criminal investigation that led to defendant's arrest. Government agents contacted defendant because of his troublesome contacts with Al-Ali.

Moreover, defendant repeatedly spoke of Al-Ali and his connections overseas with the UCEs. If the government were prohibited from explaining Al-Ali's documented terrorist connections, the government would be unable to fully and accurately explain to the jury why the undercover investigation of defendant was initiated or why there was such concern regarding defendant's communications with Al-Ali. Such a result would leave the jury with an incomplete and inaccurate picture of what happened in this case. As a result, defendant's motion should be denied.

**3. The Court Should Not Advise the Jury Regarding Alleged Violations of Defendant's Fourth and Fifth Amendment Rights Related to the November 2, 2009, Rape Investigation of Defendant.**

Defendant has moved the Court to advise the jury that the government violated defendant's Fourth and Fifth Amendment rights in connection with the November 2009 Oregon State Police rape investigation. Defendant's request is improper and should be denied. First, and most importantly, the Court has not ruled that defendant's Fourth or Fifth Amendment rights have been violated. (Op. and Order [denying defendant's Motion to Suppress non-FISA evidence], ECF No. 224 ("[E]vidence obtained through the national security investigation has an independent source. Thus, there is no need to address the alleged constitutional violation.").) As such, advising the jury of such a conclusion would explicitly contradict the Court's prior ruling.

Second, such an instruction would impair the jury's proper role as the trier of fact, and introducing such legal concepts would be needlessly confusing. Issues of fact are for the jury; issues of law for the Court. Defendant cites no authority that stands for the proposition that it is proper to advise the jury of an alleged violation of defendant's constitutional rights that took

/ / /

place during the course of the investigation, nor would such an instruction be probative of any fact in evidence.

Finally, the government does not plan on introducing evidence of the rape investigation at the trial. Remarkably, defendant is seeking the Court's permission to instruct the jury about defendant's version of the circumstances of the investigation in a vacuum, without explaining why it occurred. This would be misleading and unfair. If defendant wishes to open the door to the rape investigation, the government should be permitted to discuss the circumstances that brought investigators to Corvallis in November 2009 in order to provide the jury with the proper context.

**4. The Court Should Not Exclude Evidence Regarding Samir Khan and *Jihad Recollections*.**

Defendant has moved to exclude evidence of his email communications with terrorist Samir Khan and his published writings in Khan's online magazine *Jihad Recollections* because this evidence was gathered when defendant was a juvenile and because this material was the product of protected First Amendment activity. The evidence defendant seeks to exclude is highly probative of his motive, intent, and, in particular, his predisposition to commit the offense. Furthermore, defendant cites no persuasive legal authority that would require the exclusion of this evidence. Defendant's motion should be denied.

Without citing any authority, defendant argues that the evidence should be excluded because the government failed to "take . . . reasonable steps" to notify defendant, then a juvenile, of any ongoing surveillance. (Def.'s Mot. 6.) Issues relating to any court-authorized surveillance and its legality have already been ruled upon by this Court. (*See* Op. and Order [denying defendant's Motion to Suppress fruits of FISA-related activity], ECF No. 126.)

Defendant's argument is therefore moot. It is worth noting, however, that the government could neither control the fact that defendant chose to engage in a written relationship with an international terrorist, nor did the government have any role in defendant's decision (while a juvenile) to publish articles that advocated violent jihad. Defendant's allegiance to Khan and his related e-mails, chat room postings, and his published work underscore how sophisticated, intelligent, and predisposed he was to commit the offense from an early age. *See, e.g., United States v. Poehlman*, 217 F.3d 692, 703 (9th Cir. 2000) (in holding that government failed to overcome entrapment defense, court explicitly noted the absence of "e-mails or chat room postings" offered by the government to prove predisposition).

Defendant next argues that his communications with Khan and his writings are protected by the First Amendment, and therefore excludable. Defendant amplifies this position in his trial memorandum. (ECF No. 234 at 19-20.) The government does not disagree that defendant's written and spoken words advocating terrorism are protected by the First Amendment. That fact, however, is irrelevant to questions regarding their admissibility under Fed. R. Evid. 403. Protected speech is frequently relevant evidence—a defendant's writings, speeches, conversations are all protected but can also be probative of a variety of issues in virtually any type of criminal case. *See, e.g., United States v. Amawi*, 695 F.3d 457, 482 (6th Cir. 2012) ("The First Amendment ... does not prohibit the evidentiary use of speech to establish the elements of a crime or to prove motive or intent" (quoting *Wisconsin v. Mitchell*, 508 U.S. 476, 489 (1993))).

Defendant relies upon *United States v. Curtin*, 489 F.3d 935, 950, 956 (9th Cir. 2007) (en banc), to support his position. Defendant makes this argument in the context of his discussion of Fed. R. Evid. 404(b). (Def.'s Trial Mem. 20.) While the government is not seeking to introduce

evidence under Fed. R. Evid. 404(b), defendant reads *Curtin* too broadly. *Curtin* does not proscribe the admission of protected First Amendment activity. Instead, once it has been established that the proffered evidence relates to motive, intent, and knowledge, the relevant Advisory Committee Notes make it clear that the "only" conditions justifying exclusion of the evidence are: unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. *Id.* at 944.

What the Ninth Circuit has emphasized, is that a defendant's First Amendment activities are admissible when the court examines each proffered item, and then conducts a 403 balancing test. Thus, evidence protected by the First Amendment is admissible to demonstrate a defendant's relevant motive when such evidence is more probative than prejudicial. In *United States v. Waters*, 627 F.3d 345 (9th Cir. 2010), the Ninth Circuit held that such evidence should be reviewed carefully and with a "skeptical eye," to ensure that it is relevant to an issue. *Id.* at 355 (citing *Curtin*, 489 F.3d at 956) (noting literature may be relevant to defendant's intent). Before he was approached by any government agent, defendant developed a significant relationship with a now deceased international terrorist. This evidence is highly probative of his motive, intent, and predisposition. Defendant's motion should be denied.

Respectfully submitted this 6th day of November 2012.

S. AMANDA MARSHALL
United States Attorney

*s/ Ethan D. Knight*
ETHAN D. KNIGHT, OSB #99298
PAMALA R. HOLSINGER, OSB #89263
Assistant United States Attorneys
(503) 727-1000