S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
**PAMALA R. HOLSINGER**, OSB #89263
Assistant United States Attorneys
ethan.knight@usdoj.gov
pamala.holsinger@usdoj.gov
1000 SW Third, Suite 600
Portland, OR 97204-2902
Telephone: (503) 727-1000
Facsimile: (503) 727-1117
**JOLIE F. ZIMMERMAN**, DCB #465110
Trial Attorney
Counterterrorism Section
National Security Division
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:10-CR-00475-KI |
| **v.** | |
| **MOHAMED OSMAN MOHAMUD,** | **GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR FULL DISCOVERY REGARDING SURVEILLANCE** |
| **Defendant.** | |

The United States of America, by S. Amanda Marshall, United States Attorney for the

District of Oregon, and through Ethan D. Knight and Pamala R. Holsinger, Assistant United

States Attorneys, and Jolie F. Zimmerman, Trial Attorney, United States Department of Justice,

hereby responds to defendant's Motion for Full Discovery Regarding the Facts and

Circumstances Underlying Surveillance (ECF No. 488).

# TABLE OF CONTENTS

Page

I.      Introduction ................................................................................................................1

II.     The Defendant is Not Entitled to Discovery Regarding the Provision of the
        Supplemental Notification ..........................................................................................5

        A.      No Deliberate Government Misconduct Occurred in this Case.............................6

        B.      Discovery is Unwarranted because there is No Remedy to which
                Defendant is Entitled Other than the Opportunity to Seek Suppression of
                the Title VII-Derived Evidence in this Case.........................................................9

III.    This is No Basis to Order Discovery of Classified Materials Relating to the
        Authorization or Conduct of the Title VII Collection from which Evidence in this
        Case was Derived.......................................................................................................15

IV.     Defendant is Not Entitled to Discovery of the Use of Other "Surveillance Activities"
        Not at Issue in this Case............................................................................................24

V.      Defendant is Not Entitled to Any Additional Discovery in this Case .............................26

        A.      The Government has Consistently Complied with the Rules Governing
                Discovery and this Court's Discovery Orders ......................................................27

        B.      Government Actors Did Not Fail to Communicate Discoverable Material to
                Local Prosecutors...............................................................................................28

        C.      The Government is Not Obligated to Disclose the Origin of the Criminal
                Investigation Outside the Rules of Discovery ......................................................30

VI.     Conclusion ................................................................................................................31

# TABLE OF AUTHORITIES

## FEDERAL CASES

*ACLU Foundation of Southern California v. Barr*, 952 F.2d 457 (D.C. Cir. 1991).....................18

*Alderman v. United States*, 394 U.S. 165 (1969)...............................................................21, 23

*Bloate v. United States*, 130 S. Ct. 1345 (2010) ...................................................................22

*Brady v. Maryland*, 373 U.S. 83 (1963) ...............................................................13, 26, 27, 28

*Brock v. United States*, 573 F.3d 497 (7th Cir. 2009)............................................................12

*[Caption Redacted]*, 2011 WL 10945618 (Foreign Intel. Surv. Ct. Oct. 3, 2011).......................20

*C.I.A. v. Sims*, 471 U.S. 159 (1985)....................................................................................25

*Clapper v. Amnesty Inti'l USA*, 133 S. Ct. 1138 (2013) ...........................................................8

*Davis v. United States*, 131 S. Ct. 2419 (2011) ..............................................................10, 14

*Good v. Berghuis*, 729 F.3d 636 (6th Cir. 2013) ...................................................................12

*Gozlon-Peretz v. United States*, 498 U.S. 395 (1991) ...........................................................22

*Herring v. United States*, 555 U.S. 135 (2009)....................................................................14

*Hudson v. Michigan*, 547 U.S. 586 (2006) ...........................................................................14

*Hussong v. Warden*, 623 F.2d 1185 (7th Cir. 1980)..............................................................13

*In re Grand Jury Proceedings*, 347 F.3d 197 (7th Cir. 2003) .............................................19, 21

*In re Grand Jury Subpoena (T-112)*, 597 F.3d 189 (4th Cir. 2010) .......................................11, 22

*In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997)............................................................14-15

*Taglianetti v. United States*, 394 U.S. 316 (1969)................................................................23

*United States v. Abu-Jihaad*, 630 F.3d 102 (2d Cir. 2010).................................................17, 21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*United States v. Arenas-Ortiz*, 339 F.3d 1066 (9th Cir. 2003) ......................................................9

*United States v. Armstrong*, 517 U.S. 456 (1996) ......................................................................9

*United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982) ..................................................17, 18, 21

*United States v. Bissell*, 634 F.2d 1228 (9th Cir. 1981)..................................................................23

*United States v. Damrah*, 412 F.3d 618 (6th Cir. 2005)........................................................11, 23

*United States v. Donovan*, 429 U.S. 413 (1977)..............................................................................11

*United States v. Duggan*, 743 F.2d 59 (2d Cir. 1984) ...................................................................17

*United States v. El-Mezain*, 664 F.3d 467 (5th Cir. 2011)........................................................17, 25

*United States v. Fernandez*, 231 F.3d 1240 (9th Cir. 2000) .........................................................14

*United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013)......................................12, 13, 14

*United States v. Juvenile Male*, 670 F.3d 999 (9th Cir.), *cert. denied*, 133 S. Ct. 234 (2012) ......22

*United States v. Michaels*, 796 F.2d 1112 (9th Cir. 1986)............................................................26

*United States v. Nicholson*, 721 F.3d 1236 (10th Cir. 2013) .......................................................10

*United States v. Olsen*, 737 F.3d 625 (9th Cir. 2013) ...................................................................13

*United States v. Ott*, 827 F.2d 473 (9th Cir. 1987) ........................................................11, 19, 25

*United States v. Robinson*, 513 F. Supp. 2d 169 (M.D. Pa. 2007)................................................11

*United States v. Wong*, 431 U.S. 174 (1977) ................................................................................14

## DOCKETED CASE

*United States v. Daoud*, No. 12-cr-723, 2014 WL 321384  (N.D. Ill. Jan. 29, 2014)
    (unpublished) ....................................................................................................................17, 25

# TABLE OF AUTHORITIES

## FEDERAL STATUTES, LAWS AND RULES

Title III of the Omnibus Crime Control and Safe Streets Act of 1968
    18 U.S.C. § 2510–2522 ............................................................................7

Jencks Act, 18 U.S.C. § 3500 ...........................................................................26, 29

18 U.S.C. § 3504 ...............................................................................................22, 23

Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended,
    50 U.S.C. §§ 1801-1812, 1821-1829 ...................................................................1

50 U.S.C. §§ 1801, 1804-1805, 1821, 1823-1824 ................................................1

50 U.S.C. § 1806.......................................................................................... *passim*

50 U.S.C. § 1825(d) ..........................................................................................6, 7

50 U.S.C. § 1881a...................................................................................2, 16, 20

50 U.S.C. § 1881e(a).......................................................................3, 4, 6, 7, 8, 16

Pub. L. 91-452, Title VII, § 702(a), Oct. 15, 1970 .........................................22

Federal Rules of Criminal Procedure 16............................................................26, 28

## OTHER MATERIAL

Comments of the Judiciary on Proposals Regarding the Foreign Intelligence
    Surveillance Act (Jan. 10, 2014) at 5, 7 available at
    www.judiciary.senate.gov/resources/documents/113thCongressDocuments/upload/01141
    3RecordSub-Grassley.pdf (last visited Feb. 13, 2014). ...................................20

H. Conf. Rep. No. 95-1720, 95th Cong. 2d Sess., at 31 (1978) ...................................12

iv

I.    **Introduction**

On November 19, 2013, the United States filed its "Supplemental FISA Notification,"
which supplemented the government's original FISA notification that had been filed three years
earlier on the day defendant was indicted and first appeared in court.  (ECF No. 486.)  The
original FISA notification advised defendant that the government intended to use in evidence or
otherwise use or disclose in the criminal case "information obtained and derived from electronic
surveillance and physical search conducted pursuant to the Foreign Intelligence Surveillance Act
of 1978 ('FISA'), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829."[1]  (ECF No. 4.) The
statutes cited in that first notice permit electronic surveillance and physical search, provided that
the government establishes to the satisfaction of the Foreign Intelligence Surveillance Court
(FISC) that, among other things, there is probable cause to believe that the target is an agent of a
foreign power.  *See* 50 U.S.C. §§ 1801, 1804-1805, 1821, 1823-24.  Electronic surveillance
under these provisions is commonly referred to as Title I collection, while physical search is
commonly referred to as Title III collection.

The Supplemental Notification was filed based on a recent determination by the
government that certain evidence referenced in the original FISA notification, obtained or
derived from Title I and Title III collection, was itself also derived from Title VII collection as to
which defendant was aggrieved.  Title VII of the FISA Amendments Act (FAA) permits the
targeting of electronic communications of non-U.S. persons located outside the United States,

---

[1]  Prompted by this notice, the defense challenged the government's use of evidence
obtained or derived from Title I and Title III FISA collection.  After a careful *ex parte*, *in camera*
review of the relevant material, the Court denied defendant's legal challenges.

**Government's Response to Defendant's Motion for Full Discovery Regarding**        **Page 1**
**Surveillance**

subject to certain statutory requirements.  *See* 50 U.S.C. § 1881a.  Specifically, the Supplemental Notification explained that the government had determined that "information obtained or derived from Title I FISA collection may, in particular cases, also be 'derived from' prior Title VII FISA collection" and that the government had recently reviewed the proceedings in this case prior to its filing.   The Notification then stated that certain evidence and information used in this case was "derived from acquisition of foreign intelligence information conducted pursuant to the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. §1881a."  (ECF No. 486.)

In response to the Supplemental Notification, defendant has filed a motion seeking discovery of records and information relating to four topics: (1) internal Department deliberations regarding the provision of the original notice and the Supplemental Notification; (2) the legality and conduct of the Title VII collection from which certain of the evidence used at trial was derived, including the applicable procedures; (3) the use of other "surveillance activities" against defendant, including those that have been the subject of recent public debate due to the unauthorized disclosure of classified information; and (4) additional evidence or other information that he speculates may have been withheld from discovery.  Defendant also asks the Court to reconsider various pretrial rulings related to the last topic.   For the reasons explained herein, defendant's motion should be denied.

While defendant's motion seeks broad discovery over a wide range of issues, the Supplemental Notification and its implications in this case are actually quite narrow.   The Supplemental Notification raises at most only two relevant legal issues:

    1.    Whether the Title VII collection from which certain of the evidence used against defendant was derived was lawfully authorized and conducted; and,

**Government's Response to Defendant's Motion for Full Discovery Regarding**      **Page 2**
**Surveillance**

2.    Whether defendant is entitled to any relief other than the opportunity to litigate whether the underlying Title VII collection was lawfully authorized and conducted.

These legal issues may well present important questions, but they will be the basis of motions to be filed in the coming months.  The only issue before the Court at the moment is whether defendant is entitled to discovery to litigate these two legal issues.

Defendant's request for internal deliberative documents regarding the provision of the original and supplemental notifications in this case should be rejected because, as explained herein, the government did not act in bad faith when filing the Supplemental Notification post-trial.  Moreover, insofar as defendant seeks discovery in support of a claim for additional relief due to the government's post-trial notice, such a claim fails because he has received the only remedy to which he is entitled – the opportunity to litigate suppression of the Title VII-derived evidence.

The Court should deny defendant's request for disclosure of classified documents relating to the legality and conduct of the underlying FAA collection, subject to its *ex parte, in camera* review of the government's submission in response to the suppression motion that defendant states he intends to file.  The Supplemental Notification acknowledges that defendant has standing to challenge the government's use of evidence derived from collection under Title VII. The procedures that apply to such a challenge are outlined in 50 U.S.C. § 1806 – the same provision which governed defendant's pretrial challenge to the government's use  of evidence obtained or derived from Title I and Title III FISA collection.  *See* 50 U.S.C. § 1881e(a).  Those procedures permit the government to submit the classified orders and other materials related to the challenged Title VII collection for the Court's *ex parte* and *in camera* review upon the filing

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**                                                                          **Page 3**

of a declaration by the Attorney General that disclosure or an adversary hearing would harm the national security of the United States.  Pursuant to the statute, disclosure of such materials to the defense may only be ordered if the court, after an *ex parte, in camera* review, determines that disclosure is necessary to make an accurate determination of the legality of the collection.  *See* 50 U.S.C. §§ 1806(f), 1881e(a).  Since defendant has not yet submitted a substantive motion challenging the Title VII collection and the issue of the legality of the collection is not before the Court for decision, there is no basis for the Court to find that it is unable to make an accurate determination of legality.  Defendant's motion with respect to these materials is therefore premature and must be denied at this stage.

Defendant's remaining requests – for discovery of additional evidence or information related to other investigative techniques that he believes may have been used in his case – should be rejected.  There is no new evidence in this case.  The Supplemental Notification was provided based on a recent determination that some of the evidence used in this case – namely certain information that was collected pursuant to the Title I and III FISA collection referenced in the original FISA notice – was itself also derived from prior Title VII collection.  This evidence is the same evidence that has been previously addressed during the course of the litigation.  Thus, the provision of the Supplemental Notification does nothing to change the discovery obligations with which the government has steadfastly complied for more than three years.  There is no basis for the Court to reconsider any of its prior rulings. [2]

---

[2]  Certain discovery issues were resolved through litigation involving the Classified Information Procedures Act ("CIPA").  The classified addendum will address the discovery

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**                                                                                    **Page 4**

Likewise, none of the other legal authorities or investigative activities raised in defendant's motion is relevant to this case. The Supplemental Notification properly raises legal issues related to Title VII collection, but it has nothing to do with the "seizure and accessing of internet and telephone metadata" (Def. Memo., pp. 20-23), or any undisclosed "secret surveillance" programs (Def. Memo, pp. 23-25) that defendant cites throughout his motion. Thus, defendant's motion with respect to these issues is without merit.

## II.    The Defendant is Not Entitled to Discovery Regarding the Provision of the Supplemental Notification

Defendant first contends that he is entitled to discovery of internal records related to the government's decision to provide the Supplemental Notification in this case, alleging that the government, pursuant to a "secret policy," has "routinely and deliberately" failed to provide adequate notice of surveillance pursuant to Title VII, and that the sequence of events surrounding the filing of the Supplemental Notification demonstrates willful misconduct by the government. (Def. Memo., pp. 3-15, 56.) To support his request, defendant asserts that discovery is needed to support a forthcoming motion seeking some type of remedy for the post-trial provision of the Supplemental Notification. This Court should both deny defendant's request and reject its underlying premise that defendant is entitled to any remedy other than the one currently afforded to him, namely, to seek suppression of the Title VII-derived evidence.

---

orders issued by the Court as a result of that litigation, as well as other classified information provided to the Court during the course of this case.

**Government's Response to Defendant's Motion for Full Discovery Regarding**    **Page 5**
**Surveillance**

A.    No Deliberate Government Misconduct Occurred in this Case

At the outset, defendant's assertion regarding the existence of a "secret policy" and claim that the government engaged in deliberate misconduct to conceal the use of Title VII-derived evidence are unfounded.  The Department has always understood that it is required to notify any "aggrieved person" of its intent to use or disclose, in a proceeding against such person, any information obtained or derived from Title VII collection as to which that person is an aggrieved person, in accordance with 50 U.S.C. §§ 1806(e), 1881e(a).  The Department's determination, however, that information obtained or derived from Title I or Title III collection may, in particular cases, also be derived from prior Title VII collection is a relatively recent development (and one that occurred after trial of defendant).  The Supplemental Notification filed in this case, which the government provided based on its own review, resulted from that determination and demonstrates good faith, not misconduct.

As this Court knows, pursuant to Title I of FISA, the government must notify any "aggrieved person" of its intent to "enter into evidence or otherwise use or disclose," in a proceeding against such person, "any information obtained or derived from [FISA authorized] electronic surveillance of that aggrieved person."  50 U.S.C. § 1806(c); *see also* 50 U.S.C. § 1825(d) (requiring notice to an aggrieved person of the intent to use evidence against such person obtained or derived from a physical search conducted pursuant to FISA).  The FAA provides that information acquired from Title VII collection "is deemed to be" information acquired pursuant to Title I for, among other things, the purposes of the applicability of the statutory notice requirement and the suppression and discovery provisions in Section 1806 of Title I.  *See* 50 U.S.C. § 1881e(a).

**Government's Response to Defendant's Motion for Full Discovery Regarding**          **Page 6**
**Surveillance**

The Department has always understood that notice pursuant to Sections 1806(c), 1825(d) and 1881e(a) must be provided when the government intends to use evidence directly collected pursuant to Title I, III, or VII.  Such evidence would be evidence that was "obtained from" such FISA collection.  Likewise, the Department has always recognized that notice pursuant to those provisions must be provided when the government intends to use evidence obtained through ordinary criminal process (such as a Rule 41 search warrant) that was itself based directly on information obtained pursuant to Title I, III, or VII.  Such evidence would be evidence that was "derived from" such FISA collection.

Prior to recent months, however, the Department had not considered the particular question of whether and under what circumstances information obtained through electronic surveillance under Title I or physical search under Title III could also be considered to be derived from prior collection under Title VII.   After conducting a review of the issue, the Department has determined that information obtained or derived from Title I or Title III FISA collection may, in particular cases, also be derived from prior Title VII collection, such that notice concerning both Title I/III and Title VII collections should be given in appropriate cases with respect to the same information.[3]

In November 2010, at the time the original notice was filed, the government knew that some of the evidence to be used in the case had been obtained or derived from Title I and Title

---

[3]   The Department has concluded that in determining whether information is "obtained or derived from" FISA-authorized surveillance, the appropriate standards and analyses are similar to those appropriate in the context of surveillance conducted pursuant to Title III (Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522).

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**                                                                    **Page 7**

III FISA collection.  It did not consider whether that same evidence was also "derived," as a matter of law, from prior FISA collection pursuant to Titles I, III, or VII.    Based on the Department's recent determination, the government reviewed the proceedings in this case and determined that some of the evidence obtained and derived from Title I and Title III collection was also derived from Title VII collection as a matter of law.  As a result, the government provided the Supplemental Notification to inform the defense and the Court that Title VII-derived information had been used against defendant in this case.

As this Court's subsequent scheduling order contemplates, defendant will now have the opportunity to challenge the constitutionality of Title VII and the lawfulness of the acquisitions through a suppression motion adjudicated according to the procedures outlined in FISA.  *See* 50 U.S.C. §§ 1806(e), 1881e(a).  The prosecutors in this case acted in accordance with the Department's then-current standard practice and under a good-faith understanding that the initial notice of the use of Title I and Title III FISA evidence fully satisfied the government's notice obligations.[4]  Once the Department made the determination that information obtained or derived

---

[4]  Defendant's claim that the Department's statements to the U.S. Supreme Court in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), were inconsistent with existing Department policy is baseless.  The Department informed the U.S. Supreme Court in that case, that "[i]f the government intends to use or disclose any information obtained or derived from its acquisition of a person's communications under [Title VII] in judicial or administrative proceedings against that person, it must provide advance notice of its intent to the tribunal and the person, whether or not the person was targeted for surveillance under [Title VII]."  US Gov't Br. at 8.  This is an accurate statement of both the law and the government's previous and current understanding that FISA imposes an obligation on the government to provide notice of its intent to use or disclose information that was derived from Title VII collection as well as information that was obtained from Title VII collection.  The issue before the Court in *Clapper* did not involve the precise circumstances in which information is properly considered to be derived from Title VII collection, and as such that case has no bearing here.

**Government's Response to Defendant's Motion for Full Discovery Regarding    Page 8 Surveillance**

from Title I or Title III FISA collection may, in particular cases, also be derived from prior Title

VII collection, the government moved forward with reviewing this case and provided notice to

defendant and this Court.  While the government understands that it is solely responsible for the

untimeliness of the notice, the post-trial filing of the Supplemental Notification does not reflect

any bad faith or willful misconduct.   Rather, it is simply the result of a careful review of the

range of circumstances in which information obtained or derived from Title I or Title III

collection should also be considered as a matter of law to be derived from prior Title VII

collection, such that the government should give notice of both Title I/III and Title VII

surveillance in those cases.[5]

      B.      <u>Discovery is Unwarranted because there is No Remedy to which Defendant is
Entitled Other than the Opportunity to Seek Suppression of the Title VII-Derived
Evidence in this Case.</u>

The disclosure defendant seeks cannot be necessary to "formulate a remedy" for the

untimeliness of the Supplemental Notification because this Court's scheduling order has already

provided a remedy that will fulfill the purpose of FISA's notice provisions, which is to enable

---

[5] Defendant's allegation that the government deliberately violated FISA's notice
requirement (Def. Memo., pp. 6-10) amounts to an allegation of prosecutorial misconduct.  In
order to obtain discovery based on a claim of prosecutorial misconduct, the defendant must
present a threshold showing of some evidence that the alleged prosecutorial misconduct occurred
to rebut the required presumption that prosecutors have acted in good faith. *See, e.g.*, *United
States v. Armstrong*, 517 U.S. 456, 464, 468-89 (1996) (holding that, because "courts presume
that [prosecutors] have properly discharged their official duties," defendants seeking discovery in
support of a selective prosecution claim must make a "threshold showing"); *United States v.
Arenas-Ortiz*, 339 F.3d 1066, 1069 (9th Cir. 2003) (describing *Armstrong* standard as
"rigorous").  Defendant has not made such a showing in this case.  Although the government
does not dispute that the notice was untimely, defendant has not otherwise produced evidence to
overcome the presumption that the government in this case acted in good faith.

**Government's Response to Defendant's Motion for Full Discovery Regarding**      **Page 9**
**Surveillance**

defendants to move to suppress.  That remedy completely cures any prejudice arising from the

delayed Supplemental Notification.  As the Court's order recognizes, defendant will now have

the opportunity to challenge, pursuant to the procedures of FISA, the use of evidence in the case

that was derived from Title VII, with the same result as if the motion to suppress had been

adjudicated before trial.  If the court, in accordance with the procedures established in FISA,

conducts its *in camera*, *ex parte* review and finds that the surveillance was lawful, defendant will

have suffered no prejudice by the delayed notice.   Conversely, if the court finds that suppression

of the Title VII-derived evidence is warranted, and if the government cannot show that

admission of the relevant evidence was harmless, then defendant will be entitled to vacatur of his

conviction and a new trial at which the evidence would be inadmissible.   In such a circumstance,

the post-trial remedy would put defendant in a similar position as if the Supplemental

Notification had been provided before trial.

     Contrary to defendant's claim, there is no need for any additional remedies to deter future

government misconduct.  (Def. Memo., pp. 11-12, 15.)  There has been no intentional

misconduct in this case.  And, in any event, the potential for post-trial suppression of evidence

provides sufficient deterrence of any potential government misconduct.  *See Davis v. United*

*States*, 131 S. Ct. 2419, 2429 (2011) (noting that exclusion of illegally obtained evidence is a

"harsh sanction"); *United States v. Nicholson*, 721 F.3d 1236, 1256 (10th Cir. 2013)

("[E]xclusion is an especially potent remedy" in deterring official misconduct, but "not one

individuals may insist on as a matter of personal constitutional right.") (internal quotation marks

omitted).[6]  Moreover, as set forth more fully below, litigation of the suppression issue pursuant to FISA's *in camera* and *ex parte* procedures is fully consistent with a defendant's due process rights.  *See United States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987); *United States v. Damrah*, 412 F.3d 618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an *ex parte, in camera* review of FISA materials does not deprive a defendant of due process.").  Accordingly, defendant cannot show that he has sustained any prejudicial statutory or constitutional violation here, and there is no need for the discovery he now seeks.

Indeed, FISA provides for after-the-fact motions to suppress, pursuant to FISA's procedures, as a remedy in these circumstances.  *See* 50 U.S.C. § 1806(e) (providing that suppression motion must be brought before the proceeding in which the information will be used, "unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion").  That provision indicates that affording an opportunity for the aggrieved person to bring a motion after the proceeding is the appropriate and exclusive remedy for

---

[6] At least one court of appeals has suggested that exclusion of evidence, even if it were lawfully obtained, might be an appropriate remedy when the government provides an outright denial that it has conducted surveillance pursuant to Title III or FISA.  *See In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 201 (4th Cir. 2010) (noting that the "proper remedy" for a false denial of electronic surveillance would be "exclusion under Title III or FISA").  However, such a remedy is inapplicable here.  The government did not deny the existence of FISA collection in this case. In fact it has now provided notice of collection under Title I, Title III, and Title VII. The fact that the Title VII-specific notice was not provided until after trial does not justify the automatic exclusion remedy suggested in *T-112*.  *See United States v. Donovan*, 429 U.S. 413, 434 (1977) (failure to comply with statutory notice requirement in Title III did not warrant suppression in the absence of any indication that Congress intended to impose suppression as a sanction for noncompliance); *United States v. Robinson*, 513 F. Supp. 2d 169, 187-88 (M.D. Pa. 2007) (delay in providing Title III notice did not warrant suppression where the government did not "deliberately and advertently" flout the notice requirement and delay was not prejudicial to defendant).

circumstances where the person lacked an "opportunity" to challenge the FAA because he was "not aware of the grounds" of such a challenge.  *See* H. Conf. Rep. No. 95-1720, 95th Cong. 2d Sess., at 31 (1978) (the purpose of FISA's notice requirement is to "allow for the disposition of any motions concerning evidence derived from electronic surveillance.").  Where, as here, the remedy of a post-trial suppression motion is available, defendant is not entitled to discovery of internal government records based on speculation that such discovery might support his argument for other remedies that Congress chose not to provide.

Defendant's reliance on *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013), is misplaced.  (Def. Memo., pp. 12-13.)  In that case, the Ninth Circuit held that the government's failure to disclose the defendant's mother's naturalization certificate, which the court found to be material to the defense, violated the government's discovery obligations, and the court remanded for a determination of whether the government's failure was willful and what the appropriate remedy should be.  *Id.* at 769-70.  The court expressed concern that the government may have "deliberately withheld the naturalization certificate from Hernandez–Meza" in order to induce him into presenting a particular defense theory that the government could then refute with the certificate.  *Id.* at 769.  By contrast, the deficiency in this case – the government's failure to give timely notice of one of the particular types of FISA collection from which evidence used at trial was derived– had no bearing on the fairness or reliability of the trial as a vehicle for adjudicating the defendant's guilt or innocence, because it affected only the defendant's ability to raise a challenge to Title VII as a basis for suppression.  *See Good v. Berghuis*, 729 F.3d 636, 640-41 (6th Cir. 2013) ("Evidence remains just as reliable" even when it is the fruit of an illegal search or seizure); *Brock v. United States*, 573 F.3d 497, 499–501 (7th

**Government's Response to Defendant's Motion for Full Discovery Regarding**          **Page 12**
**Surveillance**

Cir. 2009) (noting that the use at trial of illegally obtained evidence "work[s] no new Fourth Amendment wrong" and does not bear on the fairness or constitutionality of the trial); *see also Hussong v. Warden*, 623 F.2d 1185, 1187-91 (7th Cir. 1980) (holding claim of unlawful surveillance under Title III was not cognizable on collateral review because the alleged Title III errors did not indicate that petitioner was factually innocent or that the evidence was inherently unreliable).  In contrast, *Hernandez-Meza* and other cases involving *Brady* and other criminal discovery provisions potentially implicate the defendant's factual guilt or innocence or the reliability of the evidence against him.  For that reason, courts in the *Brady* context have at times permitted inquiry into the willfulness of government conduct and consideration of a broader range of remedies than they have in cases involving claims of unlawful surveillance.[7]

In addition, the discovery rules at issue in *Hernandez-Meza* expressly authorize the district court to "take such remedial measures as it deems appropriate, including continuing the trial or declaring a mistrial."  720 F.3d at 769 (citing Fed. R. Crim. P. 16(d)(2)).  FISA, on the other hand, does not specifically provide for "remedial measures" for untimely notice, other than permitting a post-trial suppression motion.  *See* 50 U.S.C. § 1806(e).   For these reasons, *Hernandez-Meza* and other *Brady*-related cases do not support defendant's request for discovery

---

[7]  The defense attempts to further buttress his argument by citing language regarding *Brady* violations from the Chief Judge's recent dissent from a denial of rehearing en banc in *United States v. Olsen*, 737 F.3d 625, 630 (9th Cir. 2013).  Notwithstanding its factual inaccuracy, as a dissent, this opinion has no precedential value.

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**          **Page 13**

to explore remedies beyond the suppression proceeding that Congress and this Court's order have provided. [8]

Furthermore, unlike in *Hernandez-Meza* where the court specifically held that the defendant had been prejudiced by the prosecution's failure to provide discovery, the defendant in this case has not made any showing that his opportunity to file a suppression motion has been prejudiced by the post-trial filing of the Supplemental Notification. If this Court finds that the surveillance at issue was lawfully authorized and conducted or otherwise denies the defendant's motion, then any deficiency related to the notice would necessarily be harmless. In these circumstances, defendant's request for discovery related to remedies at this time – before he has established that he was prejudiced by any unlawful surveillance – is, at best, premature.

Finally, most, if not all, of the government records defendant seeks would be protected from disclosure by attorney work product and deliberative process privileges. *See United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir. 2000) (holding that death penalty evaluation form and prosecution memorandum were protected by the deliberative process and work product privileges). Although a defendant alleging government misconduct can overcome the deliberative process privilege based on a sufficient showing of necessity, *see In re Sealed* Case,

---

[8] Even assuming the untimely notice amounted to a due process violation, there is no reason why such a violation would require a remedy beyond providing defendant with the opportunity to litigate his suppression motion now. No further remedy is necessary where the alleged violation was neither intentional, flagrant, or prejudicial. *See, e.g.*, *Davis v. United States*, 131 S. Ct. 2419 (2011); *Herring v. United States*, 555 U.S. 135 (2009); *Hudson v. Michigan*, 547 U.S. 586 (2006); *United States v. Wong*, 431 U.S. 174, 179 n.6 (1977) (questioning whether suppression would be the proper remedy even assuming a due process violation).

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**                    **Page 14**

121 F.3d 729, 737-738 (D.C. Cir. 1997), defendant can make no showing here, in the absence of

any indication of willful misconduct, prejudice to defendant, or relevance of the material to the

merits of defendant's anticipated suppression motion.  Likewise, while defendant correctly

points out that these privileges would not prevent disclosure to a criminal defendant of otherwise

discoverable evidence material to his defense (Def. Memo., pp. 14), defendant cannot show that

the internal government deliberative records he seeks, which have nothing to do with whether he

committed the offense for which he was convicted, are material in the relevant sense.[9]

III.    **There Is No Basis to Order Discovery of Classified Materials Relating to the Authorization or Conduct of the Title VII Collection from which Evidence in this Case was Derived**

Defendant next asks the Court to order immediate disclosure of the classified

certifications, opinions and orders, targeting and minimization procedures, and other materials

that may be submitted by the government to establish the legality of the underlying Title VII

collection at issue, as well as permit a full adversarial hearing thereon during the adjudication of

his motion to suppress.  (Def. Memo., pp. 16.)  Defendant's request should be denied as

---

[9] Defendant's argument that discovery of internal deliberative documents is necessary to "determine the extent to which the products of unlawful activity were improperly before the jury" is similarly meritless.  (Def. Memo., pp. 14-15.)  Such records are irrelevant to the only proper question raised by a defendant's request for suppression of the Title VII-derived evidence – that is, whether the collection of the underlying Title VII information was lawful.  That issue is not before the court at this time and no determination as to the legality of that collection has been made.  Nor would discovery of internal deliberative documents regarding the provision of notice be appropriate even if the court eventually held that the underlying Title VII collection was unlawful.  In such a circumstance, the government would make arguments as necessary to the court as to which evidence in the case would be affected by such a ruling, which the court could evaluate at that time.

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**                                    **Page 15**

premature because there is no basis for the Court at this time to make the findings required under the FISA statute to justify such disclosure.

FISA provides that, where the Attorney General certifies that "disclosure [of FISA materials] or an adversary hearing would harm the national security of the United States," a district court "shall, notwithstanding any other law, . . . review *in camera* and *ex parte* the application, order, and such other materials relating to the surveillance as may be necessary to determine whether the surveillance of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. § 1806(f). This same procedure applies to motions related to Title VII collection, which is deemed to be Title I surveillance for purposes of such motions. 50 U.S.C. § 1881e(a). As the Court is aware, such a certification is filed in conjunction with the government's substantive response to a defendant's motion to suppress FISA evidence.

Once the Attorney General files a declaration, the court "may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance."[10] 50 U.S.C. § 1806(f).

---

[10] Title VII in general provides that upon the issuance of an order by the FISC approving a certification by the Attorney General and the Director of National Intelligence and the use of specified targeting and minimization procedures for an acquisition, the Attorney General and Director of National Intelligence may jointly authorize, for up to one year from the date of the authorization, the targeting of persons reasonably believed to be outside the United States to acquire foreign intelligence information from or with the assistance of an electronic communications service provider as defined in the statute. *See* 50 U.S.C. § 1881a. Thus, in the Title VII context, the analogous "materials relating to the surveillance" could include classified certifications, targeting procedures, minimization procedures, and/or orders relating to the pertinent Title VII collection.

**Government's Response to Defendant's Motion for Full Discovery Regarding**          **Page 16**
**Surveillance**

Accordingly, under the statute, the court may not disclose any portion of the materials covered

by the Attorney General's certification to the defense unless and until the court has first

concluded that it is unable to make an accurate determination of the legality of the collection by

reviewing the government's submissions (and any supplemental materials that the court may

request) *in camera* and *ex parte*.[11]  *United States v. El-Mezain*, 664 F.3d 467, 566 (5th Cir.

2011); *United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010); *United States v. Belfield*,

692 F.2d 141, 147 (D.C. Cir. 1982).  If the district court is able to accurately determine the

legality of the surveillance based on its *in camera*, *ex parte* review of the materials the

government submits, then the FISA statute prohibits disclosure of any of those materials to the

defense, unless otherwise required by due process*.  El-Mezain*, 664 F.3d at 566; *United States v.*

*Duggan*, 743 F.2d 59, 78 (2d Cir. 1984).

    This is the same standard that this Court applied when it resolved defendant's first motion

to suppress evidence obtained or derived from Title I and III FISA collection.  (ECF No. 126.)

---

[11] Courts have consistently held that FISA "anticipates that an *in camera*, *ex parte* determination is to be the rule," and disclosure and an adversary hearing are to be the "exception, occurring only when necessary." *Belfield*, 692 F.2d at 147; *see also El-Mezain*, 664 F.3d at 567 ("[D]isclosure of FISA materials is the exception and *ex parte*, *in camera* determination is the rule.").  Whenever possible, "the court should proceed *in camera* and without disclosure [of national security information] to determine the legality of a surveillance" in order to avoid frustrating the system designed by Congress to protect the "delicate and sensitive [process of] foreign intelligence gathering" to the greatest degree possible "compatible with the assurance that no injustice is to be done to a criminal defendant." *Belfield*, 692 F.2d at 149 (internal quotation marks omitted).  Until recently, no court had ever ordered disclosure of FISA materials to the defense after an *ex parte*, *in camera* review of the government's submissions. *But see*, *United States v. Daoud*, No. 12-cr-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014) (unpublished) (granting motion for disclosure of FISA materials to defense counsel with security clearance).  That decision has been appealed and the district court has stayed its order pending appeal.

Likewise, if this Court is able to determine the legality of the Title VII collection from which certain of the evidence in the case was derived based on its *ex parte*, *in camera* review of the government's submission, then there will be no legal basis to disclose any portion of such submission.[12]  It is premature for this Court to order discovery now, however, before it has had the opportunity to review the government's responsive submission *in camera* and *ex parte* and to decide, based on that review, whether disclosure any portion of the underlying classified materials is necessary to make an accurate determination of the lawfulness of the collection.  *See ACLU Foundation of Southern California v. Barr*, 952 F.2d 457, 469 (D.C. Cir. 1991) (noting in a civil case challenging FISA that plaintiffs "would not be entitled to obtain any of the materials relating to the authorization of the surveillance or the evidence derived from it unless the district court, in an *ex parte*, *in camera* proceeding, first determined that the surveillance was not 'lawfully authorized and conducted.' While this could mean that the ultimate issue in the case would be decided before discovery, that is the necessary consequence of the procedure outlined in [FISA]").

The Court should reject defendant's arguments to the contrary because they contravene the clear statutory standard, and the process set forth in FISA for review of such claims. Defendant contends that discovery of "all targeting and minimization procedures, including interpretive instructions" and other "writings that guided implementation of the procedures," as

---

[12]  Nor would it be appropriate, in such a circumstance, to hold an adversarial hearing with disclosure on defendant's motion:  "The demand for an adversary hearing must fall with the demand for disclosure of the *in camera* Exhibit . . . [When] disclosure is not necessary . . . no purpose would be served by an evidentiary hearing."  *Belfield*, 692 F.2d at 147.

well as "all decisions" of the FISC, will enable the defendant to "effectively formulate [his]

arguments." (Def. Memo., pp.17-21.) However, as noted above, whether the materials might

assist the defendant in persuasively presenting his claims is not the relevant standard. FISA

requires a finding by the Court, after an *ex parte*, *in camera* review, that disclosure "is

necessary" for the Court to "make an accurate determination of the legality of the surveillance."

50 U.S.C. § 1806(f); *c.f. In re Grand Jury Proceedings*, 347 F.3d 197, 203 (7th Cir. 2003)

(suggesting that there could hypothetically be a "one-in-a-million case where disclosure is

necessary," but that otherwise "a review of FISA wiretaps must be conducted *in camera* and *ex

parte*") (quotation marks omitted). That finding cannot be made until after the court has

considered the government's *ex parte* submission of the relevant FAA-related materials. [13]

    Nor do defendant's citations to various authorized and unauthorized public disclosures,

most of which do not involve Title VII, justify ordering the disclosure of materials related to the

Title VII collection at issue at this time. Apart from the fact that these disclosures have virtually

---

[13] Defendant notes that courts have suggested that factors such as "possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of non-foreign intelligence information," indicate that an adversary hearing may be warranted. (Def. Memo., pp. 36-37.) He further contends that the "systematic lack of candor" on the part of the government as reflected in declassified FISC opinions and media reports establishes the presence of those factors. (Def. Memo., pp.30, 37-42.) However, defendant fails to recognize that, to justify disclosure, the court must first find that those factors are present with respect to the collection at issue in a particular case, after *ex parte, in camera* review. *See Ott*, 827 F.2d at 476 (noting that there are "no indications of possible misrepresentation of fact, vague identification of the persons to be surveilled, or surveillance records which include a significant amount of non-foreign intelligence information, or any other factors that would indicate a need for disclosure in this case) (internal quotation marks omitted). Because no such finding has been or could properly be made with respect to the Title VII collection at issue here at this time, defendant's motion for discovery should be rejected.

no relevance to defendant's case, they underscore a more significant fact: the government takes its obligations under FISA and the Constitution seriously and candidly acknowledges and corrects inevitable deficiencies and compliance problems when it discovers them. *See* Comments of the Judiciary on Proposals Regarding the Foreign Intelligence Surveillance Act (Jan. 10, 2014) at 5, 7 (noting that the government generally exhibits a "high degree of candor" in *ex parte* proceedings before the FISC and that the government "routinely discloses in an application information that is detrimental to its case"), available at

www.judiciary.senate.gov/resources/documents/113thCongressDocuments/upload/011413Recor dSub-Grassley.pdf.  To the extent that there are any issues concerning the lawfulness of the Title VII collection at issue, as raised in FISC opinions, those will be addressed in the first instance as part of the government's *ex parte, in camera* submission.  Defendant's speculation cannot overcome the statutory presumption favoring a court's *ex parte* review.[14]

---

[14]  Defendant cites several opinions issued by the FISC to argue that discovery of all FISC decisions that "find problems with the conduct of surveillance under the procedure in effect from 2007 to 2010" and an adversarial proceeding as to the legality of the underlying 702 surveillance are necessary. (*See* Def. Memo.*,* pp. 18 & 41-42.)  To the contrary, none of the opinions cited by defendant has any bearing on the issues surrounding the use of information derived from the acquisition of foreign intelligence information conducted pursuant to Section 1881a in this case.  Only one FISC opinion cited by defendant relates in any way to the acquisition of foreign intelligence information pursuant to Title VII.  *See [Caption Redacted]*, 2011 WL 10945618 (Foreign Intel. Surv. Ct. Oct. 3, 2011) (Def. Memo., pp.38-39 & 40). Defendant's reliance on that opinion, however, is misplaced.  (Def. Memo., pp. 38-40.)  That opinion does not alter Section 1806's requirement that the district court first conduct an *ex parte, in camera* review of the government's submissions and only order disclosure if necessary to determine the legality of the Title VII collection at issue.  Moreover, the concerns expressed in that opinion applied to only one particular collection technique under Title VII, not to Title VII collection as a whole, which the FISC approved as lawful.  *See id.* at *14, 28.  Thus, if that technique is not at issue in this case, then the FISC opinion supports the proposition that Title VII collection is constitutional.

**Government's Response to Defendant's Motion for Full Discovery Regarding**          **Page 20**
**Surveillance**

As with defendant's invocation of general allegations of government wrongdoing, defendant's reliance on the general advantages of the adversary system does nothing to establish a basis for this Court to find at this time that it cannot resolve the legality of the specific collection at issue in an *ex parte* and *in camera* proceeding. If a defendant could obtain disclosure by pointing to the general benefits of adversarial proceedings, then such proceedings would be the norm and there would be no basis for *ex parte*, *in camera* review in any case.[15] *Belfield*, 692 F.2d at 147 (rejecting an argument implying that disclosure and adversary proceedings would be necessary "in every case," because such an "absolutist view" could not be correct in light of clear congressional intent favoring *in camera*, *ex parte* process). However, as FISA and the case law make clear, "disclosure of FISA materials is the exception and *ex parte*, *in camera* determination is the rule." *United States v. Abu-Jihaad*, 630 F.3d 102, 129 (2d Cir. 2010); *In re Grand Jury Proceedings*, 347 F.3d at 203.

Finally, defendant repeats an argument that this Court has previously rejected: that the Supreme Court's decision in *Alderman* mandates disclosure to the defense of classified information for discovery purposes despite the contrary and plain language of the governing statute, 50 U.S.C. § 1806(f). As discussed below, the Ninth Circuit has also already rejected the defendant's expansive reading of *Alderman*.

---

[15] Defendant's argument that he is entitled to a *Franks* hearing suffers from the same weakness. A defendant cannot establish entitlement to a *Franks* hearing based on evidence of misrepresentations in some other case. If that were true, every defendant would be entitled to a *Franks* hearing simply by pointing to alleged misrepresentations in a different case.

**Government's Response to Defendant's Motion for Full Discovery Regarding    Page 21
Surveillance**

The government provided notice pursuant to 50 U.S.C. § 1806(c), which is the more specific notice provision that applies in this case.  No court has held that when the government must provide notice under Section 1806(c), this obligation triggers an additional notice requirement under 18 U.S.C. § 3504 (a separate statute that typically is applied in other contexts) or that the disclosure of FISA materials must be provided outside of FISA's statutory scheme.[16] A specific statutory provision normally controls over one of more general application.[17]  *Bloate v. United States*, 130 S. Ct. 1345, 1353-54 (2010); *Gozlon-Perez v. United States*, 498 U.S. 395, 407 (1991).  Within Section 1806, Congress specified the circumstances under which a district court may disclose information that forms the basis for the government's notice.  After an *in camera* and *ex parte* review, "the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials

---

[16]  Defendant implies that a Fourth Circuit judge, in a dissenting opinion, would hold that Section 3504 governs disclosure of FISA-authorized surveillance.  (Def. Memo., p.27, citing *In re Grand Jury Subpoena*, 597 F.3d 189 (4th Cir. 2010)).  The issue before the Fourth Circuit initially was whether a claimed FISA notice violation was even cognizable when challenging a grand jury subpoena; the court held that it was not.  In reaching this conclusion, the court described (without expressly holding) 18 U.S.C. § 3504 as a statute applicable only to Title III surveillance.  *Id.* at 200.  Judge Traxler dissented from the majority's conclusion that the government had met its obligations under Section 3504 to provide notice relative to any potential Title III violations; he would have concluded that the government's answer was inadequate because it should have specified whether the client was subjected to electronic surveillance "in violation" of Title III.  *Id.* at 209.  Judge Traxler expressly declined to consider whether Section 3504 applied to FISA collection at all.  *Id.* at 209, nn.8–9, 211.

[17]  Moreover, FISA's Section 1806 was enacted in 1978, approximately seven years after Section 3504 was adopted in 1970.  *See* Pub. L. 91-452, Title VII, § 702(a), Oct. 15, 1970.  "Where two statutes conflict, the later-enacted, more specific provision generally governs." *United States v. Juvenile Male*, 670 F.3d 999, 1008 (9th Cir.), *cert. denied*, 133 S. Ct. 234 (2012).  Thus, there is no basis for holding that Section 3504 trumps FISA's "later-enacted, more specific" notice provision.

**Government's Response to Defendant's Motion for Full Discovery Regarding**      **Page 22**
**Surveillance**

relating to the surveillance *only* where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. § 1806(f) (emphasis added). Thus, it is the specific disclosure provision of Section 1806(f) that controls if, when, and whether this Court may disclose any materials relating to surveillance to the defense.[18]

Defendant's argument for additional discovery in light of the government's supplemental Section 1806(c) notice rests on the premise that *Alderman v. United States*, 394 U.S. 165 (1969), constitutionally mandates disclosure to the defense. This premise is faulty. The Ninth Circuit has recognized that whether disclosure to the defense of materials related to allegedly illegal intercepts is necessary is a matter within the trial court's sound discretion. *United States v. Bissell*, 634 F.2d 1228, 1232-33 (9th Cir. 1981). "While the Court in *Alderman* emphasized the importance of full disclosure and adversary proceedings nothing in *Alderman* requires an adversary proceeding and full disclosure for resolution of every issue raised by an electronic surveillance." *Id.* (citations omitted), *citing Taglianetti v. United States*, 394 U.S. 316, 317 (1969). Thus, the Ninth Circuit has specifically rejected the argument advanced by the defense that *Alderman* should be read to mean that the defense is entitled to additional discovery whenever the government provides notice that it has relied either directly or derivatively on the products of electronic surveillance. *See also Damrah*, 412 F.3d at 624 (concluding that *Alderman* did not support disclosure of FISA materials or an adversary hearing because in that

---

[18]    Even though Section 3504 does not apply to FISA collection, a remedy for untimely notice exists under FISA: the defendant will be given the opportunity to challenge evidence obtained or derived from FISA collection in a suppression hearing governed by the procedures set forth in FISA. Defendant has such an opportunity here with his motion that is due on April 4, 2014.

**Government's Response to Defendant's Motion for Full Discovery Regarding    Page 23
Surveillance**

case "the prosecution planned to use evidence from surveillance that had already been deemed unlawful"). The controlling principle is that set forth in the statute, 50 U.S.C. § 1806(f).[19]

## IV.    Defendant is Not Entitled to Discovery of the Use of Other "Surveillance Activities" Not at Issue in this Case

In his motion, defendant, again, seeks disclosure of "all surveillance activities" related to his case. (Def. Memo., p. 16.)  His requests for information reflect conjecture about "surveillance activities" ranging from the collection of internet and telephone metadata to installation of malware and remote activation of a laptop camera, and from surveillance of conversations by individuals playing video games to surveillance to determine the use of pornography.  (Def. Memo., pp. 20-25.)  Defendant's motion in fact raises no new unresolved issues that support his request that the Court order the production of additional discovery.

The alleged activities to which defendant cites are unrelated to the Supplemental Notification and have nothing to do with the ongoing litigation in defendant's case.  To the extent that defendant argues that discovery should be ordered because various authorized and unauthorized disclosures of information related to government surveillance pursuant to FISA have reduced the government's interest in protecting sensitive classified information related to such surveillance, (Def. Memo., p. 31), his claim is without merit.  It is simply not the case that,

---

[19]  A district court order requiring the disclosure of FISA materials is a final order for purposes of appeal. *See 50* U.S.C. § 1806(h). In the unlikely event that the Court concludes that disclosure of the classified FAA-related information that defendant requests may be required, given the significant national security consequences that would result from such disclosure, the government would expect to pursue an appeal. Accordingly, the government respectfully requests that the Court indicate its intent to do so before issuing any order, or that any such order be issued in such a manner that the United States has sufficient notice to file an appeal prior to any actual disclosure.

**Government's Response to Defendant's Motion for Full Discovery Regarding**     **Page 24**
**Surveillance**

because some classified information has been disclosed, the government could have no valid interest in protecting from disclosure other related classified information, as well as classified information that was disclosed without authorization and not officially confirmed.  Moreover, as the courts have consistently held, the government has a substantial interest in protecting intelligence information from disclosure.  *See C.I.A. v. Sims*, 471 U.S. 159, 175 (1985) ("If potentially valuable intelligence sources come to think that the Agency will be unable to maintain the confidentiality of its relationship to them, many could well refuse to supply information to the Agency in the first place."); *see also El-Mezain*, 664 F.3d at 567-68 (recognizing the government's "substantial interest in maintaining the secrecy of the [FISA] materials," and that this interest "extends not only to the contents of the materials but also to the appearance of confidentiality in the operation of the intelligence services").  In addition, courts, including the Ninth Circuit, have consistently rejected the argument that the government's interest in protecting against disclosure of FISA materials, or other classified information, is diminished where defense counsel have security clearances.  *Ott*, 827 F.2d at 477 ("Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to anyone not involved in the surveillance operation in question, whether or not she happens for unrelated reasons to enjoy security clearance."); *see also El-Mezain*, 664 F.3d at 568.[20]

---

[20]  *But see* Mem. Op. and Order dated 1/29/14, *Daoud*, No. 12-cr-723 (N.D. Ill.) (granting motion for disclosure of FISA materials to defense counsel with security clearance).  That decision has been appealed and the district court has stayed its order pending appeal.

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**　　　　　　　**Page 25**

**V.    Defendant is Not Entitled to Any Additional Discovery in This Case.**

As explained earlier, the Supplemental Notification did not signal that any new evidence exists in this case.  Thus, the government's discovery obligations, to which it has consistently adhered, have not changed since the government filed its Supplemental Notification:  discovery in criminal cases generally is controlled by Rule 16 of the Federal Rules of Criminal Procedure, the Jencks Act (18 U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided thereunder.   The law does not permit discovery based on defense speculation.  *See United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) ("[M]ere speculation about materials in the government's files [does not require] the district court . . . under *Brady* to make the materials available for [defendant's] inspection.)  (citation omitted).  Because the evidence referenced in the Supplemental Notice is a subset of the same evidence that has already been addressed throughout this case, defendant's remaining arguments are speculative and without merit.  They should be rejected.[21]

---

[21]    Defendant claims that his argument for additional discovery is supported by "several pleadings" that he filed *ex parte* and that demonstrated that the government was in possession of "evidence" that it had failed to produce.  (Def. Memo., p.47.)  The government has not seen these pleadings so it cannot respond substantively to their allegations; however, the government stands by its representations to the Court that it has complied with the rules of discovery. Defendant further argues that his requests for additional discovery are supported by the "troubling limitations" the government placed on its representations to the Court in a public hearing, specifically that its comments related only to "unclassified material."  (Def. Memo., p.48).  These representations were entirely appropriate:  the government was complying with CIPA, which provides a set of procedures for the handling of classified information in criminal cases.  Moreover, the government cannot make specific public representations regarding classified material.

A.    <u>The Government has Consistently Complied with the Rules Governing Discovery and this Court's Discovery Orders.</u>

The government has applied the rules of discovery broadly throughout defendant's case. Defendant, however, claims that the government has consistently viewed its obligations narrowly.  (Def. Memo., p.46).  Defendant claims that the government's "insistence" that the post-trial *Brady* standard—requiring a showing of "materiality"—be applied pre-trial illustrates its inability to comply with the rules of discovery.  (Def. Memo., p.55).  This inaccurately characterizes the government's position.  While the government did argue that the pre- and post-trial *Brady* standard is materiality, it embraced and adhered to the broader "favorability" standard adopted by the Court as a "reasonable aspirational standard" and stated that it provided to the defense information that is "favorable" and beyond what is required by law.  (ECF No. 109, p.9, lines 5-16; 18-19).

Notwithstanding this effort, defendant has made a number of unsubstantiated allegations regarding the government's failure to comply with these rules and its general ethical obligations. In this pleading alone, defendant alleges that the government intentionally misled the Court (Def. Memo., pp.1, 14, 15, 28, 37, 48); intentionally withheld evidence (Def. Memo., pp.2, 15); engaged in "over-reaching" (Def. Memo., pp.1, 3); misrepresented its position (Def. Memo., pp.10, 30, 41); engaged in illegal activity (Def. Memo., p.14); and, failed to meets its general legal obligations (Def. Memo., pp.14, 48, 53).   Defendant has made similar claims in the three years since his arraignment.  The Court has ruled on defendant's numerous motions and, early in the case, explicitly rejected defendant's repeated claims that the government has provided only

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**                    **Page 27**

the "minimum" under Rule 16 and no *Brady* material. (ECF No. 58, p.28).  For the reasons stated

above and below, these allegations lack merit and should be rejected.

     B.     <u>Government Actors Did Not Fail to Communicate Discoverable Material to</u>
               <u>Local Prosecutors</u>

     Defendant argues that unnamed government actors failed to communicate discoverable

material to local prosecutors.[22]  (Def. Memo., p.49).  This allegation arises from pre-trial

testimony about the contents of defendant's computer.  Defendant's claim is inaccurate.

Defendant argues that government's Exhibit 1—a copy of files taken from defendant's

computer—did not contain all of the files on the computer from which the files originated.  (Def.

Memo., p.49).  This discrepancy was identified by defendant's expert and explained by FBI

Special Agent Dwyer.  Defendant claims, however, that this discrepancy proves that the

government "improperly relied on assertions that had apparently been made by a third party."

(Def. Memo., p.49).

     The record does not support this claim.  First, even if the Court accepts defendant's

recitation of the facts, this is not a discovery issue—the defense *had* the imaged drive that they

claim contained files the government failed to include in Exhibit 1. (ECF No. 159, pp.15-18).

Second, the reason for the discrepancy—as Agent Dwyer explained in his testimony on June 26,

---

[22]  Defendant also suggests that the Supplemental Notification illustrates that the
government failed to adequately inquire of relevant investigative agencies regarding discovery.
(Def. Memo., p.48).  This issue has already been addressed in the pre-trial discovery litigation.
Defendant's only new argument is that the Supplemental Notification, on its face, demonstrates
that "the government engaged in investigation and gathered evidence . . . that was not disclosed
to the defense." (Def. Memo., p.48).  Again, the government has already complied with its
discovery obligations – the Supplemental Notification does not change this fact.

2012—was that the individual employed by the United States Attorney's Office responsible for producing the government's discovery accidentally printed only a portion of the images that were contained in Exhibit 1, instead of the entire set of files.  (ECF No. 131, pp.51-53).  This individual is the "third party" or "government actor" defendant identified in his motion.  These facts clearly do not support defendant's claim that the government was not getting discovery from "government actors."

Defendant also complains about the "late" production of FBI emails.  The emails described by defendant are not investigative reports or documents generated during the course of the criminal investigation. They are email communications between agents about the case.[23]  The production of this material was not "late."  While the material was produced later than other material produced during the discovery phase of the case because it arose from a Jencks review of internal agency emails, it was not late as that term is understood by the Ninth Circuit or the plain language of the Jencks Act (which states that material should be disclosed after the witness testifies).  Finally, there is no evidence that that process is indicative of a failure to provide material to prosecutors from the FBI.

/////

---

[23]  Defendant suggests that these emails constituted "important evidence" that was known to the agents and left out of the case file.  (Def. Memo., p.50).  The case file consists of investigative material.  These emails were not investigative material of the type that would ever be stored in a case file. Nor were they evidence gathered in the investigation. They were internal communications.

**Government's Response to Defendant's Motion for Full Discovery Regarding**    **Page 29**
**Surveillance**

C.    <u>The Government is Not Obligated to Disclose the Origin of the Criminal Investigation Outside the Rules of Discovery</u>

Defendant makes the troubling allegation that the government "actively impeded defense efforts to learn the truth about the origins of the investigation." (Def. Memo., p.50). This allegation is untrue, and defendant's recitation of the facts is incorrect. Defendant's arguments are based on the juxtaposition of pre-trial testimony and trial testimony, as well as the creative use of deductive reasoning. He claims that the government created the impression that "all the information on which the government was relying had been obtained on or after August 31, 2009." (Def. Memo., p.51). What defendant fails to acknowledge is that the emails between him and Samir Khan began in February 2009, and that this fact was relied upon in the government's recitation of facts in the pre-trial hearings as well as at trial. Defendant further claims that government objections about the origin of the investigation somehow support this argument. (Def. Memo., p.51). These objections were timely made and, as the Court is aware, arise out of the government's legal obligations to protect classified information.

Even if defendant's allegation were accurate, it is irrelevant: the government is obligated to provide defendant discovery; it is not obligated to present to him an agreed-upon narrative about the origin of the criminal investigation in his case. Quite simply, there is no rule of discovery that requires the government to provide defendant with a clear, concise narrative regarding the origins of the criminal investigation that led to his arrest. Rather, the rules require the government to provide the defense with all discoverable material. The government has done so, and the defense may then argue the inferences that it believes are warranted from those facts. (ECF No. 420).

**Government's Response to Defendant's Motion for Full Discovery Regarding Surveillance**    **Page 30**

Defendant also attempts to bootstrap this argument to another issue that was resolved by this Court–the protection of the true identities of the undercover agents.  (CR ruling).  Defendant claims that at trial "the Court and defense made decisions with inadequate and faulty information" (Def. Memo., p.52) and that the "the non-disclosed indicia of governmental unreliability may have affected the discretionary decisions of the Court."  (Def. Memo., p.53). This is also inaccurate.  There is no evidence that the Court did not receive information either in Court or *ex parte* in relation to any pending motion—it is pure speculation by defendant.  Again, the only new information is the Supplemental Notification that has been provided to defendant. There is no new evidence, only an additional source from which certain evidence was derived. To that end, his arguments should be rejected.

## VI.    Conclusion

For the reasons stated above the defendant's motion to compel and all associated arguments should be denied and rejected, and his request for additional discovery likewise should be denied.

Dated this 13th day of February 2014.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

 *s/ Ethan D. Knight*
ETHAN D. KNIGHT, OSB #99298
PAMALA R. HOLSINGER, OSB #89263
Assistant United States Attorneys
JOLIE F. ZIMMERMAN, DCB #465110
Trial Attorney, Counterterrorism Section
National Security Division
(503) 727-1000

**Government's Response to Defendant's Motion for Full Discovery Regarding    Page 31 Surveillance**