Stephen R. Sady
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
**Lisa Hay**
**Assistant Federal Public Defender**
lisa_hay@fd.org
**101 S.W. Main Street, Suite 1700**
**Portland, Oregon  97204**
**503-326-2123 Telephone**
**503-326-5524 Facsimile**

**Attorneys for Defendant**


# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION


| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **Case No. 3:10-cr-00475-KI** |
| **Plaintiff,** | **REPLY TO GOVERNMENT'S** |
| | **RESPONSE TO MOTION FOR FULL** |
| **v.** | **DISCOVERY REGARDING THE** |
| | **FACTS AND CIRCUMSTANCES** |
| **MOHAMED OSMAN MOHAMUD,** | **UNDERLYING SURVEILLANCE** |
| **Defendant.** | |

# TABLE OF CONTENTS

Page

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A.    In Order For The Defense To Present To The Court The Grounds For Remedial Action, And For The Court To Formulate Its Ruling, The Substantive Motions Need To Be Based On Discovery Of The Underlying Non-Classified And Classified Material Related To The Government's Failure To File The Required Pretrial Notice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    1.    The Government's Vague Claims Regarding The Failure To Provide Pretrial FAA Notice Are Conclusory, Contradictory, And Inconsistent With Reported Statements. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    2.    The Government's Injection Of Prosecutorial Misconduct And Bad Faith As The Relevant Standards For Discovery Is Inconsistent With The Defense Motion And Puts The Cart Before The Horse. . . . . . . . . . . . . . . . . . . . . . . . . 6

    3.    The Court Should Order Broad Discovery To Provide The Answers To Predicate Questions Necessary To The Formulation Of The Motions The Court Must Eventually Decide Based On Facts, Not Conclusory And Unsupported Assertions. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

    4.    The Court Should Presume From The Statutory Violation That The Government Acted Knowingly And Deliberately, Which Is Not Rebutted By The Briefing Of Trial Lawyers Who Provide No Information Under Oath, Under Penalty Of Perjury, Based On Actual Knowledge. . . . . . . . . . . . . . . . . 13

    5.    The Public Interest Favors Full Discovery Given The Government's Extrajudicial Use Of Its Vague, Conclusory, And Inconsistent Brief. . . . . . . . . 15

B.    The Government Has Not Denied The Derivative Use Of Material Gathered Through Collection Of Telephone And Internet Metadata, So The Court Should Order The Production Of Discovery Regarding Such Surveillance Or Sworn Statements Denying Its Existence. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

C.    The Court Should Order Security-Cleared Defense Counsel To Participate In Discovery And Full Adversarial Litigation Regarding The Notice And Electronic Surveillance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

D.    The Failure To Make The Required Statutory Disclosure Implicates Other Aspects Of Discovery And Trial Requiring Full Production Of Material Previously Withheld . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

E.    The Government's Account Of Its History Of Compliance Is Inaccurate And, At Times, Misconstrues The Purpose Of Citations In The Defense Motion. . . . . . . . . . . . 25

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Al-Haramain Islamic Foundation, Inc. v. Bush,*
    507 F.3d 1190 (9th Cir. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   23

*Alderman v. United States,*
    394 U.S. 165 (1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20, 21

*Berger v. United States,*
    295 U.S. 78 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Boyce Motor Lines, Inc. v. United States,*
    342 U.S. 337 (1952). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Clapper v. Amnesty International USA,*
    133 S. Ct. 1138 (2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

*Coolidge v. New Hampshire,*
    403 U.S. 443 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Davis v. United States,*
    131 S. Ct. 2419 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8

*Dolan v. U.S. Postal Serv.,*
    546 U.S. 481 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Frank v. Delaware,*
    438 U.S. 154 (1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   24

*Gates v. Illinois,*
    462 U.S. 213 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

*In re Grand Jury Subpoena (T-112),*
    597 F.3d 189 (4th Cir. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    9

*Griffin v. Oceanic Contractors, Inc.,*
    458 U.S. 564 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   13

*Hamling v. United States,*
    418 U.S. 87 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14

*Islamic Shura Council of S. Cal. v. FBI,*
    779 F. Supp. 2d 1114 (C.D. Cal. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  28

*McDonnell Douglas Corp. v. Green,*
    411 U.S. 792 (1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*Silverthorne Lumber Co. v. United States,*
    251 U.S. 385 (1920). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*Trinidad y Garcia v. Thomas,*
    683 F.3d 952 (9th Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*United States v. Armstrong,*
    517 U.S. 456 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7, 8

*United States v. Chapman,*
    524 F.3d 1073 (9th Cir. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*United States v. Davis,*
    244 F.3d 666 (8th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*United States v. Giordano,*
    416 U.S. 505 (1974). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

*United States v. Hernandez-Meza,*
    720 F.3d 760 (9th Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 15

*United States v. International Minerals & Chemical Corp.,*
    402 U.S. 558 (1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

*United States v. Lewis,*
    511 F.2d 798 (D.C. Cir. 1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*United States v. Petri,*
    731 F.3d 833 (9th Cir.2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*United States v. Wicker,*
    848 F.2d 1059 (10th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*United States v. Wilkerson,*
    208 F.3d 794 (9th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Wong Sun v. United States*,
  371 U.S. 471 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

## STATE CASES

*Mathis v. State*,
  112 N.M. 744, 819 P.2d 1302 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

*State v. Fuentes*,
  No. 88422-6, 2014 WL 465563 (Wash. Feb. 6, 2014). . . . . . . . . . . . . . . . . . . . . . . .  12

## FEDERAL STATUTES

18 U.S.C. § 3504. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10

50 U.S.C. § 1806(c). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 15

50 U.S.C. § 1806(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

50 U.S.C. § 1881a. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 3

**Introduction**

The government's response fails to appreciate the seriousness and breadth of the issues raised by its violation of the pretrial notice statute. On the first page of its response, the government asserts that this Court's original decision on the defense FISA motion was based on a "review of the relevant material." Resp. 1 n.1. But that's not accurate. The government's supplemental notice effectively admits that the Court should have received before trial the FISA Amendment Act (FAA) evidence that still has not been produced to the Court. The incomplete pretrial notice resulted in incomplete production to the Court of the material relevant to ruling on the pretrial motions to suppress. Throughout its response, the government evades the issues of great magnitude raised by its conduct by attempting to redefine the scope of yet-to-be-filed motions, while at the same time seeking to avoid providing the non-classified and classified material necessary for the defense to assess the scope and bases for substantive motions. The government asks the Court to deny discovery based on vague, conclusory, and contradictory statements unsupported by any factual rebuttal of the powerful prima facie case that the government intentionally withheld from the Court and the defense the use of FAA-derived evidence. This Court correctly bifurcated the post-trial motions – discovery first, then substantive motions – so the litigants would have a common basis in fact for the important issues the Court must now resolve. The Court should reject the government's crimped view of its failure to comply with the law, follow the outline of discovery issues in the defense memorandum – much of which is not disputed – and order the requested discovery.

**A.    In Order For The Defense To Present To The Court The Grounds For Remedial Action, And For The Court To Formulate Its Ruling, The Substantive Motions Need To Be Based On Discovery Of The Underlying Non-Classified And Classified Material Related To The Government's Failure To File The Required Pretrial Notice.**

In order to formulate the scope and bases for defense substantive motions for sanctions, suppression, and new trial related to the lack of pretrial notice, the defense moved, among other things, for disclosure of the following:

- Material documenting the government's failure to provide pretrial notice of surveillance pursuant to 50 U.S.C. § 1881a, including, but not limited to, all communications manifesting any policy of non-disclosure and all communications underlying the decision to provide no notice and the decision to provide the supplemental notice.  This material should at least answer the following questions:

  - Who had knowledge that § 1881a surveillance was implicated in this case and when was such knowledge gained;

  - Who was involved in any decision not to provide pretrial notice of § 1881a surveillance and when was such a decision made;

  - What justification, if any, was relied upon in any decision not to provide pretrial notice of § 1881a surveillance and what led to the filing of the supplemental notice;

  - What, if any, notice was this Court given about § 1881a surveillance relative to Mohamed (or other persons relevant to this case) prior to trial.

In telling the Court that no discovery should be provided addressing any of these questions, the government relies on vague, conclusory, and contradictory statements, unsupported by any affidavits or declarations, that are inconsistent with reported statements to the press apparently from individuals within the Department of Justice (DOJ).  The Court should reject these attempts to avoid accountability for a serious violation of the statutory notice requirement, the Rule 16 obligation to

provide documents "material to preparing the defense," and the constitutional *Brady* obligation to provide material favorable to the defense.

1.     *The Government's Vague Claims Regarding The Failure To Provide Pretrial FAA Notice Are Conclusory, Contradictory, And Inconsistent With Reported Statements.*

The core of the government's claim regarding its failure to provide statutorily required notice is that "the Department" had never thought of warrantless FAA surveillance under Title VII leading to Title I and Title III surveillance: "Prior to recent months, however, the Department *had not considered* the particular question of whether and under what circumstances information obtained through electronic surveillance under Title I or physical search under Title III could also be derived from prior collection under Title VII." Resp. at 7 (emphasis added).[1]  The government's claim that it was unaware that the "fruit of the poisonous tree" doctrine applied to warrantless Title VII surveillance strains credulity. *See United States v. Giordano*, 416 U.S. 505, 533 (1974) (suppressing later electronic surveillance derived from earlier illegal wiretapping); *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (requiring suppression of evidence "come at by the exploitation" of a primary illegality); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920) (insulation of the government's use of knowledge gained from an unlawful search would reduce the Fourth Amendment to a mere "form of words."). But in this specific case, the defense placed the government on notice of this precise issue, both by citing to § 1881a and by asserting concern that earlier warrantless surveillance led to the FISA surveillance.  CR 489 at 45-46.

---

[1] Curiously, the government injects a new label of "the Department" at this stage of the brief, instead of "the government," as was used in most of the brief and throughout this case.  The Court should reject any attempt to artificially separate government agencies, especially given that they all work in tandem on national security issues and, in fact, are all part of the definition of "intelligence community" under FISA.  50 U.S.C. § 1885(7).

**PAGE 3      REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

The government's artful drafting regarding the Title VII surveillance avoids giving the Court and the defense (and the public) the true facts of the case. After stating that "the Department" had not considered the question of derivative use of Title VII surveillance, and deriding reference to a "secret policy" on such surveillance, the government asserts that the prosecutors "acted in accordance with the Department's then-current standard practice" that only Title I and III notice need be given. Resp. at 8. Is the government asserting that there is a meaningful difference between a non-public "standard practice" and a "secret policy"? Does this mean the prosecutors were aware of the Title VII surveillance but made an intentional decision not to provide notice under the "standard practice"? Or did the NSA or other intelligence agency fail to provide Title VII information to prosecutors in accordance with the agency's internal policy and practice? And how does the government not have pretrial notice that Title I and III surveillance "could also be considered to be derived from prior collection under Title VII" when the defense FISA motion explicitly referenced warrantless surveillance leading to FISA warrants? Even if the government did not independently consider the derivative use of FAA surveillance to generate FISA warrants, the defense explicitly put the question into the case.

The government's claim of a "standard practice" is inconsistent with its claim that the question being "not considered." A standard practice cannot be formulated without considering the question at issue. The government provides no response to the public reports that contradict its denial it ever "considered" whether the fruit of the poisonous tree doctrine applies to Title VII. Media reports assert that there was indeed a governmental policy of non-disclosure regarding FAA surveillance that led to FISA warrants. CR 489 at 9-10. Whether the policy of non-disclosure

extended to the Court is not explicitly addressed.[2]  The prima facie case that the media reports are true comes from both the statements attributed to "several Obama administration officials familiar with the deliberations" and the chronology of public events that led to the post-trial notice.

The government appears to deny that the post-trial notice resulted from the fallout after *Clapper v. Amnesty Int'l USA*, 133 S.Ct. 1138 (2013), affirmatively asserting that the "case has no bearing here."  Resp. at 8 n.4.  But in discussing *Clapper*, the government states that its "previous and current understanding" is that the statute requires notice of the intent "to use or disclose information that was derived from Title VII collection as well as information that was obtained from Title VII collection."  *Id*.  This statement contradicts the assertion that the fruit of the poisonous tree doctrine and Title VII were not "considered" (Resp. at 7) and the claim that the prosecution acted "in accordance with the Department's then-current standard practice" (Resp. at 8).

The government's confusing, contradictory, and inconsistent positions demonstrate why discovery and review of the actual facts is appropriate.  There are non-classified and classified materials that answer the questions that discovery should answer.  If there is a claim of privilege or classification for some material, procedures are available for the Court to access the material and allow its production to the defense under appropriate protective orders or under the safeguards set

---

[2] Because the government's response to the pretrial FISA motion was heavily redacted, the defense had no way of knowing if the Title VII issue was addressed in ex parte and in camera filings. The government's response to the post-trial discovery motion appears to concede for the first time that the government withheld the FAA notice from the Court as well as the defense.  Resp. at 3-4, 15-18.  Before trial, in the unclassified context, the government asserted that, other than the non-FISA computer search, "the defense is aware of all the court-authorized search and surveillance that occurred in this case," then added, "if the question is information about warrantless searches or surveillance, again, they have everything."  CR 58 at 63-64.  The requested discovery should disclose whether the Court received similar assurances in the classified context.

**PAGE 5    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

out in the Classified Information Procedures Act. Just as the Supreme Court has long rejected reliance on "conclusory" statements, even with an affidavit, to support probable cause determinations,[3] the Court should insist on the underlying facts in the form of documents demonstrating who knew what when. CR 489 at 13 ("The Court should not accept selective or summary accounts of the underlying facts: the primary sources and the inferences to be drawn from them should be subject to full adversary proceedings, whether or not the proceedings are sealed."). Rather than accepting conclusory assertions, the Court should rely on sworn affidavits and primary source documents providing complete and detailed accounts of the circumstances surrounding the statutory and constitutional violations. To the extent material is controverted, the Court should resolve factual disputes with testimony subject to cross-examination and full discovery of the relevant underlying information.

2.    *The Government's Injection Of Prosecutorial Misconduct And Bad Faith As The Relevant Standards For Discovery Is Inconsistent With The Defense Motion And Puts The Cart Before The Horse.*

The government seeks to bootstrap its discovery response by claiming that the discovery motion asserts "prosecutorial misconduct" and, therefore, the Court should apply the restrictive discovery standard for selective prosecution claims based on the equal protection clause. Resp. 9 n.5. The discovery motion never used the term "prosecutorial misconduct." Instead, the motion pointed out the critical importance of knowing who did what when and why in order to determine the potential bases for substantive motions. CR 489 at 10-16. This litigation implicates the

---

[3] *See Gates v. Illinois*, 462 U.S. 213, 239 (1983) ("a mere conclusory statement" without sufficient underlying facts for the judge to make an independent determination is insufficient to establish probable cause) (citing *Nathanson v. United States*, 290 U.S. 41 (1933)).

**PAGE 6    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

fundamental rule of law regarding the disclosure of governmental conduct and its evaluation by the independent judiciary through adversary proceedings.  As President Obama stated,

> Given the unique power of the state, it is not enough for leaders to say: Trust us, we won't abuse the data we collect.  *Our system of government is built on the premise that our liberty cannot depend on the good intentions of those in power; it depends on the law to constrain those in power.*

The White House, *Remarks by the President on Review of Signals Intelligence*, Jan. 17, 2014 (emphasis added).[4]  Our liberties cannot be safeguarded if the independent judiciary – the only effective check on executive power in the context of the individual – depends on conclusory claims of good intentions to foreclose the disclosure of information necessary to assert individual rights.

First, the government is putting the cart before the horse: the defense asserts the sequence of events and the reported facts are troubling, but requests discovery "in order to allow the arguments to be based on facts rather than speculation."  CR 489 at 1.  Once the facts are known, the defense can formulate its arguments on the substantive motions, including what inferences should be drawn from the evidence.  The government's attempt to conflate the discovery motion and the substantive issues should be rejected.  First discovery of facts, then motions based on the evidence produced.

Second, the government's reliance on selective prosecution law in *United States v. Armstrong*, 517 U.S. 456 (1996), is misplaced because that case deals with prosecutorial discretion, not a prosecutorial obligation.  In *Armstrong*, the defense asserted that the prosecution was racially motivated and that the defendant should receive discovery regarding charging practices in support of a claim of selective prosecution.  The Court relied strictly on cases involving the wide berth given

_____

[4] Available at http://www.whitehouse.gov/the-press-office/2014/01/17/remarks-president-review-signals-intelligence

to prosecutorial decisions regarding charging and disposition, requiring a showing of "clear evidence" that an improper ground for the prosecutorial decision existed. In contrast, this case involves a statutory (and constitutional) duty of the prosecution to both the Court and the defense. There is no discretion at issue: the statute is mandatory, and the government concedes the Title VII surveillance triggered the mandatory notice provision. Unlike *Armstrong*, no separation of powers requires deference to the executive branch. To the contrary, the separation of powers interests require judicial action to address the executive branch's failure to follow the legislative directive, which impaired the judicial prerogatives in deciding the pretrial motion based on the full facts. While *Armstrong* is irrelevant, the Court should be guided by the well-developed precedent in the Ninth Circuit requiring a full inquiry where the government fails to abide by its discovery obligations, whether those obligations have their roots in statute, the Constitution, or – as in this case – both. CR 489 at 12-14.

    3.    *The Court Should Order Broad Discovery To Provide The Answers To Predicate Questions Necessary To The Formulation Of The Motions The Court Must Eventually Decide Based On Facts, Not Conclusory And Unsupported Assertions.*

The government claims that, because there is no remedy other than a motion to suppress, no discovery should be ordered. Resp. 9-15. The government conflates two distinct harms in failing to recognize that the Court needs full information to decide independently the interrelated issues arising from the violation of the notice statute and those arising from the unlawful use of warrantless FAA electronic surveillance.

The government relies on *Davis v. United States*, 131 S.Ct. 2419 (2011), to claim suppression is a "harsh sanction." Resp. at 10. But context matters. The police in *Davis* violated no statutory rules precedent to a motion to suppress. And the police conduct in *Davis*, at the time it occurred,

was lawful under governing Supreme Court authority. Only in the context of a change in the Supreme Court's view did the search become unlawful. Therefore, application of the exclusionary rule would be a "harsh sanction" that should not be applied.

In contrast, the government in this case violated the notice statute, thereby preventing the Court from making a knowing and fully informed ruling on the pretrial suppression motions. The same obligation applied before and after the trial.[5] As the government noted, the Fourth Circuit recognized that, apart from the lawfulness of the electronic surveillance, the violation of the notice statute would itself generate a potential remedy of suppression of evidence. *See In re Grand Jury Subpoena (T-112),* 597 F.3d 189, 201 (4th Cir. 2010) ("Rather, the proper remedy [for failure to comply with notice provision] is exclusion under Title III or FISA, a remedy which is triggered when the government seeks to introduce evidence into a covered proceeding."). The government's attempt to distinguish *T-112* illustrates exactly why discovery must precede the substantive motions: the government disclaims "deliberately and advertently" flouting the notice requirement, while at the same time asserting that the government acted consistently with "then-standard practice." The government also claims it "did not deny the existence" of FISA surveillance, despite the

_____

[5] Because the government seeks delay in ruling on discovery based on its continued failure to provide documents to this Court, the defense moved separately for immediately production to the Court of the relevant documents. CR 493. For the reasons set out in the memorandum in support of the motion for discovery and in this brief, the defense should receive those documents as part of the discovery order.

PAGE 9    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE

government's failure to provide the Court with FAA information explicitly sought in the defense FISA discovery and suppression motions.[6]  Discovery is the only way for the Court to know the reliable facts from which to make determinations regarding the levels of negligence, recklessness, knowledge, intention, and purpose that would guide the formulation of consequences for the statutory violation.

Not only does the government ignore the Court's supervisory power to remedy statutory and constitutional violations (CR 489 at 11-15), the government's response provides further support for dismissal as one of the options available to the Court.  In *United States v. Chapman*, 524 F.3d 1073, 1084-88 (9th Cir. 2008), the court upheld an order dismissing the indictment for failure to comply with discovery obligations under the supervisory powers previously briefed by the defense.  Finding that the withholding of material was not intentional, the court held that "flagrant misbehavior" sufficient for dismissal as a remedy can "embrace reckless disregard for the prosecution's constitutional obligations." *Id.* at 1085. In *Chapman*, as here, the government repeatedly assured the Court that the government understood and was in full compliance with discovery obligations, permitting a finding of "'flagrant' prosecutorial misconduct even if the documents themselves were not intentionally withheld from the defense." *Id*.  If the Department never "considered" the fruit of the poisonous tree doctrine, such a failure should be considered at least "reckless disregard" for the notice obligation.

---

[6] In failing to disclose the surveillance, the government violated both 50 U.S.C. § 1806(c), which requires notice regardless of request, and the separate statute requiring that the government confirm or deny surveillance under 18 U.S.C. § 3504, which is triggered by a request for disclosure.

A factor the *Chapman* court also considered was the government's "lack of contrition on appeal" and attempts "to minimize the extent of the prosecutorial misconduct." *Id*. at 1088. The government's response minimizes the significance of its violation of the statute and Constitution. The response fails to even attempt to provide any accountability by any individual for the failure to comply with the law, asking the Court to accept representations by trial attorneys, with no apparent first-hand knowledge of the events involving the Solicitor General, and no sworn statement of their own knowledge, that derivative use of FAA surveillance to obtain warrants was never "considered," even though the lawyers acted pursuant to the "then-standard practice." A standard practice is simply irreconcilable with never considering the question. The Court should order full discovery to allow informed litigation regarding the consequences for the violation of the defendant's statutory and constitutional rights.

In addition to the Court's inherent supervisory power, the Court also has authority to formulate a remedy under Rule 16(d)(2) of the Federal Rules of Criminal Procedure. As previously briefed, the failure to provide notice violated not only constitutional discovery obligations, but also Rule 16 because the defendant's statements were at issue and, under Rule 16(a)(1)(E)(i), the documents should have been provided as documents or things that "are material to preparing the defense." CR 489 at 12-14. As in *United States v. Hernandez-Meza*, 720 F.3d 760, 768-69 (9th Cir. 2013), discovery is appropriate to aid the Court in deciding how to address a party's violation of a discovery rule, a question that in many ways parallels the exercise of supervisory power. *See also United States v. Davis*, 244 F.3d 666, 671 (8th Cir. 2001) (upholding exclusion of evidence as a sanction for the "obvious discovery violation" of failing to comply with the discovery deadline); *United States v. Wicker*, 848 F.2d 1059, 1061-62 (10th Cir. 1988) (government expert excluded

where report was not forwarded due to negligence and the prosecutor's failure to follow-up on a request for the report); *United States v. Lewis*, 511 F.2d 798 (D.C. Cir. 1975) (new trial ordered for discovery violation); *Mathis v. State*, 112 N.M. 744, 819 P.2d 1302, 1305 (1991) (upholding dismissal where prosecutor's affidavit failed to establish that it acted in good faith in failing to provide timely discovery).[7]

The Court should reject the government's argument that a post-trial suppression hearing constitutes the sole available remedy for the statutory and constitutional violations. Resp. at 9-15. The plain language of the statute permitting a post-trial suppression motion says nothing about restricting the Court's discretion to formulate a remedy depending on the facts surrounding the statutory and constitutional violation. 50 U.S.C. § 1806(e) ("Such a motion shall be made before the trial, hearing, or other proceeding unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion."). Nothing in that sentence purports to limit the Court's authority under its inherent supervisory power, Rule 16(d)(2), or the Constitution to formulate remedies up to and including dismissal of the indictment. The government's construction would lead to the absurd result that the government could deliberately and for tactical advantage misrepresent its compliance with statutory and constitutional obligations with no meaningful consequences (especially given that most federal criminal cases result in guilty pleas, which the

---

[7] *See also State v. Fuentes*, No. 88422-6, 2014 WL 465563 (Wash. Feb. 6, 2014) (en banc) (finding the state bears the burden of establishing lack of prejudice beyond a reasonable doubt when an officer intruded post-trial on attorney-client conversations, even though the prosecutor immediately disclosed the intrusion to both the defense and the court, and remanding for discovery regarding prejudice, rejecting as insufficient the "representations as to the prosecutor's knowledge of the content of the eavesdropped conversation.").

government can then assert waived any rights to complain about the violation).[8]  Such a construction would also undermine the statute's purpose, which was part of the FISA legislation's effort to rein in governmental extra-legal abuses.[9]  Even if there were a textual basis for the government's position – which there is not – the lack of a clear statement of intent to foreclose remedies would defeat the government's position.[10]

      4.      *The Court Should Presume From The Statutory Violation That The Government Acted Knowingly And Deliberately, Which Is Not Rebutted By The Briefing Of Trial Lawyers Who Provide No Information Under Oath, Under Penalty Of Perjury, Based On Actual Knowledge.*

Ironically, the government invokes a presumption of regularity even while admitting the statutory violation.  Resp. at 9 n.5.  Under the applicable case law, such a presumption applies to discretionary decisions within the executive branch's exclusive authority, such as the decision to investigate, to prosecute, to plea bargain, and to charge.  *United States v. Wilkerson*, 208 F.3d 794, 799-800 (9th Cir. 2000).  There is no discretion to which the Court can defer in the context of a mandatory notice statute.  The government does not dispute that the statute applied and that it was mandatory.  Further, the government cites no case applying a presumption of regularity where the government violated a statute.  Under these circumstances, and in light of the existing record, the

---

[8] *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ( "[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

[9] "When interpreting a statute, words and phrases must not be read in isolation, but with an eye toward the 'purpose and context of the statute.'"  *United States v. Petri*, 731 F.3d 833, 839 (9th Cir.2013) (quoting *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006)).

[10] *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (statute must contain a particularly clear statement to be construed to repeal the historic remedy of the writ of habeas corpus).

presumption should be that the government acted knowingly and unlawfully and for a bad purpose in the absence of strong rebuttal, based in affirmatively established facts. Such a presumption from the law violation should be subject to testing by both discovery and by an adversary proceeding in which the government's sworn facts can be challenged or conceded. Nothing approaching that level of governmental accountability has occurred to date.

Once the defendant establishes a prima facie case that the government violated a statute, the burden should shift to the government to rebut the presumption that the government acted wrongfully to the prejudice of the defendant. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804-05 (1981) (once prima facie case of discrimination established, burden shifts to employer to establish absence of discrimination); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971) (searches conducted outside the judicial process are per se unreasonable subject to the government bearing the burden of establishing a "jealously and carefully drawn" exception). Based on the notion that the law is definite and knowable, the common law presumption that every person knows the law has been applied to defendants in construing criminal statutes. *See, e.g., United States v. Int'l Minerals & Chem. Corp.*, 402 U.S. 558 (1971); *Hamling v. United States*, 418 U.S. 87, 119-124 (1974); *Boyce Motor Lines, Inc. v. United States*, 342 U.S. 337 (1952). Such a presumption is especially appropriate when applied to the government, with its special responsibility to execute the laws. *See Berger v. United States*, 295 U.S. 78, 88 (1935) ("The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done.").

The government's response is utterly inadequate to establish any meaningful account of the statutory violation.  Not only is the brief vague, conclusory, and contradictory; there is no sworn statement or declaration by a person with knowledge regarding what happened.  The brief is signed by three trial attorneys, none of whom purports to have first-hand knowledge of why the Solicitor General said what he said, and why the Attorney General conducted a review of cases involving Title VII.  And the trial attorneys provide no indication of who knew what when about the Title VII electronic surveillance in this case.  The Court should reject the government's invitation to proceed in secret, based on a presumption of regularity, without the type of actual inquiry into the underlying facts required by Ninth Circuit law.  *See Hernandez-Meza*, 720 F.3d at 768-69 (remanding for a hearing on facts and reasons behind failure to comply with Rule 16 obligation to produce exhibit pretrial to the defense).

5.    *The Public Interest Favors Full Discovery Given The Government's Extrajudicial Use Of Its Vague, Conclusory, And Inconsistent Brief.*

The government has apparently used its brief on this motion extrajudicially to respond to a letter from United States Senators regarding representations by the Solicitor General about notice of FAA surveillance under 50 U.S.C. § 1806(c).  Charlie Savage, *Justice Dept. Informs Inmate of Pre-Arrest Surveillance*, Feb. 25, 2014 (the acting chief of the National Security Division "pointed to a recent filing in the Oregon case in which the department explained the revised policy, telling Senator Martin Heinrich, Democrat of New Mexico, that he would distribute it to prosecutors across the country 'so they know exactly what our position is on that issue.'").[11]  The government's use of

---

[11] Letter from Senators Udall, Wyden & Heinrich to Solicitor General Verrilli (Nov. 20, 2013), available at https://www.documentcloud.org/documents/837839-112013-clapper-v-amnesty-letter-1.html (attached as Exhibit A).

**PAGE 15    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

its response emphasizes the need for transparency, discovery, and adversary proceedings regarding the belated notice in this case. Who knew what when? Those questions have never been answered. The brief, signed by three trial level attorneys, purports to provide the Court with the assurance that the Solicitor General's representations dealt with a different issue. Resp. at 8 n.4. But without sworn statements of persons with knowledge, the Court (and the Senators and public) have no basis for accepting the vague, conclusory, and inconsistent statements in the brief.

Are there post hoc rationalizations formulated after the exposure of the undeclared policy of providing no notice when warrantless Title VII surveillance led to warranted Title I surveillance? Was the Solicitor General misled but – retrospectively – lawyers in Washington have formulated a correct line that the statement could be justified by a highly technical rejiggering of the rationale, even though it would require ignoring generations of law under the fruit of the poisonous tree doctrine? What was the policy and practice at the relevant times prior to the trial? In this particular case, who knew about the Title VII surveillance? What was done with that information? Who decided not to provide the notice? How did the government deal with the defense's specific requests for warrantless surveillance that led to warranted surveillance?  the requests for information regarding the origins of the investigation in the pretrial non-FISA motion to suppress? the testimony at trial from agents providing the background for the investigation?

The government's response, which is now publicly offered as an explanation of "exactly what our position is," provides nothing more than a whitewash. If the background in this case is important enough for the government to be holding it out to Senators and prosecutors nationwide as "exactly our position," it is important enough to be subject to real discovery and a real adversary proceeding.

**PAGE 16    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

**B.    The Government Has Not Denied The Derivative Use Of Material Gathered Through Collection Of Telephone And Internet Metadata, So The Court Should Order The Production Of Discovery Regarding Such Surveillance Or Sworn Statements Denying Its Existence.**

In asking the Court to deny discovery regarding section 215 mass collection of data, the government has carefully avoided saying whether or not such electronic surveillance occurred in this case. Resp. at 24-25. An Executive Branch organization has just released a report finding that the telephone metadata collection program violates both the FISA statute and the constitutional protections afforded by the First and Fourth Amendments. Privacy and Civil Liberties Oversight Board (PCLOB), *Report on the Telephone Records Program Conducted under Section 215 of the USA PATRIOT Act and on the Operations of the Foreign Intelligence Surveillance Court*, at 10-11 (Jan. 23, 2014). If such surveillance occurred, the Court should order production of discovery necessary to the filing of a motion to suppress. Although the government asks that any section 215 discovery order be delayed until the filing of substantive motions, the material should already have been produced to the Court. CR 494 at 2. In any event, the products of such metadata collection regarding the defendant should be produced as *Brady* material, as asserted without rebuttal in the initial discovery motion.

**C.    The Court Should Order Security-Cleared Defense Counsel To Participate In Discovery And Full Adversarial Litigation Regarding The Notice And Electronic Surveillance.**

The government's argument against the participation of informed security-cleared defense counsel suffers from two critical and interrelated shortcomings: first, the conflation of traditional FISA (Titles I and III) surveillance with that of the new programs under the FAA (Title VII); and

second, the mischaracterization of defense arguments related to the importance of the adversarial function in our system of jurisprudence.

With respect to the first issue, the government rehashes the same argument it makes in essentially every case involving traditional FISA surveillance under Titles I and III: courts have almost unanimously denied defense requests for discovery and suppression in the FISA context so this Court should too. *Compare* CR 88 at 15-16 (pretrial FISA motion arguing that no court has ever disclosed FISA material) *with* Resp. at 17 & n.11 (post-trial FISA motion arguing that "[u]ntil recently, no court had ever ordered disclosure of FISA materials").[12]  While that may be true, for the current litigation, there is little precedential value in those cases because of fundamental differences between traditional FISA and the FAA.

Traditional FISA review by a district court involves review of individualized probable cause in the context of a statute whose constitutionality has been upheld.  The government relied on both of those factors in arguing that defense participation was unnecessary to this Court's review of the Title I and III surveillance.  CR 88 at 3, 16-18.  However, while citing the same cases now, the government fails to note that neither circumstance is present here – due to the previous failures to provide criminal defendants notice of Title VII surveillance, no district or appellate court has ever ruled on the constitutionality of the FAA, and, rather than reviewing a single probable cause

---

[12] The "until recently" qualification reflects that one month ago a district court granted disclosure of traditional Title I and III FISA material in *United States v. Daoud*, No. 12-cr-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014) (unpublished) (finding no persuasive national security concerns where defense counsel held security clearances).  The government is quick to point out that it has appealed that decision, and, furthermore, tells this Court in no uncertain terms that it will do the same here – without knowing the Court's reasoning – in "the unlikely event" the Court rules against the government.  Resp. at 24 n.19.

**PAGE 18    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

determination, this Court is likely to be asked to approve programmatic surveillance as applied to the case at bar. Whatever merit may exist in the government's argument about defense participation in traditional FISA review, it is wholly inapplicable to the FAA context.

The fundamental difference between traditional FISA and the FAA was highlighted by former FISC Judge James Robertson in testimony before the Privacy and Civil Liberties Oversight Board (PCLOB). Judge Robertson characterized the "ex parte FISA process" as judicial "approval" rather than "adjudication" given the lack of an adversarial party, with secret proceedings working fine in the context of traditional Title I and III surveillance. PCLOB Hearing at 35 (July 9, 2013).[13] However, Judge Robertson rejected the government's failure to distinguish between individual probable cause determinations and challenges to programmatic intrusions on all Americans:

> First, the FISA process is ex parte, which means it's one sided, and that's not a good thing.
>
> And secondly, under the FISA Amendment Act, the FISA Court now approves programmatic surveillance, and that I submit and will discuss for a few minutes, I do not consider to be a judicial function.

*Id*. at 34. According to Judge Robertson, the programmatic reviews are fundamentally different from probable cause determinations::

> [T]hat's not the bailiwick of judges. Judges don't make policy. They review policy determinations for compliance with statutory law but they do so in the context once again of adversary process.

---

[13] Available at: http://www.pclob.gov/All%20Documents/July%209,%202013%20Workshop%20Transcript.pdf

**PAGE 19    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

*Id.* at 36. Because "approval" of FAA programs is so different than the "approval" of individual warrants under Titles I and III, Judge Robertson concluded that "this process needs an adversary." *Id.* at 37.

There was, of course, no informed advocate in place to challenge the government's interpretation and application of the FAA before the FISC. The government now seeks to prevent an informed advocate from challenging the FAA before *any* court. This argument upends the very foundation of our system of jurisprudence and gives unprecedented – and unchecked – power to the executive branch. While the government correctly cites precedent that approves of the ex parte process with respect to reviewing individual warrants and probable cause under Titles I and III of FISA, it provides no precedent to support the expansion of that secret process into the review of programmatic surveillance under the FAA. In fact, a key rationale for approving the ex parte process for traditional FISA warrants is that the materials are "straightforward and readily understood" and the issues are "uncontroversial" and "not complex." CR 88 at 17 (case law quotations cited by the government to support exclusion of defense from review of Title I and III surveillance materials). In contrast, the issues presented by the FAA are novel, complex, previously unreviewed by district or appellate courts, and, as the recent media attention has shown, highly controversial. Informed advocacy is necessary as a basic requisite of our rule of law.

The government's remaining argument against informed advocacy requires little response as it simply mischaracterizes the defense position. The government states that: "Defendant's argument for additional discovery . . . rests on the premise that *Alderman v. United States*, 394 U.S. 165 (1969), constitutionally mandates disclosure to the defense. This premise is faulty." Resp. at

23; *see also* Resp. at 21 (same "mandates disclosure" phrase).  That premise is indeed faulty, which is why the defense actually argued the following:

> The defense has repeatedly cited *Alderman v. United States*, for the proposition that counsel should have the opportunity to review classified material because of the importance of the defense perspective in determining the significance of surveillance activity.

CR 489 at 25.    While the government spends significant time refuting that *Alderman* "constitutionally mandates disclosure," it fails to address the point that the Supreme Court (and the defense) actually make: that the defense is in a unique position to assess the significance of surveillance activity and can "substantially reduce" the incidence of error through the adversary process.

This is hardly a new-found or controversial proposition, but rather a basic recognition of the role of criminal defense counsel in an adversarial system.  Moreover, as the above discussion of the fundamental change from traditional Title I and III surveillance to Title VII surveillance makes clear, the role of an advocate opposing the government has become even more critical in light of the shift from individual warrants to programmatic surveillance.  An informed advocate will provide this Court with an alternate view that the government simply cannot provide in an ex parte setting, which, in turn, will result in a better presentation of the issues and will instill more public confidence in the ultimate outcome.  "It's quite common, in fact it's the norm to read one side's brief or hear one side's argument and think, hmm, that sounds, right, until we read the other side."  PCLOB Hearing at 3 (comment of Judge Robertson).

The government also attempts to avoid informed opposition advocacy by referring to the numerous FISC decisions that have highlighted government violations as either irrelevant or as proof

**PAGE 21    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

that the government can be trusted to make the appropriate disclosures to this Court.  Resp. at 20 & n.14.  First, the surveillance violations are all relevant because they show, among other things, that the government has failed to follow its own rules in implementing FISA's provisions.  Second, the defense does not know if the government was completely candid with this Court and disclosed these violations during the pretrial FISA litigation, but in other national security cases, the government has apparently been less than candid.  *See, e.g.*, David Kravets, *How Obama Officials Cried 'Terrorism' to Cover Up a Paperwork Error*, Wired, Feb. 11, 2014 (discussing *Ibrahim v. Dep't of Homeland Sec.*, No. C 06-545 (N.D. Cal. Jan. 14, 20140), where government invoked national security, insisted on ex parte processes, and litigated for years before finally admitting that the plaintiff had been put on the No-Fly list due to a clerical error by an FBI agent).  Third, just because the government acts in good faith in other of its dealings with courts does not dispel the need for informed advocacy; nobody suggests that the role of a criminal defense attorney should be abolished by entrusting the prosecutor to tell the court both sides of the story.

**D.    The Failure To Make The Required Statutory Disclosure Implicates Other Aspects Of Discovery And Trial Requiring Full Production Of Material Previously Withheld.**

The government's failure to provide notice of FAA surveillance – and likely other surveillance pursuant to FISA or other authority – raises the question of whether the Court was provided with full and accurate information when making all discretionary pretrial rulings.  The government's answer, that "the Supplemental Notification did not signal that any new evidence exists in this case" (Resp. at 26), misses the point.

First, to the extent that additional surveillance of Mohamed was done, that fact – in and of itself – is new evidence.  Specifically, in an entrapment case, where the government's conduct is an

explicit factor under the predisposition analysis and the crux of the inducement prong, additional surveillance of a target prior to instigating a sting operation is highly relevant.[14]  Moreover, in this particular case, questions related to exactly when the government began surveilling Mohamed pervaded pretrial and trial litigation:  the genesis of the investigation was critical to the non-FISA motion to suppress as well as the trial argument that the government had been watching Mohamed for a significant amount of time and he never made any efforts to engage in the crime charged. Further, government agents specifically testified at trial that Mohamed was not being investigated as a juvenile, a claim that could potentially have been challenged based on earlier, undisclosed surveillance.  *See, e.g.*, CR 456 at 407 (Agent Trousas testified that "we didn't have an open investigation at that time [during the Samir Khan email exchanges] for Mr. Mohamud.  So we were not – we weren't trying to figure out who Mr. Mohamud was.").  For those reasons, the record establishes that "new evidence" does exist in this case."[15]

------

[14] Government conduct would also be relevant to dismissal motions based on outrageous government conduct and potential arguments, instructions, or evidence regarding government over-reaching.  The admitted failure to provide the required statutory notice adds even more weight to these arguments.

[15] What the government may intend to impart is that the Title VII evidence is not "new" in the sense that the evidence – whether emails, texts, phone calls, or other material – has already been made public, linked to FISA only through Title I and III, and used by the government in its prosecution.  *See* Resp. at 26 (Title VII evidence "is a subset of the same evidence that has already been addressed throughout this case").  This makes the government's refusal to disclose what evidence is at issue particularly troubling because there are no legitimate national security concerns where the material is already public: the fact of FISA surveillance is public; the contents and form of the surveillance products is public (and has been used to the government's advantage); and the fact that the government intercepts such products under the FAA is public knowledge.  *See Al-Haramain Islamic Found., Inc. v. Bush*, 507 F.3d 1190, 1197-98 (9th Cir. 2007) (affirming this Court's decision that the state secrets privilege does not bar litigation of a subject matter upon which the government has "lifted the veil of secrecy").  Even more troubling, however, is that the government's refusal to identify the evidence at issue signals the intent to expand the ex parte

In addition, the government apparently did not provide this Court with the FAA information prior to trial, which means that the initial FISA suppression motion was decided without all the relevant facts.  As noted above, this was also the case with the non-FISA motion to suppress.  FAA surveillance, as well as other surveillance programs recently made public, would likely have generated material responsive to numerous pretrial discovery requests.  Given the government's seeming acknowledgment that it withheld material from this Court, the ex parte process (whether pursuant to FISA or CIPA) apparently resulted in less than complete information being presented to the Court.[16]  Disclosure of previously withheld material regarding surveillance should now be ordered to allow the defense 1) to assess the impact of that information on previously litigated issues; 2) to inform the Court of potential gaps suggesting more material has been withheld; and 3) to formulate arguments regarding remedy.[17]  Whatever benefit-of-the-doubt this Court gave the government's representation before trial in terms of completeness of material and good faith presentation should now be tempered by the reality that the government failed to fulfill its statutory and constitutional obligations.

---

process into new areas, such as the post-trial litigation of the harm from the statutory violation. Resp. at 10.

[16] The government's claim that the defense relied on ex parte submissions is incorrect:  both documents were served on the government, one on the public docket, the other sealed but provided to opposing counsel.  *Compare* Resp. at 26 n.21 *with* CR 489 at 47.

[17] The government does not even try to suggest how the Court can consider without discovery the issues regarding the reckless or intentional omission of the material fact of FAA surveillance from FISA applications under *Frank v. Delaware*, 438 U.S. 154 (1978).  CR 489 at 34, 41, 45-46.

**PAGE 24    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

**E.    The Government's Account Of Its History Of Compliance Is Inaccurate And, At Times, Misconstrues The Purpose Of Citations In The Defense Motion.**

The government's response regarding assertions and arguments during the course of this litigation needs to be contextualized because the government misapprehends the purpose and significance of the reference in the memorandum to discovery issues.

The defense discussed the presentation and testimony about exhibit one at the pretrial hearing on the motion to suppress (CR 489 at 49) for several reasons.  First, the government presented the court with sworn testimony and argument about the exhibit that asserted that it was something that it was not.  *See* CR 489 at 49; CR 132 at 212, CR 131 at 22-24.  The government's later explanation of the reason for its submission of an incomplete exhibit is irrelevant.  Resp. at 28-29.  The relevant fact is, rather, that this mistake supports the defense arguments that no presumption of regularity should attach to the government's actions or assertions in this case.  The second relevant aspect of the exhibit issue is the manner in which it illustrates the importance of adversarial proceedings.  The problem with the exhibit was brought to light only because the defense was provided access to the exhibit and because defense counsel were able to play the role assigned to them under the Sixth Amendment.

The government's discussion of the "late" production of the FBI emails is similarly off the mark.  Resp. at 29.  Indeed, it supports Mr. Mohamud's arguments for three reasons.  First, the government seeks to justify the timing of its disclosure of the emails on the ground that they "are not investigative reports or documents generated during the course of the criminal investigation."  *Id*. That is precisely one of the points the defense made in its memorandum:  the government  viewed its discovery obligation far too narrowly.  CR 489 at 46-48.  The defense repeatedly expressed

concern that the prosecutors were not searching for, or being provided, information in the possession of government agents or agencies outside of the narrowly defined investigation. *See*, *e.g.*, CR 42 at 10-11; CR 78 at 2-3; CR 109 at 72-74. The defense repeatedly sought remedial action for discovery violations. *See*, *e.g.*, CR 378; CR 414. The defense believed during the pretrial and trial phases of the case that relevant and helpful information about Mohamed existed in a number of places in the government. *Id.*; *see also* CR 234 at 28-29. The government's assertion in its response should be taken by the Court as an admission that such evidence did exist and that the government did not seek it out when it was responding to discovery motions.

The second weakness in the government's argument is its failure to recognize that the Court ordered disclosure of the emails, not because they were required to be produced under the Jencks Act, but because they were discoverable under the *Brady* doctrine. CR 451 at 80-81. The defense continues to have no confidence that the government has adequately searched outside of the "case file" for *Brady* material, especially information from the intelligence agencies that would contradict basic pieces of the government's evidence such as those related to Amro al-Ali. Nor do we believe that the Court should have such confidence.

The information contained in the government's footnote 23 provides additional evidence of the need for a broad discovery order at this time. Resp. at 29. In that footnote, the government seeks to justify its actions by arguing that the emails in question "were not investigative material of the type that would ever be stored in a case file." Again, that argument demonstrates how the record in this case dovetails with the statements cited from the FISC and other decisions about the manner in which the government has failed repeatedly to understand and fulfill its obligations to search for and produce exculpatory material.

**PAGE 26    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

Finally, the government's assertions about the emails underscore the defense concerns about the potential lack of, or incomplete, communication between government agents and prosecutors. The emails in question, which have been held to be *Brady* material by this Court (CR 451 at 80), deal with a central aspect of the entrapment defense and were contemporaneously written and read by FBI agents involved in the investigation and prosecution of this case. Thus, the agents should be presumed to have been aware of their contents. The Court should also presume the agents knew about the breadth of their obligation to produce exculpatory material, both from the trial prosecutors and from their experience as federal agents. The fact that the emails were apparently not considered for disclosure until a pretrial *Jencks* review raises a number of questions. Were the agents advised of the need to search beyond the "case file" for exculpatory material? If so, what directions were they given? If so, did they search? If so, did they disclose these emails to the prosecutor? If not, why not? Whatever the answers, these circumstances strongly support a broad discovery order resolving the same types of questions regarding the Title VII surveillance.

In its response to arguments based on the difference between some of the pretrial and trial testimony regarding the origin of the investigation, the government seeks to write them off as "creative use of deductive reasoning" and points out that the defense knew all along that the government was using emails dated prior to August 31, 2009. Resp. at 30. This argument misses the point. To be sure, the government had provided emails between Mohamed and Samir Khan dated from February 2009 and thereafter. The questions at issue, however, were when, how, and why the government came into possession of those emails. They could have been the product of the government's search of Mohamed's computer or internet service providers *after* the government

**PAGE 27    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

asserted that its investigation began in September 2009. Or they could have been the product of earlier investigation including warrantless electronic surveillance.

At the hearing on the motion to suppress, the government's invocation of the state secret (or FISA) privilege to cut off questioning left the defense with the impression that the emails were obtained by the government after September 1, 2009. *See* CR 489 at 49-50. At trial, however, the government witnesses provided some of the information the defense had earlier sought without invoking any privilege. *See* CR 489 at 49-50. These facts provide further support for broad discovery at this time and for inclusion of security-cleared counsel in any review of discoverable material.

First, whatever interests are served by the state secrets privilege, it cannot be used to mislead a defendant and the Court or to cut off legitimate inquiry into the legality of the government's actions and suppressibility of evidence. *See Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114, 1117 (C.D. Cal. 2011) (the government "provided false and misleading information" to the court regarding the existence of documents, then asserted the "untenable" position that misleading the court was permissible "to avoid compromising national security"). It may be that the answers to the questions the defense sought to ask at the suppression hearing relate to the new FAA notice. Regardless, discovery is needed so that any such issues can be properly formulated.

Second, the stark difference between the answers at the hearing and the trial underscore the defense's concerns about the manner in which the government used the declassification process to its advantage and to the defendant's detriment. CR 234 at 28, CR 432 at 17-19. Full development of the testimony at trial would have been most useful to the defense in presenting the portion of the entrapment defense related to the government's over-reaching.

**PAGE 28    REPLY TO GOVERNMENT'S RESPONSE TO MOTION FOR FULL DISCOVERY REGARDING THE FACTS AND CIRCUMSTANCES UNDERLYING SURVEILLANCE**

**Conclusion**

For the foregoing reasons and those stated in the memorandum in support of the motion for full discovery regarding surveillance, as well as those stated in the motion and memorandum to compel immediate production to the court of classified documents, the Court should order the requested discovery.

Dated this 27th day of February, 2014.

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lisa Hay
Lisa Hay
Assistant Federal Public Defender