Stephen R. Sady
Chief Deputy Federal Public Defender
steve_sady@fd.org
Steven T. Wax
Federal Public Defender
steve_wax@fd.org
Lisa Hay
Assistant Federal Public Defender
lisa_hay@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204
503-326-2123 Telephone
503-326-5524 Facsimile

Attorneys for Defendant

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:10-cr-00475-KI |
| Plaintiff, | MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE |
| v. | |
| MOHAMED OSMAN MOHAMUD, | |
| Defendant. | |

**Introduction**

      This first post-trial substantive motion addresses the government's violation of the pretrial

notice statute.  Congress enacted the requirement that the government provide the Court and the

PAGE 1    MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE

defense with pretrial notice of surveillance under the Foreign Intelligence Surveillance Act (FISA) in the context of the disclose-or-dismiss requirement of three Supreme Court cases. When Congress passed the FISA Amendments Act (FAA), the pretrial notice requirement was explicitly incorporated concomitant to the expansion of electronic surveillance authority. The statute uses the mandatory "shall" for pretrial notice, and the meaning of "derivative" is unequivocal. By failing to provide pretrial notice of FAA electronic surveillance under § 702 of FISA, the government effectively circumvented the disclosure requirement of the statute, which should require vacation of the conviction and dismissal of the indictment. In the alternative, the Court should exercise its authority under its inherent supervisory power, Rule 16(d) of the Federal Rules of Criminal Procedure, and the *Brady* guarantee of due process of law to vacate the conviction and dismiss the indictment or, alternatively, to grant a new trial with the exclusion of derivative evidence from, and uses of, the § 702 electronic surveillance. The granting of this motion may render other substantive motions moot.

## I.    Statutory And Factual Context of the Government's Failure To Provide Pretrial Notice As Required By 50 U.S.C. § 1806(c)

In the absence of discovery and evidence regarding the circumstances surrounding the government's violation of the pretrial notice requirement, the statutory language and the public record provide a factual basis for the requested relief. The defense renews the requests for discovery based on the authority previously provided to the Court. CR 489 at 3-15; CR 496 at 2-16.

A.    **The Mandatory And Unequivocal Statutory Language Requiring Pretrial Notice Of The Use Of Derivative Evidence**

The notice statute is mandatory in requiring that notice be provided to "the aggrieved person and the court" prior to trial where evidence derived from FAA surveillance is used in any way:

**(c) Notification by United States**

*Whenever the Government intends to enter into evidence or otherwise use or disclose in any trial, hearing, or other proceeding in or before any court, department, officer, agency, regulatory body, or other authority of the United States, against an aggrieved person, any information obtained or derived from an electronic surveillance of that aggrieved person pursuant to the authority of this subchapter, the Government shall, prior to the trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information.*

50 U.S.C. § 1806(c) (emphasis added).  The notice admits the defendant in this case is an "aggrieved person" who has been subjected to electronic surveillance under 50 U.S.C. § 1801(f) and (k).  The FAA explicitly incorporates the § 1806(c) mandatory notice requirement to cover surveillance activity under § 702 by a cross-reference that is explicit and mandatory.  *Alabama v. Bozeman*, 533 U.S. 146, 153 (2001) (Congress's use of "shall" "is ordinarily 'the language of command.'") (quoting *Anderson v. Yungkau*, 329 U.S. 482, 485 (1947)).

Despite the mandatory notice statute, the initial notice in this case provided no reference to FAA surveillance.  CR 4.  The new notice explicitly concedes that the products of § 702 surveillance – 50 U.S.C. § 1881a – were introduced at trial and otherwise used.  CR 486.  Thus, the government recognizes that evidence and other uses were "derived from" § 702 surveillance, but failed to follow

the statutory requirement that pretrial notice be provided for "any information obtained or derived" from § 702 surveillance.

The use of "obtained or derived" in § 1806(c) unequivocally refers to the fruit of the poisonous tree doctrine, which in turn unequivocally refers to warrantless surveillance used to obtain a later warrant for surveillance. *See United States v. Giordano*, 416 U.S. 505, 533 (1974) (suppressing later electronic surveillance derived from earlier illegal wiretapping); *Wong Sun v. United States*, 371 U.S. 471, 488 (1963) (requiring suppression of evidence "come at by the exploitation" of a primary illegality); *Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 392 (1920) (insulation of the government's use of knowledge gained from an unlawful search would reduce the Fourth Amendment to a mere "form of words."). The context of the statute also links "derived" to the fruit of the poisonous tree doctrine because the statute requires suppression where evidence is "derived" from surveillance that was "not lawfully authorized or conducted." 50 U.S.C. § 1806(g). Derivative evidence includes statements and tangible evidence acquired "as an indirect result of the unlawful search," which unequivocally applies to later use to obtain a warrant. *Murray v. United States*, 487 U.S. 533, 536-37 (1988).

The law is well-established that the government cannot insulate a warrantless search from compliance with constitutional requirements by including the product of that search in a warrant affidavit. *United States v. Grandstaff*, 813 F.2d 1353, 1355 (9th Cir. 1987); *United States v. Wanless*, 882 F.2d 1459, 1466-67 (9th Cir. 1989); *United States v. Vasey*, 834 F.2d 782, 789-90 (9th Cir. 1987). This is especially true where, as here, the defense placed the government on notice of

**PAGE 4    MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE**

this precise issue, both by citing to § 1881a and by asserting concern that earlier warrantless

surveillance led to the FISA surveillance.  CR 489 at 45-46.

**B.    The Sequence Of Events Leading To The Government's Supplemental
Notice**

As detailed in the post-trial discovery motion, the government's supplemental notice appears

to be the result of public controversy regarding the government's implementation of the § 1806(c)

pretrial notice requirement.  CR 489 at 6-10.  The circumstantial evidence can be summarized as

follows:

- July 10, 2008:  On the day the FAA was enacted, the ACLU filed a civil suit to declare the FAA unconstitutional;

- October 29, 2012:  While litigating that civil suit, Solicitor General Donald Verrilli argued to the Supreme Court that, because defendants received § 1806(c) pretrial notice, the statute was not insulated from review;

- December 27, 2012:  Senator Diane Feinstein publicly specified two cases in which the FAA had purportedly been used, which resulted in the defense attorneys in those cases asserting that no § 1806(c) notice had been provided;

- February 26, 2013:  The Supreme Court cited the Solicitor General's representations regarding FAA notice in holding that the plaintiffs did not have standing;

- October 16, 2013:  The New York Times reported that an internal debate within the Justice Department erupted when the Solicitor General discovered that, due to what he viewed as an untenable view of the law, prosecutors were not providing notice of the derivative use of FAA electronic surveillance;

- October 25, 2013:  The Solicitor General's position apparently led to the first notice provided in Colorado;

- November 15, 2013:  Attorney General Eric Holder announced past cases were being reviewed to determine whether notice should have been provided;

PAGE 5    MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND
ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF
EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL
NOTICE STATUTE

• November 19, 2013:  The government filed the supplemental notice in their case.

In addition to the circumstantial evidence, the Court should also consider the direct evidence from New York Times reporter Charlie Savage regarding sources within the Justice Department: "The move [to begin disclosing FAA surveillance] comes after an internal Justice Department debate in which Solicitor General Donald B. Verrilli Jr. argued that there was no legal basis for a previous practice of not disclosing links to such surveillance, several Obama administration officials familiar with the deliberations said."  Charlie Savage, *Door May Open for Challenge to Secret Wiretaps*, N.Y. Times, Oct. 16, 2013.  The reporting regarding the failure to provide § 1806(c) pretrial notice of § 702 electronic surveillance received corroboration when Attorney General Eric Holder acknowledged that cases had to be reviewed to address the prior practice of failing to provide the required notice.  Sari Horwitz, *Justice is reviewing criminal cases that used surveillance evidence gathered under FISA*, Wash. Post, Nov. 15, 2013.

> **C.    The Government's Briefing On Discovery Included Contradictory Claims, Unsupported By Documents Or Affidavits, That "Derived From" Had Not Been Previously "Considered" As Applying To Subsequent Warrants, While At The Same Time Claiming The Prosecutors Acted Pursuant To "Then-Standard Practice"**

The government claimed in its discovery response that "the Department" had never thought of warrantless § 702 surveillance under Title VII leading to Title I and Title III surveillance.  CR 491 at 7 ("Prior to recent months, however, the Department *had not considered* the particular question. . . .") (emphasis added).  In the same pleading the government took a contradictory position: the prosecutors "acted in accordance with the Department's *then-current standard*

*practice*" that only Title I and III notice need be given.  CR 491 at 8 (emphasis added).  Although

the government appears to deny that the post-trial notice resulted from the fallout after *Clapper v.*

*Amnesty Int'l USA*, 133 S.Ct. 1138 (2013), affirmatively asserting that the "case has no bearing

here," CR 491 at 8 n.4, the prima facie case from the chronology of public events, the plain language

of the statute, the historic and consistent application of the fruit of the poisonous tree doctrine, and

the statements attributed to "several Obama administration officials familiar with the deliberations"

support a finding that statutorily required notice was deliberately withheld before the trial, then

disclosed based on the Solicitor General's insistence that the practice was  unlawful.  Further, the

government has presented no documents or affidavits to rebut the prima facie case regarding the

circumstances surrounding the statutory violation.  *See McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 804-05 (1981) (once prima facie case of discrimination established, burden shifts to employer

to establish absence of discrimination); *Coolidge v. New Hampshire*, 403 U.S. 443, 454-55 (1971)

(searches conducted outside the judicial process are per se unreasonable subject to the government

bearing the burden of establishing a "jealously and carefully drawn" exception).

## II.    Legal Arguments Regarding The Violation Of 50 U.S.C. § 1806(c)

**A.**    **In Order To Effectuate The Choice Of Disclosure Or Dismissal Mandated In A Trilogy Of Supreme Court Cases, And To Vindicate The Separation Of Powers Doctrine, The FISA Notice Statute Should Be Construed To Require Dismissal Of The Indictment Where The Government Failed To Comply With The Requirement That The Court And The Defense Receive Pretrial Notice.**

Because the government deprived the Court and the defense of the pretrial notice required

by statute, the Court should construe the statute to require dismissal of the indictment or, at least, a

new trial.  By requiring dismissal, the statute gives effect to three national security Supreme Court cases binding at the time of the statute's adoption, each of which required the government to choose between complying with disclosure requirements and dismissing the indictment.  Under these circumstances, dismissal would provide the only effective mechanism for vindicating the legislative and judicial roles in the separation of powers because otherwise, without meaningful consequence, the government would be free to violate Congress's statutory requirement that the Judiciary receive timely notice that warrantless electronic surveillance occurred.  At the least, the statute should require a new trial with suppression of the derivative evidence about which the government failed to provide the Court and the defense notice.  *See In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 201 (4th Cir. 2010) ("[T]he proper remedy [for failure to comply with the notice provision] is exclusion under Title III or FISA, a remedy which is triggered when the government seeks to introduce evidence into a covered proceeding.").

At the time FISA was enacted, Congress was well aware of the disclose or dismiss choice: where the court believes disclosure is necessary but the government does not want to disclose, "*the government must choose – either disclose the material or forgo the use of the surveillance-based evidence.  Indeed, if the government objects to the disclosure, thus preventing a proper adjudication of legality, the prosecution would probably have to be dismissed, . . .*") S. Rep. 95-701 at 65 (1978) (emphasis added).  Congress legislates in the context of the Supreme Court's decision-making regarding the same subject matter.  For example, the Court's decisions related to miscarriages of justice survived the Antiterrorism and Effective Death Penalty Act absent clear language to the contrary.  *McQuiggen v. Perkins*, 133 S. Ct. 1924, 1932-34 (2013).  Similarly, Congress enacted

FISA not only as reining in extra-legal governmental spying but also in the context of Supreme Court rulings requiring the government to choose between disclosure and dismissal of the indictment.

In effectuating the separation of powers principle that the Executive Branch has no authority to act beyond the bounds of the law as enacted by the Legislative Branch and interpreted by the Judicial Branch, three principal cases require the government to choose between disclosure and dismissal. In *Jencks v. United States*, 353 U.S. 657, 672 (1957), the Court held that, where a statute required pretrial disclosure of witness statements, "the criminal action must be dismissed when the Government, on the ground of privilege, elects not to comply with an order to produce, for the accused's inspection and for admission in evidence, relevant statements or reports in its possession of government witnesses touching the subject matter of their testimony at the trial."

Similarly, under *Roviaro v. United States*, where the trial judge determines that an informer's identity, or of the contents of his communication, is helpful to the defense, the result must be either disclosure or dismissal of the action. 353 U.S. 53, 61 & 65 n.15 (1957) ("the Government should have been required to supply that information or suffer dismissal of that count."). In the third case, *Alderman v. United States*, in the absence of a statute requiring pretrial notice, the government failed to disclose the existence of warrantless electronic surveillance until the appeal of the conviction. 394 U.S. 165, 184 (1969). In formulating the procedure for resolving whether there was any direct or derivative use, the Court recognized that the government would otherwise be put to the "disclose-or-dismiss option" regarding the contents of the surveillance. *Id*. at 181. In response to *Alderman*, Congress enacted the pretrial notice requirement in 18 U.S.C. § 3504(a), which means that the "disclose-or-dismiss option" would be triggered by the types of discovery requests made in

the present case.  *See* H. Rep. No. 91-1549 (Organized Crime Control Act of 1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4027.

This trilogy of cases provides a fundamental framework for protection of the separation of powers because they enforce legislative and judicial constraints on executive over-reaching in the prosecution of individual citizens.  The failure to comply with a necessary predicate to judicial review of whether the executive is complying with the law is extraordinarily dangerous to this Country's freedoms.  This Court faces the Executive Branch's violation of a statutory requirement pursuant to what the prosecutors call a "then-current practice" (CR 491 at 8), that, if perpetuated, would have permanently insulated from judicial review programs that resulted in the seizure and unreviewed searches of the electronic communications of millions of Americans.  Congress required pretrial notice of electronic surveillance to the Court as well as to the defense as a necessary check on unbridled executive searches and seizures.  The statute, which provides no limitation on the remedy for its violation, should be read to require dismissal of the indictment in order to effectively enforce the notice requirement.

In the alternative, suppression of the derivative evidence would be a minimum statutory consequence to defend the rule of law.  In *United States v. Coplon*, Judge Learned Hand addressed a case in which a Russian spy had been the subject of warrantless surveillance and a search beyond the scope of a proper search incident to arrest.  185 F.2d 629 (2d Cir. 1951).  The court found that, in the state secrets context, the government had to choose between the disclosure of state secrets and the prosecution of the individual.  *Id*. at 638 ("the prosecution must decide whether the public prejudice of allowing the crime to go unpunished was greater than the disclosure of such 'state

**PAGE 10**    **MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE**

secrets' as might be relevant to the defence.").  The court ordered the suppression of the products

of unlawful searches and seizures, stating, "there is no other way by which the accused can secure

that protection which the law professes to accord him."  *Id*. at 640.

In later correspondence, Judge Hand explained the necessity of the exclusionary rule, adding,

"Perhaps, if you reflect, you will agree that it is not desirable to convict people, even though guilty,

if to do so it is necessary to violate those rules on which the liberty of all of us depends."  Letter from

Judge Hand.[1]  The government in the present case directly violated Congress's instruction that the

Court and the defense receive pretrial notice of the fact that the defendant's electronic

communications were collected, retained, and accessed through warrantless electronic surveillance.

Especially at a time when the massive national security apparatus intrudes ever more deeply into

Americans' communications, the pretrial notice statute, upon which the liberty and privacy of all

Americans depend, should be interpreted to require dismissal or at least suppression as the logical

consequence of the government's conduct.

      **B.**      **In The Alternative, The Court Should Exercise Its Inherent Supervisory, Rule 16(d), And *Brady* Authority To Vacate The Conviction And Dismiss The Indictment Or, In The Alternative, Suppress The Products Of The Electronic Search In A New Trial, Based On The Government's Intentional Or Reckless Violation Of The Notice Statute.**

In the alternative to the statutory construction requiring dismissal or suppression, the Court

has abundant discretion to vacate the conviction and dismiss the indictment or order suppression

from three sources of power: the Court's inherent supervisory authority, Rule 16(d) of the Federal

---

[1] Available at http://blog.oup.com/2013/01/learned-hand-warrantless-arrest-search/

Rules of Criminal Procedure, and the *Brady* constitutional power to enforce the due process requirement that material helpful to the defense be provided prior to trial. The evidence established that the government acted at least recklessly or intentionally: the chronology of events that led to the disclosure; the administration sources quoted by the media; and the admission that the government acted pursuant to the "then-standard practice" establish intentional or reckless conduct. In this context, as in the context of misleading statements in support of search warrant affidavits, the government's intentional and reckless conduct are treated as equivalent. *Compare Franks v. Delaware*, 438 U.S. 154, 155-58 (1978) ("knowingly and intentionally, or with reckless disregard for the truth"), *with United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008) (flagrant government conduct warranting dismissal includes reckless disregard for constitutional obligations). Further, the unrebutted presumption from the violation of the statute alone establishes prima facie intentional or reckless conduct. To implement a remedy and to vindicate this Court's interest in full and timely disclosures, especially given the undermining of the Judicial role by failing to provide pretrial notice to the Court, the Court should order dismissal or suppression.

In *Chapman*, the Ninth Circuit upheld, under its supervisory powers, an order dismissing an indictment for failure to comply with discovery obligations. 524 F.3d at 1084-88. Under its inherent supervisory powers, this Court has the authority to fashion consequences up to and including dismissal: "(1) to implement a remedy for the violation of a recognized statutory or constitutional right; (2) to preserve judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; and (3) to deter future illegal conduct." *United States v. Matta-*

*Ballesteros*, 71 F.3d 754, 763 (9th Cir. 1995) (citing *United States v. Simpson*, 927 F.2d 1088, 1090

(9th Cir.1991)).[2]  Each of these factors is implicated by this case.

In *Chapman*, although the court found that the withholding of material was not intentional,

the court held that "flagrant misbehavior" sufficient for dismissal as a remedy can "embrace reckless

disregard for the prosecution's constitutional obligations."  524 F.3d at 1085.  In *Chapman*, as here,

the government repeatedly assured the Court that the government understood and was in full

compliance with discovery obligations, permitting a finding of "'flagrant' prosecutorial misconduct

even if the documents themselves were not intentionally withheld from the defense."  *Id*.  If the

government never "considered" the fruit of the poisonous tree doctrine, such a failure should be

considered at least "reckless disregard" for the notice obligation.  The same would be true for the

adoption of a "then-standard practice" of failing to give the Court and the defense pretrial notice.

A factor the *Chapman* court also considered was the government's "lack of contrition on

appeal" and attempts "to minimize the extent of the prosecutorial misconduct."  *Id*. at 1088.  The

government's discovery response minimized the significance of its violation of the statute and

Constitution, reflecting lack of contrition.  The response fails to even attempt to provide any

accountability by any individual for the failure to comply with the law.  Instead, the Court received

representations by trial attorneys, with no apparent first-hand knowledge of the relevant events

involving the Solicitor General, and no sworn statement of their own knowledge, that derivative use

of § 702 surveillance to obtain warrants was never "considered" (CR 491 at 7), even though the

---

[2] The Court's inherent powers are not limited to these three areas. *United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008) (en banc).

**PAGE 13    MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE**

lawyers acted pursuant to the "then-standard practice" (CR 491 at 8), and that the *Clapper* case had nothing to do with the late disclosure of warrantless surveillance (CR 491 at 8 n.4).  A "standard practice" is simply irreconcilable with never considering the question, and the timing of the *Clapper* controversy and the Attorney General's announcement of a review of past national security cases to provide "defendants with information that they should have" is simply too direct not to involve causation.

There is a further possibility the Court should explore regarding the government's minimization of its failure to provide notice.  The supplemental notice only provides notice of "derived" evidence under § 702, as opposed to evidence "obtained" during the warrantless surveillance.  The Court should determine if the communication introduced at trial or otherwise used is the same as the communication acquired by the § 702 warrantless surveillance.  If they are the same communication, two conclusions follow.  First, the government's supplemental notice is inaccurate and misleading because derivative evidence means that one piece of information led to another piece of information.  In contrast, if the same information was obtained through different means, the second acquisition is simply laundering the first communication, which should have been included as "obtained" in the supplemental belated notice.  Second, if the communication was "obtained" through the § 702 warrantless surveillance, the government's tortuous and inconsistent claims regarding the meaning of "derived" are exposed as post hoc rationalizations for the still unexplained failure to provide the statutorily required notice prior to trial.

In addition to the flagrancy of the government's conduct, the requested remedies are appropriate because the lack of notice involved issues that pervaded the pretrial motions and the trial

**PAGE 14   MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE**

of the case.  There is simply no way to go back and, with any certainty, determine what defense strategies would differ, how the Court's rulings would have been affected, and what the government might have done differently.  Especially in the context of an entrapment defense, all government conduct related to surveillance and knowledge should have been disclosed.  *See* Memorandum In Support Of Second Motion For A New Trial.  Given that the defendant has been in custody, with good time credits, for almost the length of a four-year college education, and that he has done everything in his power to atone for his conduct, dismissal is the reasonable remedy for the serious violation of the government's statutory obligation to the Court and to the defense.

Rule 16(d) also provides a basis for dismissal or suppression.  In *United States v. Hernandez-Meza*, the Ninth Circuit vacated a conviction because the government failed to disclose an immigration document used in an illegal reentry trial.  720 F.3d 760 (9th Cir. 2013).  The court emphasized that the Rule 16(a)(1)(E)(i) obligation to provide documents or things that "are material to preparing the defense" is categorical and unconditional, including even material that would discourage the presentation of a certain line of defense.  *Hernandez-Meza*, 720 F.3d at 768.  "Lack of knowledge or even a showing of due diligence won't excuse non-compliance."  *Id*.  Even more than in *Hernandez-Meza*, the fact of early warrantless electronic surveillance was "material to preparing the defense," and the obligation to provide notice of FAA-derived evidence was categorical and unconditional.

The court in *Hernandez-Meza* remanded for a determination of whether the government's action was deliberate because, as here, the record suggested "that the government may have

PAGE 15   MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE

deliberately withheld" the material from the defendant, which would warrant preclusion of evidence from retrial and perhaps dismissal of the indictment:

> We infer this from the record as a whole and particularly from the fact that the prosecution knew the date of Hernandez–Meza's mother's naturalization and its relevance to the case, yet didn't produce the certificate even after defense counsel pointed out the lacuna.  However, this is a factual finding that must be made by a district court in the first instance. *If the government willfully withheld the certificate, then it should be precluded from introducing the document at any retrial of Hernandez–Meza, or perhaps even suffer a dismissal of the indictment with prejudice.  See Kojayan*, 8 F.3d at 1325 (remanding for a decision as to whether indictment should be dismissed with or without prejudice).

*Hernandez-Meza*, 720 F.3d at 769 (emphasis added) (internal citation omitted).  Under the holding and reasoning of *Hernandez-Meza*, this Court should conclude that the withholding of notice to the Court and the defense was deliberate – or reckless at an equivalent level of malfeasance – to warrant dismissal or at least suppression.  *See also United States v. Davis*, 244 F.3d 666, 671 (8th Cir. 2001) (upholding exclusion of evidence as a sanction for the "obvious discovery violation" of failing to comply with the discovery deadline); *United States v. Wicker*, 848 F.2d 1059, 1061-62 (10th Cir. 1988) (government expert excluded where report was not forwarded due to negligence and the prosecutor's failure to follow-up on a request for the report); *United States v. Lewis*, 511 F.2d 798 (D.C. Cir. 1975) (new trial ordered for discovery violation); *Mathis v. State*, 112 N.M. 744, 819 P.2d 1302, 1305 (1991) (upholding dismissal where prosecutor's affidavit failed to establish that it acted in good faith in failing to provide timely discovery).

The Court also has discretion to formulate a remedy for the government's violation of its *Brady* obligations.  Facts favorable or helpful to the defense in the context of suppression motions constitute *Brady* material that must be produced pretrial.  *United States v. Gamez-Orduno*, 235 F.3d

453, 461 (9th Cir. 2000); *United States v. Barton*, 995 F.2d 931, 934-35 (9th Cir. 1993) (rationale of *Brady* applies to suppression motions).  As reflected in the separate motion for a new trial, the existence of earlier warrantless surveillance itself constitutes *Brady* material.  Although the government may disagree with his assessment, the Chief Judge of the Ninth Circuit recently observed that "[t]here is an epidemic of *Brady* violations abroad in the land.  Only judges can put a stop to it."  *United States v. Olsen*, 737 F.3d 625, 626 (9th Cir. 2013) (Kozinski, C.J., dissenting from denial of rehearing en banc).  The *Brady* violation is compounded in the present case because the statutory obligation to disclose applied to the Court, not only the defense.  *See Islamic Shura Council of S. Cal. v. FBI*, 779 F. Supp. 2d 1114, 1117 (C.D. Cal. 2011) (the government "provided false and misleading information" to the court regarding the existence of documents, then asserted the "untenable" position that misleading the court was permissible "to avoid compromising national security").  The Court's exercise of supervisory power includes a strong interest in deterring the withholding of information that should have been disclosed to preserve "the public's trust in our justice system" and prevent erosion of "the foundational premises of the rule of law."  *Olsen*, 737 F.3d at 632.

**Conclusion**

For the foregoing reasons, the Court should enter an order vacating the conviction and dismissing the indictment or, in the alternative, setting a new trial at which the evidence derived from the FAA electronic surveillance is excluded.

Dated this 4th day of April, 2014.

*/s/ Stephen R. Sady*
Stephen R. Sady
Chief Deputy Federal Public Defender

*/s/ Steven T. Wax*
Steven T. Wax
Federal Public Defender

*/s/ Lisa Hay*
Lisa Hay
Assistant Federal Public Defender

Mark Ahlemeyer
Research & Writing Attorney

**PAGE 18    MEMORANDUM IN SUPPORT OF MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES OF DISMISSAL OF THE INDICTMENT, SUPPRESSION OF EVIDENCE, AND NEW TRIAL FOR THE GOVERNMENT'S VIOLATION OF THE PRETRIAL NOTICE STATUTE**