S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
**PAMALA R. HOLSINGER**, OSB #89263
Assistant United States Attorneys
ethan.knight@usdoj.gov
pamala.holsinger@usdoj.gov
1000 SW Third, Suite 600
Portland, OR 97204-2902
Telephone:  (503) 727-1000
Facsimile:  (503) 727-1117
**JOLIE F. ZIMMERMAN**, DCB #465110
Trial Attorney
Counterterrorism Section
National Security Division
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | Case No. 3:10-CR-00475-KI |
| v. | |
| **MOHAMED OSMAN MOHAMUD,** | GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND |
| Defendant. | ALTERNATIVE REMEDIES |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through Ethan D. Knight and Pamala R. Holsinger, Assistant United States Attorneys, and Jolie F. Zimmerman, Trial Attorney, United States Department of Justice, hereby responds to defendant's Motion for Vacation of Conviction and Alternative Remedies of

Dismissal of the Indictment, Suppression of Evidence, and New Trial for the Government's Violation of the Pretrial Notice Statute (ECF No. 500).

## I. Introduction

In response to the Supplemental Notification filed in this case on November 19, 2013 (ECF No. 486), defendant has filed a motion seeking vacation of his conviction or the alternative remedies of dismissal of the indictment, suppression of evidence, and a new trial, based on the government's alleged violation of the notification provisions of the Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829. As explained below, defendant's motion should be denied.

First, as explained previously, the government did not intentionally withhold notice of the use of Title VII-derived evidence in this case. The Supplemental Notification, which the government provided based on its own review, demonstrates good faith, not intentional misconduct.[1] Second, defendant's opportunity to move to suppress this evidence completely cures any prejudice arising from the delayed Supplemental Notification. Accordingly, dismissal

---

[1] The Supplemental Notification was filed based on a recent determination by the government that certain evidence referenced in the original notification that was obtained or derived from FISA Title I and Title III collection was itself also derived from Title VII collection as to which defendant was aggrieved. Title VII of the FISA Amendments Act of 2008 (FAA) permits the acquisition of foreign intelligence information targeting non-U.S. persons located outside the United States, subject to certain statutory requirements. *See* 50 U.S.C. § 1881a. Specifically, the Supplemental Notification explained that the government had determined that "information obtained or derived from Title I FISA collection may, in particular cases, also be 'derived from' prior Title VII FISA collection" and that the government had recently reviewed the proceedings in this case prior to its filing. The Notification then stated that certain evidence and information used in this case was "derived from acquisition of foreign intelligence information conducted pursuant to the Foreign Intelligence Surveillance Act of 1978, as amended, 50 U.S.C. §1881a." (ECF No. 486).

**Government's Response to Defendant's Motion for Vacation of Conviction and     Page 2
Alternative Remedies**

of the indictment is not an appropriate remedy for the government's failure to provide this notice pretrial. Neither Section 1806(f) of FISA, nor FISA's legislative history, nor any of the cases cited by defendant compels a different conclusion. Third, dismissal under the Court's supervisory powers is not warranted. Defendant has not met the legal requirements for such relief, as he has not shown either that there was flagrant governmental misconduct or that any such misconduct caused him substantial prejudice. Defendant also has not shown that no lesser remedy is available. Lastly, neither Rule 16 of the Federal Rules of Criminal Procedure, nor the Court's authority to fashion remedies for violations of the government's *Brady* obligations—which in any event did not occur here—provides for dismissal of the indictment.

## II.    The Government Did Not Intentionally Withhold Notice of the Use of Title VII-Derived Evidence in This Case

At the outset, defendant makes the baseless assertion that press reports attributed to unnamed "administration officials"—along with an alleged "chronology of public events," history of FISA, and application of the fruit of the poisonous tree doctrine—"support a finding that statutorily required notice was deliberately withheld before trial." (Def.'s Mem., ECF No. 501, at 7). As explained in the government's response to defendant's Motion for Full Discovery Regarding the Facts and Circumstances Underlying Surveillance (Gov't's Resp., ECF No. 491), the Department's determination that information obtained or derived from Title I or Title III collection may, in particular cases, also be derived from prior Title VII collection is a relatively recent development (and one that occurred after trial of defendant). The Supplemental Notification filed in this case, which the government provided based on its own

/ / /

review, resulted from that determination and demonstrates good faith, not intentional misconduct. (Gov't's Resp. 6).

Further, defendant misconstrues the government's discovery response, alleging that "[t]he government claimed in its discovery response that 'the Department' had never thought of warrantless § 702 surveillance under Title VII leading to Title I and Title III surveillance." (Def.'s Mem. 6). The government made no such claim. Rather, the government explained that, "[p]rior to recent months, . . . the Department had not considered the particular question of whether and under what circumstances information obtained through electronic surveillance under Title I or physical search under Title III *could also be considered to be derived from* prior collection under Title VII." (Gov't's Resp. 7) (emphasis added). The government made clear that such a determination was as a "matter of law." *See id*. at 8 ("Based on the Department's recent determination, the government reviewed the proceedings in this case and determined that some of the evidence obtained and derived from Title I and Title III collection was also derived from Title VII collection *as a matter of law*.") (emphasis added). Accordingly, the government's assertion that "[t]he prosecutors in this case acted in accordance with the Department's then-current standard practice and under a good-faith understanding that the initial notice of the use of Title I and Title III FISA evidence fully satisfied the government's notice obligations" (*id*.) is not a contradictory position, as claimed by defendant (Def.'s Mem. 6-7).[2]

---

[2] Defendant's focus on media reports to show that the Supplemental Notification resulted from an internal government debate is misplaced. (Def.'s Mem. 5-6). Even assuming, *arguendo*, that claim were true, it has absolutely no legal significance, as it has no bearing on the factors courts evaluate in determining whether dismissal of an indictment is appropriate under their supervisory powers. *See infra* at IV. In any event, the original FISA notification in this case was filed in

**Government's Response to Defendant's Motion for Vacation of Conviction and Alternative Remedies**     **Page 4**

### III. Dismissal of the Indictment Is Not an Appropriate Remedy for the Delayed Notice

Defendant argues that the delayed notice should result in a dismissal of the indictment or a new trial. (Def.'s Mem. 7-8). As explained in the government's response to defendant's discovery motion, however, this Court's scheduling order already has provided a remedy that will fulfill the purpose of FISA's notice provisions, which is to enable defendant to move to suppress. (Gov't's Resp. 9-10). That remedy completely cures any prejudice arising from the delayed Supplemental Notification.

As the Court's order recognizes, defendant will now have the opportunity to challenge, pursuant to the procedures of FISA, the use of evidence in this case that was derived from Title VII, with the same result as if the motion to suppress had been adjudicated before trial. If the Court, in accordance with the procedures established in FISA, conducts its *in camera*, *ex parte* review and finds that the surveillance was lawful, defendant will have suffered no prejudice by the delayed notice. Conversely, if the Court finds that suppression of the Title VII-derived evidence is warranted, and if the government cannot show that admission of the relevant evidence was harmless, then defendant will be entitled to vacatur of his conviction and a new trial at which the evidence would be inadmissible. In such a circumstance, the post-trial remedy

---

November 2010, and the pretrial FISA litigation occurred from June 2011 to May 2012. These events thus took place long before the Department's determination that led to the filing of the Supplemental Notification, and long before all but one of the events listed in defendant's chronology of the "circumstantial evidence" that purports to show that the Supplemental Notification is the result of a "public controversy"—including the litigation in *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013). (Def.'s Mem. 5). The only event listed in defendant's chronology that had occurred at the time of the original FISA notification and the pretrial FISA litigation is the 2008 passage of the FAA and the filing of the civil suit by the American Civil Liberties Union. (*Id*.). *Clapper* itself was decided in February 2013, after defendant's trial and conviction.

**Government's Response to Defendant's Motion for Vacation of Conviction and**     **Page 5**
**Alternative Remedies**

would put defendant in a similar position as if the Supplemental Notification had been provided before trial.

### A. Section 1806(f) of FISA Does Not Require Dismissal of the Indictment

Defendant argues that: (1) "the Court *should* construe the statute to require dismissal of the indictment or, at least, a new trial;" (2) "the statute *should* require a new trial;" (3) the statute "*should* be read to require dismissal of the indictment;" and (4) the statute "*should* be interpreted to require dismissal or at least suppression." (Def.'s Mem. 7-8, 10-11) (emphasis added). But the plain language of the statute controls, and the statute does not require dismissal of the indictment or a new trial where the government fails to provide notice of the use of FISA-derived (or FAA-derived) evidence pretrial. *See Republic of Ecuador v. Mackay*, 742 F.3d 860, 864-65 (9th Cir. 2014) ("Where 'the statute's language is plain' we do not consider "the legislative history or any other extrinsic material.") (quoting *Kuwait Fun Wong v. Beebe,* 732 F.3d 1030, 1042 (9th Cir.2013) (en banc)) (other quotations omitted).

Rather, FISA anticipates after-the-fact motions to suppress, pursuant to FISA's procedures, as a remedy in those circumstances where delayed notice was provided. *See* 50 U.S.C. § 1806(e) (providing that suppression motion must be brought before the proceeding in which the information will be used, "unless there was no opportunity to make such a motion or the person was not aware of the grounds of the motion"). Section 1806(e) indicates that affording an opportunity for the aggrieved person to bring a motion after the proceeding is the appropriate and exclusive remedy for circumstances where the person lacked an "opportunity" to challenge the FAA because he was "not aware of the grounds" of such a challenge. *See* H. Conf. Rep. No. 95-1720, at 31 (1978) (the purpose of FISA's notice requirement is to "allow for the

**Government's Response to Defendant's Motion for Vacation of Conviction and Alternative Remedies**  **Page 6**

disposition of any motions concerning evidence derived from electronic surveillance"). Where, as here, the remedy of an opportunity to file a post-trial suppression motion is available, defendant is not entitled to dismissal of the indictment or a new trial based on the failure to provide notice of the use of Title VII-derived evidence pretrial.[3]

   B.  A Dismissal Remedy Should Not Be Imputed to Section 1806(f)

Defendant contends that the legislative history of FISA, as well as certain Supreme Court cases, should be read to impute a dismissal remedy to Section 1806(f). This contention has no merit.

First, as discussed above, the plain language of FISA controls. Courts "cannot reject the statutory text in order to imply common law limitations, particularly 'where, as here, the statute's language is plain, [and] the sole function of the courts is to enforce it according to its terms.'" *Gonzalez v. Arrow Financial Services, LLC*, 660 F.3d 1055, 1068 (9th Cir. 2011) (quoting *Sayyed v. Wolpoff & Abramson,* 485 F.3d 226, 229-30 (4th Cir.2007)) (other quotation omitted) (alteration in original). Second, defendant's reliance on the legislative history of FISA, *Jencks v. United States*, 353 U.S. 657 (1957), and *Roviaro v. United States*, 353 U.S. 53 (1957), is misplaced.

Defendant cites to legislative history of FISA that he implies states that a prosecution "probably" would have to be dismissed "if the government objects to the disclosure" of FISA-

---

[3]  At least one court of appeals has suggested that exclusion of evidence, even if it were lawfully obtained, might be an appropriate remedy when the government provides an outright denial that it has conducted surveillance pursuant to Title III or FISA. *See In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 201 (4th Cir. 2010) (noting that the "proper remedy" for a false denial of electronic surveillance would be "exclusion under Title III or FISA"). However, such a remedy is inapplicable here. (*See* Govt's Resp. 11, n.6).

**Government's Response to Defendant's Motion for Vacation of Conviction and    Page 7
Alternative Remedies**

based evidence. (Def.'s Mem. 8 (citing S. Rep. No. 95-701, at 65 (1978)). Defendant misconstrues this legislative history. The section he cites addresses disclosure of the FISA materials authorizing electronic surveillance, not to disclosure of FISA-based evidence. *See* S. Rep. No. 95-701, at 63-64 ("When the procedure [under Section 1806(e)] is [] triggered, … the government must make available to the court a copy of the court order and accompanying application upon which the surveillance was based. The court must then conduct an ex parte, in camera inspection of these materials as well as any other documents [in] relation to the surveillance … The decision whether it is necessary to order disclosure to a person is for the Court to make after reviewing the underlying documentation and determining its volume, scope, and complexity."). The relevant portion of the language cited by defendant, which is on the next page, reads as follows:

> Cases may arise, of course, where the Court believes that disclosure is necessary to make an accurate determination of the legality, but the Government argues that to do so, even given the Court's broad discretionary power to [excise] certain sensitive portions, would damage national security. In such situations the Government must choose – either disclose the material or forgo the use of the surveillance-based evidence. Indeed, if the Government objects to the disclosure, thus preventing a proper adjudication of the legality, the prosecution probably would have to be dismissed, and, where the Court determines that the surveillance was [not] lawfully authorized or conducted, the court would, "in accordance with the requirements of law," suppress that evidence which was unlawfully obtained.

*Id*. at 65. The "disclosure" referenced in the Senate Report thus is disclosure of the FISA order and application underlying the surveillance, not disclosure of the results of the surveillance, or even of the fact of the surveillance. Further, the government has never objected to the provision of notice in this case. To the contrary, once it determined that supplemental notice was required, the government affirmatively provided it through the Supplemental Notification. Finally, the

Senate Report mentions dismissal as a potential result where the government's actions make it impossible for the court to adjudicate the legality of the surveillance. Here, by contrast, there is nothing "preventing" this Court from conducting "a proper adjudication of the legality" of the surveillance at this time.

Similarly, defendant cites *Jencks* for the proposition that a criminal action must be dismissed if the government "elects not to comply with an order to produce" Jencks material on the ground of privilege. (Def.'s Mem. 9 (quoting *Jencks*, 353 U.S. at 672)). He also relies on *Roviaro* for the proposition that, once a judge determines that an informant's identity or communications with a defendant are helpful to the defense, "the result must be either disclosure or dismissal of the action." (Def.'s Mem. 9 (citing *Roviaro*, 353 U.S. at 61 & 65, n.15)). Again, the government has not affirmatively withheld disclosure of the use of the Title VII-derived evidence in defiance of a court order or other determination that such disclosure need be provided. The authorities cited by defendant do not hold that belated disclosure through accident or mistake is the same as an intentional withholding of such in defiance of a court order.[4]

---

[4] Defendant also relies on *Alderman v. United States*, 394 U.S. 165 (1969), and 18 U.S.C. § 3504(a) to argue that the enactment of Section 3504(a) "means that the 'disclose-or-dismiss option' would be triggered by the types of discovery requests made in the present case." (Def.'s Mem. 9-10 (also citing H. Rep. No. 91-1549 (Organized Crime Control Act of 1970), *reprinted in* 1970 U.S.C.C.A.N. 4007, 4027)). This is simply another way of arguing that Section 3504(a) triggers an additional notice requirement under FISA, which is meritless. (*See* Gov't's Resp. 22-23). And defendant cites *United States v. Coplon*, 185 F.2d 629 (2d Cir. 1950), arguing that the Court should at least suppress the evidence that is derived from the Title VII collection at issue because the government did not provide notice of the use of that evidence before trial. In *Coplon*, the district court denied a defense request for access to surveillance records that had been submitted for *ex parte*, *in camera* review as part of an analysis of whether the surveillance (which was unlawful) had led to any of the evidence used against defendant in the criminal case. *Coplon* is inapplicable to a situation like here, where there is a statutory scheme that provides for

**Government's Response to Defendant's Motion for Vacation of Conviction and   Page 9
Alternative Remedies**

**IV.     Dismissal Under the Court's Supervisory Powers Is Not Warranted**

Defendant argues in the alternative that this Court should dismiss the indictment, or provide other relief based on the delayed notice, pursuant to the Court's supervisory powers. This argument is meritless. Dismissal would serve no valid purpose. Further, defendant has not met the legal requirements for such relief, since he has not shown that there was flagrant governmental misconduct or that any such misconduct caused him substantial prejudice. Nor can defendant show that the drastic remedy of dismissal of the indictment is the only available remedy.

   A.      Legal Standard

It is true that a court may dismiss an indictment under its supervisory powers. *United States v. Stinson*, 647 F.3d 1196, 1210 (9th Cir. 2011) (citing *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991)). Such an action, however, is an "extreme measure," *Barrera-Moreno*, 951 F.2d at 1093, that "must be approached with some caution, and with a view towards balancing the interests involved." *United States v. Hasting*, 461 U.S. 499, 1979 (1983) (citations and internal quotation marks omitted). A court may exercise such a power "'to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct.'" *Stinson*, 647 F.3d at 1210 (quoting *Barrera-Moreno*, 951 F.2d at 1091)). In the Ninth Circuit, "[t]he power is not strictly limited to those uses." *Stinson*, 647 F.3d at 1210 (citing *United States v. W.R. Grace*, 526 F.3d 499, 511, n.9 (9th Cir. 2008) (en banc)).

---

*ex parte*, *in camera* review of the underlying surveillance records, and that scheme has been upheld as constitutional.

**Government's Response to Defendant's Motion for Vacation of Conviction and        Page 10
Alternative Remedies**

Because dismissal of an indictment "'encroaches on the prosecutor's charging authority,' this sanction may be permitted only 'in cases of flagrant prosecutorial misconduct.'" *United States v. Chapman*, 524 F.3d 1073, 1085 (quoting *United States v. Simpson*, 927 F.2d 1088, 1090 (9th Cir. 1991), *abrogated on other grounds by W.R. Grace*, 526 F.3d 511, n.9). "[A]ccidental or merely negligent governmental conduct is insufficient to establish flagrant misbehavior." *Chapman*, 524 F.3d at 1085 (citing *United States v. Kearns*, 5 F.3d 1251, 1255 (9th Cir. 1993)).

Moreover, the government conduct complained of "must cause substantial prejudice to defendant[]." *Barrera-Moreno*, 951 F.2d at 1093 (citing *United States v. Jacobs*, 855 F.2d 652, 655 (9th Cir. 1988) (conduct must be flagrant and prejudicial)); *see United States v. Tucker*, 8 F.3d 673, 674 (9th Cir. 1993) ("court may not exercise its supervisory authority to reverse a conviction or dismiss an indictment absent prejudice to the defendant"). Dismissal of an indictment "is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right *and no lesser action is available*." *Barrera-Moreno*, 951 F.2d at 1092 (emphasis added). For example, dismissal may be warranted due to a Fourth Amendment violation "if the violation is not adequately remedied by application of the exclusionary rule." *Id*. (citation omitted).

B.     Dismissal Would Serve No Valid Purpose

As noted above, a court may exercise its supervisory powers and dismiss an indictment to, among other things, "'remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct.'" *Stinson*, 647 F.3d at 1210 (quoting *Barrera-Moreno*, 951

/ / /

**Government's Response to Defendant's Motion for Vacation of Conviction and         Page 11
Alternative Remedies**

F.2d at 1091)).  Defendant argues that each such purpose applies here.  (Def.'s Mem. 12-13).
The government respectfully disagrees.

First, there is no constitutional violation, and even assuming, *arguendo*, that there were a statutory violation, as explained above, FISA already provides for an appropriate remedy. Second, absent a finding by the Court that the Title VII-derived evidence was unlawfully obtained, which cannot be made before the Court's adjudication of defendant's motion to suppress (ECF No. 502), there is no allegation that any inappropriate evidence was presented to the jury.  Third, there is no "illegal conduct" that must be deterred.  *See* discussion *infra* at IV.C.

### C.    There Was No Prosecutorial Misconduct, Let Alone Misconduct That Was Flagrant

Defendant argues that "[t]he evidence established that the government acted at least recklessly or intentionally: the chronology of events that led to the disclosure; the administration sources quoted by the media; and the admission that the government acted pursuant to the 'then-standard practice' establish intentional or reckless conduct."  (Def.'s Mem. 12).  Defendant's argument is completely without merit.

That the government acted pursuant to then-standard practice in filing the original FISA notification in November 2010 certainly does not establish "flagrant prosecutorial misconduct," as required by *Chapman*, 524 F.3d at 1085.  As explained in the government's discovery response, at that time, although the government knew that some of the evidence to be used in the case had been obtained or derived from Title I and Title III FISA collection, it did not consider whether that same evidence was also "derived," as a matter of law, from prior FISA collection pursuant to Titles I, III, or VII.  (Gov't's Resp. 7-8).  At that time, however, neither had the

Department as a whole considered such a question. (Gov't's Resp. 7). Once the Department made this determination, the government reviewed the proceedings in this case, determined that some of the evidence obtained and derived from Title I and Title III collection was also derived from Title VII collection as a matter of law, and provided the Supplemental Notification. (Gov't's Resp. 8).[5] The post-trial filing of the Supplemental Notification is the result of a careful review of the range of circumstances in which information obtained or derived from Title I or Title III collection should also be considered as a matter of law to be derived from prior Title VII collection, such that the government should give notice of both Title I/III and Title VII surveillance in those cases. (Gov't's Resp. 9). "This conduct is not the type of flagrant behavior which could be remedied by the supervisory powers." *Barrera-Moreno*, 951 F.2d at 1093 (prosecutor who misrepresented drug testing of informant "was at most remiss in not having adequate knowledge of the behavior and supervisor of the informant" and did not engage in "flagrant misconduct").

In his motion, defendant again attempts to turn the delayed notice of the use of Title VII-derived evidence into a discovery violation, relying heavily on *Chapman*'s analysis of a prosecutor's discovery failures. (Def.'s Mem. 13-17). This reliance is misplaced.

/ / /

---

[5] Defendant contends,
> If the government never "considered" the fruit of the poisonous tree doctrine, such a failure should be considered at least "reckless disregard" for the notice obligation. The same would be true for the adoption of a "then-standard practice" of failing to give the Court and the defense pre-trial notice.

(Def.'s Mem. 13). To the contrary, the government took its notice obligation seriously, which is why it provided the Supplemental Notification on its own initiative, without any prompting by the defense or Court.

**Government's Response to Defendant's Motion for Vacation of Conviction and Alternative Remedies**   Page 13

The facts of *Chapman* are markedly different than the facts of this case. In *Chapman*, "although the case involved hundreds of thousands of pages of discovery, the AUSA failed to keep a log indicating disclosed and nondisclosed materials." 524 F.3d at 1085. The AUSA also "repeatedly represented to the court that he had fully complied with *Brady* and *Giglio*, when he knew full well that he could not verify these claims." *Id*. When the trial court "asked the AUSA to produce verification of the required disclosures, he attempted to paper over his mistake." *Id*. "Only when the court insisted on proof of disclosure did the AUSA acknowledge that no record of compliance even existed." *Id*. Additionally, "the dates on many of the subsequently disclosed documents post-date the beginning of trial, so the government eventually had to concede that it had failed to disclose material documents relevant to impeachment of witnesses who had already testified." *Id*. The Ninth Circuit found that:

> the failure to produce documents and to record what had or had not been disclosed, along with the affirmative misrepresentations to the court of full compliance, support the district court's finding of "flagrant" prosecutorial misconduct even if the documents themselves were not intentionally withheld from the defense.

*Id*. The court noted "as particularly relevant the fact that the government received several indications, both before and during trial, that there were problems with its discovery production and yet it did nothing to ensure it had provided full disclosure until the trial court insisted it produce verification of such after numerous complaints from the defense." *Id*.

*Chapman* is easily distinguishable from this case. As explained previously, there have been no discovery violations and there is no new evidence in this case. The Supplemental Notification was provided based on a recent determination that some of the evidence used in this case—namely certain information that was collected pursuant to the Title I and Title III FISA

collections referenced in the original FISA notice—was itself also derived from prior Title VII collection. This evidence is the same evidence that has been previously addressed during the course of the litigation. Thus, the provision of the Supplemental Notification does nothing to change the discovery obligations with which the government has steadfastly complied for more than three years. (Gov't's Resp. 4).

### D. Defendant Cannot Show Substantial Prejudice

Dismissal under the Court's general supervisory powers is not proper unless the defendant can show substantial prejudice. *Barrera-Moreno*, 951 F.2d at 1093 (citation omitted). Moreover, dismissal of an indictment "is appropriate when the investigatory or prosecutorial process has violated a federal constitutional or statutory right and no lesser action is available." *Id*. Defendant has not made either such showing.

Defendant argues that "the requested remedies are appropriate because the lack of notice involved issues that pervaded the pretrial motions and trial of the case." (Def.'s Mem. 14-15). He claims that there is "no way to go back and, with any certainty, determine what defense strategies would differ, how the Court rulings would have been affected, and what the government might have done differently." (*Id*. at 15). Whether or not these claims are true, they do not establish "substantial prejudice," as required by the case law. For example, there is no cause to believe that the failure to provide the Title VII notice pretrial undermined confidence in the jury's verdict. *See Kearns*, 5 F.3d at 1255 (finding that failure to turn over impeachment evidence was not "sufficiently prejudicial that confidence in the jury's verdict is undermined"); *United States v. Gartmon*, 146 F.3d 1015, 1029 (D.C. Cir. 1998) (defendant not prejudiced by government agents' violation of rule prohibiting contact between prosecution team and jurors

**Government's Response to Defendant's Motion for Vacation of Conviction and Alternative Remedies**     **Page 15**

where juror was not influenced by this contact).  Moreover, once the Department determined that information obtained or derived from Title I or Title III FISA collection may, in particular cases, also be derived from prior Title VII collection, the government acted diligently to review the proceedings in this case and provide the Supplemental Notification.  *See United States v. Renzi*, 722 F. Supp. 2d 1100, 1132 (D. Ariz. 2010) (finding no substantial prejudice due to interception of attorney-client privileged calls in Title III wiretap because, among other things, government engaged in protective measures to protect defendant's privilege and foreclose any prejudice).

Defendant also has not and cannot show that "no lesser action [than dismissal] is available."  *Barrera-Moreno*, 951 F.2d at 1092.  Rather, the appropriate remedy for the delayed Title VII notice is to enable defendant to challenge the lawfulness of the underlying Title VII collection.  Contrary to defendant's claim, there is no need for any additional remedies to deter future government misconduct. (Def.'s Mem. 12-13).  There has been no intentional misconduct in this case.  And, in any event, the potential for post-trial suppression of evidence provides sufficient deterrence of any potential government misconduct.  *See Davis v. United States*, 131 S. Ct. 2419, 2429 (2011) (noting that exclusion of illegally obtained evidence is a "harsh sanction"); *United States v. Nicholson*, 721 F.3d 1236, 1256 (10th Cir. 2013) ("[E]xclusion is an especially potent remedy" in deterring official misconduct, but "not one individuals may insist on as a matter of personal constitutional right.") (internal quotation marks omitted).

V.     **Neither Rule 16(d) Nor Brady Provides for Dismissal of the Indictment in This Case**

Defendant argues that Rule 16(d) and the Court's discretion to remedy violations of *Brady v. Maryland*, 373 U.S. 83 (1963), provide the Court with an alternative basis on which to dismiss the indictment or suppress evidence, resurrecting an argument from his discovery motion

**Government's Response to Defendant's Motion for Vacation of Conviction and      Page 16
Alternative Remedies**

that the reasoning of *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013), applies here.  (Def.'s Mem. 15-16).  Defendant's reliance on *Hernandez-Meza* is misplaced because, among other things, there is no discovery or *Brady* violation in this case.  Further, the deficiency in this case—the government's failure to give timely notice of one of the particular types of FISA collection from which evidence used at trial was derived—had no bearing on the fairness or reliability of the trial as a vehicle for adjudicating the defendant's guilt or innocence, because it affected only the defendant's ability to raise a challenge to Title VII as a basis for suppression.  (*See* Gov't's Resp. 12-14).

In addition, the discovery rules at issue in *Hernandez-Meza* expressly authorize the district court to "take such remedial measures as it deems appropriate, including continuing the trial or declaring a mistrial."  720 F.3d at 769 (citing Fed. R. Crim. P. 16(d)(2)).  FISA, on the other hand, does not specifically provide for "remedial measures" for untimely notice, other than permitting a post-trial suppression motion.  *See* 50 U.S.C. § 1806(e).   For these reasons, *Hernandez-Meza* and other *Brady*-related cases do not support defendant's request for discovery to explore remedies beyond the suppression proceeding that Congress and this Court's order have provided.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Government's Response to Defendant's Motion for Vacation of Conviction and Alternative Remedies**     **Page 17**

## VI. Conclusion

Based on the foregoing discussion and analysis, the defendant's motion for vacation of his conviction and alternative remedies of dismissal of the indictment, suppression of evidence, and a new trial should be denied.

Dated this 2nd day of May 2014.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney

 *s/ Ethan D. Knight*
ETHAN D. KNIGHT, OSB #99298
PAMALA R. HOLSINGER, OSB #89263
Assistant United States Attorneys
(503) 727-1000

JOLIE F. ZIMMERMAN, DCB #465110
Trial Attorney, Counterterrorism Section
National Security Division