S. AMANDA MARSHALL, OSB #95347
United States Attorney
District of Oregon
**ETHAN D. KNIGHT**, OSB #99298
**PAMALA R. HOLSINGER**, OSB #89263
**RYAN W. BOUNDS**, OSB #00012
Assistant United States Attorneys
ethan.knight@usdoj.gov
pamala.holsinger@usdoj.gov
ryan.bounds@usdoj.gov
1000 SW Third, Suite 600
Portland, OR 97204-2902
Telephone:   (503) 727-1000
Facsimile:   (503) 727-1117
**JOLIE F. ZIMMERMAN**, DCB #465110
Trial Attorney
Counterterrorism Section
National Security Division
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | Case No. 3:10-CR-00475-KI |
| v. | |
| MOHAMED OSMAN MOHAMUD,<br><br>Defendant. | GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECOND MOTION FOR NEW TRIAL |

The United States of America, by S. Amanda Marshall, United States Attorney for the District of Oregon, and through Ethan D. Knight, Pamala R. Holsinger, and Ryan W. Bounds, Assistant United States Attorneys, hereby submits this response in opposition to defendant's Second Motion for a New Trial (ECF No. 504).

## I.   Background

On November 19, 2013, the United States filed its "Supplemental FISA Notification," which supplemented the government's original notification, made pursuant to the Foreign Intelligence Surveillance Act of 1978 (FISA), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829, that had been filed when the defendant was indicted and first appeared in court. (ECF No. 486.)   The Supplemental Notification informed defendant and the Court that certain evidence or information offered into evidence or otherwise used or disclosed in this case was "derived from acquisition of foreign intelligence information conducted pursuant to Section 1881a of FISA, 50 U.S.C. §1881a.   (*Id*.).   Section 1881a, enacted as Section 702 of the FISA Amendments Act of 2008 (FAA), authorizes the acquisition of foreign intelligence information targeting non-U.S. persons located outside the United States, subject to certain statutory requirements.   50 U.S.C. § 1881a.

On April 4, 2014, defendant moved for a new trial, claiming that the "*new evidence* regarding the [FISA] notice violation, and the facts underlying the late notice, demonstrate infringement of the defendant's right to present a complete defense, misleading or false trial testimony, and failure to provide evidence favorable to the defense."   (Def.'s Mot. 1-2) (emphasis added).   Rule 33 of the Federal Rules of Criminal Procedure provides that, on a defendant's motion, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires."   Fed. R. Crim. P. 33(a).   A motion for a new trial under Rule 33 "must be filed within 14 days after the verdict," unless it is "grounded on newly discovered evidence."   Fed. R. Crim. P. 33(b).[1]

---

[1]   Although defendant does not cite to Rule 33 in his motion, the government presumes that

**Government's Opposition to Defendant's Second Motion for New Trial**                                **Page 2**

Defendant's motion is without merit and should be denied. First, there is no "newly discovered evidence" in this case, and thus defendant's motion is untimely under Fed. R. Crim. P. 33. Second, defendant has not established that the interest of justice otherwise requires granting a new trial in this case.

## II.     Defendant Cannot Satisfy the Ninth Circuit's Test for Granting a New Trial

To prevail on a Rule 33 motion for a new trial based on newly discovered evidence, a defendant must satisfy the five-part test outlined in *United States v. Harrington*, 410 F.3d 598, 601 (9th Cir. 2005). *United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009) (en banc).

> The *Harrington* test requires a party seeking a new trial to prove each of the following: (1) the evidence is newly discovered; (2) the defendant was diligent in seeking the evidence; (3) the evidence is material to the issues at trial; (4) the evidence is not (a) cumulative or (b) merely impeaching; and (5) the evidence indicates the defendant would probably be acquitted in a new trial.

*Hinkson*, 585 F.3d at 1264 (citing *Harrington*, 410 F.3d at 601).[2] As explained in the government's response to defendant's Motion for Full Discovery Regarding the Facts and Circumstances Underlying Surveillance (Gov't's Resp., ECF No. 491), there is no new evidence in this case. That fact alone is fatal to defendant's motion since there is no new evidence based upon which he "probably would be acquitted at trial." *Hinkson*, 585 F.3d at 1264; *see United States v. Wilkes*, 744 F.3d 1101, 1110 (9th Cir. 2014) ("We need not address the first four

---

defendant is relying on Fed. R. Crim. P. 33(b)(1).

[2] The standard for a Rule 33 motion based on newly discovered evidence resulting from a *Brady* violation is different and requires a finding of materiality: "'The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *United States v. Walgren*, 885 F.2d 1417 (9th Cir. 1989) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1984)) (internal quotation marks omitted); *see also United States v. Holmes*, 229 F.3d 782, 789 (9th Cir. 2000). Here there has been no *Brady* violation.

prongs, because it is clear that the new evidence would not 'probably result in acquittal.'") (quoting *Harrington*, 410 F.3d at 601); *see also United States v. Foster*, 547 Fed. App'x. 305, 306 (4th Cir. 2013) (allegation that government violated its disclosure obligations under 18 U.S.C. § 2518(9) (2012) did not warrant granting of new trial under Fed. R. Crim. P. 33 because evidence defendant claimed government improperly had withheld did not "impugn the validity of the wiretaps in question").

The Supplemental Notification was provided based on a post-trial determination that some of the evidence used in this case—namely certain information that was collected pursuant to the Title I and III FISA collection referenced in the original FISA notice—was itself also derived from prior Title VII collection.   This evidence is the same evidence that has been previously addressed during the course of the litigation.   The provision of the Supplemental Notification thus does nothing to change the discovery obligations with which the government has steadfastly complied for more than three years.[3]   (Gov't's Resp. 4).

Defendant's motion is premised on the mistaken belief that the Supplemental Notification creates an inference of the existence of "government surveillance [that was] pervasive in scope" and "ubiquitous."   (Def.'s Mem., ECF No. 505, at 3, 6).   Defendant then claims that this purported inference is new evidence: "[t]he withheld evidence at issue – whether the fact of

---

[3] Discovery in criminal cases is generally governed by Rule 16 of the Federal Rules of Criminal Procedure, the Jencks Act (18 U.S.C. § 3500), and *Brady v. Maryland*, 373 U.S. 83 (1963), along with cases decided thereunder.   The law does not permit discovery based on defense speculation.   *See United States v. Michaels*, 796 F.2d 1112, 1116 (9th Cir. 1986) ("[M]ere speculation about materials in the government's files [does not require] the district court . . . under *Brady* to make the materials available for [defendant's] inspection.") (citation omitted). Even defendant admits that he cannot identify the "new" evidence and surveillance that he claims are at issue in his motion, acknowledging they are "unknown."   (Def.'s Mem. 6). There is no new evidence.   Defendant's claims of governmental discovery violations are based on pure speculation.

**Government's Opposition to Defendant's Second Motion for New Trial**          **Page 4**

additional surveillance, the scope of that surveillance, or the evidence generated by that surveillance – was materially relevant and helpful to the defense on both the predisposition and the inducement prongs of the entrapment defense." (*Id*. at 2). In reality, the notification creates no such inference and his claim should be rejected.

Section 702 does not permit the intentional targeting of U.S. persons. *See* 50 U.S.C. § 1881a(b). Defendant, as a United States citizen, was not targeted for acquisition of foreign intelligence information under Section 702. All the Supplemental Notification therefore indicates is that his communications were collected *incidentally* under Section 702, in the course of intelligence collection targeted at one or more non-U.S. persons located overseas. Accordingly, defendant's assumption that the Supplemental Notification reveals new evidence of the existence of "pervasive" surveillance targeting defendant is entirely groundless.

Defendant also appears to suggest that the Supplemental Notification itself would have been admissible evidence. (*See* Def.'s Mem. 4 (referencing "the new fact of the violation of the FISA notice statute")). The Supplemental Notification simply identifies a statutory authority and cannot be considered "evidence" at all. There is no reason to believe that the notification itself would have been admitted for the jury's consideration, since the statutory bases for the government's actions were irrelevant to any issue at trial. Likewise, defendant's claim that evidence of Section 702 collection might have permitted him to "impeach government witnesses" (Def.'s Mem. 6) is groundless. Except in extraordinary circumstances, "evidence that would merely impeach a witness cannot support a motion for a new trial." *United States v. Kulczyk*, 931 F.2d 542, 549 (9th Cir. 1991); *see United States v. Alexander*, 695 F.2d 398, 402 (9th Cir. 1982) ("Evidence which is merely impeaching is not sufficient to support a motion for

Government's Opposition to Defendant's Second Motion for New Trial          Page 5

new trial."); *cf. United States v. Davis*, 960 F.2d 820, 825 (9th Cir. 1992) (holding impeachment evidence may be material if it would render sole witness as to "essential element" of charged offense "totally incredible").

Defendant's claim that that the underlying Section 702-derived information was "relevant and helpful" to his defense is similarly baseless.[4]  A review of the specific information at issue, set forth in detail in the Government's Classified *In Camera*, *Ex Parte* Response to Defendant's Alternative Motion for Suppression of Evidence and a New Trial and contained in prior court filings, clearly demonstrates that it would not have been helpful to the defense and would not have resulted in acquittal.

### III.    The Interest of Justice Does Not Require the Granting of a New Trial

Defendant does not specify why the interest of justice requires that the Court grant him a new trial, but his argument seems to be based on the faulty premise that the government withheld "[e]vidence of additional surveillance activity" that "would have been relevant and helpful to the defense." (Def.'s Mem. 1-2).  Defendant contends that this alleged additional evidence "likely

---

[4] Throughout his motion, defendant uses the phrase "relevant and helpful to the defense" to describe the nature of the allegedly withheld evidence.  (*See, e.g.*, Def.'s Mem. 1-2).   This is the same standard that is used in the Ninth Circuit and elsewhere in determining the discoverabilty of classified information: "In order to determine whether the government must disclose classified information, the court must determine whether the information is 'relevant and helpful to the defense of an accused.'"  *United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (quoting *United States v. Yunis*, 867 F.2d 617, 623 (D.C. Cir. 1989)) (other citations omitted).   Defendant clearly believes that using this language will cause the Court to reconsider its rulings on the various motions filed by the government seeking to withhold classified material from information that otherwise would be provided in discovery to the defense pursuant to Section 4 of the Classified Information Procedures Act, 18 U.S.C. app. 3 (CIPA).   The government recognizes that defendant is at a disadvantage, not having seen any of the classified CIPA filings, which were litigated *ex parte*.   The Court has, however, and the government submits that there is no basis to revisit those rulings, on account of the Supplemental Notification or otherwise.

would have enabled the defense to impeach the government's narrative with respect to the propriety of the investigation," thus warranting a new trial. (*Id*. at 2). Defendant further claims that the withholding of this "important evidence violated *Brady* and the due process right to present a complete defense."[5] (*Id*. at 7). Defendant's arguments are entirely without merit.

First, had the government notified defendant of the use of the Section 702-derived information at the time of the initial FISA notification back in November 2010, there would have been no alleged statutory violation to add to defendant's various allegations of "government overreaching." (Def.'s Mem. 4). The only difference would have been that the parties would have litigated defendant's motion to suppress the Section 702-derived evidence pretrial, as opposed to the post-trial litigation now before the Court.

Second, defendant mischaracterizes the record in claiming that there were "sharp disputes" and "fiercely contested" factual issues in "this very close case" (Def.'s Mem. 2, 6, 7), apparently in an attempt to justify the granting of a new trial. To the contrary, the government presented overwhelming evidence of defendant's guilt at trial. The evidence presented at trial established that by the time defendant had met Youssef (a man he thought was an al Qaeda recruiter), he had already come to believe that violence against civilians, inside or outside the United States, was a justified response to what defendant perceived as the killing of innocent

---

[5] There has been no *Brady* violation in this case. Further, defendant fails to explain how the delayed notice violated his due process rights. Even assuming the untimely notice did amount to a due process violation, there is no reason why such a violation would require a remedy beyond providing defendant with the opportunity to litigate his suppression motion now. No further remedy is necessary where the alleged violation was neither intentional, flagrant, nor prejudicial. *See, e.g.*, *Davis v. United States*, 131 S. Ct. 2419 (2011); *Herring v. United States*, 555 U.S. 135 (2009); *Hudson v. Michigan*, 547 U.S. 586 (2006); *United States v. Wong*, 431 U.S. 174, 179 n.6 (1977) (questioning whether suppression would be the proper remedy even assuming a due process violation).

**Government's Opposition to Defendant's Second Motion for New Trial** **Page 7**

Muslims in Afghanistan by the United States and its allies. At trial, the evidence also established the radical nature of defendant's activities and mind-set before the FBI's intervention. The jury was presented with defendant's extensive writings in support of violence against the United States and its allies. The jury also heard testimony about defendant's relationship and fellowship with known al Qaeda terrorists, and the jury heard hours of defendant's own recorded statements describing his justification for mass murder and his intent to commit it.

At defendant's request, the Court instructed the jury to "accept as proven" that the government "review[ed] or listen[ed] in on his computer files, text messages, e-mails, and phone calls" and that the government had access not only to real-time surveillance of such data and communications but also "historical records" of the same. (Trial Tr. 381). Defense counsel also emphasized in his closing argument the "pervasive . . . scope" of the government's surveillance and its purported implications for the government's alleged inducement of defendant:

> And remember, they've had massive electronic surveillance for months and months and months where they read *every* e-mail, *every* text message, listen to *every* phone call, follow his computer activity. *They know everything about him.*

(Trial Tr. 2615) (emphases added). In convicting defendant, the jury clearly rejected defendant's argument that "pervasive" government surveillance somehow mitigated his guilt. There is no reason to believe that any additional arguments about the scope of the government's surveillance based on the use of Section 702-derived evidence would have changed that result such that the interest of justice requires a new trial due to defendant's alleged inability to make them.

**Government's Opposition to Defendant's Second Motion for New Trial**     **Page 8**

## IV.     Conclusion

Because there is no "newly discovered evidence" in this case, Defendant's Second Motion for a New Trial is therefore untimely and meritless.  Fed. R. Crim. P. 33(b)(2). Moreover, it fails to establish that a new trial is warranted in "the interest of justice."  Fed. R. Crim. P. 33(a).  Defendant's motion should be denied.

Dated this 2nd day of May 2014.

Respectfully submitted,

S. AMANDA MARSHALL
United States Attorney


*s/ Ethan D. Knight*
ETHAN D. KNIGHT, OSB #99298
PAMALA R. HOLSINGER, OSB #89263
RYAN W. BOUNDS, OSB #00012
Assistant United States Attorneys
(503) 727-1000

JOLIE F. ZIMMERMAN, DCB #465110
Trial Attorney, Counterterrorism Section
National Security Division