**Stephen R. Sady**
**Chief Deputy Federal Public Defender**
steve_sady@fd.org
**Steven T. Wax**
**Federal Public Defender**
steve_wax@fd.org
**Lisa Hay**
**Assistant Federal Public Defender**
lisa_hay@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204
503-326-2123 Telephone
503-326-5524 Facsimile

**Attorneys for Defendant**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | Case No. 3:10-cr-00475-KI |
| Plaintiff, | **REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES** |
| v. | |
| **MOHAMED OSMAN MOHAMUD,** | |
| Defendant. | |

**Introduction**

      The government's response fails to provide the factual account of who knew and did what when and why.  The facts are necessary for the Court to meaningfully assess the violation of the

**PAGE 1    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES**

mandatory pretrial notice statute. Instead of providing affidavits, declarations, or documents explaining exactly what happened, the government continues to provide inconsistent and inadequate claims in the pleadings to explain why the notice was not timely. The record as it exists warrants dismissal or at least suppression to remedy the statutory and constitutional violation because, in the absence of a clear factual recitation, subject to confrontation, the defense has established a prima facie case for reckless or intentional failure to provide the required pretrial notice. The remedy for the violation, under both the statute and within the Court's discretionary authority, is to vacate the conviction and either dismiss the indictment or order a new trial with the products of the warrantless surveillance suppressed.

A.   **The Government Failed To Provide The Court With A Coherent And Consistent Account Of The Failure To Provide Pretrial Notice Of Warrantless Surveillance.**

When the government violates a discovery obligation to provide pretrial notice that is required by statute, the Court should receive a simple and straightforward explanation of what happened by persons with actual first-hand knowledge of the relevant events. Government declarations, affidavits, and documents would provide the Court with the ability to arrive at reasoned answers to at least these basic questions:

- Who had knowledge that § 1881a surveillance was implicated in this case and when was such knowledge gained;

- Who was involved in any decision not to provide pretrial notice of § 1881a surveillance and when was such a decision made;

- What justification, if any, was relied upon in any decision not to provide pretrial notice of § 1881a surveillance and what led to the filing of the supplemental notice;

PAGE 2    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES

- What, if any, notice was this Court given about § 1881a surveillance relative to Mohamed (or other persons relevant to this case) prior to trial.

CR 496 at 2. Instead, the government provides vague, inconsistent, and conclusory claims in pleadings, unsupported by any factual development, to claim that the belated admission of the statutory violation "demonstrates the government's good faith." CR 507 at 2.

The government's response, rather than answering the direct questions before the Court, continues to use the opaque language in earlier pleadings. The government repeatedly refers to a recent "determination" that the later searches were derivative. CR 507 at 2 n.1; 3; 4; 5 n.2; 8. But the government also repeats its assertions on consecutive pages of its discovery response that the "Department had not considered" the question, while at the same time maintaining that prosecutors "acted in accordance with the Department's then-current standard practice." CR 507 at 4. The government claims that these are not "contradictory" positions, but the government, to establish a standard practice, must have considered the underlying issue. *Id*.

In footnote 2, the government addresses the controversy surrounding *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013), again taking inconsistent positions. In its discovery reply, the government affirmatively represented to the Court that, because the *Clapper* case did not involve the "precise circumstances" under which information is considered derived, "that case has no bearing here." CR 491 at 8 n.4. The defense argued, and continues to argue, the government's *Clapper* representations have bearing on this case because they led to the internal Department of Justice review that concluded that the government's policy and practice of withholding notice violated the law. CR 489 at 6-10. Now, again in a footnote, the government does not admit or deny the "internal government" debate, only claiming reliance is "misplaced" because such a change in practice would

PAGE 3    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES

have "absolutely no legal significance." CR 507 at 4 n.2. Of course such a debate and decision would have legal significance: it would mean that the policy and practice of non-disclosure resulted from deliberate decisions that were changed based on the conclusion that the earlier decisions – the then-current standard practice – was legally untenable.[1]

Without providing any evidence of what occurred, the government claims that notice was not "intentionally" withheld. CR 507 at 3. As previously briefed, the public record and fair inferences therefrom establish that the government's "then-current standard practice" was indeed an intentional decision or, at least, in reckless disregard of statutory and constitutional rights to pretrial notice. Not only is the statute crystal clear in requiring notice of derivative uses of warrantless surveillance, the government had to make deliberate decisions not to provide requested discovery by this particular defendant, in this particular case, because the defense specifically and repeatedly asked for information about warrantless surveillance leading to later investigatory efforts. CR 489 at 44-46. Even if there were nothing more than the statutory violation, the presumption would be that the government knew the law – which the government now admits requires notice of the warrantless surveillance in the present case. *See Atkins v. Parker*, 472 U.S. 115, 130 (1985) ("All citizens are

---

[1] Footnote 2 goes on to assert that the public *Clapper* events occurred after the pretrial motions and before the supplemental notice. CR 507 at 5 n.2. This timing establishes the strong prima facie case that, prior to the *Clapper* controversy, the government had a deliberate and articulated policy and practice of withholding notice of warrantless surveillance that, after the internal debate initiated by the Solicitor General, was determined to violate the plain language of the notice statute.

**PAGE 4    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES**

presumptively charged with knowledge of the law").[2] Although such a presumption would be doubly appropriate for attorneys, the government has not provided one iota of evidence to rebut the presumption that the government knew of the pretrial notice requirement but nevertheless failed to comply with it.

Lastly, recent developments accentuate the need for factual development. The defense previously pointed out that – despite the government's claim that *Clapper* "has no bearing here" – the acting chief of the National Security Division referred to the present case during a Senate committee meeting, stating the brief reflected the government's position on the notice statute after *Clapper*. CR 496 at 15-16. Now it appears that a newly released letter from the Justice Department regarding the *Clapper* matter contains text identical to the text in the government's brief in this case. Letter from Principal Deputy Assistant Attorney General Peter J. Kadzik, dated December 24, 2013, at 2, *linked in* Charlie Savage, *Justice Dept. Criticized on Spying Statements*, N.Y. Times, May 13, 2014. The sentence in the letter is identical to the sentence in the brief.[3] The letter is dated December 24, 2013 – the brief was filed February 13, 2014. The Court can consider that the government quoted from a letter regarding *Clapper*, without attribution, while claiming on the next

---

[2] The government's repeated characterization of its change in interpretation "as a matter of law" is puzzling. CR 507 at 4. The statute always meant exactly what it said (*see Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 312-13 (1994)), and there has never been a defensible construction of "derivative" that did not require pretrial notice under the circumstances of this case

[3] Based on a recent review, "the Department has determined that information obtained or derived from Title I FISA collection may, in particular cases, also be derived from prior Title VII FISA collection, such that notice concerning both Title I and Title VII should be given in appropriate cases with respect to the same information." CR 491 at 7. Other language in the brief's footnote 4 is nearly identical to the December 24th letter. CR 491 at 8.

**PAGE 5    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES**

page that *Clapper* "has no bearing here." Discovery and factual development are reasonable and necessary under the facts of this case.

**B.    The Relevant Statutes Should Be Construed To Require Dismissal Or Suppression As The Remedy For Failure To Provide The Mandatory Pretrial Notice Of Warrantless Surveillance.**

Where the government intentionally violates the pretrial notice statute, or does so with equivalent recklessness, the Court should interpret the statute – 50 U.S.C. § 1806(c) – to require dismissal of the indictment or, at least, suppression of the evidence obtained and derived from warrantless surveillance. The government correctly points out that the defense asserts how the Court "should" interpret the statute because the remedy under these circumstances requires statutory construction. CR 507 at 6. Contrary to the government's claim, the face of the statute does not expressly address the remedy for intentional or reckless violation of the statute: although the statute is written in the mandatory "shall," the Court should look to the statute's context and legislative history to determine the logical consequences from deliberate or reckless conduct that, by creating a "then-current standard practice" of providing no notice, insulated the constitutionally suspect FAA from meaningful judicial review for the past six years.

In context, the face of the statute is not only mandatory but includes no qualification that would allow for withholding notice where the government knows of the warrantless surveillance: "the Government shall, prior to trial, hearing, or other proceeding or at a reasonable time prior to an effort to so disclose or so use that information or submit it in evidence, notify the aggrieved person and the court or other authority in which the information is to be disclosed or used that the Government intends to so disclose or so use such information." 50 U.S.C. § 1806(c). Allowing the government to intentionally or recklessly withhold notice without the consequence of dismissal or

**PAGE 6    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES**

suppression would render the requirement illusory and the statute absurd. *See Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available."); *Ariz. State Bd. for Charter Schools v. U.S. Dep't of Educ.*, 464 F.3d 1003, 1008 (9th Cir.2006) ("[W]ell-accepted rules of statutory construction caution us that 'statutory interpretations which would produce absurd results are to be avoided.'"). Under the government's theory, the prosecution could intentionally withhold notice until after the trial, which would mean that for the overwhelming number of cases that are resolved by guilty plea, the aggrieved person would never know, and, for the remaining fraction of cases, the pretrial motions deadlines under Rule 12 would be a complete mockery because the defense would not know to move to suppress on FAA grounds.

To avoid the absurd interpretation that would allow intentional and reckless withholding of notice, the statute should be construed consistently with its purpose and legislative history. *Griffin*, 458 U.S. at 575. Just as a court order regarding disclosure of informants would require the government to choose between disclosure and dismissal under the trilogy of Supreme Court cases, the mandatory statute confronts the government with the identical choice. CR 501 at 7-10 (citing *Alderman v. United States*, 394 U.S. 165 (1969); *Jencks v. United States*, 353 U.S. 657 (1957); *Roviaro v. United States*, 353 U.S. 53 (1957)). Just as the legislative history referenced the disclosure-or-dismissal choice, the Court should construe the statute to provide the same approach. CR 501 at 8. No plain language in § 1806(c) addresses the remedy for intentional or reckless violations, so the Court must construe the statute consistently with its purpose, which was to assure – in mandatory language – litigation of warrantless surveillance prior to trial.

The intention to require pretrial litigation is clear from the legislative history. Contrary to the government's claim, the reference in the Senate Report to the disclose-or-dismiss choice was not limited to disclosure of "the FISA materials authorizing electronic surveillance, not to disclosure of FISA-based evidence." CR 507 at 8. In the government's parenthetical referencing pages 63 to 64 of the report, the ellipsis cuts out the rest of the sentence – including reference to determination the surveillance was "conducted in a manner which did not violate any constitutional or statutory right" – and the following sentence, which refers to "other materials relating to the surveillance," is not included. The relevant pages of the legislative history are attached as Exhibit A. The disclosure requirement referenced in the legislative history fully encompasses notice of the fact of surveillance, the underlying documents, and the results. When Congress cross-referenced the mandatory notice requirement for warrantless surveillance, the same interest in pretrial notice and potential litigation triggered the same disclose-or-dismiss obligation.

The government's reliance on the statutory provision for motions to suppress misses the point. The statute only applies to information "unlawfully acquired" and surveillance "not made in conformity with an order of authorization or approval." 50 U.S.C. § 1806(e). There is no reference to violation of the notice statute, nor is there reference to intentional or reckless violations of § 1806(c). The statute only applies to when the defendant shall file a motion, which "shall be made" before trial, "unless there was no opportunity to make such a motion or the person was not aware of the grounds for the motion." Under those circumstances, a motion can be filed during or after trial, where the "grounds" for asserting unlawfulness were not previously known, not that there was no notice at all of the existence of the surveillance. The suppression statute does not address intentional

or reckless violation of the notice statute – § 1801(c) – which should be construed to require dismissal or suppression as the remedy for failure to provide the mandatory pretrial notice.

The government's position depends on a statement that the Court should simply reject: "the government has not affirmatively withheld disclosure of the use of Title VII-derived evidence in defiance of a court order *or other determination that such disclosure need be provided*." CR 507 at 9 (emphasis added). Congress determined that such disclosure need be provided in section 1806(c), so there was an "other determination that such disclosure need be provided." The legislative requirement is the functional equivalent of a court order requiring pretrial disclosure. The government affirmatively withheld the disclosure pursuant to its "then-current standard practice," despite specific and repeated pretrial requests for exactly the disclosure of warrantless surveillance leading to later warranted surveillance. The disclose-or-dismiss choice inherent in the statute should result in dismissal of the indictment.

At the least, the Court should follow the Fourth Circuit's recognition that, apart from suppression for being unlawfully conducted, violation of the notice requirement itself generates the remedy of suppression of evidence obtained and derived from surveillance about which notice was withheld. *In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 201 (4th Cir. 2010). In *T-112*, as in the present case, the government asserted emphatically that all discovery had been provided. In *T-112*, as in the present case, the relevant statute required a notice that was not provided. In both cases, the Court can find that the "proper remedy is exclusion under Title III or FISA, a remedy which is triggered when the government seeks to introduce evidence into a covered proceeding."

PAGE 9    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES

*Id*. The failure to do so reduces the protections intended by the notice requirement to a mere form of words.[4]

### C. Each Of The Relevant Factors For Exercise Of Supervisory Powers To Dismiss Or To Suppress Applies To This Case And Strongly Favors Remedial Action By The Court.

The parties appear to agree on the non-exclusive list of three factors to be considered in the exercise of supervisory power. CR 507 at 7. However, the government fails to recognize that the definition of "flagrant" conduct that warrants dismissal or suppression includes reckless conduct, as held in *United States v. Chapman*, 524 F.3d 1073, 1085 (9th Cir. 2008). Further, the government claims "there is no constitutional violation," even assuming the statutory violation. CR 507 at 12. On the contrary, the notice statute codifies what, in the absence of statute, would be the procedural due process requirement of notice and an opportunity to be heard regarding the fundamental question of whether evidence was obtained or derived in violation of the Constitution. *See Simmons v. United States*, 390 U.S. 389, 393 (1968) (right to litigate Fourth Amendment claim required protection of defendant from self-incrimination for testimony necessary to establish grounds for suppression). Each of the three factors considered in the exercise of supervisory power is implicated in the present case. CR 501 at 12-14.

**Implementation of a remedy for the violation of a recognized statutory or constitutional right:** Without dismissal or suppression, there is no separate and meaningful remedy for the

---

[4] Contrary to the government's claim (CR 507 at 9 n.4), the language of *United States v. Coplon*, 185 F.3d 629 (2d Cir. 1950), and Judge Hand's commentary are relevant to the suppression remedy because, where the government intentionally or recklessly violates a statutory right (which in this case also codifies a constitutional right to notice), the absence of an exclusionary rule remedy undercuts the rule of law "on which the liberty of us all depends." CR 501 at 10-11

**PAGE 10   REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF CONVICTION AND ALTERNATIVE REMEDIES**

violation of the notice requirement, which both the statute and due process mandate. The government's claim that a post-trial suppression hearing is an adequate remedy should be rejected because such a hearing would provide a remedy for unlawful surveillance, if the Court finds illegality in the authorization or conduct of the surveillance program, but provides no remedy for the intentional or reckless violation of the notice statute. The defendant and society at large suffer a separate remedial injury when the government flouts its statutory obligation, especially in a context that successfully insulated a questionable program from meaningful judicial review for six years.

**Preservation of judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury:** By withholding notice of the warrantless surveillance, the government compromised the integrity of the jury trial. The government's claim that "there is no allegation that any inappropriate evidence was presented to the jury" is incorrect. Government agents testified without effective cross-examination about the timing and conduct of the investigation inconsistently with the facts as would be known with pretrial notice of the warrantless surveillance. Further, the defense pretrial motions regarding admissibility of evidence were repeatedly undercut by claims regarding the genesis and early stages of the investigation that omitted relevant information regarding the role and results of warrantless surveillance. As elaborated in the second motion for a new trial (CR 505), the government's evidence at trial could have been impeached on cross-examination, and the defense could have presented favorable evidence regarding the duration, detail, and results of the additional surveillance. The now-revealed failure to comply with a statutory obligation permeated both the pretrial motions and the conduct of the trial in a manner that comprehensively tainted the proceedings.

**Deterrence of future illegal conduct:** The need for deterrence is most acutely demonstrated by the government's response: "there is no 'illegal conduct' that must be deterred." CR 507 at 12. The government is telling the Court that its violation of the notice law, despite the mandatory nature of the pretrial notice statute and the admitted failure to provide pretrial notice, was not illegal: "there have been no discovery violations." CR 507 at 14. Just as in *Chapman* the government's reckless failure to abide by a discovery order constituted "illegal conduct," the government's failure to abide by the discovery statute requiring pretrial notice is unlawful and should be deterred. The need for deterrence is especially great in this case where the government, as it did in *Chapman*, lacked "contrition" for the discovery violation and "minimize[d] the extent" of the law violation. 524 F.3d at 1088. Rather than expressing any concern over the institutional policy and practice of keeping defendants in the dark about warrantless surveillance, the government congratulates itself on providing the late notice "without any prompting by the defense or Court." CR 507 at 13 n.5.[5] The government's tortuous and contradictory unsworn excuses magnify the need for the Court to communicate through exercise of its supervisory power that such law violations have real consequences.

**D.     Both Rule 16(d) And *Brady* Directly Apply To The Failure To Provide Mandatory Pretrial Notice Of Warrantless Surveillance And Require The Remedy Of Dismissal Or, In The Alternative, Suppression.**

The government's position on Rule 16(d) and *Brady* simply amounts to a general denial. CR 507 at 16-17. Whether on the current record or as supplemented by discovery, the government

---

[5] Of course the defense repeatedly "prompted" the government pretrial to disclose warrantless surveillance, to no avail, and, despite the government's apparent denials, the effective prompting appears to be the Solicitor General's dismay upon discovering a policy and practice that was indefensible under the plain meaning of the notice statute.

PAGE 12    REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR VACATION OF
           CONVICTION AND ALTERNATIVE REMEDIES

violated the Court's discovery deadlines and the statute that required discovery of the existence of warrantless surveillance. Under Rule 16(d), the violation of discovery is remedial by dismissal or suppression. *United States v. Hernandez-Meza*, 720 F.3d 760 (9th Cir. 2013). The government's only response is to claim "there is no discovery or *Brady* violation in this case." CR 507 at 17. Ignoring an obligation to provide pretrial notice is a discovery violation, especially where the withheld notice implicated the defendant's statements (Rule 16 (a)(1)(A)), the defendant's writings (Rule 16(a)(1)(B)), and, as in *Hernandez-Meza*, information "material to preparing the defense" (Rule 16(a)(1)(e)(i)). Contrary to the government's claim that no *Brady* violation occurred, the government's failure to provide required pretrial notice profoundly affected the fairness and reliability of the trial, as elaborated in the second motion for a new trial. CR 505.

E.   **In The Alternative, The Court Should Order Discovery Regarding The Facts And Circumstances Surrounding The Failure To Provide Mandatory Pretrial Notice Of Warrantless Surveillance.**

The defense has previously briefed the appropriateness of discovery regarding the facts and circumstances surrounding the violation of the mandatory pretrial notice statute. CR 489 at 10-15; CR 496 at 3-16. The government provides no claim that discovery regarding violation of a statutory requirement is not explicitly required under the reasoning of *Chapman* and *Hernandez-Meza*, both of which require the Court to assess the facts and circumstances underlying the violation of the mandatory statute. Nor does the government invocation of national security for FISA materials appear to cover the facts surrounding the notice violation. CR 509-1. Especially where the government has provided extensive and contradictory claims in pleadings unsupported by affidavits, declaration, or documents, the Court should order production of real evidence of what happened or assume the worst.

**Conclusion**

For the foregoing reasons and those stated in the initial memorandum in support of the motion to vacate the conviction, the Court should, with or without discovery and an evidentiary hearing, vacate the conviction and dismiss the indictment or, in the alternative, set a new trial at which the evidence derived from the FAA electronic surveillance is suppressed.

Dated this 19th day of May, 2014.

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lisa Hay
Lisa Hay
Assistant Federal Public Defender

Mark Ahlemeyer
Research & Writing Attorney