Stephen R. Sady
Chief Deputy Federal Public Defender
steve_sady@fd.org
Steven T. Wax
Federal Public Defender
steve_wax@fd.org
Lisa Hay
Assistant Federal Public Defender
lisa_hay@fd.org
101 S.W. Main Street, Suite 1700
Portland, Oregon  97204
503-326-2123 Telephone
503-326-5524 Facsimile

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:10-cr-00475-KI |
| Plaintiff, | REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR A NEW TRIAL |
| v. | |
| MOHAMED OSMAN MOHAMUD, | |
| Defendant. | |

The government's arguments in response to the Second Motion For A New Trial are premised on the mistaken assumption that government surveillance does not constitute evidence. *See* CR 508 at 3 ("there is no 'newly discovered evidence' in this case); *id*. ("there is no new

evidence in this case"); *id*. at 9 (same). Contrary to the government's claim, the defense did not concede that there is no new evidence at issue. *See* CR 508 at 4 n.3 ("Even defendant admits that he cannot identify the 'new' evidence and surveillance that he claims are at issue in his motion, acknowledging they are 'unknown'"). In fact, the defense explicitly and repeatedly stated what new evidence is at issue. *See*, *e.g.*, CR 505 at 1 ("Evidence of additional surveillance"); *id*. at 2 ("Evidence of additional surveillance"); *id*. ("The withheld evidence at issue - whether the fact of additional surveillance, the scope of that surveillance, or the evidence generated by that surveillance"); *id*. at 4 ("massive scope of government surveillance activities revealed by the Snowden leaks"); *id*. ("new fact of the violation of the FISA notice statute"); *id*. at 5 ("withheld evidence of surveillance"); *id*. at 6 ("undisclosed surveillance now at issue").

In referring to the "unknown," the defense merely highlighted to this Court that the arguments in the brief were based on the limited information available to the defense due to the ex parte proceedings to date. CR 505 at 6-7. Further arguments or narrowing of issues would be likely if informed advocacy is permitted. Ultimately, however, the government's Response fails to cite any legal authority for the proposition that government surveillance cannot constitute trial evidence. Moreover, such a proposition is flatly contradicted by the facts of this case and the evidence adduced at trial. *See*, *e.g.*, Defense Trial Exhibit 1015 (summary chart entitled "FBI Physical Surveillance of Mohamed").

The defense also provided specific examples of how evidence of additional surveillance would have affected various issues at trial, including:

- Whether Mohamed was predisposed (CR 505 at 2-4 & n.1);

- Whether Mohamed was induced (*id*. at 3-4);

- Whether the FBI engaged in improper conduct during the course of the investigation by violating the Constitution (*id.* at 4 & n.2);

- Whether the government's trial presentation of the Interpol Red Notice accurately reflected the true state of affairs and the government's actual knowledge with respect to Amro Al-Ali (*id.* at 6);[1]

- Whether the testimony of various FBI agents – offered to support the propriety of the investigation – was accurate and believable, including the repeated references to surveillance being "court-authorized" (*id.* at 5),[2] the claim that the timing of the sting operation was related to concerns about Amro Al-Ali sending "electronics," and inferences to be drawn from the No-Fly incident (*id.* at 5-6).

Other than a conclusory statement that the government presented "overwhelming evidence" and a self-serving recitation of select facts (CR 508 at 7-8), the response does not address the specifics listed above.

As the Court is aware from the jury question, there was substantial concern about whether the government established predisposition to commit the crime charged as opposed to some nebulous type of "similar conduct." *See* CR 430 at 6; CR 432 at 2-5. The government's recitation of its select facts in the response largely misses what this case was ultimately about. As stated in the defense's initial motion, "the defense presented a narrow theory of entrapment: Mohamed was not predisposed

---

[1] It is unclear why the government takes issue with the defense statement that the "nature and integrity of the investigation" was in "sharp dispute" (CR 505 at 2) or that the characterization of Amro Al-Ali set forth in the Interpol Red Notice was "fiercely contested" (CR 505 at 6). CR 508 at 7.

[2] The government's Response cites a portion of the parties' trial stipulation regarding electronic surveillance: "the Court instructed the jury to 'accept as proven' that the government 'review[ed] or listen[ed] in on his computer files, text messages, e-mails, and phone calls'. . . ." CR 508 at 8. Tellingly, the government omits the part of the stipulation that appeared between the two quotations it uses: "that the Government lawfully obtained, *pursuant to court order*." CR 456 at 381 (emphasis added).

**PAGE 3**     **REPLY TO GOVERNMENT'S RESPONSE TO DEFENDANT'S SECOND MOTION FOR A NEW TRIAL**

to, and was induced into, attempting to use a weapon of mass destruction *in the United States*." CR 505 at 2 (emphasis in original).

While the government did present evidence that, prior to being contacted by the first of several undercover agents, Mohamed had expressed interest in traveling abroad, it presented no pre-contact evidence of any intent to commit an act of violence in the United States. Thus, it was critical for the defense to be afforded an opportunity to fully develop two major points: (1) government surveillance would have found such evidence had it existed; and (2) the timing of the sting operation, a mere nine days after the No-Fly incident, reflected suspect government conduct because it led directly to Agent Youssef's redirection of a teenager's glorified visions of defending innocent Muslims abroad into committing an act of violence in the United States. Given the government's now revealed surveillance capabilities, Agent Trousas's justification regarding the fear of "electronics" would have been easily challenged.[3]

As argued in the initial defense motion, the newly revealed evidence of government surveillance implicates *Brady* and the due process right to present a complete defense. CR 505 at 2, 7 (citing *Crane v. Kentucky*, 476 U.S. 683 (1986), *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), and *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). While this provides sufficient grounds for granting a new trial in and of itself, the combination of these new issues with those raised in the initial defense Motion For A New Trial (CR 432) firmly establish that Mohamed did not receive a

---

[3] Contrary to the government's suggestion, none of the above points hinge on Mohamed being the "target" of § 702 surveillance. CR 508 at 5. Indeed, some of the arguments would actually be strengthened by evidence that the government was targeting foreigners such as Amro Al-Ali (and capturing Mohamed's communications "incidentally") rather than additional direct targeting of Mohamed himself.

fair trial. The Court should view the new issues in the context of other decisions that were made that, although the Court has upheld them to date, may be viewed in a different light given the new information and the actual testimony adduced at trial. Therefore, the defense respectfully requests that this Court remedy the situation by vacating the conviction and granting a new trial.

Dated this 19th day of May, 2014.

/s/ Stephen R. Sady
Stephen R. Sady
Chief Deputy Federal Public Defender

/s/ Steven T. Wax
Steven T. Wax
Federal Public Defender

/s/ Lisa Hay
Lisa Hay
Assistant Federal Public Defender

Mark Ahlemeyer
Research & Writing Attorney